**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| MATTHEW MILLUNCHICK and MIKE MARGENT, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>SUNLIGHT FINANCIAL HOLDINGS INC. f/k/a/ SPARTAN ACQUISITION CORP. II, MATTHEW POTERE, BARRY EDINBURG, RODNEY YODER, GEOFFREY STRONG, JAMES CROSSEN, OLIVIA WASSENAAR, WILSON HANDLER, CHRISTINE HOMMES, JOSEPH ROMEO, and SPARTAN ACQUISITION II SPONSOR, LLC,<br><br>Defendants. | Case No.: 1:22-cv-10658-AKH |

**MEMORANDUM OF LAW IN SUPPORT**
**OF THE SUNLIGHT DEFENDANTS' MOTION TO**
**DISMISS THE AMENDED COMPLAINT**

**MCGUIREWOODS LLP**

1251 Avenue of the Americas
20th Floor
New York, NY 10020
Telephone: (212) 548-2100
Facsimile: (212) 548-2150

*Attorneys for Defendants Sunlight Financial*
*Holdings Inc. F/K/A Spartan Acquisition*
*Corp. II, Matthew Potere, Barry Edinburg,*
*and Rodney Yoder*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF ALLEGED FACTS.................................................................................... 3

STANDARD OF REVIEW ...................................................................................................... 6

ARGUMENT ............................................................................................................................ 8

I.    Plaintiffs fail to state a Section 10(b) claim against all Defendants. ................................ 8

      A.    Plaintiffs fail to allege that the Statements are actionable. ................................... 9

            i.    Plaintiffs fail to allege that the Statements are false. ................................. 9

            ii.   Statements that advances were "low risk" or risk management
                  processes were "robust," are inactionable puffery..................................... 12

            iii.  The August 15, 2022 Statement that Sunlight "expect[ed] losses to
                  remain very low" is a forward-looking statement, protected by the
                  PSLRA's safe-harbor provision. ............................................................... 14

      B.    Plaintiffs' allegations as to the Proxy Statement constitute impermissible
            "puzzle pleading."................................................................................................. 15

      C.    Plaintiffs' Section 10(b) claim relies on impermissible allegations of
            "fraud by hindsight."............................................................................................ 17

      D.    The Court must disregard the Confidential Witnesses' allegations..................... 20

            i.    The Confidential Witness statements are not relevant to the theory
                  underlying Plaintiffs' claims, nor do they support a strong
                  inference of scienter................................................................................. 20

            ii.   CW1's allegations must be discounted because he was not
                  employed by Sunlight for all of the relevant time period. ........................ 23

      E.    The Court must disregard the allegations regarding Pink Energy from the
            *Generac* lawsuit. ................................................................................................. 24

      F.    Plaintiffs' conclusory allegations of scienter do not meet the demanding
            Rule 9(b) and PSLRA standards. .......................................................................... 25

      G.    Plaintiffs have failed to plead loss causation. ...................................................... 26

II.   Plaintiffs fail to state a Section 10(b) claim against the Sunlight Individual
      Defendants. ..................................................................................................................... 28

      A.    The Sunlight Individual Defendants' corporate positions do not establish
            scienter nor do they impose a duty to investigate. .............................................. 28

B.      Plaintiffs improperly lump the Sunlight Individual Defendants together for group scienter. ........................................................................................ 30

III.   Plaintiffs fail to state a Section 20(a) claim against the Sunlight Individual Defendants. ............................................................................................... 32

IV.    Plaintiffs fail to state a Section 14(a) claim. ...................................................... 34

A.      Plaintiffs fail to allege their derivative claim satisfies Rule 23.1. ........................ 35

B.      Plaintiffs fail to allege that the Proxy Statement contained a material misrepresentation or omission. ............................................................... 36

C.      Even if the Proxy Statement did contain a material misrepresentation or omission, Plaintiffs fail to state with particularity facts giving rise to a strong inference that Defendants acted with the required state of mind. .............. 39

D.      Plaintiffs fail to allege that the Proxy Statement caused the approval of the Business Combination or that it caused Plaintiffs to suffer economic loss. ......... 42

        i.      Plaintiffs fail to allege transaction causation. .......................................... 42

        ii.     Plaintiffs fail to allege loss causation. ..................................................... 44

CONCLUSION ................................................................................................................. 45

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                      **Page(s)**

*In re Alstom SA Sec. Litig.*,
406 F. Supp. 2d 433 (S.D.N.Y. 2005).....................................................................33

*In re Am. Express Co. Sec. Litig.*,
No. 02 Civ. 5533(WHP), 2008 WL 4501928 (S.D.N.Y. Sept. 26, 2008), *aff'd
sub nom. Slayton v. Am. Exp. Co.,* 604 F.3d 758 (2d Cir. 2010) .............................21

*In re Anadarko Petroleum Corp. Class Action Litig.*,
957 F. Supp. 2d 806 (S.D. Tex. 2013) ...................................................................29

*Arora v. HDFC Bank Ltd.*,
No. 20-CV-4140(EK)(JMW), 2023 WL 3179533 (E.D.N.Y. May 1, 2023)...........................11

*Asay v. Pinduoduo Inc.*,
No. 20-1423, 2021 WL 3871269 (2d Cir. Aug. 31, 2021) ......................................32

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...........................................................................................6, 7

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007).................................................................................7, 32

*AUSA Life Ins. Co. v. Ernst & Young*,
206 F.3d 202 (2d Cir. 2000)..................................................................................42

*In re Bank of Am. Corp. Sec., Derivative, & Employee Ret. Income Sec. Act
(ERISA) Litig.*,
No. 09 CIV. 5411 PKC, 2012 WL 1353523 (S.D.N.Y. Apr. 12, 2012)...................................18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)............................................................................................6

*In re Bemis Co. Sec. Litig.*,
512 F. Supp. 3d 518 (S.D.N.Y. 2021)......................................................................38

*In re Biogen Inc. Sec. Litig.*,
193 F. Supp. 3d 5 (D. Mass. 2016) ........................................................................26

*In re Boeing Co. Aircraft Sec. Litig.*,
No. 19-cv-02394, 2022 WL 3595058 (N.D. Ill. Aug. 23, 2022) .............................................26

*Bond Opportunity Fund v. Unilab Corp.*,
87 F. App'x 772 (2d Cir. 2004) ...........................................................................34

*Bond Opportunity Fund v. Unilab Corp.*,
  No. 99 Civ. 11074 (JSM), 2003 WL 21058251 (S.D.N.Y. May 9, 2003), *aff'd,*
  87 F. App'x 772 (2d Cir. 2004) ...................................................................................40, 41

*Bozsi Ltd. P'ship v. Lynott*,
  676 F. Supp. 505 (S.D.N.Y. 1987)...................................................................................29

*Bricklayers & Masons Loc. Union No. 5 Ohio Pension Fund v. Transocean Ltd.*,
  866 F. Supp. 2d 223 (S.D.N.Y. 2012)..............................................................................40

*Brookfield Asset Mgmt., Inc. v. Rosson*,
  261 A.3d 1251 (Del. 2021) ..............................................................................................35

*Burr v. Equity Bancshares, Inc.*,
  No. 19-CV-4346 (AJN), 2020 WL 6063558 (S.D.N.Y. Oct. 14, 2020)...................................12

*In re Career Educ. Corp. Secs. Litig.*,
  No. 03 C 8884, 2006 WL 999988 (N.D. Ill. Mar. 28, 2006) ...................................................22

*Chill v. Gen. Elec. Co.*,
  101 F.3d 263 (2d Cir. 1996)...........................................................................................7, 30

*City of Brockton Ret. Sys. v. Avon Prod., Inc.*,
  No. 11 Civ. 4665 (PGG), 2014 WL 4832321 (S.D.N.Y. Sept. 29, 2014) ................................29

*City of Monroe Employees' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*,
  No. 10-CV-2835, 2011 WL 4357368 (S.D.N.Y. Sept. 19, 2011)............................................11

*City of Pontiac Gen. Employees' Ret. Sys. v. Stryker Corp.*,
  No. 1:10-CV-520, 2011 WL 2650717 (W.D. Mich. July 6, 2011)..........................................17

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
  752 F.3d 173 (2d Cir. 2014)............................................................................................37

*Cohen v. Stevanovich*,
  722 F. Supp. 2d 416 (S.D.N.Y. 2010)..............................................................................32

*In re Columbia Pipeline, Inc.*,
  405 F. Supp. 3d 494 (S.D.N.Y. 2019)..............................................................................39

*Constr. Workers Pension Fund-Lake Cnty. & Vicinity v. Navistar Int'l Corp.*,
  No. 13 C 2111, 2014 WL 3610877 (N.D. Ill. July 22, 2014) ..................................................17

*In re CRM Holdings, Ltd. Sec. Litig.*,
  No. 10 Civ. 975, 2012 WL 1646888 (S.D.N.Y. May 10, 2012)..............................................31

*In re Cyberonics Inc. Sec. Litig.*,
  No. CIV.A. H-05-2121, 2006 WL 2050696 (S.D. Tex. July 20, 2006) ..................................28

iv

*In re DDAVP Direct Purchaser Antitrust Litig.*,
    585 F.3d 677 (2d Cir. 2009)..................................................................................31

*ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*,
    553 F.3d 187 (2d Cir. 2009)..................................................................................13

*Edison Fund v. Cogent Inv. Strategies Fund, Ltd.*,
    551 F. Supp. 2d 210 (S.D.N.Y. 2008).....................................................................33

*Enzo Biochem, Inc. v. Harbert Discovery Fund, LP*,
    No. 20-CV-9992 (PAC), 2021 WL 4443258 (S.D.N.Y. Sept. 27, 2021) ...............................39

*Enzo Biochem, Inc. v. Harbert Discovery Fund, LP*,
    No. 20-cv-9992 (PAC), 2021 WL 5854075 (S.D.N.Y. Dec. 9, 2021).....................................32

*Fin. Guar. Ins. Co. v. Putnam Advisory Co.*,
    783 F.3d 395 (2d Cir. 2015)..................................................................................42

*Firefighters Pension & Relief Fund of the City of New Orleans v. Bulmahn*,
    No. CIV.A. 13-3935, 2015 WL 4879217 (E.D. La. Aug. 14, 2015) .......................................23

*Fisher v. Kanas*,
    467 F. Supp. 2d 275 (E.D.N.Y. 2006) ....................................................................45

*Fort Worth Emp'rs' Ret. Fund v. Biovail Corp.*,
    615 F. Supp. 2d 218 (S.D.N.Y. 2009).....................................................................15

*Francois v. Victory Auto Grp. LLC*,
    No. 22-CV-4447 (JSR), 2023 WL 373250 (S.D.N.Y. Jan. 24, 2023) .....................................24

*In re FuboTV Inc. Sec. Litig.*,
    No. 21-CV-01412 (ALC), 2023 WL 2711826 (S.D.N.Y. Mar. 30, 2023) ...............................15

*Furlong Fund LLC v. VBI Vaccines, Inc.*,
    No. 14 Civ. 9435 (SHS), 2016 WL 1181710 (S.D.N.Y. Mar. 25, 2016) ................................40

*Gammel v. Hewlett-Packard Co.*,
    905 F. Supp. 2d 1052 (C.D. Cal. 2012) ..................................................................22

*In re Garrett Motion Inc. Sec. Litig.*,
    No. 1:20-CV-07992 (JLR), 2023 WL 2744029 (S.D.N.Y. Mar. 31, 2023)..............................17

*In re Gen. Elec. Co. Sec. Litig.*,
    857 F. Supp. 2d 367 (S.D.N.Y. 2012).......................................................................7

*Glaser v. The9, Ltd.*,
    772 F. Supp. 2d 573 (S.D.N.Y. 2011)..................................................................20, 21

*Grace v. Rosenstock*,
    228 F.3d 40 (2d Cir. 2000)...............................................................................34, 42

*Gray v. Wesco Aircraft Holdings, Inc.*,
    454 F. Supp. 3d 366 (S.D.N.Y. 2020), *aff'd,* 847 F. App'x 35 (2d Cir. 2021)........................45

*In re GTx Shareholders Litig.*,
    No. 19 Civ. 3239 (AT), 2020 WL 3439356 (S.D.N.Y. June 23, 2020)....................................44

*HB v. Monroe Woodbury Cent. Sch. Dist.*,
    No. 11-CV-5881 CS, 2012 WL 4477552 (S.D.N.Y. Sept. 27, 2012)........................................7

*Higginbotham v. Baxter Int'l, Inc.*,
    495 F.3d 753 (7th Cir. 2007) ...............................................................................20

*Hoch v. Alexander*,
    No. CIV.A. 11-217, 2011 WL 2633722 (D. Del. July 1, 2011) ...............................................45

*Hou Liu v. Intercept Pharms., Inc.*,
    No. 17-CV-7371 (LAK), 2020 WL 1489831 (S.D.N.Y. Mar. 26, 2020) ................................10

*Hutchinson v. Perez*,
    No. 12 CIV. 1073 HB, 2013 WL 1775374 (S.D.N.Y. Apr. 25, 2013), *aff'd sub*
    *nom. Jones v. Perez*, 550 F. App'x 24 (2d Cir. 2013) ............................................................19

*IBEW Loc. 98 Pension Fund v. Cent. Vt. Pub. Serv. Corp.*,
    No. 11-CV-222, 2012 WL 12985689 (D. Vt. Aug. 23, 2012).................................................40

*In re Int'l Bus. Machines Corp. Sec. Litig.*,
    163 F.3d 102 (2d Cir. 1998)...................................................................................15

*In re Intelligroup Sec. Litig.*,
    527 F. Supp. 2d 262 (D.N.J. 2007) ..................................................................22, 23

*J. I. Case Co. v. Borak*,
    377 U.S. 426 (1964), *abrogated on other grounds by Ziglar v. Abbasi,* 582
    U.S. 120 (2017)........................................................................................................36

*Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co., Inc.*,
    32 F.3d 697 (2d Cir. 1994).....................................................................................18

*In re JP Morgan Chase Sec. Litig.*,
    363 F. Supp. 2d 595 (S.D.N.Y. 2005)....................................................................13

*Espinoza ex rel. JPMorgan Chase & Co. v. Dimon*,
    797 F.3d 229 (2d Cir. 2015)...................................................................................35

*Karp v. SI Fin. Grp., Inc.*,
  No. 3:19-CV-00199 (MPS), 2020 WL 1891629 (D. Conn. Apr. 16, 2020) ...........................40

*Kennecott Copper Corp. v. Curtiss-Wright Corp.*,
  584 F.2d 1195 (2d Cir. 1978) .................................................................................................38

*Kinra v. Chi. Bridge & Iron Co.*,
  No. 17 Civ. 4251, 2018 WL 2371030 (S.D.N.Y. May 24, 2018) ...........................................31

*La. Mun. Police Emps. Ret. Sys. v. Cooper Indus.*,
  No. 12CV1750, 2012 WL 4958561 (N.D. Ohio Oct. 16, 2012) .............................................38

*Lane v. Page*,
  581 F. Supp. 2d 1094 (D.N.M. 2008) .....................................................................................38

*Lattanzio v. Deloitte & Touche LLP*,
  476 F.3d 147 (2d Cir. 2007) ...................................................................................................27

*Lentell v. Merrill Lynch*,
  396 F.3d 161 (2d Cir. 2005) ...................................................................................................26

*Li v. China Merchants Bank Co.*,
  No. 22 CIV. 9309 (KPF), 2023 WL 146853 (S.D.N.Y. Jan. 6, 2023), *opinion
  vacated in part on other grounds*, No. 22 CIV. 9309 (KPF), 2023 WL
  2955293 (S.D.N.Y. Apr. 14, 2023) .........................................................................................24

*Lipow v. Net1 UEPS Techs., Inc.*,
  131 F. Supp. 3d 144 (S.D.N.Y. 2015) .....................................................................................28

*Little Gem Life Sciences LLC v. Orphan Med., Inc.*,
  Civ. No. 06-1377 ADM/AJB, 2007 WL 541677, at *13 (D. Minn. Feb. 16,
  2007) .......................................................................................................................................44

*Local No. 38 IBEW v. Am. Exp. Co.*,
  724 F. Supp. 2d 447 (S.D.N.Y. 2010), *aff'd*, 430 F. App'x 63 (2d Cir. 2011) .......................22

*In re Longtop Fin. Techs. Ltd. Sec. Litig.*,
  939 F. Supp. 2d 360 (S.D.N.Y. 2013) .....................................................................................26

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
  797 F.3d 160 (2d Cir. 2015) ...................................................................................................27

*Low v. Robb*,
  No. 11-CV-2321 JPO, 2012 WL 173472 (S.D.N.Y. Jan. 20, 2012) ......................................24

*In re Lululemon Sec. Litig.*,
  14 F. Supp. 3d 553 (S.D.N.Y. 2014) .................................................................................22, 24

*Malin v. XL Capital Ltd.*,
499 F. Supp. 2d 117 (D. Conn. 2007), *aff'd,* 312 F. App'x 400 (2d Cir. 2009) ......................24

*In re Manulife Fin. Cop. Sec. Litig.*,
276 F.R.D. 87 (S.D.N.Y. 2001) .....................................................................................17, 18

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
536 F. Supp. 2d 313 (S.D.N.Y. 2007)....................................................................................38

*McIntire v. China MediaExpress Holdings, Inc.*,
927 F. Supp. 2d 105 (S.D.N.Y. 2013)....................................................................................32

*Mendoza v. HF Foods Grp.*,
No. 2:20-CV-02929-ODW, 2021 WL 3772850 (C.D. Cal. Aug. 25, 2021)...........................41

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
218 F.R.D. 76 (S.D.N.Y. 2003) .............................................................................................24

*In re Molycorp, Inc. Sec. Litig.*,
No. 13–cv–5697 (PAC), 2015 WL 1097355 (S.D.N.Y. Mar. 12, 2015)................................29

*Montanio v. Keurig Green Mtn., Inc.*,
237 F. Supp. 3d 163 (D. Vt. 2017)........................................................................................38

*Moore v. PaineWebber, Inc.*,
189 F.3d 165 (2d Cir. 1999)...................................................................................................42

*In re MRU Holdings Sec. Litig*,
769 F. Supp. 2d 500 (S.D.N.Y. 2011)....................................................................................20

*New York City Emps. Ret. Sys. v. Jobs*,
593 F.3d 1018 (9th Cir. 2010) ...............................................................................................44

*In re New York Cmty. Bancorp, Inc., Sec. Litig.*,
448 F. Supp. 2d 466 (E.D.N.Y. 2006) ...................................................................................13

*In re Nokia Oyj (Nokia Corp.) Sec. Litig.*,
423 F. Supp. 2d 364 (S.D.N.Y. 2006)....................................................................................28

*Norfolk Cnty. Ret. Sys. v. Solazyme, Inc.*,
No. 15-CV-02938-HSG, 2018 WL 3126393 (N.D. Cal. June 26, 2018)...............................23

*Novak v. Kasaks*,
216 F.3d 300 (2d Cir. 2000)............................................................................................20, 21

*Ocegueda v. Zuckerberg*,
526 F. Supp. 3d 637 (N.D. Cal. 2021) ...................................................................................39

*Pac. Inv. Mgmt. Co. v. Mayer Brown LLP*,
603 F.3d 144 (2d Cir. 2010)................................................................................................9

*In re PetroChina Co. Ltd. Sec. Litig.*,
120 F. Supp. 3d 340 (S.D.N.Y. 2015)...............................................................................11

*Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*,
645 F. Supp. 2d 210 (S.D.N.Y. 2009)...............................................................................39

*Power Home Solar, LLC d/b/a Pink Energy v. Generac Power Systems, Inc.*,
No. 6:22-cv-000043-NKM (W.D. Va.) .......................................................6, 11, 12, 19, 24, 25

*PRS v. Intuitive Surgical, Inc.*,
759 F. 3d 1051 (9th Cir. 2014) ..........................................................................................15

*Resnik v. Woertz*,
774 F. Supp. 2d 614 (D. Del. 2011)...................................................................................45

*Rombach v. Chang*,
355 F.3d 164 (2d Cir. 2004)...........................................................................................7, 8

*In re Romeo Power Sec. Litig.*,
21 Civ. 3362 (LGS), 2022 WL 1806303 (S.D.N.Y. June 2, 2022) .........................................36

*RSM Prod. Corp. v. Fridman*,
643 F. Supp. 2d 382 (S.D.N.Y. 2009), *aff'd*, 387 F. App'x 72 (2d Cir. 2010).........................24

*Salit v. Stanley Works*,
802 F. Supp. 728 (D. Conn. 1992).....................................................................................41

*In re Satyam Computer Servs. Ltd. Sec. Litig.*,
915 F. Supp. 2d 450 (S.D.N.Y. 2013)................................................................................33

*In re Splash Tech. Holdings, Inc. Sec. Litig.*,
160 F. Supp. 2d 1059 (N.D. Cal. 2001) .........................................................................14, 17

*Stevelman v. Alias Research Inc.*,
174 F.3d 79 (2d Cir. 1999)................................................................................................18

*Suez Equity Investors, L.P. v. Toronto-Dominion Bank*,
250 F.3d 87 (2d Cir. 2001)................................................................................................26

*Tabor v. Bodisen Biotech, Inc.*,
579 F. Supp. 2d 438 (S.D.N.Y. 2008)................................................................................16

*Talarico v. Johnson*,
No. 4:21-CV-3689, 2023 WL 2618255 (S.D. Tex. Feb. 7, 2023) ....................................12, 13

ix

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)................................................................................8, 25

*Tiberius Capital, LLC v. PetroSearch Energy Corp.*,
    No. 09 CV 10270(GBD), 2011 WL 1334839 (S.D.N.Y. Mar. 31, 2011).........................43, 44

*In re Vivendi*,
    838 F.3d 223 (2d Cir. 2016)................................................................................14

*W. Palm Beach Firefighters' Pension Fund v. Conagra Brands, Inc.*,
    495 F. Supp. 3d 622 (N.D. Ill. 2020), *aff'd sub nom. Nat'l Elevator Indus.*
    *Pension Fund v. Conagra Brands, Inc.,* No. 21-1155, 2022 WL 1449184 (7th
    Cir. May 9, 2022).........................................................................................13

*Wilson v. Great Am. Indus., Inc.*,
    979 F.2d 924 (2d Cir. 1992)................................................................................43

*XYZ Two Way Radio Serv., Inc. v. Uber Techs., Inc.*,
    214 F. Supp. 3d 179 (E.D.N.Y. 2016) .................................................................37

*Zech Capital LLC v. Ernst & Young Hua Ming*,
    636 F. App'x 582 (2d Cir. 2016), *as amended* (Jan. 28, 2016) ...............................18

*In re Zoran Corp. Deriv. Litig.*,
    511 F. Supp. 2d 986 (N.D. Cal. 2007) .................................................................40

**Federal Statutes**

15 U.S.C. § 77z-2...............................................................................................14

15 U.S.C. § 78n(a) .............................................................................................34

15 U.S.C. § 78t(a) ..............................................................................................32

15 U.S.C. § 78u-4(b)...............................................................................7, 25, 34, 35, 39

Securities and Exchange Act of 1934, § 10(b) ........................................................ *passim*

**Rules**

Fed. R. Civ. P. 9(b) ...............................................................................7, 8, 9, 18, 25, 39

Fed. R. Civ. P. 12(b)(6).........................................................................................6

Fed. R. Civ. P. 23.1.......................................................................................3, 35, 36

Fed. R. Evid. 407 ...............................................................................................26

Rule 10b-5........................................................................................................8, 15

x

**Regulations**

17 C.F.R. § 240.14a-9(a) .................................................................................................34

**PRELIMINARY STATEMENT**

Defendant Sunlight Financial Holdings, Inc. ("Sunlight") is a publicly traded provider of a digital platform to support lending for residential customers who want to install solar power. Sunlight provides a software platform and process connection between residential solar contractors and lending partners, thereby allowing the customers of those residential solar contractors to efficiently apply for and receive financing for their residential solar project. Sunlight conducts due diligence on the contractors that seek to use its platform and related services.

The Defendant Sunlight entity was formed as the result of a 2021 merger, and initially enjoyed financial success. However, due to a variety of factors including changing interest rates, competition, and the insolvency of an important vendor relationship, Sunlight's stock has not performed as well as expected. Partly due to the financial troubles of Power Home Solar LLC d/b/a Pink Energy, Inc. ("Pink"), a solar contractor, Sunlight announced in September 2022 that it would overhaul its due diligence and proactively reevaluate all of its vendor relationships.

Not surprisingly, that drop in the stock price drew a putative class action by a group of shareholders who want to recover alleged losses. Specifically, these shareholders allege that the insolvency of one vendor with whom Sunlight had a relationship means that a variety of generic statements about risk controls by Sunlight in past public filings are necessarily false. In a kitchen-sink approach, Plaintiffs claim that these statements are actionable under Section 10(b) of the Securities Exchange Act of 1934 (the "'34 Act") as well as the proxy rules of Section 14(a) and that Sunlight, as well its current and former officers and directors and a predecessor entity, are either directly liable or liable under the control person provisions of Section 20(a).

However, despite two pleading attempts and a pre-suit investigation involving former Sunlight employees, Plaintiffs' claims must fail for several reasons. First, Plaintiffs have not offered any well-pled allegations that demonstrate that the challenged statements are in fact false.

1

Plaintiffs have not alleged that Sunlight misstated any material financial data.  And the generic statements about Sunlight's risk controls and vendor due diligence and its future expectations of moderate losses are not actionable under the securities laws.  Further, the fact that one vendor, Pink (acknowledged as one with "moderate risk" by Sunlight), later experienced financial distress does not call into question the truth of Sunlight's general statements about its risk controls. Plaintiffs' improper puzzle pleading allegations cannot save the fact that they have failed to identify which statements by Sunlight are false and why, let alone any actionable statements by any of the named individual defendants.

Perhaps cognizant of the weakness of its claims, Plaintiffs try to rely on Confidential Witnesses to show both the falsity of Sunlight's statements and scienter of the company and its directors and officers.  But these Confidential Witnesses, some of whom did not even work for Sunlight during the relevant time or were not in positions sufficient to impute scienter to senior management, cannot save Plaintiffs' fatal pleading defects.  Perhaps most significantly, these Confidential Witnesses simply express general after-the-fact critiques about Sunlight's vendor due diligence.  None of these Confidential Witnesses were responsible for the due diligence of Pink, and thus were certainly not in a position judge the falsity or related scienter of any statements. Plaintiffs do not otherwise attempt to plead facts giving rise to a strong inference of scienter.

These deficiencies are fatal to the claims against Sunlight and also the individual defendants.  While these claims are weak against Sunlight as an institution, they are even weaker against the named individual defendants.  Plaintiffs impermissibly combine allegations against the individuals with no attempt to specify *any* statements made by the vast majority of the individuals, much less identify that those individuals knew such statements were false when they were made.

Indeed, Plaintiffs say very little about any one particular individual defendant, and certainly not enough to survive a motion to dismiss.

Plaintiff's Section 14(a) claims fare no better. As an initial matter, the claims must be dismissed because they are derivative in nature, yet Plaintiffs fail to plead compliance with the Rule 23.1 demand requirement for derivative claims. Additionally, the attempt to plead a misrepresentation based on the March 22, 2021 proxy statement fails for the same reason that Plaintiffs have failed to state a claim under Section 10(b) or 20(a), namely that they have provided no basis by which the Court can hold that the statements at issue were false, were made with the requisite state of mind, or even caused Plaintiffs any losses.

## STATEMENT OF ALLEGED FACTS

Sunlight operates a digital platform on which contractors can obtain financing for customers interested in purchasing residential solar or home improvement projects. Am. Compl. ¶ 2. Sunlight was formed in 2021 as a result of a merger between Sunlight Financial LLC and Spartan Acquisition Corp. II ("Spartan"). *Id.* ¶ 3. Sunlight Financial LLC and Spartan announced the merger on January 25, 2021 and consummated the merger on July 9, 2021. *Id.* (the merger referred to hereafter as either the "merger" or the "Business Combination"). On July 12, 2021, the combined company began trading on the New York Stock Exchange. *Id.*

At the heart of Plaintiffs' operative Amended Class Action Complaint (ECF No. 34, the "Complaint") is Sunlight's "cash advance" system, where it provided contractors with cash advances so that they could avoid the up-front costs of solar installation and home improvement projects. *Id.* ¶ 6. Plaintiffs' claims largely concern developments at the close of trading on September 28, 2022, when Sunlight filed a Form 8-K noting that it would need to overhaul the internal process by which it provided advances to its contractors because one such contractor was facing unanticipated "liquidity issues." *Id.* ¶ 80. In a press release accompanying the 8-K,

3

Sunlight said it would be "re-underwriting" every one of its contractors so that the company could avoid further risk.  *Id.* ¶ 9, 80.

The day following this disclosure, Sunlight's common stock dropped by approximately 57% per share.  *Id.* ¶ 81.  Sunlight confirmed during its third quarter earnings call that the contractor facing the issues referenced in the September 2022 8-K was Pink.  *Id.* ¶ 82.  Pink had shut down its business operations on September 21, 2022, and later filed for bankruptcy on October 7, 2022.  *Id.*

Shortly after these events, Plaintiffs filed their initial complaint, which has since been amended by the operative Complaint.  Plaintiffs bring claims not only against Sunlight but also individual defendants Matthew Potere, the CEO of Sunlight, Barry Edinburg, the former CFO of Sunlight until March 31, 2022, and Rodney Yoder, the CFO of Sunlight through the end of the Class Period (collectively, the "Sunlight Individual Defendants," and collectively with Sunlight, the "Sunlight Defendants"), individual defendants Geoffrey Strong, James Crossen, Olivia Wassenaar, Wilson Handler, Christine Hommes, and Joseph Romeo (collectively, the "Spartan Individual Defendants"); and Spartan Acquisition II Sponsor LLC ("Sponsor," and, collectively with the Spartan Individual Defendants, the "Spartan Defendants").[1]

Plaintiffs seek to represent a class of stockholders meeting one or both of two criteria: (1) those who purchased publicly traded common stock of Sunlight between January 25, 2021 and September 28, 2022, and (2) those who beneficially owned and/or held Spartan common stock as of June 1, 2021 and were eligible to vote at Spartan's July 8, 2021 special meeting.[2]  *Id.* ¶ 1.  The crux of Plaintiffs' claims is that Defendants made false representations about Sunlight's cash

---

[1] All Defendants except Yoder will be referred to as the "Proxy Claim Defendants."  Sunlight, Edinburg, and Potere will be referred to as the "Sunlight Proxy Claim Defendants."
[2] The "Class Period" is January 25, 2021 through September 28, 2022.  Am. Compl. ¶ 1.

advance program prior to Pink's insolvency.  Plaintiffs allege that on January 25, 2021—the first day of the Class Period—the Sunlight Individual Defendants stated that the cash advance program was structured to be low risk to Sunlight during a conference call with investors about the proposed merger.  *Id.* ¶ 51.  Plaintiffs allege this statement was false only because the cash advance program "created substantial risk for Sunlight" and that the total amount of cash advances to Pink at the time of the September 28, 2022 disclosure represented almost half of Sunlight's total cash in hand at the time.  *Id.* ¶ 52.

Plaintiffs further allege that Defendants made false representations about Sunlight's vetting and monitoring of contractors.  Plaintiffs allege that Defendants made these representations pre-merger and throughout the Class Period in a series of filings, beginning with Spartan's filing of an SEC Registration Statement, preliminary Proxy Statement, and Form S-4, which stated that "Sunlight has adopted vigorous contractor diligence and monitoring procedures."  *Id.* ¶¶ 56-57.  Plaintiffs in particular focus on the statement on the March 2021 S-4 that "Sunlight has established a robust commercial underwriting and ongoing monitoring process[.]"  *Id.* ¶ 57.  Plaintiffs allege that post-merger, Sunlight made an identical statement in four subsequent SEC filings between July 30, 2021 and April 22, 2022.  *Id.* ¶ 58.

In support of these thread-bare allegations, Plaintiffs cite the testimony of two Confidential Witnesses ("CWs") to suggest that Sunlight was not diligent in monitoring its contractors.  But neither of these CWs have direct knowledge of the allegations concerning Sunlight's relationship with Pink, and CW1 was not even employed by the company during the time period at issue.  *Id.* ¶¶ 60-65.  In addition to the CW testimony, Plaintiffs argue only that that Defendants should have known about the risk posed by having Pink as a contractor because Sunlight assigned Pink a "3" in its 1-5 risk tier, which Plaintiffs acknowledge meant that Pink was assigned "medium

5

commercial credit risk," and that Sunlight would have identified Pink's weak financial condition if it had done a more robust review of Pink. *Id.* ¶¶ 66-67. In support, Plaintiffs point only to four specific media reports that had emerged by the spring of 2022 concerning Pink and a lawsuit with one of Pink's suppliers. *Id.* ¶¶ 68-70 (citing *Power Home Solar, LLC d/b/a Pink Energy v. Generac Power Systems, Inc.*, No. 6:22-cv-000043-NKM (W.D. Va.)).

Plaintiffs then allege that despite these supposedly "alarming developments"—concerning a single contractor relationship—statements made during Sunlight's August 15, 2022 earnings call that it "expect[s] losses in the future to remain very low" for the cash advance program were somehow false. *Id.* ¶¶ 71-72. Plaintiffs do not plead facts showing further losses tied to vendor issues. Further, while Plaintiffs admit that Sunlight informed analysts in the fourth quarter of 2022 that its cash advance program was risky, they allege Sunlight's representation that it had since taken steps to "mitigate [its] risk" was false. *Id*. ¶ 79. Plaintiffs allege that these statements impose liability on Defendants under Sections 10(b), 14(a), and 20(a) of the '34 Act. *Id.* ¶¶ 101-130.

The initial complaint against Sunlight was filed on December 16, 2022. After briefing, the current lead plaintiff was appointed on March 8, 2023. Plaintiffs then filed the operative Complaint on May 22, 2023.[3]

<strong>STANDARD OF REVIEW</strong>

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although the Court must take as true all factual allegations in the Complaint, it is "not bound to accept as true a legal conclusion couched as a factual allegation" or "naked assertion[s] devoid of

---

[3] In addition to the arguments made herein, the Sunlight Defendants also join in the arguments made in the Spartan Defendants' Motion to Dismiss the Amended Class Action Complaint.

further factual enhancement."  *Id.* at 678 (internal quotation marks and citations omitted).  The Court also may consider certain materials outside the Complaint at this stage for purposes of a motion to dismiss, including news articles and public disclosure documents filed with the SEC. *See, e.g.*, *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (SEC filings); *HB v. Monroe Woodbury Cent. Sch. Dist.*, No. 11-CV-5881 CS, 2012 WL 4477552, at *4 (S.D.N.Y. Sept. 27, 2012) (news articles).

To survive a motion to dismiss, a complaint containing allegations of securities fraud or falsities must satisfy Federal Rule of Civil Procedure 9(b)'s heightened pleading requirements. *See, e.g.*, *ATSI*, 493 F.3d at 99.  Rule 9(b) requires the plaintiff to plead the circumstances constituting fraud or mistake "with particularity."  Fed. R. Civ. P. 9(b); *see Chill v. Gen. Elec. Co.*, 101 F.3d 263, 267 (2d Cir. 1996).  The Second Circuit requires that a securities fraud complaint must (1) specify the fraudulent statements, (2) identify the speaker, (3) state where and when statements were made, and (4) explain why the statements were fraudulent.  *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004).  Thus, "[a]llegations that are conclusory or unsupported by factual assertions are insufficient," *ATSI*, 493 F.3d at 99, and the Court should dismiss any complaint that "simply offers a generalized allegation," *id.* at 106.

"A complaint alleging securities fraud pursuant to Section 10(b) of the Securities Exchange Act is subject to two heightened pleading standards."  *In re Gen. Elec. Co. Sec. Litig.,* 857 F. Supp. 2d 367, 383 (S.D.N.Y. 2012).  "First, the complaint must satisfy Rule 9(b)."  *Id*.  "Second, the complaint must meet the pleading requirements of the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(b)."  *Id.*  Under the PSLRA, "the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind," or scienter.  15 U.S.C.

7

§ 78u-4(b)(2)(A). "To qualify as 'strong' within the intendment of [the PSLRA] . . . an inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007). Like Rule 9(b), the PSLRA also requires that a complaint "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading," which compels a plaintiff to "state with particularity the specific facts in support of [a plaintiff's] belief that [defendant's] statements were false when made." *Rombach*, 355 F.3d at 172 (quotations and citations omitted).

## ARGUMENT

### I.      Plaintiffs fail to state a Section 10(b) claim against all Defendants.

Despite its length, Plaintiffs' Complaint essentially alleges only that three statements were false or misleading. First, Plaintiffs cite to the statement made on January 25, 2021 by Potere, whereby he allegedly claimed that the cash advance program was "low risk" to Sunlight (Am. Compl. ¶ 51, the "January 25, 2021 Statement"). Second, Plaintiffs cite to a series of statements in the S-4—signed by the Spartan Individual Defendants and made in subsequent filings by Sunlight—stating that Sunlight had "established a robust commercial underwriting and ongoing monitoring process" (Am. Compl. ¶ 57, statements collectively referred to as the "Proxy Statement"). There is no dispute that Sunlight had such a program, and thus Plaintiffs presumably take issue with the characterization of that program as "robust." Third, Plaintiffs cite to Yoder's statement on the Q2 earnings call that Sunlight "expect[ed] losses in the future to remain very low" (Am. Compl. ¶ 72, the "August 15, 2022 Statement") (collectively, the "Statements").

But as explained more fully below, these statements are insufficient to state a claim under Section 10(b). To state a claim for violating Section 10(b) and Rule 10b-5, "a plaintiff must prove (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection

8

between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Pac. Inv. Mgmt. Co. v. Mayer Brown LLP*, 603 F.3d 144, 151 (2d Cir. 2010) (citation omitted).

Plaintiffs have not met this standard, and their Section 10(b) claim fails because (1) the misstatements alleged by Plaintiffs are not actionable, (2) Plaintiffs' allegations as to the Proxy Statement constitute impermissible "puzzle pleading," (3) Plaintiffs' claims rely on impermissible allegations of "fraud by hindsight," (4) Plaintiffs improperly rely on the allegations of confidential witnesses and allegations contained within another lawsuit; (5) Plaintiffs' conclusory allegations of scienter fail both Rule 9(b) and PSLRA standards; and (6) Plaintiffs have not adequately alleged loss causation.

### A.    Plaintiffs fail to allege that the Statements are actionable.

Plaintiffs allege that the Statements were false when made based on nothing more than the CWs' allegations, negative media reports about Pink, and allegations from a separate lawsuit. Am. Compl. ¶¶ 60-70. As discussed *infra*, none of these generalized allegations satisfy Rule 9(b) or the PSLRA. But before even addressing those fatal deficiencies in the Complaint, the Court can dismiss Plaintiffs' Section 10(b) claim fail for the simple reason that Plaintiffs have failed to allege an actionable statement.

### i.    Plaintiffs fail to allege that the Statements are false.

The gravamen of Plaintiffs' claims is essentially that Sunlight's internal controls and risk assessments were deficient and that as a result, the company was not adequately prepared for the Pink bankruptcy. Am. Compl. ¶¶ 66-67. But Plaintiffs fail to say anything specific about the structure of Sunlight's internal controls and how and why they were deficient in assessing risk as to the cash advance program. This is fatal to their claims.

9

As to the January 25, 2021 Statement that the cash advance program was "low risk to Sunlight" (Am. Compl. ¶ 51), Plaintiffs allege that this was false "because the cash advances that Sunlight gave to contractors created substantial risk for Sunlight." *Id.* ¶ 52. However, "low risk" (a statement clearly disclosed to investors) is not the same as "no risk," and the Complaint is devoid of particularized allegations demonstrating the falsity of the statement that the program was low risk. To the extent that whether something is "low risk" is even capable of being proven, Plaintiffs' own allegations actually confirm that Sunlight believed the cash advances were "low risk" at the time the statement was made, making it not misleading. In particular, Plaintiffs allege that Sunlight assigned Pink a risk rating of "3" in its 1-5 risk tier. *Id.* ¶ 66. This middle-tier rating assigned to Pink shows only that, at the time of the risk assessment, Sunlight did not believe Pink to be high risk, but clearly thought that there was a not-insignificant amount of risk attributable to Pink, and that Sunlight believed its 5-tier system adequately flagged higher risk contractors for more stringent review, thereby resulting in an overall lower risk cash advance program. But the fact that Pink ultimately failed does not, ipse dixit, support Plaintiffs' allegations that Sunlight's risk controls were inadequate. *See, e.g.*, *Hou Liu v. Intercept Pharms., Inc.*, No. 17-CV-7371 (LAK), 2020 WL 1489831, at *10 (S.D.N.Y. Mar. 26, 2020) (dismissing claim that defendants misrepresented compliance with a prescription dosage requirement because the mere fact that one doctor overprescribed medicine using defendants' form was not indicative of a systemic issue in defendants' process).

As to the Proxy Statement—where Plaintiffs appear to focus on Sunlight's assertion regarding its "vigorous contractor diligence and monitoring procedures" (Am. Compl. ¶ 57)—Plaintiffs have likewise failed to allege that Sunlight's statements about the *effectiveness* of its internal controls were materially false or misleading. Plaintiffs have not alleged anything

10

specific about the nature of the alleged deficiencies in Sunlight's practices regarding the monitoring of contractors. Rather, Plaintiffs ask the Court to assume that Sunlight's internal controls must have been deficient because they failed to predict one contractor's eventual bankruptcy. Without something more specific, Plaintiffs' conclusory allegations about Sunlight's internal controls cannot survive. *See Arora v. HDFC Bank Ltd.*, No. 20-CV-4140(EK)(JMW), 2023 WL 3179533, at *6 (E.D.N.Y. May 1, 2023) ("Conclusory allegations that a company made false or misleading statements that its controls were effective because a later-revealed instance of impropriety indicates otherwise—absent specific allegations about how or why those controls were ineffective — do not state a claim for securities fraud."); *City of Monroe Employees' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*, No. 10-CV-2835, 2011 WL 4357368, at *22 (S.D.N.Y. Sept. 19, 2011) ("[P]laintiffs have not alleged any facts pertaining to the Company's internal structure for financial reporting, much less that [defendant] lacked adequate internal controls."); *In re PetroChina Co. Ltd. Sec. Litig.*, 120 F. Supp. 3d 340, 359 (S.D.N.Y. 2015) (rejecting Section 10(b) claim based on effectiveness certifications because, among other things, the complaint did not allege "how or why PetroChina's internal controls were inadequate").

As to the last Statement, the forward-looking statement that Sunlight "expect[s] losses in the future to remain very low," Plaintiffs rely only on media reports and the *Generac* lawsuit to prove falsity. Am. Compl. ¶¶ 67-72. However, nowhere do Plaintiffs explain how these media reports and unsubstantiated allegations from another lawsuit demonstrate that the statement about Sunlight's expectations of future losses was false. Further, the news articles and *Generac* complaint did not emerge until the spring and summer of 2022, and Sunlight represented only that it reviews its contractors on at least an *annual* basis. *Id.* ¶¶ 57, 61. Thus, there is no reason to assume that any review of Pink should have occurred during that relevant time period, or that

11

Sunlight did not, in fact, expect cash advance losses to remain low at that time. Moreover, as described *infra*, Plaintiffs may not rely on the *Generac* allegations to prove falsity, and the news articles did not reveal any specific flags about Pink's *liquidity*. *Id.* ¶¶ 68-69.[4]

> ### ii.    Statements that advances were "low risk" or risk management processes were "robust," are inactionable puffery.

"Statements of puffery or optimism are not actionable under § 10(b) if they are too general to cause a reasonable investor to rely upon them." *Burr v. Equity Bancshares, Inc.*, No. 19-CV-4346 (AJN), 2020 WL 6063558, at *6 (S.D.N.Y. Oct. 14, 2020) (internal quotations and citation omitted). "Although there is no definitive test to determine how vague a statement must be to qualify as puffery, courts have focused on the imprecision of statements and whether such statements relate to future expectations." *Id.* (citation omitted).

Here, the January 25, 2021 Statement touting Sunlight's "low risk" and the Proxy Statement speaking to Sunlight's "robust" underwriting and monitoring procedures are the sort of "[r]outine statement[s]" that any company "would make to tout its business." *Id.* They are analogous to statements this Court has found "would not reasonably affect investor behavior and so cannot form the basis for a claim under § 10(b)," such as that a company "set the standard for best practices in risk management techniques," that "a corporation's credit quality is 'strong,'" or that "a corporation's risk management processes are 'highly disciplined.'" *Id.*

The January 25, 2021 Statement regarding Sunlight's "low risk" reflects nothing more than the company's optimistic outlook concerning its cash advance program. It is the exact kind of statement that courts squarely reject as being beyond the reach of the PSLRA. *See, e.g.*, *Talarico*

---

[4] In attempting to allege that the Sunlight Defendants knew that all Statements were false when made, Plaintiffs also rely heavily on the CWs' allegations. For the reasons explained *infra*, none of the CWs' allegations—all of which are assumed to be true—demonstrate the contemporaneous falsity of the Statements.

*v. Johnson*, No. 4:21-CV-3689, 2023 WL 2618255, at *12 (S.D. Tex. Feb. 7, 2023) ("The generalized, positive statements about the company's competitive strengths, like 'low risk' and 'resilient;' the generalized commitment to improved investor communications; and highlighting future prospects of the test well are not actionable because they are not concrete enough to be a material misrepresentation."), *report and recommendation adopted,* No. CV H: 21-3689, 2023 WL 2616104, at *1 (S.D. Tex. Mar. 21, 2023).

The Proxy Statement regarding Sunlight's "robust" underwriting and monitoring procedures is an even greater example of puffery. As courts have explained, "[g]eneralized statements regarding a company's fiscal discipline and *risk management* amount to no more than inactionable puffery." *In re New York Cmty. Bancorp, Inc., Sec. Litig.,* 448 F. Supp. 2d 466, 480 (E.D.N.Y. 2006) (emphasis added); *see also, e.g.*, *In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 633 (S.D.N.Y. 2005) ("The particular misstatements that plaintiffs allege—generalizations regarding integrity, fiscal discipline and *risk management*—amount to no more than puffery." (emphasis added)). And the Court of Appeals has specifically explained in one case that a company's statements that it had "risk management processes [that] are highly disciplined and designed to preserve the integrity of the risk management process" and "set the standard for integrity" were not actionable because they did not "amount to a guarantee that [the company's] choices would prevent failures." *ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.,* 553 F.3d 187, 205-06 (2d Cir. 2009) (internal quotations omitted).

Moreover, the word "robust," in particular, is so vague that it is almost devoid of any factually verifiable meaning, such that it cannot form the basis for an actionable statement. *See, e.g.*, *W. Palm Beach Firefighters' Pension Fund v. Conagra Brands, Inc.*, 495 F. Supp. 3d 622, 653 (N.D. Ill. 2020) ("Finally, Defendants argue that the statement about 'robust innovation' in

13

Pinnacle's Frozen segment, […], does not clear the puffery bar. The court agrees that the word 'robust' is vague."), *aff'd sub nom. Nat'l Elevator Indus. Pension Fund v. Conagra Brands, Inc.,* No. 21-1155, 2022 WL 1449184 (7th Cir. May 9, 2022); *In re Splash Tech. Holdings, Inc. Sec. Litig.*, 160 F. Supp. 2d 1059, 1077 (N.D. Cal. 2001) (same). Accordingly, the Section 10(b) claim should be dismissed as to the January 25, 2021 Statement and the Proxy Statement because they are both inactionable puffery.

### iii. The August 15, 2022 Statement that Sunlight "expect[ed] losses to remain very low" is a forward-looking statement, protected by the PSLRA's safe-harbor provision.

Plaintiffs fail to offer sufficient support for why the August 15, 2022 Statement that "Sunlight 'expect[s] losses in the future to remain very low' with regards to cash advances to contractors" was false at the time it was made. Am. Compl. ¶ 72. And, by definition, they cannot do so, because despite Plaintiffs' conclusory allegations to the contrary, this statement comes squarely within the PSLRA's "safe harbor," which makes such forward-looking statements inactionable. *See* 15 U.S.C. § 77z-2. A "forward-looking statement" includes "a statement containing a projection of revenues . . . or other financial items," "a statement of the plans and objectives of management for future operations," or "a statement of future economic performance." *Id.* §§ 77z-2(i)(1)(A)-(C). Such statements are not actionable under the PSLRA "if (1) the forward-looking statement is identified and accompanied by meaningful cautionary language, (2) the forward-looking statement is immaterial, or (3) the plaintiff fails to prove that the forward-looking statement was made with actual knowledge that it was false or misleading." *In re Vivendi*, 838 F.3d 223, 245 (2d Cir. 2016) (internal quotations and citation omitted). "[A] forward-looking statement is protected. . . if any of the three prongs applies." *Id.* at 245-46.

Even though Plaintiffs attempt to tie this statement to the paragraphs in the SEC filings setting forth Sunlight's diligence and monitoring procedures, Plaintiffs fail to point to *any* records

that Yoder reviewed that would indicate the falsity of Yoder's August 15, 2022 Statement at the time it was made.  Nor could they, because statements and predictions about future performance—such as that made by Yoder—are "actionable under Section 10(b) or Rule 10b-5" only when "they are worded as guarantees or are supported by specific statements of fact, or if the speaker does not genuinely or reasonably believe them." *In re Int'l Bus. Machines Corp. Sec. Litig.,* 163 F.3d 102, 107 (2d Cir. 1998) (citations omitted).  Mr. Yoder's statement was not worded as a guarantee and there are no facts pled to suggest that he did not believe what he said.  *See, e.g.*, *PRS v. Intuitive Surgical, Inc.*, 759 F. 3d 1051, 1059 (9th Cir. 2014); *Fort Worth Emp'rs' Ret. Fund v. Biovail Corp.,* 615 F. Supp. 2d 218, 230 (S.D.N.Y. 2009) (holding that the defendant's "statement of expectation about the FDA's timing . . . merely referred to the historical fact— . . . not alleged to be false—that the FDA gave [the defendant] a [certain] date for its response to the NDA").  Consequently, the August 15, 2022 Statement falls within the PSLRA safe harbor and is inactionable as a matter of law.

**B.      Plaintiffs' allegations as to the Proxy Statement constitute impermissible "puzzle pleading."**

Plaintiffs have engaged in impermissible "puzzle pleading" as to the Proxy Statement by failing to include corresponding adverse facts to demonstrate what it is that makes the Proxy Statement false or misleading.  This practice is impermissible because it leaves the Court "to guess which statements are 'materially false and misleading' *and why*." *In re FuboTV Inc. Sec. Litig.*, No. 21-CV-01412 (ALC), 2023 WL 2711826, at *12 (S.D.N.Y. Mar. 30, 2023) (emphasis added).

The SEC filings regarding Sunlight's diligence and monitoring procedures cited by Plaintiffs are nothing more than impermissible, traditional puzzle pleading.  The multi- paragraph statement cited by Plaintiffs includes certain bolded and italicized language, but beyond stating that the emphasis was added, Plaintiffs do not describe the significance of such language:

15

> Upon the engagement of a contractor into Sunlight's network, Sunlight diligences credit bureau data and the contractor's financial and liquidity position, and performs a review of the contractor's reputation, workmanship warranty offered to its customers and other legal documentation and sales tools used by the contractor. ***Once onboarded, Sunlight continues to monitor the contractors in its network against these same standards at least annually and, if advisable, more frequently*** …. Based on Sunlight's diligence findings, Sunlight either accepts or declines to include a contractor in its network. Contractors that are accepted are categorized into risk tiers that can drive the periodicity of monitoring, the amount of the original issue discounts, or fees, charged to such contractors by Sunlight and, for solar system contractors, the availability of advances and the amount of any advances, if eligible, as well as other key business terms applicable to the contractor's relationship with Sunlight.
>
> […]
>
> Sunlight has established a ***robust commercial underwriting and ongoing monitoring process*** to assure that the quality of the work product, solar system construction, ***financial condition*** (to support construction processes and provide post construction warranty support) and ***legal compliance practices*** of the contractors in Sunlight's network.

Am. Compl. ¶ 57 (bolding and emphasis in original).

Plaintiffs do not match the lengthy block quote to corresponding allegations. Although the statement refers specifically to the criteria reviewed by Sunlight upon engaging contractors—including "credit bureau data and the contractor's financial and liquidity position, and [] the contractor's reputation, workmanship warranty offered to its customer and other legal documentation and sales tools used by the contractor"—Plaintiffs do not describe any records related to Sunlight's commercial underwriting/monitoring processes or risk assessment procedures at all, much less records demonstrating the statements were false. Defendants—and the Court—are thus left without a clear understanding of the relevant statements and/or what Plaintiffs allege makes those statements false, making this the exact type of puzzle pleading that courts squarely reject in securities fraud cases. *See, e.g.*, *Tabor v. Bodisen Biotech, Inc.*, 579 F. Supp. 2d 438, 452–53 (S.D.N.Y. 2008) ("Plaintiffs use of large block quotes from SEC filings and press releases,

followed by generalized explanations of how the statements were false or misleading are not sufficient to satisfy the heightened pleading requirements."); *see also, e.g., Constr. Workers Pension Fund-Lake Cnty. & Vicinity v. Navistar Int'l Corp.*, No. 13 C 2111, 2014 WL 3610877, at \*5 (N.D. Ill. July 22, 2014) ("Many of the Consolidated Amended Complaint's paragraphs include block quotes, with liberal use of bold and italics, leaving Defendants and the Court to speculate which statements or parts of statements Central States alleges are inaccurate."); *City of Pontiac Gen. Employees' Ret. Sys. v. Stryker Corp.*, No. 1:10-CV-520, 2011 WL 2650717, at \*6 (W.D. Mich. July 6, 2011) (finding puzzle pleading for similar reasons); *In re Splash Tech. Holdings, Inc. Sec. Litig.*, 160 F. Supp. 2d 1059, 1074 (N.D. Cal. 2001) (same). The result should be no different here, with dismissal being the appropriate resolution to Plaintiffs' "puzzle pleading" for the Proxy Statement.

## C.    Plaintiffs' Section 10(b) claim relies on impermissible allegations of "fraud by hindsight."

"To determine whether a plaintiff has specifically alleged defendants' knowledge of facts or access to information contradicting their public statements, Second Circuit cases uniformly rely on allegations that [1] *specific* contradictory information was available to the defendants [2] *at the same time* they made their misleading statements." *In re Garrett Motion Inc. Sec. Litig.*, No. 1:20-CV-07992 (JLR), 2023 WL 2744029, at \*11 (S.D.N.Y. Mar. 31, 2023) (citation omitted). Here, Plaintiffs assert no non-conclusory fact that occurred at or before the time of the Statements to show that the makers of those Statements (Potere, as to the January 25, 2021 statement, and Yoder, as to the August 15, 2022 Statement) knew they were false or misleading when made, as required. *See In re Manulife Fin. Cop. Sec. Litig.*, 276 F.R.D. 87, 99 (S.D.N.Y. 2001) (dismissing Section 10(b) claim as to certain statements because plaintiff "fail[ed] to include any explanation about why the[] statements were misleading when made"). Rather, Plaintiffs seek to demonstrate that

17

Defendants knew these statements were false by pointing to events that occurred well after the statements were made. Indeed, in the "Truth Was Revealed" section of the Complaint, Plaintiffs note nothing more than Sunlight's September 28, 2022 statement regarding one of its contractors and Potere's later confirmation that the contractor was Pink. Am. Compl. ¶¶ 80, 82.

The Court of Appeals has long rejected this precise tactic as "'fraud by hindsight.'" *Manulife*, 276 F.R.D. at 99 (citing *Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co., Inc.*, 32 F.3d 697, 703 (2d Cir. 1994)). For example, in *In re Manulife*, the plaintiffs claimed that individual defendants made false and misleading statements about risk management strategies employed by Manulife in annual reports, press releases, and analyst calls, all prior to November 2008. *Id.* The plaintiffs then alleged that such statements were false when the "truth was revealed" between November 2008 and March 2009. *Id.* at 92. Concluding that the alleged misstatements were not actionable, the court explained that plaintiffs "fail[ed] to include any explanation about why these statements were misleading when made." *Id.* at 99. The only proof that the statements in question were false were the disclosures between November 2008 and March 2009—"fraud by hindsight." *Id.; see also Zech Capital LLC v. Ernst & Young Hua Ming*, 636 F. App'x 582, 585 (2d Cir. 2016), *as amended* (Jan. 28, 2016); *Stevelman v. Alias Research Inc.*, 174 F.3d 79, 85 (2d Cir. 1999); *In re Bank of Am. Corp. Sec., Derivative, & Employee Ret. Income Sec. Act (ERISA) Litig.*, No. 09 CIV. 5411 PKC, 2012 WL 1353523, at *4–6 (S.D.N.Y. Apr. 12, 2012).

Much like the *In re Manulife* plaintiffs, here Plaintiffs do not make any allegation meeting Rule 9(b) or the PSLRA that the Sunlight Defendants did not actually believe the truth of the Statements when they were made. Plaintiffs rely primarily on Sunlight's September 28, 2022 announcement of Pink's financial troubles to prove the falsity of the Statements that predated the announcement. Am. Compl. ¶¶ 80-82. This Court has previously dismissed as "fraud by

18

hindsight" Section 10(b) claims that rely on an impending bankruptcy to prove that statement made prior to the bankruptcy were false when made. *See, e.g.*, *Hutchinson v. Perez*, No. 12 CIV. 1073 HB, 2013 WL 1775374, at \*3 (S.D.N.Y. Apr. 25, 2013), *aff'd sub nom. Jones v. Perez*, 550 F. App'x 24 (2d Cir. 2013) (finding that a statement that a company had "no intention of filing for bankruptcy" was not false even though, at the time of the statement, the company was having restructuring conversations with a law firm known for its bankruptcy expertise, where confidential witness statements relied on by the plaintiff did not indicate that the company "had specific *present* plans to file for bankruptcy, or that Defendants had knowledge of any such plans at the time they made their statements").

Plaintiffs have made no allegations that Pink had disclosed the severity of its liquidity crisis to Sunlight—or that such information was even available in records reviewed by Sunlight as part of its onboarding and annual diligence procedures—at the time the Statements were made.  In fact, the last of the repeated representation that Sunlight had a "robust commercial underwriting and monitoring process" was made on April 22, 2022, well before the September 28, 2022 announcement, and also well before Pink's August 1, 2022 lawsuit against Generac.  Am. Compl. ¶ 57.  Prior to the August 1, 2022 *Generac* lawsuit, Plaintiffs allege only that there were various customer complaints about Pink in the news, which do not render false the Sunlight Defendants' statements as to the "low risk" and "robust" nature of its cash advance program generally or with respect to Pink.  *Id.* ¶ 68-69.  Even as to the August 15, 2022 Statement that Sunlight "expect[s] losses in the future to remain low," Plaintiffs have not alleged, and there is no reason to infer, that Sunlight would have or should have seen the August 1, 2022 lawsuit at that time, as Sunlight represented in the Statements only that it engages in "annual" monitoring of its installers.  And, even had Sunlight been aware of the allegations, they are just that: *allegations* that do not speak to

19

any suggestion that Sunlight did not believe it would not be able to recoup advances made to Pink. As discussed *infra*, there is no reason for anyone to give credit to or rely on allegations in an unresolved lawsuit. Thus, despite Plaintiffs' dramatic assertions, Sunlight's September 2022 announcement regarding Pink's bankruptcy did not reveal that Sunlight's previous risk assessment of Pink was false, or that Sunlight did not in fact have robust assessment and monitoring procedures for its installers. Accordingly, Plaintiffs' Section 10(b) claim should be dismissed as to the Sunlight Defendants for failure to allege more than fraud by hindsight.

**D.    The Court must disregard the Confidential Witnesses' allegations.**

**i.    The Confidential Witness statements are not relevant to the theory underlying Plaintiffs' claims, nor do they support a strong inference of scienter.**

Plaintiffs attempt to rely almost entirely on confidential witnesses to support the falsity of statements and scienter. The Court may rely on information from confidential witnesses when resolving a motion to dismiss under the PSLRA "provided [the confidential witnesses] are described . . . with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged." *Novak v. Kasaks,* 216 F.3d 300, 314 (2d Cir. 2000). However, confidential witness allegations, as a general matter, "must be discounted" because "[i]t is hard to see how information from anonymous sources could be deemed 'compelling' or how [the Court] could take account of plausible opposing inferences. Perhaps these confidential sources have axes to grind. Perhaps they are lying. Perhaps they don't even exist." *In re MRU Holdings Sec. Litig,* 769 F. Supp. 2d 500, 516 (S.D.N.Y. 2011) (quoting *Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 756-57 (7th Cir. 2007)). Further, it is well-settled that confidential witness allegations "cannot be used to 'merely parrot [] … conclusory allegations contained in the complaint.'" *Glaser v. The9, Ltd.,* 772 F. Supp. 2d 573, 590 (S.D.N.Y. 2011) (citation omitted).

20

Instead, confidential witness allegations must "show that [the] individual defendants actually possessed the knowledge highlighting the falsity of public statements," *id.* at 591, and, thus, "allegations based on confidential sources [are] insufficient to establish scienter where there [are] no facts to establish that the confidential sources would have known what information was communicated to senior executives," *In re Am. Express Co. Sec. Litig.,* No. 02 Civ. 5533(WHP), 2008 WL 4501928, at *8 (S.D.N.Y. Sept. 26, 2008), *aff'd sub nom. Slayton v. Am. Exp. Co.,* 604 F.3d 758 (2d Cir. 2010).

Whether considered separately or together, Plaintiffs' confidential witness allegations fail to meet this high bar for reliance on confidential witnesses, and lack the requisite particularity to support an inference of scienter.  Indeed, the Complaint only generally alleges that CW1 "managed all aspects of Sunlight's relationships with solar systems contractors" (Am. Compl. ¶ 60) and that CW2 "was responsible for finding contractors to work with Sunlight and growing the accounts" (Am. Compl. ¶ 63).  These generalized job descriptions fall far short of the particularity needed to substantiate these witnesses' knowledge of any alleged fraud.  *See Novak*, 216 F.3d at 314.  Moreover, based on the allegations of the Complaint, neither of the CWs had senior positions or were even part of the team responsible for the underwriting of contractors.

Even if the CWs' allegations were accepted as true, they do not indicate that either of the witnesses knew anything specific about Sunlight's relationship with Pink, the due diligence that was done on Pink, or that senior management was aware at the time of any problems with that due diligence.  Plaintiffs allege that "CW1 described Sunlight's due diligence on contractors as 'lackadaisical,'" and merely restate Plaintiffs' earlier conclusory allegation that Sunlight failed to continuously monitor the contractors within its network.  Am. Compl. ¶ 61.  Plaintiffs allege that CW2 stated that "rather than being judicious about which contractors to work with, Sunlight was

21

practically begging and 'buy[ing]' contractors." *Id.* ¶ 63.   But these statements bear little, if any,

relevance to Plaintiffs' allegations that Sunlight was misleading as to its due diligence *regarding*

*Pink*—the crux of Plaintiffs' claims.   Thus, these generic observations do not provide facts, nor

even a remote indication, that any Defendant operated with the requisite scienter.  *See Local No.*

*38 IBEW v. Am. Exp. Co.*, 724 F. Supp. 2d 447, 461 (S.D.N.Y. 2010), *aff'd*, 430 F. App'x 63 (2d

Cir. 2011) (holding that confidential witness allegations were deficient where they failed to

establish "what specific contradictory information the [defendants] received or when they received

it"); *see also In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 581-82 (S.D.N.Y. 2014).

And even if these general allegations by the CWs could be read to be about Pink (they

cannot), they are simply expression of opinions, not fact.   Courts "may disregard confidential

witness statements that are speculative, lack specificity, or are not based on personal knowledge."

*Gammel v. Hewlett-Packard Co.*, 905 F. Supp. 2d 1052, 1073 (C.D. Cal. 2012); *see also, e.g.*, *In*

*re Career Educ. Corp. Secs. Litig.*, No. 03 C 8884, 2006 WL 999988, at \*3 (N.D. Ill. Mar. 28,

2006) ("[S]tatements made by . . . confidential witnesses . . . suffer from [] fatal defects . . .: they

do not allege with sufficient specificity when the allegedly improper activities occurred, how the

witnesses learned of these activities or had access to this information, or, even ignoring these other

deficiencies, how these activities affected [defendants' allegedly fraudulent] statements . . . ."); *In*

*re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262, 359–61 (D.N.J. 2007) (explaining that "personal

opinions void of specific details regarding the basis for [the CW's] personal knowledge" do not

reflect on the defendant's intent).

The Complaint appears to acknowledge its shortcomings in this regard, and in an attempt

to cure these otherwise insufficient CW allegations, mentions that CW2 did have specific

knowledge about Sunlight's relationship with solar systems installer Vision Solar.  Am. Compl.

¶ 65.  But whatever may have come of Sunlight's relationship with Vision Solar is not relevant to Sunlight's relationship *with Pink*, the contractor whose insolvency, in Plaintiffs' view, triggered the stock drop at damages at issue.  *Id.* ¶ 78.  Plaintiffs do not allege that Sunlight's stock dropped as a result of anything having to do with Vision Solar.  Plaintiffs' claims all emanate from Sunlight's alleged failure to properly monitor Pink.  *Id.* ¶¶ 66-72.  That the CW allegations shed no light as to Pink specifically demonstrates, at a minimum, that they fail to meet the particularity requirements necessary for them to be considered by the Court.  *See, e.g.*, *In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d at 360 (D.N.J. 2007).  But the Court need not even address that issue, because absent the CWs having anything to say about Pink, their allegations are plainly irrelevant to Plaintiffs' claims.[5]

### ii.    CW1's allegations must be discounted because he was not employed by Sunlight for all of the relevant time period.

Even assuming CW1's alleged assertion regarding Sunlight's "lackadaisical" due diligence in vetting contractors was pled in sufficient detail, it could at best apply to only his tenure at Sunlight, which, as Plaintiffs allege, ended in March 2022.  Am. Compl. ¶ 60.  Thus, CW1 could not have had any awareness of many of Pink's alleged "red flags" that Plaintiffs identify, which occurred either after CW1 ended his employment or shortly thereafter.  *See id.* ¶¶ 68-69.

Moreover, whatever knowledge CW1 might have possessed predates the August 15, 2022 Statement that Sunlight "expect[ed] losses in the future to remain very low[.]"  *Id.* ¶ 72.  Courts

---

[5] Additionally, the CW allegations must be dismissed because they do not in any way reflect that any other individuals working at Sunlight or who made statements on behalf of Sunlight shared the CWs' opinions.  *See Norfolk Cnty. Ret. Sys. v. Solazyme, Inc.*, No. 15-CV-02938-HSG, 2018 WL 3126393, at *5 (N.D. Cal. June 26, 2018) ("These opinions, formed with the benefit of hindsight, do not establish that [defendant], or anyone making statements on behalf of Solazyme, shared the confidential witnesses' opinions on May 5, 2014."); *Firefighters Pension & Relief Fund of the City of New Orleans v. Bulmahn*, No. CIV.A. 13-3935, 2015 WL 4879217, at *10 (E.D. La. Aug. 14, 2015) (disregarding confidential witness statements, where the plaintiff did not "plead any facts supporting an inference that defendants shared in the confidential witness's view").

routinely reject confidential witness testimony when it purports to speak to issues that did not occur during the class period nor during the witness's period of employment with the defendant. *See In re Lululemon Sec. Litig.*, 14 F. Supp. 3d at 580-81; *see also Malin v. XL Capital Ltd.,* 499 F. Supp. 2d 117, 141-42 (D. Conn. 2007), *aff'd,* 312 F. App'x 400 (2d Cir. 2009). This case is no different, and CW1's allegations should be disregarded and do not support Plaintiffs' claims.

> **E.    The Court must disregard the allegations regarding Pink Energy from the *Generac* lawsuit.**

Plaintiffs have also improperly relied on allegations in a complaint from an unrelated lawsuit, *Power Home Solar, LLC d/b/a Pink Energy v. Generac Power Systems, Inc.*, as "facts" supporting the alleged misrepresentations. Am. Compl. ¶ 70. The *Generac* lawsuit has been stayed since October 2022 without ultimate resolution. *See Generac*, Case No. 6:22CV000043-NKM (W.D. Va.), Dkt. 39. And "Second Circuit case law is clear that paragraphs in a complaint that are either based on, or rely on, complaints in other actions that have been dismissed, settled, or otherwise not resolved, are, as a matter of law, immaterial." *RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 403 (S.D.N.Y. 2009), *aff'd*, 387 F. App'x 72 (2d Cir. 2010).

Courts that have considered this issue have held uniformly that "references to preliminary steps in litigations and administrative proceedings that did not result in an adjudication on the merits or legal or permissible findings of fact are, as a matter of law, immaterial." *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 218 F.R.D. 76, 78 (S.D.N.Y. 2003); *see also, e.g., Francois v. Victory Auto Grp. LLC*, No. 22-CV-4447 (JSR), 2023 WL 373250, at *5 (S.D.N.Y. Jan. 24, 2023) (striking allegations referring to another lawsuit); *Li v. China Merchants Bank Co.*, No. 22 CIV. 9309 (KPF), 2023 WL 146853, at *2 (S.D.N.Y. Jan. 6, 2023) (same), *opinion vacated in part on other grounds*, No. 22 CIV. 9309 (KPF), 2023 WL 2955293 (S.D.N.Y. Apr. 14, 2023); *Low v. Robb*, No. 11-CV-2321 JPO, 2012 WL 173472, at *9 (S.D.N.Y. Jan. 20, 2012) (holding

24

that "references to unrelated disputes and lawsuits . . . must be stricken from the Complaint"). Consistent with this uncontroversial standard, Plaintiffs even refer to the allegations in the *Generac* lawsuit as "developments" rather than facts. Am. Compl. ¶ 71. Because the *Generac* lawsuit is unresolved, this Court must disregard any allegations concerning the lawsuit that Plaintiffs seek to use in support of their claims.

> **F.      Plaintiffs' conclusory allegations of scienter do not meet the demanding Rule 9(b) and PSLRA standards.**

None of Plaintiffs' allegations are sufficient to support a strong inference of scienter as to any Defendant. The scienter requirement demands that, with respect to each Statement, Plaintiffs "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind," which, here, means that the Defendants intended "to deceive, manipulate, or defraud." *See* 15 U.S.C. § 78u-4(b)(2)(A); *Tellabs*, 551 U.S. at 313. "To qualify as 'strong' within the intendment of [the PSLRA] . . . an inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314. "A complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* at 324.

Plaintiffs attempt to prove scienter as to the January 25, 2021 Statement and the Proxy Statement—which was made primarily in 2021, with the exception of a single SEC Prospectus filed in April 2022—with allegations that "by spring 2022, there were widespread media reports of Pink['s] . . . deceptive marketing practices and . . . shoddy workmanship." *Id.* ¶ 68. However, these media reports occurred well after both of these Statements were first made, and, thus, do nothing to show the Sunlight Defendants' alleged fraudulent intent in making them. The same is true as to Sunlight's September 28, 2022 announcement of Pink's impending bankruptcy and

corresponding disclosure that it would be re-underwriting contract advances going forward, which Plaintiffs characterize as evidence of the Sunlight Defendants' belief that "there was a systemic problem with how Sunlight was performing due diligence and risk evaluation on contractors." *Id.* ¶¶ 80, 86.   However, these allegations do not support an inference of scienter because "a plaintiff may not simply rely on a 'fraud by hindsight' theory of scienter—that is, 'a plaintiff may not simply contrast a defendant's past optimism with less favorable actual results, and then contend that the difference must be attributable to fraud.'"  *In re Biogen Inc. Sec. Litig.*, 193 F. Supp. 3d 5, 37 (D. Mass. 2016) (internal citation omitted).[6]

Plaintiffs do not even attempt to, and cannot, prove scienter with respect to the August 15, 2022 Statement that Sunlight "expect[s] losses in the future to remain very low" with regards to cash advances.  Am. Compl. ¶ 72.  Rather, Plaintiffs admit in the same paragraph that "Sunlight had *no idea* that Pink Energy was in the middle of a 'public relations disaster' and losing half of its valuation in less than a year."  *Id.* (emphasis added).  By Plaintiffs' own admission, the Sunlight Defendants lacked the requisite scienter with respect to this allegedly false statement.

### G.    Plaintiffs have failed to plead loss causation.

In order to demonstrate loss causation, Plaintiffs must allege that the purported fraudulent statement or omission was the cause of their claimed loss.  *See Lentell v. Merrill Lynch,* 396 F.3d 161, 173 (2d Cir. 2005); *see also Suez Equity Investors, L.P. v. Toronto-Dominion Bank,* 250 F.3d

---

[6] Moreover, "drawing an inference [of scienter] from [Sunlight's decision to re-underwrite contracts going forward] would run afoul Federal Rule of Evidence 407, which provides that evidence of subsequent remedial measures is not admissible to show a defendant's liability."  *In re Boeing Co. Aircraft Sec. Litig.*, No. 19-cv-02394, 2022 WL 3595058, at *11 (N.D. Ill. Aug. 23, 2022) (granting in part motion to dismiss securities fraud claims); *see also In re Longtop Fin. Techs. Ltd. Sec. Litig.*, 939 F. Supp. 2d 360, 388 n.213 (S.D.N.Y. 2013) ("I further note [in granting motion to dismiss] that drawing an adverse inference [of scienter] from DTTC's attempts to strengthen Longtop's financial controls would be inconsistent with the policy animating Federal Rule of Evidence 407, which prohibits using subsequent remedial measures as evidence of liability.").

87, 95 (2d Cir. 2001).   Although at the motion-to-dismiss stage, Plaintiffs need not "rule out other contributing factors or alternative causal explanations," they still must "allege enough facts regarding their loss to support the inference that they would have been spared all or an ascertainable portion of that loss absent the fraud." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC,* 797 F.3d 160, 189 (2d Cir. 2015) (internal quotation marks omitted).

The Statements at issue here concern Sunlight's internal controls—*i.e.*, its risk assessment, diligence, and monitoring procedures.  Am. Compl. ¶¶ 66-67, 71.  Conversely, Plaintiffs' alleged losses were caused by the decline in Sunlight's stock price that followed the September 28, 2022 announcement that Sunlight was taking an impairment charge due to Pink's liquidity issues and that it was re-underwriting all of its contractor partners' advances.  *Id.* ¶¶ 80, 86.  The statements that Plaintiffs allege were false and misleading have nothing to do with, and certainly no causal connection to, the actual cause of their damages—the disclosure concerning the impairment charge stemming from the Pink liquidity concerns.

Plaintiffs seemingly attempt to allege that Sunlight's internal controls *caused* Pink's impending bankruptcy, a claim that escapes all logic and would subsume the element of loss causation into the element of misstatement.   Sunlight's announcement of **Pink**'s impending bankruptcy was not within the "zone of risk" of statements regarding **Sunlight**'s internal controls, as required to prove loss causation.  *See Lattanzio v. Deloitte & Touche LLP*, 476 F.3d 147, 157 (2d Cir. 2007).  In other words, the Sunlight stock drop was not caused by any corrective statement regarding the alleged misrepresentations—it was caused by another entity's liquidity issues. Accordingly, the Section 10(b) claim should be dismissed for failure to allege loss causation. *See id.* (rejecting argument that Warnaco Group's bankruptcy was proximately caused by Deloitte's misstatements in financial filings, explaining that the plaintiffs "failed to allege a sufficient

27

connection between Deloitte's misstatements and the losses suffered as a result of Warnaco's bankruptcy," and that to hold otherwise would be to "completely subsume[]" loss causation into the element of misstatement); *see also In re Cyberonics Inc. Sec. Litig.*, No. CIV.A. H-05-2121, 2006 WL 2050696, at \*11 (S.D. Tex. July 20, 2006) (declining to find loss causation where the alleged losses "followed events and statements *by entities other than Defendants*," thus rejecting the plaintiffs' argument that the events and statement of other entities "exposed Defendants' fraudulent conduct and pattern of misrepresentation" (emphasis added)).

## II.    Plaintiffs fail to state a Section 10(b) claim against the Sunlight Individual Defendants.

Even if Plaintiffs could state a Section 10(b) claim against Sunlight, the Court would still be required to dismiss the Sunlight Individual Defendants. For the reasons stated above, Plaintiffs fail to allege an actionable statement against any Defendant, much less any of the Sunlight Individual Defendants. And the same analysis regarding loss causation also applies to the Sunlight Individual Defendants. But two additional reasons necessitate dismissal of the Sunlight Individual Defendants. First, Plaintiffs cannot utilize the Sunlight Individual Defendants' corporate positions as a basis for alleging they each possessed scienter. Second, Plaintiffs improperly use "group pleading" in an attempt to establish collective scienter for the Sunlight Individual Defendants.

### A.    The Sunlight Individual Defendants' corporate positions do not establish scienter nor do they impose a duty to investigate.

"[T]o establish an inference of scienter, Plaintiff[s] must do more than allege that the Individual Defendants had or should have had knowledge of certain facts contrary to their public statements simply by virtue of their high-level positions." *See Lipow v. Net1 UEPS Techs., Inc.*, 131 F. Supp. 3d 144, 163 (S.D.N.Y. 2015); *see also In re Nokia Oyj (Nokia Corp.) Sec. Litig.,* 423 F. Supp. 2d 364, 406 (S.D.N.Y. 2006). Indeed, "[c]ourts in this Circuit have long held that accusations founded on nothing more than a defendant's corporate position are entitled to no

28

weight." *City of Brockton Ret. Sys. v. Avon Prod., Inc.,* No. 11 Civ. 4665 (PGG), 2014 WL 4832321, at *19 (S.D.N.Y. Sept. 29, 2014).

Plaintiffs attempt to assign the requisite scienter to Potere by alleging that, "[a]ccording to CW2, all cash advances to contractors had to go through Defendant Potere for final approval," and that "Potere was aware of what kind of diligence was done on each contractor as well as the justification for each contractor's assigned risk tier." Am. Compl. ¶ 84. However, as discussed *supra*, the CWs' allegations hold no weight, including as to establishing scienter. Even so, this allegation is still insufficient to prove Potere held the requisite scienter. *See In re Anadarko Petroleum Corp. Class Action Litig.*, 957 F. Supp. 2d 806, 825 (S.D. Tex. 2013) (noting that information on the level to which certain diligence or risk assessment was performed "is unlikely to have reached the top ranks of the organization prior to any event which proved the lack of [diligence] foolhardy" and that "it cannot be presumed that . . . top executives knew the most granular details regarding operations within those business segments"). Plaintiffs further allege that Potere "believed there was a systematic problem with how Sunlight was performing due diligence and risk evaluation on contractors" because, following Pink's default, "Potere said Sunlight would 're-underwrite' all cash advances to **all** contractors." *Id.* ¶ 86. But as discussed *supra*, this allegation is impermissible fraud by hindsight, and insufficient to establish scienter.

As to Edinburg, Plaintiffs do not include *any* allegations in the Complaint about his specific fraudulent intent, and his signing of an SEC disclosure is insufficient to support scienter, as is mere attendance on a conference call. Am. Compl. ¶¶ 51, 58(d), 58(f); *see also In re Molycorp, Inc. Sec. Litig.*, No. 13–cv–5697 (PAC), 2015 WL 1097355, at *12 (S.D.N.Y. Mar. 12, 2015) ("[I]n the absence of more particularized allegations of scienter, that certain Defendants signed or certified SEC disclosures is insufficient to support a finding of scienter."); *Bozsi Ltd. P'ship v.*

*Lynott*, 676 F. Supp. 505, 510 (S.D.N.Y. 1987) (finding attendance at a meeting insufficient to establish scienter where "[n]owhere [in the complaint] is the date, time, place, *or nature of the partner's participation*, if any, described" (emphasis added)).  Nothing more is needed to dismiss the allegations against Edinburg.

Finally, as to Yoder, rather than attempt to show his alleged fraudulent intent, Plaintiffs acknowledge that his August 15, 2022 Statement occurred at a time when "Sunlight *had no idea* that Pink Energy was in the middle of a 'public relations disaster' and losing half its valuation in less than a year," thus conceding that Yoder lacked the knowledge necessary to have fraudulent intent, and similarly demanding that claims against him be dismissed.  Am. Compl. ¶ 72 (emphasis added).

As a last gasp, Plaintiffs further allege that the Sunlight Individual Defendants had a general duty to disseminate accurate information regarding Sunlight and correct any misleading statements.  *Id.* ¶ 112.  But this does not meet the high bar imposed by the PSLRA to find a duty to investigate.  An alleged "refusal to see the obvious, or to investigate the doubtful," must be "egregious" to be actionable.  *Chill*, 101 F.3d at 269.  Merely stating that the Sunlight Individual Defendants should have been on "high alert" as a result of Pink's failings (Am. Compl. ¶ 71) plainly does not meet this standard.

Plaintiffs have therefore failed to adequately plead that Potere, Edinburg, or Yoder acted with scienter when making the allegedly false statements identified in the Complaint, requiring that they be dismissed.

### B.      Plaintiffs improperly lump the Sunlight Individual Defendants together for group scienter.

The Court must also reject Plaintiffs' attempt to allege scienter through group pleading as to the Sunlight Individual Defendants.  Under the PSLRA, "plaintiffs must plead circumstances

providing a factual basis for scienter for each defendant; guilt by association is impermissible." *In re DDAVP Direct Purchaser Antitrust Litig.,* 585 F.3d 677, 695 (2d Cir. 2009).

Instead of trying to meet this exacting standard, Plaintiffs allege that all three Sunlight Individual Defendants were on a January 25, 2021 conference call during which an unspecified "***Defendant***" stated, "We structure these advances such that they're low risk to Sunlight, but provide significant benefit to our contractors. This is another example of how at Sunlight we use credit experience and access to capital to differentiate our value proposition." Am. Compl. ¶ 51 (emphasis added). Plaintiffs allege that this is false because the cash advances created "substantial risk" for Sunlight. *Id.* ¶ 52. But in addition to failing to demonstrate why this is false, Plaintiffs simply fail to allege which of the Sunlight Individual Defendants actually made this statement, implying only that they mean to attribute it to Potere. Plaintiffs further attribute the July 30, 2021 and September 2, 2021 SEC Registration Statements and corresponding prospectuses, which contain the language regarding "a robust commercial underwriting and ongoing monitoring process," to Potere and Edinburg as signatories. *Id.* ¶¶ 57-58.

These scattershot allegations do not allege any specific facts bearing on the knowledge of any Sunlight Individual Defendant. As a result, they are insufficient to plead with particularity a strong inference of scienter as to any of the Individual Defendants. *See Kinra v. Chi. Bridge & Iron Co.,* No. 17 Civ. 4251, 2018 WL 2371030, at *6 (S.D.N.Y. May 24, 2018) ("Scienter must be separately pled and individually supportable as to each defendant; scienter is not amenable to group pleading." (citation omitted)); *see also In re CRM Holdings, Ltd. Sec. Litig.*, No. 10 Civ. 975, 2012 WL 1646888, at *30 (S.D.N.Y. May 10, 2012).

31

**III.    Plaintiffs fail to state a Section 20(a) claim against the Sunlight Individual Defendants.**

Plaintiffs bring a claim under Section 20(a) of the '34 Act, alleging control person liability against the Sunlight Individual Defendants.  *See* 15 U.S.C. § 78t(a); Am. Compl. ¶¶ 110-115.  To state a Section 20(a) claim, a plaintiff must plead "(1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud."  *Enzo Biochem, Inc. v. Harbert Discovery Fund, LP*, No. 20-cv-9992 (PAC), 2021 WL 5854075, at *8 (S.D.N.Y. Dec. 9, 2021) (citing *ATSI*, 493 F.3d at 108).

"Liability for § 20(a) violations is derivative of liability for § 10(b) violations."  *McIntire v. China MediaExpress Holdings, Inc.*, 927 F. Supp. 2d 105, 121 (S.D.N.Y. 2013).  And the heightened pleading standards of the PSLRA apply with respect to the third prong of a § 20(a) claim.  *Id.* at 122.  Plaintiffs' Section 20(a) claim here fails for two reasons.  First, Plaintiffs have not stated a Section 10(b) claim; accordingly, the Sunlight Individual Defendants are not liable under Section 20(a).  *See supra* Argument Part I-II; *see also Asay v. Pinduoduo Inc.,* No. 20-1423, 2021 WL 3871269, at *5 (2d Cir. Aug. 31, 2021) (upholding dismissal of Section 20(a) claim where complaint failed to allege Section 10(b) violation).

Second, even if they could plead a primary violation of Section 10(b), Plaintiffs have failed to plead any facts to support an allegation that the Sunlight Individual Defendants "controlled" a primary violator.  To avoid dismissal of their Section 20(a) claim, Plaintiffs "must allege facts from which it can be inferred that the defendant had actual power or influence over the controlled person."  *Cohen v. Stevanovich,* 722 F. Supp. 2d 416, 435 (S.D.N.Y. 2010) (quotations and citations omitted).  "[T]he Section 20(a) defendant must not only have actual control over the

32

primary violator, but have actual control over the *transaction* in question." *In re Alstom SA Sec. Litig.,* 406 F. Supp. 2d 433, 487 (S.D.N.Y. 2005) (emphasis in original) (quotation omitted).

The Complaint fails to plead such facts. Instead, Plaintiffs make the bald assertion that "[t]he Sunlight Individual Defendants exercised control over the general operations of Sunlight and possessed the power to control the specific activities which comprise the primary violations about which Plaintiffs and the other members of the Class complain." Am. Compl. ¶ 114. But Plaintiffs never allege the person or persons whom the Sunlight Individual Defendants supposedly controlled, nor can it even be inferred from a generous reading of the Complaint.

As to Edinburg, Plaintiffs allege no more than that he participated a single conference call and signed two SEC filings. *Id.* ¶¶ 50-51, 58. As to Yoder, Plaintiffs allege only that his August 15, 2022 Statement —in which he stated Sunlight expected future losses "to remain very low"— occurred at a time when "Sunlight had no idea that Pink Energy was in the middle of a 'public relations disaster' and losing half its valuation in less than a year." *Id.* ¶ 72. And as to Potere, Plaintiffs merely state that following Pink's default, "Potere said Sunlight would 're-underwrite' all cash advances to *all* contractors." *Id.* ¶¶ 84, 86. These allegations come nowhere close to supporting an inference that the Sunlight Individual Defendants had actual power or influence over a primary violator. Nor do they indicate that any of the Sunlight Individual Defendants were culpable participants in any alleged fraud, much less the required "particularized facts of the controlling person's conscious misbehavior or recklessness." *In re Satyam Computer Servs. Ltd. Sec. Litig.,* 915 F. Supp. 2d 450, 482 (S.D.N.Y. 2013) (citation omitted); *see also Edison Fund v. Cogent Inv. Strategies Fund, Ltd.,* 551 F. Supp. 2d 210, 231 (S.D.N.Y. 2008) (dismissing Section 20(a) claim where the plaintiffs failed to "allege particularized facts as to [the defendant's]

33

participation in the fraud"). Accordingly, Plaintiffs' Section 20(a) claim is insufficient as a matter of law.

**IV.    Plaintiffs fail to state a Section 14(a) claim.**

Section 14(a) of the '34 Act makes it unlawful to solicit proxies "in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."  15 U.S.C. § 78n(a).  Pursuant to this section, Rule 14a-9 provides that proxy communications may not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading[.]"  17 C.F.R. § 240.14a-9(a).

A claim under Section 14(a) and Rule 14a-9(a) must allege that: "[1] a proxy statement contained a material misrepresentation or omission, which [2] caused plaintiffs' injury, and [3] the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction."  *Bond Opportunity Fund v. Unilab Corp.,* 87 F. App'x 772, 773 (2d Cir. 2004).  For the second and third elements, "a plaintiff must show, *inter alia,* both '*loss causation*—that the misrepresentations or omissions caused the economic harm,' and '*transaction causation*—that the violations in question caused the [plaintiff] to engage in the transaction in question.'"  *Grace v. Rosenstock*, 228 F.3d 40, 46 (2d Cir. 2000) (citation omitted).

For Section 14(a) claims alleging that a defendant made an untrue statement or omission of material fact, the complaint must "state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u-4(b)(1).  In any case where the plaintiffs may recover damages only on proof that a defendant acted with a particular state of mind, the complaint must "state with

34

particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* § 78u-4(b)(2)(A).

### A.      Plaintiffs fail to allege their derivative claim satisfies Rule 23.1.

The Court need not even reach the merits of Plaintiffs' Section 14(a) claim because it fails to meet basic procedural requirements for a derivative claim under Rule 23.1 of the Federal Rules of Civil Procedure.  Rule 23.1 requires a complaint in a derivative action to "state with particularity . . . any effort by the plaintiff to obtain the desired action from the directors [*i.e.*, a pre-suit demand upon the corporation] . . . and . . . the reasons for not obtaining the action or making the effort."  Fed. R. Civ. P. 23.1(b)(3).  "Although Rule 23.1 sets forth the pleading standard for federal court, the substance of the demand requirement is a function of state law."  *Espinoza ex rel. JPMorgan Chase & Co. v. Dimon,* 797 F.3d 229, 234 (2d Cir. 2015).  Sunlight is incorporated in Delaware, and therefore Delaware law applies.  Under Delaware law, "the determination of whether a stockholder's claim is direct or derivative must turn solely on the following questions: (1) who suffered the alleged harm (the corporation or the stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?"  *Brookfield Asset Mgmt., Inc. v. Rosson,* 261 A.3d 1251, 1263 (Del. 2021) (internal quotation marks omitted).

Here, Plaintiffs' Section 14(a) claim is derivative.  Plaintiffs allege that the allegedly misleading statements in the Proxy prevented them from having the "opportunity to make a fully informed decision in voting on the Business Combination" and that they were harmed by the eventual decline in Sunlight's stock.  Am. Compl. ¶¶ 11-13, 80-81, 88, 128.  This claim is inherently derivative in nature, because, as explained by the Supreme Court, "[t]he injury which a stockholder suffers from corporate action pursuant to a deceptive proxy solicitation ordinarily flows from the damage done the corporation, rather than from the damage inflicted directly upon

the stockholder. The damage suffered results not from the deceit practiced on him alone but rather from the deceit practiced on the stockholders as a group." *J. I. Case Co. v. Borak,* 377 U.S. 426, 432 (1964), *abrogated on other grounds by Ziglar v. Abbasi,* 582 U.S. 120 (2017). Plaintiffs' Section 14(a) claim is premised on their allegation that the Proxy Statement overstated the value of the Business Combination and resulting company, and as a result, Sunlight shareholders received less in value from the Business Combination than they thought they would have when they voted for—or at least could have voted for—the Business Combination. *See, e.g., In re Romeo Power Sec. Litig.*, 21 Civ. 3362 (LGS), 2022 WL 1806303, at *5 (S.D.N.Y. June 2, 2022) (concluding Section 14(a) claim was derivative in nature, because "the essence of [the] claim is that the proxy statements overstated the value of [the target] and as a result, [the] shareholders received less in value from the merger than they expected when they approved it").

Consequently, Plaintiffs' claim is derivative in nature, and because they fail to plead that they complied with the demand requirements of Rule 23.1, the Court must dismiss the Section 14(a) claim.

### B. Plaintiffs fail to allege that the Proxy Statement contained a material misrepresentation or omission.

Plaintiffs' Section 14(a) claim against each of the Sunlight Defendants aside from Yoder (the "Sunlight Proxy Claim Defendants") is based primarily on the Proxy Statement—Spartan's preliminary proxy statement filed on Form S-4 on March 22, 2021 and its amendments, which stated that "Sunlight has adopted vigorous contractor diligence and monitoring procedures," that "[o]nce onboarded, Sunlight continues to monitor the contractors in its network against these same standards at least annually and, if advisable, more frequently[,]" and that "Sunlight has established a robust commercial underwriting and ongoing monitoring process to assure that the quality of the

36

work product, solar system construction, financial condition […] and legal compliance practices of the contractors in Sunlight's network." *See* Am. Compl. ¶¶ 57, 118.[7]

First, this statement—as set forth above—is not actionable. *See supra* Argument Part I.A. Aside from the fact that Plaintiffs do not explain why any of the statement was misleading, it is objectively incapable of being proven false or misleading. The phrases that Sunlight "continues to monitor the contractors in its network" and that it has "established […] [an] ongoing monitoring process" are the exact kinds of statements that courts deem to be not objectively verifiable, and therefore incapable of forming the basis for a securities fraud claim. *See, e.g.*, *XYZ Two Way Radio Serv., Inc. v. Uber Techs., Inc.,* 214 F. Supp. 3d 179, 184 (E.D.N.Y. 2016) (concluding that statement that "Uber regularly reviews that feedback" falls "within one or more of the accepted definitions of puffery"). A contrary interpretation—that such statements could be measured for compliance—would be simply untenable. Additionally, to the extent Plaintiffs argue that this statement was misleading because Defendants knew or should have known them to be false, Plaintiffs have not alleged what would have made those statements false *at the time they were made*. *See supra* Argument Part I.C. And even if Plaintiffs did make that allegation, Defendants would never have had any obligation to discuss their efforts in monitoring their *own compliance* with their own policy. *See City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 185 (2d Cir. 2014) ("As we have explained, disclosure is not a rite of confession, and companies do not have a duty to disclose uncharged, unadjudicated wrongdoing." (internal quotations and citation omitted)).

---

[7] Though they include a Proxy Statement Form 424(b)(3) filed on June 21, 2021 in their list of allegedly false and misleading statements, *see* Am. Compl. ¶ 118.d, Plaintiffs do not appear to note any specific alleged misstatements or omissions from that Form in their Complaint.

Second, Plaintiffs fail to plead an actionable omission.  Omissions violate Section 14(a) and Rule 14a-9 "if either the SEC regulations specifically require disclosure of the omitted information in a proxy statement, or the omission makes other statements in the proxy statement materially false or misleading." *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 536 F. Supp. 2d 313, 321 (S.D.N.Y. 2007).  "[I]n order to sufficiently allege the elements of an omission claim under § 14(a). . . the plaintiff must identify a precise 'statement' in a proxy that is either affirmatively misleading or that is rendered misleading by the operation of a materially omitted fact." *La. Mun. Police Emps. Ret. Sys. v. Cooper Indus.,* No. 12CV1750, 2012 WL 4958561, at *8 (N.D. Ohio Oct. 16, 2012); *see also In re Bemis Co. Sec. Litig.*, 512 F. Supp. 3d 518, 539 (S.D.N.Y. 2021).  Here, Plaintiffs simply list the statements mentioned in Paragraph 57 of the Complaint and associated proxy filing materials (Am. Compl. ¶¶ 57, 118), stating in a conclusory manner that there were "omissions in the Proxy Solicitations and other proxy solicitation materials[.]" Am. Compl. ¶ 129.  Plaintiffs do not point to anything that would require disclosure of additional information not disclosed in the Proxy Statement or related materials.  The need to specify an omission rather than just generally allege that one was made stems from the recognition that "[p]roxy statements need not be, and indeed, should not be, an exhaustive catalog of all information that might conceivably be helpful to a stockholder." *Montanio v. Keurig Green Mtn., Inc.*, 237 F. Supp. 3d 163, 175 (D. Vt. 2017); *see also Lane v. Page,* 581 F. Supp. 2d 1094, 1121 (D.N.M. 2008) ("A proxy statement need not reveal every detail involved in a transaction; it only needs to paint a 'sufficiently accurate picture so as not to mislead.'" (quoting *Kennecott Copper Corp. v. Curtiss-Wright Corp.,* 584 F.2d 1195, 1200 (2d Cir. 1978))).  Without alleging what, if any, facts were omitted, Plaintiffs fail to specify any omission, much less a material one.

**C.**    **Even if the Proxy Statement did contain a material misrepresentation or omission, Plaintiffs fail to state with particularity facts giving rise to a strong inference that Defendants acted with the required state of mind.**

Plaintiffs fail to plead a strong inference of culpable conduct against any of the Sunlight Proxy Claim Defendants.  Plaintiffs' Section 14(a) claim sounds in fraud because, even though it relies on statements made in the Proxy Statement alone, it is largely premised on the *same* alleged fraud and misrepresentations for Plaintiffs' Section 10(b) claim.  Plaintiffs take pains to avoid the heightened pleading requirements of Section 78u-4(b)(2) and Rule 9(b), stating that their Section 14(a) claim is "not based on any knowing or reckless conduct" and therefore they "specifically disclaim any allegations of fraud, scienter, or recklessness in these non-fraud claims."  Am. Compl. ¶ 116.  However, while "liability under Section 14(a) can be premised on mere negligence as opposed to fraud, whether Rule 9(b)'s heightened pleading standard applies to a particular case turns on the nature of the plaintiff's allegations, not the elements of the legal cause of action, for which the lawsuit is brought."  *Enzo Biochem, Inc. v. Harbert Discovery Fund, LP*, No. 20-CV-9992 (PAC), 2021 WL 4443258, at *8 (S.D.N.Y. Sept. 27, 2021) (internal citation omitted).

As applicable here, "when plaintiffs assert Section 14(a) claims grounded in alleged fraudulent conduct, they are subject to heightened pleading requirements, even if they disclaim reliance on a fraud theory."  *In re Columbia Pipeline, Inc.,* 405 F. Supp. 3d 494, 506 (S.D.N.Y. 2019) (citation omitted); *see also Ocegueda v. Zuckerberg,* 526 F. Supp. 3d 637, 650-51 (N.D. Cal. 2021) (Section 14(a) claims "sound in fraud," despite "plaintiff limit[ing] her claim to negligence," when based on allegations that "the defendants knowingly failed to disclose fraudulent practices" and "knew the statements were false and misleading").  Thus, a plaintiff "will not be allowed to reclassify [its] [Section 14(a)] claims to avoid the pleading standards of Rule 9(b)[,]" when those claims are "essentially a fraud claim."  *Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*, 645 F. Supp. 2d 210, 238 (S.D.N.Y. 2009).

Although Plaintiffs carefully word their allegations regarding the Proxy Statement in an attempt to "disclaim" any fraud, it is clear that the alleged misstatements in the Proxy Statement focus on the same core conduct underlying the Section 10(b) claim—the alleged deception regarding their monitoring of Sunlight's contractors. *See* Am. Compl. ¶ 57. Thus, Plaintiffs must plead "specific facts demonstrating that the [Sunlight Proxy Claim Defendants] acted knowingly and deliberately," which, as discussed, Plaintiffs have not done. *See supra* Argument Parts I-II; *see also Karp v. SI Fin. Grp., Inc.*, No. 3:19-CV-00199 (MPS), 2020 WL 1891629, at \*12 (D. Conn. Apr. 16, 2020) (applying heightened pleading to Section 14(a) claim); *IBEW Loc. 98 Pension Fund v. Cent. Vt. Pub. Serv. Corp.*, No. 11-CV-222, 2012 WL 12985689, at \*8 (D. Vt. Aug. 23, 2012). The Court must therefore reject Plaintiffs' nominal attempt to disclaim allegations of fraud because the "factual assertions in [their] Section 14(a) claim are premised on fraudulent conduct." *Bricklayers & Masons Loc. Union No. 5 Ohio Pension Fund v. Transocean Ltd.*, 866 F. Supp. 2d 223, 239 (S.D.N.Y. 2012). For the reasons explained herein, there are no allegations of knowing and deliberate misconduct.

Even if—as Plaintiffs suggest—they need only plead negligence, they still "must plead with particularity facts that give rise to a strong inference of negligence on the part of all Defendants." *Bond Opportunity Fund v. Unilab Corp.,* No. 99 Civ. 11074 (JSM), 2003 WL 21058251, at \*4 (S.D.N.Y. May 9, 2003), *aff'd,* 87 F. App'x 772 (2d Cir. 2004); *see also Furlong Fund LLC v. VBI Vaccines, Inc.,* No. 14 Civ. 9435 (SHS), 2016 WL 1181710, at \*3 (S.D.N.Y. Mar. 25, 2016) ("The PSLRA's pleading requirements as to misleading statements and omissions apply to Section 14(a) claims sounding in negligence, such as those here."). To that end, Plaintiffs must "plead particular facts as to each defendant[']s[] negligence." *In re Zoran Corp. Deriv. Litig.*, 511 F. Supp. 2d 986, 1015 (N.D. Cal. 2007).

40

Yet here, other than the lone conclusory allegation that each Defendant (aside from Yoder) "acted negligently in making inaccurate statements of material facts, and/or omitting material facts[,]" Plaintiffs make no allegations explaining how any Defendant was negligent or failed to exercise reasonable care as to the Proxy Statement. *See* Am. Compl. ¶ 126. Plaintiffs do not say what any of the Sunlight Proxy Claim Defendants did or not do to ensure the accuracy of the Proxy Statement, do not explain how or why Sunlight Proxy Claim Defendants knew or should have known that the statements in the Proxy Statement allegedly were false or misleading, and do not provide any detail at all concerning the process by which Defendants decided to include (or omit) certain information from the Proxy Statement. *See Bond Opportunity Fund*, 2003 WL 21058251, at *4 (explaining that "where plaintiffs contend that the defendants had access to facts contrary to those stated in the proxy materials, they must specifically identify the reports or statements containing this information").

Nor do Plaintiffs plead any facts to show that the individual Sunlight Proxy Claim Defendants participated in drafting or revising the Proxy Statement or how their participation— apart from that of the companies for whom they worked—was negligent. *See Mendoza v. HF Foods Grp.*, No. 2:20-CV-02929-ODW, 2021 WL 3772850, at *11 (C.D. Cal. Aug. 25, 2021) (dismissing Section 14(a) claim against individual defendants, where the plaintiffs alleged that the individual defendants were negligent only "by virtue of their positions within the Company and/or roles in the process and in the preparation of the above-referenced proxies"). This total lack of pleaded facts requires dismissal, as Plaintiffs have failed to demonstrate that the Sunlight Proxy Claim Defendants knew or should have known of the alleged misstatements in the Proxy Statement. *See Salit v. Stanley Works*, 802 F. Supp. 728, 733 (D. Conn. 1992) ("Where [a] plaintiff[] ha[s] not pled that the individual defendants knew of the facts allegedly omitted from

41

the proxy statement (and, not being alleged to have been personally involved in its issuance, therefore, had no duty to see that they were included in the statement), plaintiffs have insufficiently pled a negligence claim [under Section 14(a)].").

> **D.      Plaintiffs fail to allege that the Proxy Statement caused the approval of the Business Combination or that it caused Plaintiffs to suffer economic loss.**

To show causation under Section 14(a), a plaintiff must adequately allege that the purported misrepresentations and omission caused: (a) the approval of the transaction in question ("transaction causation"); and (b) it to suffer economic harm ("loss causation"). *Grace v. Rosenstock*, 228 F.3d 40, 46-47 (2d Cir. 2000). "Transaction causation means that the violations in question caused the [plaintiff] to engage in the transaction in question." *AUSA Life Ins. Co. v. Ernst & Young*, 206 F.3d 202, 209 (2d Cir. 2000) (citation omitted). This is effectively a "but-for" causation test. *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 172 (2d Cir. 1999) ("To show transaction causation, the plaintiffs must demonstrate that *but for* the defendant's wrongful acts, the plaintiffs would not have entered into the transactions that resulted in their losses."). Loss causation, on the other hand, is "the causal link between the alleged misconduct and the economic harm ultimately suffered by [the] plaintiff." *Fin. Guar. Ins. Co. v. Putnam Advisory Co.*, 783 F.3d 395, 402 (2d Cir. 2015) (citation omitted). Plaintiffs fail to sufficiently allege either form of causation, and, as a result, their Section 14(a) claims must fail.

> **i.      Plaintiffs fail to allege transaction causation.**

Plaintiffs make no allegation that the Proxy Statement was the "but for" cause of any injury, or that they even personally relied upon the Proxy Statement. Transaction causation "has been analogized to reliance" and "means that the violations in question caused the [plaintiff] to engage in the transaction in question." *AUSA Life Ins. Co.*, 206 F.3d at 209 (citation omitted); *see also*

*Wilson v. Great Am. Indus., Inc.*, 979 F.2d 924, 931 (2d Cir. 1992) (plaintiff must show the "misrepresentations induced plaintiff[] to engage in the subject transaction").

Here, Plaintiffs provide no plausible explanation for how the Proxy Statement could realistically have changed their vote on the Business Combination—if they even voted at all. The best Plaintiffs can do is to allege in conclusory fashion that "[t]he Proxy Solicitations were essential links in the accomplishment of the Business Combination." Am. Compl. ¶ 127. But conclusory recitals of the elements of a claim couched as factual allegations are insufficient, and what is more, Plaintiffs cannot make any plausible allegation that the alleged misrepresentations and omissions in the Proxy Statement caused a different result than would have otherwise occurred. Plaintiffs fail to allege any basis on which to conclude that the votes of the Class were necessary to approve the Business Combination. The Complaint alleges neither the percentage of stock held by the Class nor facts from which such percentage could even be inferred. Without any allegations to that effect, the Court cannot infer that the Class members' votes could have brought about a different result, requiring dismissal of this claim.[8] *See Tiberius Capital, LLC v. PetroSearch Energy Corp.*, No. 09 CV 10270(GBD), 2011 WL 1334839, at *7 (S.D.N.Y. Mar. 31, 2011) (noting that—with few exceptions not applicable here—"[a] minority shareholder whose

---

[8] To deflect attention from this failure, Plaintiffs note that the Proxy Statement contained a "Question and Answer" section, which stated that "Spartan stockholders are being asked to consider and vote upon, among other things, the [Business Combination]." Am. Compl. ¶ 59. But this states little other than that eligible stockholders could vote on the merger. Plaintiffs do not allege that stockholders excluded from the Class did not receive the Proxy Statement, and the fact that a proxy that was distributed to all shareholders stated that their votes were sought does not mean that approval could not have been obtained without the votes of the Class. Thus, even if the Court were to look past the conclusory nature of Plaintiffs' allegations, Plaintiffs have still not alleged that the Class held a majority of Spartan common stock, and, therefore, have not alleged transaction causation adequately.

votes were not necessary to approve the passage of a proposal is generally unable, as a matter of law, to plead transaction causation").

### ii.    Plaintiffs fail to allege loss causation.

Even if Plaintiffs had sufficiently alleged transaction causation, their Section 14(a) claim must still be dismissed because of their failure to allege that any alleged misstatement or omission in the Proxy Statement "caused the loss for which [they] seek to recover damages." *In re GTx Shareholders Litig.*, No. 19 Civ. 3239 (AT), 2020 WL 3439356, at *4 (S.D.N.Y. June 23, 2020). "In well-pleaded § 14(a) claims, loss causation connects the proxy misstatements with an actual economic harm." *New York City Emps. Ret. Sys. v. Jobs*, 593 F.3d 1018, 1023 (9th Cir. 2010). "[E]conomic loss" under Section 14(a) is equivalent to "pecuniary injury" in private Section 10(b) claims. *See Tiberius Capital, LLC*, 2011 WL 1334839, at *7.

Plaintiffs conclusory allege that "[t]he Proxy Solicitations were essential links in the accomplishment of the Business Combination" (Am. Compl. ¶ 127) and that "Plaintiff Mangent and other members of the Class eligible to vote on the Business Combination […] were denied the opportunity to make a fully informed decision in voting on the Business Combination, and were damaged as a direct and proximate result of the untrue statements" in the proxy solicitation (Am. Compl. ¶ 128). But Plaintiffs never allege what those "damages" were or how they relate to any challenged statement, and "conclusory assertions of loss are insufficient." *N.Y. City Employees' Ret. Sys.*, 593 F.3d at 1024; *see also Little Gem Life Sciences LLC v. Orphan Med., Inc.*, Civ. No. 06-1377 ADM/AJB, 2007 WL 541677, at *13 (D. Minn. Feb. 16, 2007) (dismissing Section 14(a) claim that did not specify "what the relevant economic loss might be or what the causal connection might be between the loss and the omission" (internal quotations and citation omitted)).

Plaintiffs suggest that, but for the allegedly misleading statements in the Proxy Statement, they might have voted differently as to the Business Combination and might have chosen to

44

exercise their conversion rights on their Spartan common stock.  Am. Compl. ¶¶ 128, 130.  But that is merely a conclusory allegation that would have been necessary only to show transaction causation, and courts have squarely rejected Section 14(a) loss causation allegations premised on the failure to make a fully informed vote.  *See Fisher v. Kanas*, 467 F. Supp. 2d 275, 284 (E.D.N.Y. 2006) ("Although the Plaintiff further claims that shareholders could not make an informed decision regarding the election as a result of the alleged misrepresentations as to compensation, as previously discussed, this claim is speculative[.]"); *Hoch v. Alexander*, No. CIV.A. 11-217, 2011 WL 2633722, at *5 (D. Del. July 1, 2011) (an allegation of "a deprivation of the right to a fully informed vote […] fails to meet the loss causation requirement"); *Resnik v. Woertz*, 774 F. Supp. 2d 614, 632 (D. Del. 2011) (same).

Plaintiffs do not even speculate as to what their harm might be apart from their alleged inability to have a fully informed vote.  Thus, "[t]o permit Plaintiff[s] to recover damages on the assumption that" their decisions regarding the Business Combination vote and the exercise of their stock options would have been different if there had been different disclosures in the Proxy Statement "would give [Plaintiffs] a 'windfall' wholly unrelated" to any alleged violation of Section 14(a).  *Gray v. Wesco Aircraft Holdings, Inc.*, 454 F. Supp. 3d 366, 404 (S.D.N.Y. 2020), *aff'd,* 847 F. App'x 35 (2d Cir. 2021).

## CONCLUSION

For the reasons set forth above, the Court should grant the Sunlight Defendants' motion to dismiss the Complaint.

Dated: New York, New York
      July 21, 2023

McGuireWoods LLP

/s/ Jeffrey J. Chapman
Jeffrey J. Chapman
Aaron F. Jaroff

45

1251 Avenue of the Americas, 20th Floor
New York, NY 10020
Tel: (212) 548-7060
Fax: (212) 715-6277
jchapman@mcguirewoods.com
ajaroff@mcguirewoods.com

*Attorneys for Defendants Sunlight
Financial Holdings Inc. F/K/A Spartan
Acquisition Corp. II, Matthew Potere,
Barry Edinburg, and Rodney Yoder*

To:     All counsel of record (Via ECF)

46