**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MATTHEW MILLUNCHICK and MIKE MARGENT, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>SUNLIGHT FINANCIAL HOLDINGS INC. f/k/a SPARTAN ACQUISITION CORP. II, MATTHEW POTERE, BARRY EDINBURG, RODNEY YODER, GEOFFREY STRONG, JAMES CROSSEN, OLIVIA WASSENAAR, WILSON HANDLER, CHRISTINE HOMMES, JOSEPH ROMEO, and SPARTAN ACQUISITION SPONSOR II, LLC,<br><br>Defendants. | Case No.: 1:22-cv-10658-AKH |

**MEMORANDUM OF LAW IN SUPPORT**
**OF THE SUNLIGHT DEFENDANTS' MOTION TO**
**DISMISS THE SECOND AMENDED COMPLAINT**


**MCGUIREWOODS LLP**

1251 Avenue of the Americas
20th Floor
New York, NY 10020
Telephone: (212) 548-2100
Facsimile: (212) 548-2150

*Attorneys for Defendants Sunlight Financial*
*Holdings Inc. F/K/A Spartan Acquisition*
*Corp. II, Matthew Potere, Barry Edinburg,*
*and Rodney Yoder*

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT .................................................................................................. 1

STATEMENT OF ALLEGED FACTS...................................................................................... 3

STANDARD OF REVIEW ........................................................................................................ 9

ARGUMENT.............................................................................................................................. 11

I.    Plaintiffs fail to state a Section 10(b) claim against the Sunlight Defendants.................. 11

    A.    Plaintiffs fail to allege that the Statements are actionable. .................................... 12

        i.    Plaintiffs fail to allege that the Statements are false. ............................... 12

        ii.   Statements that advances were "low risk" or risk management
             processes were "robust," are inactionable. ............................................... 20

        iii.  The August 15, 2022 Statement that Sunlight did "not expect to
             take any further one-time charges" is a forward-looking statement,
             protected by the PSLRA's safe-harbor provision. ................................... 23

    B.    Plaintiffs' allegations as to the S-4 Statement constitute impermissible
        "puzzle pleading."................................................................................................. 25

    C.    Plaintiffs' Section 10(b) claim relies on impermissible allegations of
        "fraud by hindsight.".............................................................................................. 28

    D.    The Court must disregard the Confidential Witnesses' allegations...................... 31

        i.    The Confidential Witness statements are not relevant to the theory
             underlying Plaintiffs' claims, nor do they support a strong
             inference of scienter. ................................................................................. 31

        ii.   CW1's allegations must be discounted because he was not
             employed by Sunlight for all of the relevant time period. ........................ 37

    E.    The Court must disregard the allegations regarding Pink Energy from the
        *Generac* lawsuit. .................................................................................................. 37

    F.    Plaintiffs' conclusory allegations of scienter do not meet the demanding
        Rule 9(b) and PSLRA standards. .......................................................................... 39

    G.    Plaintiffs have failed to plead loss causation. ...................................................... 40

II.   Plaintiffs fail to state a Section 10(b) claim against the Sunlight Individual
    Defendants. ....................................................................................................................... 42

    A.    The Sunlight Individual Defendants' corporate positions do not establish
        scienter nor do they impose a duty to investigate. ............................................... 43

B.     Plaintiffs improperly lump the Sunlight Individual Defendants together in an attempt to plead scienter.................................................................... 45

III.    Plaintiffs fail to state a Section 20(a) claim against the Sunlight Individual Defendants. ................................................................................................................ 47

IV.    Plaintiffs fail to state a Section 14(a) claim. ..................................................... 49

A.     Plaintiffs fail to allege their derivative claim satisfies Rule 23.1. ........................ 50

B.     Plaintiffs fail to allege that the S-4 Statement contained a material misrepresentation or omission. .............................................................. 52

C.     Even if the S-4 Statement did contain a material misrepresentation or omission, Plaintiffs fail to state with particularity facts giving rise to a strong inference that the Sunlight Proxy Claim Defendants acted with the required state of mind. ...................................................................... 54

D.     Plaintiffs fail to allege that the S-4 Statement caused the approval of the Business Combination or that it caused Plaintiffs to suffer economic loss. ......... 57

i.     Plaintiffs fail to allege transaction causation. .......................................... 57

ii.    Plaintiffs fail to allege loss causation........................................................ 58

CONCLUSION.............................................................................................................. 61

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acito v. IMCERA Grp., Inc.*,
47 F.3d 47 (2d Cir. 1995)......................................................................................42

*In re Alstom SA Sec. Litig.*,
406 F. Supp. 2d 433 (S.D.N.Y. 2005).....................................................................48

*In re Am. Express Co. Sec. Litig.*,
No. 02 Civ. 5533(WHP), 2008 WL 4501928 (S.D.N.Y. Sept. 26, 2008), *aff'd
sub nom. Slayton v. Am. Exp. Co.*, 604 F.3d 758 (2d Cir. 2010) ............................32

*In re Anadarko Petroleum Corp. Class Action Litig.*,
957 F. Supp. 2d 806 (S.D. Tex. 2013) ....................................................................43

*Arora v. HDFC Bank Ltd.*,
No. 20-CV-4140(EK)(JMW), --- F. Supp. 3d ---, 2023 WL 3179533
(E.D.N.Y. May 1, 2023) ..........................................................................................16

*Asay v. Pinduoduo Inc.*,
No. 20-1423, 2021 WL 3871269 (2d Cir. Aug. 31, 2021) ......................................47

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...................................................................................................9

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007).............................................................................9, 10, 47

*AUSA Life Ins. Co. v. Ernst & Young*,
206 F.3d 202 (2d Cir. 2000)...............................................................................57, 58

*In re Banco Bradesco S.A. Sec. Litig.*,
277 F. Supp. 3d 600 (S.D.N.Y. 2017).....................................................................15

*In re Bank of Am. Corp. Sec., Derivative, & Employee Ret. Income Sec. Act
(ERISA) Litig.*,
No. 09 CIV. 5411 PKC, 2012 WL 1353523 (S.D.N.Y. Apr. 12, 2012) ..................29

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...................................................................................................9

*In re Bemis Co. Sec. Litig.*,
512 F. Supp. 3d 518 (S.D.N.Y. 2021)................................................................53, 60

*In re Boeing Co. Aircraft Sec. Litig.*,
    No. 19-cv-02394, 2022 WL 3595058 (N.D. Ill. Aug. 23, 2022) .............................................40

*Bond Opportunity Fund v. Unilab Corp.*,
    87 F. App'x 772 (2d Cir. 2004) ...............................................................................................49

*Bond Opportunity Fund v. Unilab Corp.*,
    No. 99 Civ. 11074 (JSM), 2003 WL 21058251 (S.D.N.Y. May 9, 2003), *aff'd*,
    87 F. App'x 772 (2d Cir. 2004) .........................................................................................55, 56

*Bozsi Ltd. P'ship v. Lynott*,
    676 F. Supp. 505 (S.D.N.Y. 1987) ...........................................................................................44

*Bricklayers & Masons Loc. Union No. 5 Ohio Pension Fund v. Transocean Ltd.*,
    866 F. Supp. 2d 223 (S.D.N.Y. 2012).......................................................................................55

*Brookfield Asset Mgmt., Inc. v. Rosson*,
    261 A.3d 1251 (Del. 2021) .......................................................................................................50

*Burr v. Equity Bancshares, Inc.*,
    No. 19-CV-4346 (AJN), 2020 WL 6063558 (S.D.N.Y. Oct. 14, 2020) ...................................20

*In re Career Educ. Corp. Secs. Litig.*,
    No. 03 C 8884, 2006 WL 999988 (N.D. Ill. Mar. 28, 2006) ....................................................35

*Chill v. Gen. Elec. Co.*,
    101 F.3d 263 (2d Cir. 1996)...................................................................................................9, 45

*In re Citigroup Sec. Litig.*,
    No. 20 CIV. 9132 (LAP), 2023 WL 2632258 (S.D.N.Y. Mar. 24, 2023) ...............................21

*City of Brockton Ret. Sys. v. Avon Prod., Inc.*,
    No. 11 Civ. 4665 (PGG), 2014 WL 4832321 (S.D.N.Y. Sept. 29, 2014) ...............................43

*City of Monroe Employees' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*,
    No. 10-CV-2835, 2011 WL 4357368 (S.D.N.Y. Sept. 19, 2011).............................................16

*City of Sterling Heights Police & Fire Ret. Sys. v. Reckitt Benckiser Grp. PLC*,
    587 F. Supp. 3d 56 (S.D.N.Y. 2022).........................................................................................23

*Cohen v. Stevanovich*,
    722 F. Supp. 2d 416 (S.D.N.Y. 2010).......................................................................................47

*Colliton v. Cravath, Swaine & Moore, LLP*,
    No. 08 Civ 0400(NRB), 2008 WL 4386764 (S.D.N.Y. Sept. 24, 2008) .................................13

*In re Columbia Pipeline, Inc.*,
    405 F. Supp. 3d 494 (S.D.N.Y. 2019).......................................................................................54

iv

*Constr. Workers Pension Fund-Lake Cnty. & Vicinity v. Navistar Int'l Corp.*,
No. 13 C 2111, 2014 WL 3610877 (N.D. Ill. July 22, 2014) ...................................................27

*In re CRM Holdings, Ltd. Sec. Litig.*,
No. 10 Civ. 975, 2012 WL 1646888 (S.D.N.Y. May 10, 2012)...............................................46

*In re Cyberonics Inc. Sec. Litig.*,
No. CIV.A. H-05-2121, 2006 WL 2050696 (S.D. Tex. July 20, 2006) ...................................41

*In re Danimer Sci., Inc. Sec. Litig.*,
No. 21-CV-02708, 2023 WL 6385642 (E.D.N.Y. Sept. 30, 2023), *appeal filed*
November 6, 2023, Case No. 23-7674 (2d Cir.).....................................................................21

*In re DDAVP Direct Purchaser Antitrust Litig.*,
585 F.3d 677 (2d Cir. 2009)...................................................................................................46

*ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*,
553 F.3d 187 (2d Cir. 2009)...................................................................................................23

*In re EDAP TMS S.A. Sec. Litig.*,
No. 14 CIV. 6069 LGS, 2015 WL 5326166 (S.D.N.Y. Sept. 14, 2015) .................................42

*Edison Fund v. Cogent Inv. Strategies Fund, Ltd.*,
551 F. Supp. 2d 210 (S.D.N.Y. 2008)....................................................................................48

*In re Elan Corp. Secs. Litig.*,
543 F.Supp.2d 187 (S.D.N.Y. 2008).......................................................................................32

*Enzo Biochem, Inc. v. Harbert Discovery Fund, LP*,
No. 20-CV-9992 (PAC), 2021 WL 4443258 (S.D.N.Y. Sept. 27, 2021) ...............................54

*Enzo Biochem, Inc. v. Harbert Discovery Fund, LP*,
No. 20-cv-9992 (PAC), 2021 WL 5854075 (S.D.N.Y. Dec. 9, 2021)....................................47

*Fin. Guar. Ins. Co. v. Putnam Advisory Co.*,
783 F.3d 395 (2d Cir. 2015)...................................................................................................57

*Firefighters Pension & Relief Fund of the City of New Orleans v. Bulmahn*,
No. CIV.A. 13-3935, 2015 WL 4879217 (E.D. La. Aug. 14, 2015) ......................................36

*Fisher v. Kanas*,
467 F. Supp. 2d 275 (E.D.N.Y. 2006) ....................................................................................59

*Fort Worth Emp'rs' Ret. Fund v. Biovail Corp.*,
615 F. Supp. 2d 218 (S.D.N.Y. 2009).....................................................................................24

*Francois v. Victory Auto Grp. LLC*,
No. 22-CV-4447 (JSR), 2023 WL 373250 (S.D.N.Y. Jan. 24, 2023) ....................................38

*In re FuboTV Inc. Sec. Litig.*,
    No. 21-CV-01412 (ALC), 2023 WL 2711826 (S.D.N.Y. Mar. 30, 2023) .............................25

*Furlong Fund LLC v. VBI Vaccines, Inc.*,
    No. 14 Civ. 9435 (SHS), 2016 WL 1181710 (S.D.N.Y. Mar. 25, 2016) ...............................55

*Gammel v. Hewlett-Packard Co.*,
    905 F. Supp. 2d 1052 (C.D. Cal. 2012) ...............................................................................35

*In re Garrett Motion Inc. Sec. Litig.*,
    No. 1:20-CV-07992 (JLR), 2023 WL 2744029 (S.D.N.Y. Mar. 31, 2023),
    *appeal filed* April 20, 2023, Case No. 23-668 (2d Cir.) ..........................................................28

*In re Gen. Elec. Co. Sec. Litig.*,
    857 F. Supp. 2d 367 (S.D.N.Y. 2012)...................................................................................10

*Glaser v. The9, Ltd.*,
    772 F. Supp. 2d 573 (S.D.N.Y. 2011)...................................................................................32

*Grace v. Rosenstock*,
    228 F.3d 40 (2d Cir. 2000)..............................................................................................49, 57

*Gray v. Wesco Aircraft Holdings, Inc.*,
    454 F. Supp. 3d 366 (S.D.N.Y. 2020), *aff'd*, 847 F. App'x 35 (2d Cir. 2021).......................61

*In re GTx Shareholders Litig.*,
    No. 19 Civ. 3239 (AT), 2020 WL 3439356 (S.D.N.Y. June 23, 2020)..................................58

*HB v. Monroe Woodbury Cent. Sch. Dist.*,
    No. 11-CV-5881 CS, 2012 WL 4477552 (S.D.N.Y. Sept. 27, 2012)......................................9

*Higginbotham v. Baxter Int'l, Inc.*,
    495 F.3d 753 (7th Cir. 2007) ...............................................................................................31

*Hoch v. Alexander*,
    No. CIV.A. 11-217, 2011 WL 2633722 (D. Del. July 1, 2011) .............................................59

*Holland v. JPMorgan Chase Bank, N.A.*,
    No. 19 CIV. 00233 (PAE), 2019 WL 4054834 (S.D.N.Y. Aug. 28, 2019)............................31

*Honig v. Hansen*,
    No. 20 CIV. 5872 (AKH), 2022 WL 1239632 (S.D.N.Y. Apr. 27, 2022),
    *reconsideration denied*, No. 20 CIV. 5872 (AKH), 2022 WL 2108594
    (S.D.N.Y. June 10, 2022)......................................................................................................17

*Hou Liu v. Intercept Pharms., Inc.*,
    No. 17-CV-7371 (LAK), 2020 WL 1489831 (S.D.N.Y. Mar. 26, 2020) ...............................15

*Hutchinson v. Perez*,
No. 12 CIV. 1073 HB, 2013 WL 1775374 (S.D.N.Y. Apr. 25, 2013), *aff'd sub
nom. Jones v. Perez,* 550 F. App'x 24 (2d Cir. 2013) ..............................................................29

*I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*,
936 F.2d 759 (2d Cir. 1991)........................................................................................................18

*IBEW Loc. 98 Pension Fund v. Cent. Vt. Pub. Serv. Corp.*,
No. 11-CV-222, 2012 WL 12985689 (D. Vt. Aug. 23, 2012)...................................................55

*In re Int'l Bus. Machines Corp. Sec. Litig.*,
163 F.3d 102 (2d Cir. 1998)........................................................................................................24

*In re Intelligroup Sec. Litig.*,
527 F. Supp. 2d 262 (D.N.J. 2007) .......................................................................................35, 36

*J. I. Case Co. v. Borak*,
377 U.S. 426 (1964), *abrogated on other grounds by Ziglar v. Abbasi*, 582
U.S. 120 (2017)...........................................................................................................................51

*Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co., Inc.*,
32 F.3d 697 (2d Cir. 1994)..........................................................................................................28

*In re JP Morgan Chase Sec. Litig.*,
363 F. Supp. 2d 595 (S.D.N.Y. 2005).........................................................................................22

*Espinoza ex rel. JPMorgan Chase & Co. v. Dimon*,
797 F.3d 229 (2d Cir. 2015)........................................................................................................50

*Karp v. SI Fin. Grp., Inc.*,
No. 3:19-CV-00199 (MPS), 2020 WL 1891629 (D. Conn. Apr. 16, 2020) ............................55

*Kasparov v. Ambit Texas, LLC*,
No. 12-CV-3488 (WFK) (JO), 2016 WL 10749156 (E.D.N.Y. Mar. 10, 2016) ......................14

*Kennecott Copper Corp. v. Curtiss-Wright Corp.*,
584 F.2d 1195 (2d Cir. 1978)......................................................................................................53

*Kinra v. Chi. Bridge & Iron Co.*,
No. 17 Civ. 4251, 2018 WL 2371030 (S.D.N.Y. May 24, 2018)...............................................46

*La. Mun. Police Emps. Ret. Sys. v. Cooper Indus.*,
No. 12CV1750, 2012 WL 4958561 (N.D. Ohio Oct. 16, 2012)................................................53

*Lane v. Page*,
581 F. Supp. 2d 1094 (D.N.M. 2008) .........................................................................................53

*Lanigan Grp., Inc. v. Li-Cycle Holdings Corp.*,
No. 22CV02222HGRML, 2023 WL 6541884 (E.D.N.Y. Oct. 6, 2023) ................................27

*Lattanzio v. Deloitte & Touche LLP*,
476 F.3d 147 (2d Cir. 2007).................................................................................................41

*Lentell v. Merrill Lynch*,
396 F.3d 161 (2d Cir. 2005).................................................................................................40

*Lewis v. Oppenheimer & Co.*,
481 F. Supp. 1199 (S.D.N.Y. 1979).....................................................................................60

*Li v. China Merchants Bank Co.*,
No. 22 CIV. 9309 (KPF), 2023 WL 146853 (S.D.N.Y. Jan. 6, 2023), *opinion
vacated in part on other grounds*, No. 22 CIV. 9309 (KPF), 2023 WL
2955293 (S.D.N.Y. Apr. 14, 2023).......................................................................................38

*Lipow v. Net1 UEPS Techs., Inc.*,
131 F. Supp. 3d 144 (S.D.N.Y. 2015)...................................................................................43

*Little Gem Life Sciences LLC v. Orphan Med., Inc*.,
Civ. No. 06-1377, 2007 WL 541677 (D. Minn. Feb. 16, 2007) ...........................................59

*Local No. 38 IBEW v. Am. Exp. Co.*,
724 F. Supp. 2d 447 (S.D.N.Y. 2010), *aff'd*, 430 F. App'x 63 (2d Cir. 2011)........................35

*Long Miao v. Fanhua, Inc.*,
442 F. Supp. 3d 774 (S.D.N.Y. 2020)...................................................................................37

*In re Longtop Fin. Techs. Ltd. Sec. Litig.*,
939 F. Supp. 2d 360 (S.D.N.Y. 2013)...................................................................................40

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
797 F.3d 160 (2d Cir. 2015).................................................................................................40

*Low v. Robb*,
No. 11-CV-2321 JPO, 2012 WL 173472 (S.D.N.Y. Jan. 20, 2012)......................................38

*In re Lululemon Sec. Litig.*,
14 F. Supp. 3d 553 (S.D.N.Y. 2014).......................................................................35, 37, 42

*Malin v. XL Cap. Ltd.*,
499 F. Supp. 2d 117 (D. Conn. 2007), *aff'd*, 312 F. App'x 400 (2d Cir. 2009) ..........18, 33, 37

*In re Manulife Fin. Cop. Sec. Litig.*,
276 F.R.D. 87 (S.D.N.Y. 2011) ......................................................................................28, 29

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
    536 F. Supp. 2d 313 (S.D.N.Y. 2007)................................................................................53

*McIntire v. China MediaExpress Holdings, Inc.*,
    927 F. Supp. 2d 105 (S.D.N.Y. 2013)...............................................................................47

*Mendoza v. HF Foods Grp.*,
    No. 2:20-CV-02929-ODW, 2021 WL 3772850 (C.D. Cal. Aug. 25, 2021)..........................56

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
    218 F.R.D. 76 (S.D.N.Y. 2003) ........................................................................................38

*In re Molycorp, Inc. Sec. Litig.*,
    No. 13–cv–5697 (PAC), 2015 WL 1097355 (S.D.N.Y. Mar. 12, 2015) ...............................44

*Montanio v. Keurig Green Mtn., Inc.*,
    237 F. Supp. 3d 163 (D. Vt. 2017)....................................................................................53

*Moore v. PaineWebber, Inc.*,
    189 F.3d 165 (2d Cir. 1999)...............................................................................................57

*In re MRU Holdings Sec. Litig*,
    769 F. Supp. 2d 500 (S.D.N.Y. 2011)................................................................................31

*New England Carpenters Guaranteed Annuity & Pension Funds v. DeCarlo*,
    80 F.4th 158 (2d Cir. 2023) ..............................................................................................44

*New York City Emps. Ret. Sys. v. Jobs*,
    593 F.3d 1018 (9th Cir. 2010), *overruled on other grounds by Lacey v.*
    *Maricopa Cnty.*, 693 F.3d 896 (9th Cir. 2012) .............................................................58, 59

*In re New York Cmty. Bancorp, Inc., Sec. Litig.*,
    448 F. Supp. 2d 466 (E.D.N.Y. 2006) ...............................................................................22

*In re Nokia Oyj (Nokia Corp.) Sec. Litig.*,
    423 F. Supp. 2d 364 (S.D.N.Y. 2006)................................................................................43

*Norfolk Cnty. Ret. Sys. v. Solazyme, Inc.*,
    No. 15-CV-02938-HSG, 2018 WL 3126393 (N.D. Cal. June 26, 2018) ..............................36

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000)..........................................................................................31, 33

*Ocegueda v. Zuckerberg*,
    526 F. Supp. 3d 637 (N.D. Cal. 2021) ...............................................................................54

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
    575 U.S. 175 (2015)............................................................................................................21

*Pac. Inv. Mgmt. Co. v. Mayer Brown LLP*,
603 F.3d 144 (2d Cir. 2010).................................................................................................12

*In re PetroChina Co. Ltd. Sec. Litig.*,
120 F. Supp. 3d 340 (S.D.N.Y. 2015)...................................................................................16

*In re Plug Power, Inc. Sec. Litig.*,
No. 21 CIV. 2004 (ER), 2022 WL 4631892 (S.D.N.Y. Sept. 29, 2022) ...............................40

*Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*,
645 F. Supp. 2d 210 (S.D.N.Y. 2009)...................................................................................55

*Power Home Solar, LLC d/b/a Pink Energy v. Generac Power Systems, Inc.*,
Case No. 6:22CV000043-NKM (W.D. Va.).....................................................................37, 38

*PRS v. Intuitive Surgical, Inc.*,
759 F.3d 1051 (9th Cir. 2014) .............................................................................................24

*Resnik v. Swartz*,
303 F.3d 147 (2d Cir. 2002)..................................................................................................60

*Resnik v. Woertz*,
774 F. Supp. 2d 614 (D. Del. 2011)......................................................................................59

*Romain v. Capital One, N.A.*,
No. 13-CV-3035 (JS)(WDW), 2013 WL 6407731 (E.D.N.Y. Dec. 9, 2013) ........................14

*Rombach v. Chang*,
355 F.3d 164 (2d Cir. 2004)..................................................................................................10

*In re Romeo Power Sec. Litig.*,
21 Civ. 3362 (LGS), 2022 WL 1806303 (S.D.N.Y. June 2, 2022) ........................................51

*Rothman v. Gregor*,
220 F.3d 81 (2d Cir. 2000)....................................................................................................42

*RSM Prod. Corp. v. Fridman*,
643 F. Supp. 2d 382 (S.D.N.Y. 2009), *aff'd*, 387 F. App'x 72 (2d Cir. 2010).......................38

*S.E.C. v. Obus*,
693 F.3d 276 (2d Cir. 2012)..................................................................................................44

*Salit v. Stanley Works*,
802 F. Supp. 728 (D. Conn. 1992).........................................................................................57

*In re Satyam Computer Servs. Ltd. Sec. Litig.*,
915 F. Supp. 2d 450 (S.D.N.Y. 2013)....................................................................................48

x

*Schiro v. Cemex, S.A.B. de C.V.*,
  396 F. Supp. 3d 283 (S.D.N.Y. 2019)..................................................................................36

*Shreiber v. Synacor, Inc.*,
  832 F. App'x 54 (2d Cir. 2020) ...........................................................................................22

*In re Sierra Wireless, Inc. Sec. Litig.*,
  482 F. Supp. 2d 365 (S.D.N.Y. 2007)..................................................................................42

*In re Splash Tech. Holdings, Inc. Sec. Litig.*,
  160 F. Supp. 2d 1059 (N.D. Cal. 2001) ..........................................................................23, 27

*Suez Equity Investors, L.P. v. Toronto-Dominion Bank*,
  250 F.3d 87 (2d Cir. 2001)...................................................................................................40

*In re Sunlight Financial Holdings Inc., et al.*,
  Case No. 23-11794 (MFW) (Bankr. D. Del.) .....................................................................8, 9

*Tabor v. Bodisen Biotech, Inc.*,
  579 F. Supp. 2d 438 (S.D.N.Y. 2008)..................................................................................27

*Talarico v. Johnson*,
  No. 4:21-CV-3689, 2023 WL 2618255 (S.D. Tex. Feb. 7, 2023) ........................................21

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)........................................................................................................10, 39

*In re Vivendi, S.A. Sec. Litig.*,
  838 F.3d 223 (2d Cir. 2016).................................................................................................24

*W. Palm Beach Firefighters' Pension Fund v. Conagra Brands, Inc.*,
  495 F. Supp. 3d 622 (N.D. Ill. 2020), *aff'd sub nom. Nat'l Elevator Indus.
  Pension Fund v. Conagra Brands, Inc.*, No. 21-1155, 2022 WL 1449184 (7th
  Cir. May 9, 2022)................................................................................................................23

*In re Wachovia Equity Sec. Litig.*,
  753 F. Supp. 2d 326 (S.D.N.Y. 2011)..................................................................................35

*Wallace v. New York City Dept. of Corrections*,
  No. 95 CV 4404, 1996 WL 586797 (E.D.N.Y. Oct. 9, 1996) ..............................................14

*Wilson v. Great Am. Indus., Inc.*,
  979 F.2d 924 (2d Cir. 1992).................................................................................................58

*XYZ Two Way Radio Serv., Inc. v. Uber Techs., Inc.*,
  214 F. Supp. 3d 179 (E.D.N.Y. 2016) .................................................................................52

xi

*Zech Capital LLC v. Ernst & Young Hua Ming*,
    636 F. App'x 582 (2d Cir. 2016), *as amended* (Jan. 28, 2016) ...............................................29

*Zhou v. NextCure, Inc.*,
    No. 20-CV-07772-LTS-RWL, 2023 WL 4493541 (S.D.N.Y. July 12, 2023) ........................38

*In re Zoran Corp. Deriv. Litig.*,
    511 F. Supp. 2d 986 (N.D. Cal. 2007) ...................................................................................56

**Statutes**

15 U.S.C. § 77z-2..........................................................................................................................23

15 U.S.C. § 78n(a) ........................................................................................................................49

15 U.S.C. § 78t(a) .........................................................................................................................47

15 U.S.C. § 78u-4(b).........................................................................................................10, 39, 50

**Other Authorities**

17 C.F.R. § 240.14a-9(a) ..............................................................................................................49

Fed. R. Civ. P. 9(b) .........................................................................................................................9

Fed. R. Civ. P. 23.1(b)(3)..............................................................................................................50

Federal Rule of Evidence 407........................................................................................................40

## PRELIMINARY STATEMENT

Plaintiffs' claims in this case follow the well-trodden path of securities complaints that unsuccessfully seek to equate general statements regarding risk controls with guarantees that those controls will prevent risks from materializing.

Defendant Sunlight Financial Holdings, Inc. ("Sunlight"),[1] formed through a July 2021 merger, provides a software platform that processes connections between residential solar contractors and lending partners, thereby allowing the customers of those residential solar contractors to efficiently apply for and receive financing for their residential solar project. Sunlight explained to investors that it conducted due diligence on the contractors that seek to use its platform and to whom it advanced funds to complete their projects. Partly due to the financial troubles of Power Home Solar LLC d/b/a Pink Energy, Inc. ("Pink"), a solar contractor that received advances from Sunlight, Sunlight stated in a September 28, 2022 press release that it was taking an impairment and would proactively re-underwrite all contractor partners' advances to further mitigate its risk, after which its stock price declined.

Not surprisingly, that drop in the stock price drew a putative class action by a group of shareholders who want to recover alleged losses. Specifically, Plaintiffs allege that Pink's insolvency and default necessarily renders false a variety of generic statements about risk controls by Sunlight in past public filings. In a kitchen-sink approach, Plaintiffs claim that these statements are actionable under Section 10(b) of the Securities Exchange Act of 1934 (the "'34 Act") as well as the proxy rules of Section 14(a) and that Sunlight, as well as its current and former officers and directors and a predecessor entity, are either directly liable or liable under the control person provisions of Section 20(a).

---

[1] As discussed *infra*, Sunlight is now named solely as a nominal defendant.

However, despite three pleading attempts and a pre-suit investigation involving former Sunlight employees, Plaintiffs' claims must fail for several reasons.  First, Plaintiffs have not offered any well-pled allegations that demonstrate that the challenged statements are in fact false. Plaintiffs have not alleged that Sunlight misstated any material financial data.  And the generic statements about Sunlight's risk controls, contractor due diligence, its future expectations of moderate losses, and its representations that it conducted ongoing reputational reviews are not actionable under the securities laws.  Further, that one contractor, Pink, later experienced financial distress or that another contractor, Vision Solar, was perceived as having a bad business reputation does not call into question the truth of Sunlight's general statements about its risk controls. Plaintiffs' improper puzzle-pleading allegations cannot save the fact that they have failed to identify which statements by Sunlight are false and why, let alone any actionable statements by any of the named individual defendants.

Perhaps cognizant of the weakness of their claims, Plaintiffs try to rely on Confidential Witnesses to show both the falsity of Sunlight's statements and the scienter of the company and its directors and officers.  But these Confidential Witnesses—one of whom worked at Sunlight for only a portion of the relevant time period—were not in positions sufficient to demonstrate the falsity of the statements nor to impute scienter to senior management, and thus cannot save Plaintiffs' fatal pleading defects.  Perhaps most significantly, these Confidential Witnesses simply express general after-the-fact critiques about Sunlight's contractor due diligence, much of which is inaccurate and all of which is of no legal consequence.  None of these Confidential Witnesses were responsible for the due diligence of Pink, and thus were not in a position to judge the falsity or related scienter of any statements.  Plaintiffs do not otherwise attempt to plead facts giving rise to a strong inference of scienter.

2

These deficiencies are fatal to the claims against Sunlight and also the individual defendants. While these claims are weak against Sunlight as an institution, they are even weaker against the named individual defendants. Plaintiffs use group pleading to impermissibly combine allegations against the individuals with no attempt to specify *any* statements made by the vast majority of the individuals, much less identify that those individuals knew such statements were false when they were made. Indeed, Plaintiffs say very little about any one particular individual defendant, and certainly not enough to survive a motion to dismiss.

Plaintiffs' Section 14(a) claims fare no better. As an initial matter, the claims must be dismissed because they are derivative in nature, yet Plaintiffs fail to plead compliance with the Rule 23.1 demand requirement for derivative claims. Additionally, the attempt to plead a misrepresentation based on the merger proxy statement fails for the same reason that Plaintiffs have failed to state a claim under Section 10(b) or 20(a), namely that they have provided no basis by which the Court can hold that the statements at issue were false, were made with the requisite state of mind, or even caused Plaintiffs any losses.

## STATEMENT OF ALLEGED FACTS

Sunlight operates a digital platform on which contractors can obtain financing for customers interested in purchasing residential solar or home improvement projects. Second Am. Compl. ("SAC") ¶ 23. Sunlight was formed in 2021 as a result of a merger between Sunlight Financial LLC and Spartan Acquisition Corp. II ("Spartan"). *Id.* ¶ 22. Sunlight Financial LLC and Spartan announced the merger on January 25, 2021 and consummated the merger on July 9, 2021. *Id.* ¶¶ 51, 52 (the merger referred to hereafter as either the "merger" or the "Business Combination"). On July 12, 2021, the combined company began trading on the New York Stock Exchange. *Id.* ¶ 52. Although the combined company initially enjoyed financial success, a variety

3

of factors—including soaring interest rates, competition, and the insolvency of an important contractor relationship—led to Sunlight's stock not performing as well as expected.

At the heart of Plaintiffs' operative Second Amended Class Action Complaint (ECF No. 73) is Sunlight's "cash advance" system, where it provided contractors with cash advances so that they could avoid the up-front costs of solar installation and home improvement projects. *Id.* ¶ 26. Plaintiffs' claims largely concern developments at the close of trading on September 28, 2022, when Sunlight filed a Form 8-K noting that it would "re-underwrit[e] all contract advances" to further "mitigate risk" because one such contractor was facing unanticipated "liquidity issues." *Id.* ¶ 102. In a press release accompanying the 8-K, Sunlight said it would be "re-underwriting" every one of its contractors so that the company could mitigate further risk. *Id.*

The day following this disclosure, Sunlight's common stock dropped by approximately 57% per share. *Id.* ¶ 103. Sunlight confirmed during its third quarter earnings call that the contractor facing the issues referenced in the September 2022 8-K was Pink. *Id.* ¶ 104. Pink had shut down its business operations on September 21, 2022, and later filed for bankruptcy on October 7, 2022. *Id.*

Shortly after these events, Plaintiffs filed their initial complaint, which has since been amended on multiple occasions. Plaintiffs bring claims not only against Sunlight but also individual defendants Matthew Potere, the now former CEO of Sunlight, Barry Edinburg, the former CFO of Sunlight until March 31, 2022, and Rodney Yoder, the current CFO of Sunlight, and the CFO through the end of the Class Period (collectively, the "Sunlight Individual Defendants," and collectively with Sunlight, the "Sunlight Defendants"), individual defendants Geoffrey Strong, James Crossen, Olivia Wassenaar, Wilson Handler, Christine Hommes, and Joseph Romeo (collectively, the "Spartan Individual Defendants"); and Spartan Acquisition

Sponsor II LLC ("Sponsor," and, collectively with the Spartan Individual Defendants, the "Spartan Defendants").[2]

Plaintiffs seek to represent a class of stockholders meeting one or both of two criteria: (1) those who purchased publicly traded common stock of Sunlight between January 25, 2021 and September 28, 2022, and (2) those who beneficially owned and/or held Spartan common stock as of June 1, 2021 and were eligible to vote at Spartan's July 8, 2021 special meeting.[3]  SAC ¶ 1. The crux of Plaintiffs' claims is that Defendants made false representations about Sunlight's cash advance program prior to Pink's insolvency.  Plaintiffs allege that on January 25, 2021—the first day of the Class Period—Potere stated that the cash advance program was structured to be low risk to Sunlight during a conference call with investors about the proposed merger. *Id.* ¶ 197.  Plaintiffs allege this statement was false because Sunlight lacked a "vigorous diligence and monitoring process," and the total amount of cash advances to Pink at the time of Pink's bankruptcy represented almost half of Sunlight's total cash in hand at the time. *Id.* ¶¶ 191, 194.

Plaintiffs also point to a specific projection made by Yoder during Sunlight's Q2 2022 earnings call on August 15, 2022.  During the call, Yoder made a forward-looking statement that after Sunlight made a $4.0 million provision for potential losses from the cash advance program, the company "[didn't] expect to take any further one-time charges," adding that losses amounted to a "very, very small" percentage of the $1 billion advanced throughout the duration of the program. *Id.* ¶ 209.  Plaintiffs do not allege that Yoder's statement regarding the small percentage of advances that resulted in losses to Sunlight was false or misleading, acknowledging that it in

---

[2] All Defendants except Yoder will be referred to as the "Proxy Claim Defendants."  Sunlight, Edinburg, and Potere will be referred to as the "Sunlight Proxy Claim Defendants."

[3] The "Class Period" is January 25, 2021 through September 28, 2022.  SAC ¶ 1.

fact was accurate.  In fact, Plaintiffs allege that Sunlight increased the amount of credit available to Pink on August 18, 2022.  *Id.* ¶ 220.  Pink would not file for bankruptcy until nearly two months later.  *Id.* ¶ 215.  Plaintiffs argue that Defendants should have anticipated Pink's eventual bankruptcy based upon certain bits of publicly accessible information, none of which shed any light on Pink's financial situation or otherwise would give rise to any concerns (much less knowledge) that Pink might eventually face a liquidity crisis: (1) negative online customer reviews of Pink,[4] (2) negative local news stories regarding Pink, and (3) allegations in a lawsuit filed by Pink against one of its suppliers.  *See generally id.* ¶¶ 157–181.  Despite these "alarming developments," Plaintiffs allege that Sunlight designated Pink as having a risk level of 3, indicating an "excellent to average" reputational risk and risk assessment.  *Id.* ¶ 181.  This allegation is in stark contrast to Plaintiffs' Amended Complaint, in which they alleged that a risk rating of "3" in Sunlight's 1-5 risk tier indicated "medium commercial credit risk."  *See* Amended Complaint (ECF No. 34) ¶ 66.  Plaintiffs provided no explanation for this about-face in the Second Amended Complaint.

Additionally, Plaintiffs allege that Defendants made false representations about Sunlight's vetting and monitoring of contractors.  Plaintiffs allege that Defendants made these representations pre-merger and throughout the Class Period in a series of filings, beginning with Spartan's filing of an SEC Registration Statement, preliminary proxy statement, and prospectus on Form S-4, which stated that "Sunlight has adopted vigorous contractor diligence and monitoring procedures." *Id.* ¶¶ 90–93.  Plaintiffs emphasize the following statements in the S-4:

---

[4] Plaintiffs also make numerous similar allegations regarding Vision Solar, another Sunlight contractor.  *See* SAC ¶¶ 74–89.  However, Plaintiffs do not allege, among other things, that Vision Solar defaulted on advances to Sunlight or how Sunlight's relationship with Vision Solar is causally linked to any of their damages.

1. "Once onboarded, Sunlight continues to monitor the contractors in its network against these same standards at least annually and, if advisable, more frequently."

2. "Sunlight has established a **robust commercial underwriting and ongoing monitoring process** to assure that the quality of the work product, solar system construction, **financial condition** (to support construction processes and provide post construction warranty support) and **legal compliance practices** of the contractors in Sunlight's network." (emphasis in SAC).

3. "The aggregate amount of advances available to a given contractor is based on a risk evaluation and tiering conducted by Sunlight's commercial risk team that performs contractor underwriting generally, as well as additional oversight and periodic monitoring requirements."

*Id.* ¶¶ 90–92. Plaintiffs allege that post-merger, Sunlight made an identical statement in four subsequent SEC filings between July 30, 2021 and April 22, 2022. *Id.* ¶ 202.

Plaintiffs argue these statements were false because "(1) since 2020, Sunlight did not perform any due diligence at all except reviewing contractors' self-supplied financial statements, and therefore: (a) Sunlight did not obtain independent credit assessments, and (b) Sunlight performed neither initial nor ongoing reputational review; (2) Sunlight's cash advances went disproportionately to bottom-feeding companies that duped customers and would have difficulty repaying all advances." *Id.* ¶ 94. In support of these thread-bare allegations, Plaintiffs cite the testimony of four Confidential Witnesses ("CWs") to suggest that Sunlight was not diligent in monitoring its contractors. But the CWs interviewed by Plaintiffs were former mid-to-low-level employees, *id.* ¶¶ 54, 144, 149, 153, none of whom appear to have had direct knowledge of the allegations concerning Sunlight's relationship with Pink, at least not as to the liquidity issues Pink was facing—or as to Sunlight's knowledge (or lack thereof) regarding such issues. Moreover CW1 was not even employed by the company during the entire time period at issue. *Id.* ¶ 54.

Lastly, Plaintiffs allege that the Proxy Claim Defendants omitted certain information from the Form S-4 that is required by Item 303 of SEC Regulation S-K. Specifically, Plaintiffs allege

7

that the Proxy Claim Defendants failed to disclose known trends in Sunlight's business related to the growing size and allegedly increasing risk of the cash advance program, particularly as Pink and Vision Solar became the program's largest participants. *Id.* ¶¶ 97–101.

Plaintiffs allege that the purportedly inaccurate statements and omissions in the pre-merger SEC filings impose liability on the Proxy Claim Defendants under Section 14(a) of the '34 Act. However, Plaintiffs expressly disclaim any fraud theory for their Section 14(a) claim, stating that "[t]his claim is solely based on negligence." *Id.* ¶ 117. Plaintiffs also allege that the full complement of Defendants' statements impose liability under Sections 10(b) and 20(a) of the '34 Act. *Id.* ¶¶ 236–50.

Plaintiffs filed their initial complaint against Sunlight on December 16, 2022. After briefing, the current lead plaintiff was appointed on March 8, 2023. Plaintiffs then filed an Amended Complaint on May 22, 2023.[5] After all Defendants moved to dismiss the Amended Complaint, Plaintiffs filed the operative Second Amended Complaint on October 24, 2023[6].

On October 30, 2023, Sunlight and certain of its affiliates filed voluntary petitions for relief under chapter 11 of the U.S. Bankruptcy Code in the U.S. Bankruptcy Court for the District of Delaware. *See In re Sunlight Financial Holdings Inc., et al.*, Case No. 23-11794 (MFW) (Bankr. D. Del.). On November 2, 2023, Sunlight filed a Notice of Suggestion of Pendency of Bankruptcy and Automatic Stay of Proceedings in this lawsuit. (ECF No. 74). Subsequently on December 5, 2023, the Bankruptcy Court approved Sunlight's chapter 11 plan of reorganization, and Sunlight filed its notice of effectiveness on December 6, 2023. *See In re Sunlight*, Case No. 23-11794

---

[5] In addition to the arguments made herein, the Sunlight Defendants also join in the arguments made in the Spartan Defendants' Motion to Dismiss the Second Amended Class Action Complaint.

[6] Plaintiffs initially filed their Second Amended Complaint on October 20, 2023 (ECF No. 70), but were required to refile due to certain CM/ECF deficiencies identified by the Court.

(MFW) (Bankr. D. Del.) (ECF Nos. 201, 203).  In approving Sunlight's reorganization, the Bankruptcy Court ordered that Sunlight remain a part of this action "solely as a nominal defendant and solely for the purposes of (x) recovering available insurance proceeds (if and solely where the applicable policy covers such Claims) over and above any applicable self-insurance retention amount, and (y) of seeking discovery."  *See In re Sunlight*, Case No. 23-11794 (MFW) (Bankr. D. Del.) (ECF No. 201 at 19–20).  Sunlight reserved all of its rights, defenses, claims, and counterclaims in this action in the bankruptcy proceeding, *see id.* at 20, and because Plaintiffs' claims against Sunlight remain, moves to dismiss them herein.

## STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Although the Court must take as true all factual allegations in the SAC, it is "not bound to accept as true a legal conclusion couched as a factual allegation" or "naked assertion[s] devoid of further factual enhancement."  *Id.* at 678 (internal quotation marks and citations omitted).  The Court also may consider certain materials outside the SAC at this stage for purposes of a motion to dismiss, including news articles and public disclosure documents filed with the SEC.  *See, e.g.*, *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (SEC filings); *HB v. Monroe Woodbury Cent. Sch. Dist.*, No. 11-CV-5881 CS, 2012 WL 4477552, at *4–5 (S.D.N.Y. Sept. 27, 2012) (news articles).

To survive a motion to dismiss, a complaint containing allegations of securities fraud or falsities must satisfy Federal Rule of Civil Procedure 9(b)'s heightened pleading requirements.  *See, e.g.*, *ATSI*, 493 F.3d at 99.  Rule 9(b) requires the plaintiff to plead the circumstances constituting fraud or mistake "with particularity."  Fed. R. Civ. P. 9(b); *see Chill v. Gen. Elec. Co.*,

9

101 F.3d 263, 267 (2d Cir. 1996). The Second Circuit requires that a securities fraud complaint must (1) specify the fraudulent statements, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent. *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004). Thus, "[a]llegations that are conclusory or unsupported by factual assertions are insufficient," *ATSI*, 493 F.3d at 99, and the Court should dismiss any complaint that "simply offers a generalized allegation," *id.* at 106.

"A complaint alleging securities fraud pursuant to Section 10(b) of the Securities Exchange Act is subject to two heightened pleading standards." *In re Gen. Elec. Co. Sec. Litig.*, 857 F. Supp. 2d 367, 383 (S.D.N.Y. 2012). "First, the complaint must satisfy Rule 9(b)." *Id*. "Second, the complaint must meet the pleading requirements of the Private Securities Litigation Reform Act ('PSLRA'), 15 U.S.C. § 78u-4(b)." *Id.* Under the PSLRA, "the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind," or scienter. 15 U.S.C. § 78u-4(b)(2)(A). "To qualify as 'strong' within the intendment of [the PSLRA] . . . an inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007). Like Rule 9(b), the PSLRA also requires that a complaint "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading," which compels a plaintiff to "state with particularity the specific facts in support of [plaintiffs'] belief that [defendants'] statements were false when made." *Rombach*, 355 F.3d at 170, 172 (internal citations omitted).

10

## ARGUMENT

### I.   Plaintiffs fail to state a Section 10(b) claim against the Sunlight Defendants.

Plaintiffs' Second Amended Complaint alleges only that four statements were false or misleading. First, Plaintiffs cite to the statement made on January 25, 2021 by Potere, whereby he allegedly claimed that the cash advance program was "low risk" to Sunlight. SAC ¶ 197 (the "January 25, 2021 Statement"). Second, Plaintiffs cite to a series of statements in the S-4—signed by the Spartan Individual Defendants and made in subsequent filings by Sunlight—stating that Sunlight had "established a robust commercial underwriting and ongoing monitoring process" and that "Sunlight's milestone advance program is generally offered to contractors in Sunlight's top risk tiers which have the strongest commercial risk assessment results." SAC ¶¶ 199–200 (collectively, the "S-4 Statement"). There is no dispute that Sunlight had such a program, and thus Plaintiffs presumably take issue with the characterization of that program as "robust." Third, Plaintiffs cite to Potere's May 16, 2022 statements during Sunlight's Q1 2022 earnings call, where he said that "our contractor advances program supports our contractor partners in their efforts to secure sufficient inventory to meet demand" and that "[i]n the first quarter, [Sunlight] invested an additional $19 million in advances and we'll continue to allocate capital to this program opportunistically to drive profitable volume." SAC ¶¶ 204, 206 (collectively, the "May 16, 2022 Statements"). Fourth, Plaintiffs cite to Yoder's statements made during Sunlight's August 15, 2022 earnings call that Sunlight's losses on the entire cash advance program were "very, very small" and that Sunlight "[did not] expect to take any further one-time charges." SAC ¶ 208–09 (the "August 15, 2022 Statement," and collectively with the above, the "Statements"). Plaintiffs make no allegations regarding a single statement made by Defendant Edinburg, warranting his dismissal from this action without further consideration.

11

As explained more fully below, the statements that were alleged as attributable to the Sunlight Defendants are insufficient to state a claim under Section 10(b). To state a claim for violating Section 10(b) and Rule 10b-5, "a plaintiff must prove (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Pac. Inv. Mgmt. Co. v. Mayer Brown LLP*, 603 F.3d 144, 151 (2d Cir. 2010) (citation omitted).

Plaintiffs have not met this standard, and their Section 10(b) claim fails because (1) the misstatements alleged by Plaintiffs are not actionable, (2) Plaintiffs' allegations as to the S-4 Statement constitute impermissible "puzzle pleading," (3) Plaintiffs' claims rely on impermissible allegations of "fraud by hindsight," (4) Plaintiffs improperly rely on the allegations of confidential witnesses and allegations contained within another lawsuit; (5) Plaintiffs' conclusory allegations of scienter fail both Rule 9(b) and PSLRA standards; and (6) Plaintiffs have not adequately alleged loss causation.

### A.      Plaintiffs fail to allege that the Statements are actionable.

Plaintiffs allege that the Statements were false when made based on nothing more than the CWs' allegations, negative media reports, consumer reviews about Pink and Vision Solar, and allegations from a separate lawsuit. As discussed *infra*, none of these generalized allegations satisfy Rule 9(b) or the PSLRA. But before even addressing those fatal deficiencies in the SAC, the Court can dismiss Plaintiffs' Section 10(b) claim for the simple reason that Plaintiffs have failed to allege an actionable false statement.

#### i.      Plaintiffs fail to allege that the Statements are false.

The gravamen of Plaintiffs' claims is essentially that Sunlight's internal controls and risk assessments were deficient and that as a result, the company was not adequately prepared for the

12

Pink bankruptcy. SAC ¶ 94. In taking this approach, Plaintiffs attempt to shoehorn the business judgment decisions of Sunlight into liability under securities fraud statutes. It is well settled that the statements at issue are not actionable.

As to the January 25, 2021 Statement that the cash advance program was "low risk" to Sunlight (SAC ¶ 191), Plaintiffs allege that this was false because, "[w]hile giving out generous cash advances to contractors *might have been* low risk if Sunlight actually had a vigorous diligence and monitoring process in place, the lack of such process at Sunlight made the cash advance program very risky," *id.* (emphasis in original). However, "low risk" (a statement clearly disclosed to investors) is not the same as "no risk," and the SAC is devoid of particularized allegations demonstrating the falsity of the statement that the program was low risk. Regardless of whether a business practice being "low risk" is even capable of being proven, Plaintiffs' own allegations actually confirm that Sunlight believed the cash advances were "low risk" at the time the statement was made, making it not misleading.

First, Plaintiffs allege in the Second Amended Complaint that Sunlight assigned Pink a risk rating of "3," which they proclaim was meant to suggest that Pink had an "excellent to average" risk assessment. This allegation flatly contradicts their initial allegation in the Amended Complaint that Pink's risk level of 3 indicated "medium commercial credit risk" on Sunlight's 1-5 risk scale. *See* Amended Complaint (ECF No. 34) ¶ 66. Plaintiffs do not even reference the 1-5 risk scale in the Second Amended Complaint, despite having done so in the Amended Complaint. When ruling on a motion to dismiss, and where, as here, "a plaintiff blatantly changes his statement of the facts in order to respond to the defendant's motion to dismiss . . . and directly contradicts the facts set forth in his original complaint, a court is authorized to accept the facts described in the original complaint as true." *Colliton v. Cravath, Swaine & Moore, LLP*, No. 08 Civ

0400(NRB), 2008 WL 4386764, at *6 (S.D.N.Y. Sept. 24, 2008) (internal quotations and citations omitted); *see also, e.g.*, *Kasparov v. Ambit Texas, LLC*, No. 12-CV-3488 (WFK) (JO), 2016 WL 10749156, at *2 (E.D.N.Y. Mar. 10, 2016) ("In an attempt to avoid the Agreement Documents' forum selection provision, Kasparov omitted from the Second Amended Verified Complaint factual allegations he previously made in his prior pleading.  A court has no obligation to accept as true an amended complaint's allegations if they directly contradict facts set forth in a prior pleading."); *Romain v. Capital One, N.A.*, No. 13-CV-3035 (JS)(WDW), 2013 WL 6407731, at *3 (E.D.N.Y. Dec. 9, 2013); *Wallace v. New York City Dept. of Corrections*, No. 95 CV 4404, 1996 WL 586797, at *2 (E.D.N.Y. Oct. 9, 1996).

Plaintiffs' shifting allegations are a plain attempt to conceal a fatal weakness in their allegations, and the Court should focus on Plaintiffs' prior admission that a score of "3" for Pink indicated medium commercial risk.  Specifically, as the Sunlight Defendants argued in their original Motion to Dismiss, a "3" is a middle-tier rating that shows that, at the time of the risk assessment, Sunlight thought that there was a not-insignificant amount of risk attributable to Pink, and that Sunlight believed its 5-tier system adequately flagged higher risk contractors for more stringent review, thereby resulting in an overall lower risk cash advance program.  *See* ECF No. 58 at 10.

Even if the Court were to accept as true Plaintiffs' new contradictory allegations concerning Sunlight's ratings scale, those allegations still do not suggest Potere's "low risk" statement was false or misleading.  Although Plaintiffs apparently believe that this rating was improper, the number "3" on a scale of 1-5 is inherently a middle-tier rating.  Plaintiffs appear to place great emphasis on the fact that a "3" on Sunlight's rating scale could have meant that Sunlight attributed an "excellent" risk assessment to Pink, but under a "3" rating Sunlight could have easily

14

thought of Pink as having "average" credit risk.  Plaintiffs also do not specify *when* Sunlight assigned Pink this rating.  Plaintiffs also detail at length a wide-ranging set of allegations concerning the questionable business practices of Pink and Vision Solar and, in particular, focus on the fact that Sunlight did not disclose their contractors to investors.  SAC ¶¶ 62–88, 190.  But nowhere do Plaintiffs allege that Sunlight received information that Pink and Vision Solar were likely to become insolvent, and the mere fact that Pink subsequently became insolvent is not indicative that Sunlight misrepresented its controls.  *See, e.g.*, *Hou Liu v. Intercept Pharms., Inc.*, No. 17-CV-7371 (LAK), 2020 WL 1489831, at *10 (S.D.N.Y. Mar. 26, 2020) (dismissing claim that defendants misrepresented compliance with a prescription dosage requirement because the mere fact that one doctor overprescribed medicine using defendants' form was not indicative of a systemic issue in defendants' process).  Indeed, it is telling that Plaintiffs cannot point to any loss that Sunlight sustained due to its partnership with Vision Solar.

As to the S-4 Statement—where Plaintiffs appear to focus on Sunlight's assertion regarding its "vigorous contractor diligence and monitoring procedures" (SAC ¶ 199)—Plaintiffs have likewise failed to allege that Sunlight's statements about its internal controls were materially false or misleading.  Rather than allege specific practices that were deficient in monitoring the liquidity of contractors, Plaintiffs ask the Court to simply assume that the whole of Sunlight's internal controls must have been deficient because Sunlight had, by 2019, "remov[ed] measures designed to address potential fraud" and "doubl[ed] down on risky advances to contactors."  SAC ¶ 203.  But allegations that Sunlight's internal processes "*must* have been deficient because they may have failed to detect some weaknesses in its financial reports or disclosures in some instances, are not sufficient."  *In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600, 648 (S.D.N.Y. 2017) (emphasis added).  And it is not even clear that Plaintiffs have

15

made that allegation—rather, Plaintiffs simply ask the Court to hold Sunlight responsible for failing to predict one contractor's eventual bankruptcy, and in doing so, ask the Court to draw an inference in their favor to which they are not permitted.    Without something more specific, Plaintiffs' conclusory allegations about Sunlight's internal controls cannot survive.  *See Arora v. HDFC Bank Ltd.*, No. 20-CV-4140(EK)(JMW), --- F. Supp. 3d ---, 2023 WL 3179533, at *6 (E.D.N.Y. May 1, 2023) ("Conclusory allegations that a company made false or misleading statements that its controls were effective because a later-revealed instance of impropriety indicates otherwise — absent specific allegations about how or why those controls were ineffective — do not state a claim for securities fraud."); *City of Monroe Employees' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*, No. 10-CV-2835, 2011 WL 4357368, at *22 (S.D.N.Y. Sept. 19, 2011) ("[P]laintiffs have not alleged any facts pertaining to the Company's internal structure for financial reporting, much less that [defendant] lacked adequate internal controls."); *In re PetroChina Co. Ltd. Sec. Litig.*, 120 F. Supp. 3d 340, 359 (S.D.N.Y. 2015) (rejecting Section 10(b) claim based on effectiveness certifications because, among other things, the complaint did not allege "how or why PetroChina's internal controls were inadequate").

Plaintiffs appear to take issue with portions of the S-4 that describe processes undertaken in Sunlight's initial diligence and ongoing monitoring of its contractors, and that explain how Sunlight uses the results of such processes.  SAC ¶¶ 199–200.  As explained *infra* Section I.B, these paragraphs amount to impermissible puzzle-pleading—the paragraphs merely block quote large portions of the S-4 and are followed by a single paragraph purporting to assert that the entire block quotes are false.  *See* SAC ¶¶ 199–200, 203.  And, in any event, the Second Amended Complaint does not contain well-pled allegations showing that any quoted statement is false: Plaintiffs dispute the description of the processes used based on statements from Confidential

16

Witnesses who had no involvement in contractor diligence and on allegations of fraud-by-hindsight, neither of which suffice to state a claim. *See infra* Sections I.C–D.

Third, Plaintiffs cite to Potere's May 16, 2022 statements during Sunlight's Q1 2022 earnings call, where he said that "our contractor advances program supports our contractor partners in their efforts to secure sufficient inventory to meet demand" and that "[i]n the first quarter, [Sunlight] invested an additional $19 million in advances and we'll continue to allocate capital to this program opportunistically to drive profitable volume." SAC ¶¶ 204, 206. Plaintiffs concede that Potere did not say anything factually false regarding the cash advance program; rather, Plaintiffs suggest that "[t]he statements [] gave a misleading impression that Sunlight was capitalizing on a business opportunity rather than gambling more and more capital in an attempt to avert a catastrophic outcome." SAC ¶¶ 205, 207. But Plaintiffs have not alleged anything beyond their own conjecture in assuming that that the May 16, 2022 Statements were meant to convey more than their literal meaning—that Sunlight was continuing to operate the cash advance program and doing so in a way that it thought would best maximize profits. "A statement is actionable only if it affirmatively creates an impression of a state of affairs that differs in a material way from the one that actually exists." *Honig v. Hansen*, No. 20 CIV. 5872 (AKH), 2022 WL 1239632, at *4 (S.D.N.Y. Apr. 27, 2022) (Hellerstein, J.), *reconsideration denied*, No. 20 CIV. 5872 (AKH), 2022 WL 2108594 (S.D.N.Y. June 10, 2022) (internal quotation marks and alterations omitted). To the extent that Plaintiffs attempt to hold Sunlight responsible for failing to not *also* disclose the possibility that one of its contractors might at some unknown time in the future become insolvent reflects nothing more than an attempt to impose liability on Sunlight for failing to predict the future.

17

In any event, Sunlight *did* disclose the potential risk of a contractor insolvency.  On

March 22, 2021, Sunlight's S-4, discussed extensively above, stated:

> Sunlight's short-term capital advance program exposes it to potential losses in the event that a contractor fails to fully perform under its agreements with Sunlight *or becomes insolvent* prior to completion of the underlying installation or construction, which losses could have an adverse impact on Sunlight's business, results of operations and financial condition.

*See* Ex. A[7, 8] at 46 (emphasis added).  The S-4 also explained that:

> Management of Sunlight's risks depends, in part, upon the use of analytical and forecasting models . . . . If Sunlight's risk management framework does not effectively identify and control its risks, Sunlight could suffer unexpected losses or be adversely affected, which could have a material adverse effect on its business, results of operations and financial condition.

*Id.* at 41.  And the S-4 made investors fully aware that its contractors could face unknown and

unforeseeable conditions that would strain their businesses:

> The ability of contractors to fully perform or maintain their solvency depends on a number of factors, including, but not limited to, changes in economic conditions, adverse trends or events affecting the solar system and home improvement industries, lack of availability of, and/or access to, materials or labor for the

---

[7] Citations in the form "Ex. __" refer to the documents attached to the Declaration of Jeffrey J. Chapman in Support of the Motion to Dismiss the Second Amended Complaint filed contemporaneously herewith. The Court may "examine [the registration and proxy statements cited by Plaintiffs] together with the allegations contained on the face of the [Second Amended] [C]omplaint" because these documents are "integral to the complaint." *I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*, 936 F.2d 759, 762 (2d Cir. 1991).  Moreover, a court can take judicial notice of "SEC filings even if the plaintiff did not specifically cite them in the complaint," considering them either "for the truth of their contents" (as document filed "under penalty of perjury" with the SEC) or simply to assess the total mix of information available to public stockholders. *See Malin v. XL Cap. Ltd.*, 499 F. Supp. 2d 117, 132–33 (D. Conn. 2007) (collecting authorities), *aff'd*, 312 F. App'x 400 (2d Cir. 2009).

[8] Ex. A is also available at:
https://www.sec.gov/Archives/edgar/data/1821850/000121390021017015/fs42021_spartanacquisition2.htm.

installation or construction of solar systems or home improvements, natural disasters and management and cash flow levels.[9]

*Id.* at 47.  To that end, the same S-4 warned investors precisely that a contractor's bankruptcy could have a material impact on Sunlight's business:

> [I]f the contractor funded by Sunlight declares bankruptcy prior to Sunlight being reimbursed, the capital provider is not likely to fund the loan and reimburse Sunlight. Sunlight could be subject to losses if the consumers borrowing funds from Sunlight under these loans do not pay as and when required.

*Id.* at 47.

In short, through these public representations, Sunlight made clear to investors that the very event that caused the September 28, 2022 stock drop at issue was, unfortunately, always a possibility with rapidly changing economic conditions.  The public disclosures make clear that Sunlight certainly was not hiding any such risk.

Finally, the forward-looking August 15, 2022 Statement that Sunlight "[did not] expect to take any further one-time charges[,]" is not actionable either.  SAC ¶ 209.  Plaintiffs rely only on media reports, customer reviews concerning Pink, and the *Generac* lawsuit to prove their falsity.

---

[9] This statement was modified, in part, in Sunlight's November 19, 2021 10-Q/A filing with the SEC, where Sunlight made minor alterations to reflect increasing costs and issues with the global supply chain:

> The ability of contractors to fully perform or maintain their solvency depends on a number of factors, including, but not limited to, changes in economic conditions, adverse trends or events affecting the solar system and home improvement industries, lack of availability of, and/or access to, as well as increases in the cost of, materials or labor for the installation or construction of solar systems or home improvements, due to global supply chain shortages and the increase in competition for skilled labor, permitting delays, natural disasters and management and cash flow levels.

*See* Ex. B at 81, also available at:
https://www.sec.gov/ix?doc=/Archives/edgar/data/0001821850/000182185021000037/sunl-20210930.htm.

SAC ¶¶ 157–180.   However, nowhere do Plaintiffs explain how these media reports, these customer reviews, or these unsubstantiated allegations from another lawsuit demonstrate that the statement about Sunlight's expectations of future losses was false.   Further, the news articles and *Generac* complaint did not emerge until the spring and summer of 2022, and Sunlight represented only that it reviews its contractors on at least an *annual* basis.   *Id.* ¶¶ 90, 199.   Thus, there is no reason to infer that any review of Pink should have occurred during that relevant time period, or that Sunlight did not, in fact, expect cash advance losses to remain low at that time.   Moreover, as described *infra*, Plaintiffs may not rely on the *Generac* allegations to prove falsity, and they have not alleged that any of the customer reviews or news articles they cite revealed any specific flags about Pink's *liquidity*.[10]

### ii.   Statements that advances were "low risk" or risk management processes were "robust," are inactionable.

"Statements of puffery or optimism are not actionable under § 10(b) if they are too general to cause a reasonable investor to rely upon them."   *Burr v. Equity Bancshares, Inc.*, No. 19-CV-4346 (AJN), 2020 WL 6063558, at *6 (S.D.N.Y. Oct. 14, 2020) (internal quotations and citation omitted).   "Although there is no definitive test to determine how vague a statement must be to qualify as puffery, courts have focused on the imprecision of statements and whether such statements relate to future expectations."   *Id.* (citation omitted).

Here, the January 25, 2021 Statement touting Sunlight's "low risk" cash advance program and the S-4 Statement speaking to Sunlight's "robust" underwriting and monitoring procedures are the sort of "[r]outine statements" that any company "would make to tout its business."   *Id.*

---

[10] In attempting to allege that the Sunlight Defendants knew that all Statements were false when made, Plaintiffs also rely heavily on the CWs' allegations.  For the reasons explained *infra*, none of the CWs' allegations—all of which are assumed to be true—demonstrate the contemporaneous falsity of the Statements.

They are analogous to statements this Court has found "would not reasonably affect investor behavior and so cannot form the basis for a claim under § 10(b)," such as that a company "set the standard for best practices in risk management techniques," that "a corporation's credit quality is 'strong,'" or that "a corporation's risk management processes are 'highly disciplined.'" *Id.*; *see also, e.g.*, *In re Danimer Sci., Inc. Sec. Litig.*, No. 21-CV-02708, 2023 WL 6385642, at *9 (E.D.N.Y. Sept. 30, 2023) ("Defendants' characterization of these relationships as 'strong' or these customers as 'blue-chip' was immaterial puffery that was not materially misleading."), *appeal filed* November 6, 2023, Case No. 23-7674 (2d Cir.).

The January 25, 2021 Statement regarding Sunlight's "low risk" cash advance program reflects nothing more than the company's optimistic outlook. It is the exact kind of statement that courts squarely reject as being beyond the reach of the PSLRA. *See, e.g.*, *Talarico v. Johnson*, No. 4:21-CV-3689, 2023 WL 2618255, at *12 (S.D. Tex. Feb. 7, 2023) ("The generalized, positive statements about the company's competitive strengths, like 'low risk' and 'resilient;' the generalized commitment to improved investor communications; and highlighting future prospects of the test well are not actionable because they are not concrete enough to be a material misrepresentation."), *report and recommendation adopted,* No. CV H: 21-3689, 2023 WL 2616104, at *1 (S.D. Tex. Mar. 21, 2023); *see also In re Citigroup Sec. Litig.*, No. 20 CIV. 9132 (LAP), 2023 WL 2632258, at *14 (S.D.N.Y. Mar. 24, 2023) (similar).

In a similar vein, this statement is one of pure opinion, beyond the reach of the securities fraud laws. "[A] sincere statement of pure opinion is not an 'untrue statement of material fact,' regardless whether an investor can ultimately prove the belief wrong." *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 186 (2015). As a general matter, statements of opinion can only give rise to securities fraud liability where "(1) the speaker did not

21

hold the professed belief, (2) the supporting facts supplied were untrue, or (3) the speaker 'omit[ted] information whose omission ma[de] the statement misleading to a reasonable investor.'" *Shreiber v. Synacor, Inc.*, 832 F. App'x 54, 57 (2d Cir. 2020) (summary order) (citation omitted). Aside from the fact that "low risk" is beyond being verifiably proven, Plaintiffs have not even put forth basic allegations that would be required to hold Sunlight liable for a statement of opinion. Plaintiffs have not alleged that Potere did not believe that the cash advance program was "low risk" when he made the statement, have not alleged any facts that would even give off the most minimal of inferences that the cash advance program was not "low risk" on January 25, 2021, and do not identify any other information that Sunlight could have supplied along with this statement to provide additional information to investors.[11] As discussed below, any suggestion to the contrary is simply an impermissible attempt at pleading fraud by hindsight. *See infra* Section I.C.

Finally, the S-4 Statement regarding Sunlight's "robust" underwriting and monitoring procedures is an even greater example of puffery. As courts have explained, "[g]eneralized statements regarding a company's fiscal discipline and *risk management* amount to no more than inactionable puffery." *In re New York Cmty. Bancorp, Inc., Sec. Litig.*, 448 F. Supp. 2d 466, 480 (E.D.N.Y. 2006) (emphasis added); *see also, e.g.*, *In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 633 (S.D.N.Y. 2005) ("The particular misstatements that plaintiffs allege—generalizations regarding integrity, fiscal discipline and *risk management*—amount to no more than puffery." (emphasis added)). And the Second Circuit has specifically explained that a company's statements

---

[11] Potere's statement is also supported by the loss statistics cited in the S-4 Statement. As Plaintiffs allege in the SAC, the S-4 states that "[i]n 2020, Sunlight made $1.1 billion in short term advances under its contractor advance funding program and in prefunding payments under its prefunding program and did not incur any losses associated with these advances or prefunding payments." SAC ¶ 95. Plaintiffs do not challenge these statistics.

22

that it had "risk management processes [that] are highly disciplined and designed to preserve the integrity of the risk management process" and "set the standard for integrity" were not actionable because they did not "amount to a guarantee that [the company's] choices would prevent failures." *ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 205–06 (2d Cir. 2009) (internal quotations omitted).

Moreover, the word "robust," in particular, is so vague that it is devoid of any factually verifiable meaning, such that it cannot form the basis for an actionable statement.  *See, e.g.*, *W. Palm Beach Firefighters' Pension Fund v. Conagra Brands, Inc.*, 495 F. Supp. 3d 622, 653 (N.D. Ill. 2020) ("Finally, Defendants argue that the statement about 'robust innovation' in Pinnacle's Frozen segment . . . does not clear the puffery bar.  The court agrees that the word 'robust' is vague."), *aff'd sub nom. Nat'l Elevator Indus. Pension Fund v. Conagra Brands, Inc.*, No. 21-1155, 2022 WL 1449184 (7th Cir. May 9, 2022); *City of Sterling Heights Police & Fire Ret. Sys. v. Reckitt Benckiser Grp. PLC*, 587 F. Supp. 3d 56, 93 (S.D.N.Y. 2022) (same); *In re Splash Tech. Holdings, Inc. Sec. Litig.*, 160 F. Supp. 2d 1059, 1077 (N.D. Cal. 2001) (same).  Accordingly, the Section 10(b) claim should be dismissed as to the January 25, 2021 Statement and the S-4 Statement because they are both inactionable puffery.

**iii.    The August 15, 2022 Statement that Sunlight did "not expect to take any further one-time charges" is a forward-looking statement, protected by the PSLRA's safe-harbor provision.**

Plaintiffs fail to offer sufficient support for why the August 15, 2022 Statement made by Yoder that Sunlight "[did not] expect to take any further one-time charges" was false at the time it was made.  SAC ¶ 209.  And, by definition, they cannot do so, because despite Plaintiffs' conclusory allegations to the contrary, this statement comes squarely within the PSLRA's "safe harbor," which makes such forward-looking statements inactionable.  *See* 15 U.S.C. § 77z-2.  A "forward-looking statement" includes "a statement containing a projection of revenues . . . or other

23

financial items," "a statement of the plans and objectives of management for future operations," or "a statement of future economic performance." *Id.* §§ 77z-2(i)(1)(A)-(C). Such statements are not actionable under the PSLRA "if (1) the forward-looking statement is identified and accompanied by meaningful cautionary language, (2) the forward-looking statement is immaterial, or (3) the plaintiff fails to prove that the forward-looking statement was made with actual knowledge that it was false or misleading." *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 245 (2d Cir. 2016) (internal quotations and citation omitted). "[A] forward-looking statement is protected . . . if any of the three prongs applies." *Id.* at 245–46.

Even though Plaintiffs attempt to tie this statement to the paragraphs in the SEC filings setting forth Sunlight's diligence and monitoring procedures, Plaintiffs fail to point to *any* records that Yoder reviewed that would indicate the falsity of this statement at the time it was made. Nor could they, because statements and predictions about future performance—such as that made by Yoder—are "actionable under Section 10(b) or Rule 10b-5" only when "they are worded as guarantees or are supported by specific statements of fact . . . or if the speaker does not genuinely or reasonably believe them." *In re Int'l Bus. Machines Corp. Sec. Litig.*, 163 F.3d 102, 107 (2d Cir. 1998) (citations omitted). Yoder's statement was not worded as a guarantee and there are no allegations to suggest that he did not believe what he said. *See, e.g.*, *PRS v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1059 (9th Cir. 2014); *Fort Worth Emp'rs' Ret. Fund v. Biovail Corp.*, 615 F. Supp. 2d 218, 230 (S.D.N.Y. 2009) (holding that the defendant's "statement of expectation about the FDA's timing . . . merely referred to the historical fact—also not alleged to be false—that the FDA gave [the defendant] a [certain] date for its response to the NDA"). Consequently, the August 15, 2022 Statement falls within the PSLRA safe harbor and is inactionable as a matter of law.

24

**B.      Plaintiffs' allegations as to the S-4 Statement constitute impermissible "puzzle pleading."**

Plaintiffs have engaged in impermissible "puzzle pleading" as to the S-4 Statement by failing to include corresponding adverse facts to demonstrate what it is that makes the S-4 Statement false or misleading.  This practice is impermissible because it leaves the Court "to guess which statements are 'materially false and misleading' *and why*."  *In re FuboTV Inc. Sec. Litig.*, No. 21-CV-01412 (ALC), 2023 WL 2711826, at \*12 (S.D.N.Y. Mar. 30, 2023) (emphasis added).

The citations to SEC filings regarding Sunlight's diligence and monitoring procedures Plaintiffs are nothing more than impermissible, traditional puzzle pleading.  The multi-paragraph statement cited by Plaintiffs includes certain bolded and italicized language, but beyond stating that the emphasis was added, Plaintiffs do not describe the significance of such language:

> ***Upon the engagement of a contractor into Sunlight's network, Sunlight diligences credit bureau data and the contractor's financial and liquidity position, and performs a review of the contractor's reputation, workmanship warranty offered to its customers and other legal documentation and sales tools used by the contractor.  Once onboarded, Sunlight continues to monitor the contractors in its network against these same standards at least annually and, if advisable, more frequently*** . . . Based on Sunlight's diligence findings, Sunlight either accepts or declines to include a contractor in its network.  Contractors that are accepted are categorized into risk tiers that can drive the periodicity of monitoring, the amount of the original issue discounts, or fees, charged to such contractors by Sunlight and, for solar system contractors, the availability of advances and the amount of any advances, if eligible, as well as other key business terms applicable to the contractor's relationship with Sunlight.

> […]

> Sunlight has established a ***robust commercial underwriting and ongoing monitoring process*** to assure that the quality of the work product, solar system construction, ***financial condition*** (to support construction processes and provide post construction warranty support) and ***legal compliance practices*** of the contractors in Sunlight's network.

SAC ¶ 199 (bolding and emphasis in original).

Plaintiffs do not match the lengthy block quote to corresponding allegations. Although the statement refers specifically to the criteria reviewed by Sunlight upon engaging contractors— including "credit bureau data and the contractor's financial and liquidity position, and [] the contractor's reputation, workmanship warranty offered to its customer and other legal documentation and sales tools used by the contractor"—Plaintiffs do not describe any records related to Sunlight's commercial underwriting/monitoring processes or risk assessment procedures at all, much less records demonstrating the statements were false. Plaintiffs only state that "because SPAC mergers allow companies to circumvent traditional underwriting and regulatory scrutiny, SPAC mergers also have the potential to be rife with fraud and other irregularities." SAC ¶ 41. And their allegation that "since 2020, Sunlight did not perform any due diligence at all except reviewing contractors' self-supplied financial statements" (SAC ¶ 94) expresses nothing more than their after-the-fact dissatisfaction with Sunlight's review process, but it does not speak to falsity with regards to any of Sunlight's statements. And it is simply not true—Sunlight *did* conduct on-going monitoring of installers and, in particular for Pink, as Plaintiffs' prior Complaint conceded that Sunlight assigned it a medium commercial risk score, *see* Am. Compl. ¶ 66, and what is more, Sunlight obtained an independent risk assessment of Pink.

But in no way do Plaintiffs tie that statement to any of Sunlight's practices. In Paragraph 92, Plaintiffs cite to another portion of the S-4 using additional block quoting and italicizing, seemingly to bolster their theory of fraud:

> Sunlight maintains a short-term capital advance program with certain contractors that provides such contractors with up-front working capital to pay for certain expenses for installation or the construction of solar systems and home improvements. Such short-term capital advances may be paid to contractors prior to the commencement of such installation or construction, or at specified periods during the installation or construction process. ***The aggregate amount of advances available to a given contractor is based on a risk evaluation and tiering conducted***

26

> ***by Sunlight's commercial risk team that performs contractor underwriting generally, as well as additional oversight and periodic monitoring requirements.***

SAC ¶ 92 (bolding and emphasis in original).

But without even attempting to tie these allegations together into a cohesive theory of liability, Defendants—and the Court—are left without a clear understanding of what Plaintiffs allege makes these statements false, making this the exact type of puzzle pleading that courts squarely reject in securities fraud cases. *See, e.g.*, *Lanigan Grp., Inc. v. Li-Cycle Holdings Corp.*, No. 22CV02222HGRML, 2023 WL 6541884, at *4 (E.D.N.Y. Oct. 6, 2023) ("Plaintiff never identifies with any specificity what portions of those documents or excerpts it takes issue with. Instead, Plaintiff in boilerplate fashion, impermissibly . . . identifies statements throughout the class period, and italicizes them with long block quotes.") (internal quotations and alterations omitted); *Tabor v. Bodisen Biotech, Inc.*, 579 F. Supp. 2d 438, 452–53 (S.D.N.Y. 2008) ("Plaintiffs use of large block quotes from SEC filings and press releases, followed by generalized explanations of how the statements were false or misleading are not sufficient to satisfy the heightened pleading requirements."); *see also, e.g.*, *Constr. Workers Pension Fund-Lake Cnty. & Vicinity v. Navistar Int'l Corp.*, No. 13 C 2111, 2014 WL 3610877, at *5 (N.D. Ill. July 22, 2014) ("Many of the Consolidated Amended Complaint's paragraphs include block quotes, with liberal use of bold and italics, leaving Defendants and the Court to speculate which statements or parts of statements Central States alleges are inaccurate."); *In re Splash Tech. Holdings, Inc. Sec. Litig.*, 160 F. Supp. 2d 1059, 1074–75 (N.D. Cal. 2001) (same).  The result should be no different here, with dismissal being the appropriate resolution to Plaintiffs' "puzzle pleading" for the S-4 Statement.

27

**C.      Plaintiffs' Section 10(b) claim relies on impermissible allegations of "fraud by hindsight."**

"To determine whether a plaintiff has specifically alleged defendants' knowledge of facts or access to information contradicting their public statements, Second Circuit cases uniformly rely on allegations that [1] *specific* contradictory information was available to the defendants [2] *at the same time* they made their misleading statements." *In re Garrett Motion Inc. Sec. Litig.*, No. 1:20-CV-07992 (JLR), 2023 WL 2744029, at *11 (S.D.N.Y. Mar. 31, 2023) (citation omitted), *appeal filed* April 20, 2023, Case No. 23-668 (2d Cir.).

Here, Plaintiffs assert no non-conclusory fact that occurred at or before the time of the Statements to show that the makers of those Statements (Potere, as to the January 25, 2021 statement, and Yoder, as to the August 15, 2022 Statement, and nothing as to Edinburg) knew they were false or misleading when made, as required. *See In re Manulife Fin. Cop. Sec. Litig.*, 276 F.R.D. 87, 99 (S.D.N.Y. 2011) (dismissing Section 10(b) claim as to certain statements because plaintiff "fail[ed] to include any explanation about why the[] statements were misleading when made"). Rather, Plaintiffs seek to demonstrate that Defendants knew these statements were false by pointing to events that occurred well after the statements were made. Indeed, in the "The Risks Concealed By Defendants' False Statements Materializes" section of the SAC, Plaintiffs note nothing more than Sunlight's September 28, 2022 statement regarding one of its contractors, Potere's later confirmation that the contractor was Pink, and the fact that Sunlight had noted in its 10-K that it had written off $41.5 million of contractor advances. SAC ¶¶ 213–16.

The Second Circuit has long rejected this precise tactic as "fraud by hindsight." *In re Manulife*, 276 F.R.D. at 99 (citing *Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co., Inc.*, 32 F.3d 697, 703 (2d Cir. 1994)). For example, in *In re Manulife*, the plaintiffs claimed that individual defendants made false and misleading statements about risk management strategies employed by

28

Manulife in annual reports, press releases, and analyst calls, all prior to November 2008. *Id.* The plaintiffs then alleged that such statements were false when the "truth was revealed" between November 2008 and March 2009. *Id.* at 92, 95. Concluding that the alleged misstatements were not actionable, the court explained that plaintiffs "fail[ed] to include any explanation about why these statements were misleading when made." *Id.* at 99. The only proof that the statements in question were false were the disclosures between November 2008 and March 2009—"fraud by hindsight." *Id.*; *see also Zech Capital LLC v. Ernst & Young Hua Ming*, 636 F. App'x 582, 585 (2d Cir. 2016), *as amended* (Jan. 28, 2016); *In re Bank of Am. Corp. Sec., Derivative, & Employee Ret. Income Sec. Act (ERISA) Litig.*, No. 09 CIV. 5411 PKC, 2012 WL 1353523, at *6 (S.D.N.Y. Apr. 12, 2012).

Much like the *In re Manulife* plaintiffs, here Plaintiffs do not make any allegation meeting Rule 9(b) or the PSLRA that the Sunlight Defendants did not actually believe the truth of the Statements when they were made. Plaintiffs rely primarily on Sunlight's September 28, 2022 announcement of Pink's financial troubles to prove the falsity of the Statements that predated the announcement. SAC ¶¶ 102–05. But the fact that a company subsequently had a bankruptcy filing does not demonstrate that earlier statements regarding risk were false when made. This Court has previously dismissed as "fraud by hindsight" Section 10(b) claims that rely on an impending bankruptcy to prove that statement made prior to the bankruptcy were false when made. *See, e.g.*, *Hutchinson v. Perez*, No. 12 CIV. 1073 HB, 2013 WL 1775374, at *3 (S.D.N.Y. Apr. 25, 2013), *aff'd sub nom. Jones v. Perez*, 550 F. App'x 24 (2d Cir. 2013) (finding that a statement that a company had "no intention of filing for bankruptcy" was not false even though, at the time of the statement, the company was having restructuring conversations with a law firm known for its bankruptcy expertise, where confidential witness statements relied on by the plaintiff did not

indicate that the company "had specific *present* plans to file for bankruptcy, or that Defendants had knowledge of any such plans at the time they made their statements").

Plaintiffs make no allegations that Sunlight was aware of Pink's liquidity crisis—or that such information was even available in records reviewed by Sunlight as part of its onboarding and annual diligence procedures—at the time the Statements were made.  In fact, the last of the repeated representation that Sunlight had a "robust commercial underwriting and monitoring process" was made on April 22, 2022 (SAC ¶ 202), well before the September 28, 2022 announcement, and also well before Pink's August 1, 2022 lawsuit against Generac.  Prior to the August 1, 2022 *Generac* lawsuit, Plaintiffs allege only that there were various customer complaints about Pink in the news and that customers had complained about Pink on the internet.  But neither of these render false the Sunlight Defendants' statements as to the "low risk" and "robust" nature of its cash advance program generally or with respect to Pink.  Even as to the August 15, 2022 Statement that Sunlight "[did not] expect to take any further one-time charges[,]" Plaintiffs have not alleged, and there is no reason to infer, that Sunlight would have or should have seen the August 1, 2022 lawsuit at that time, as Sunlight represented in the Statements only that it engages in "annual" monitoring of its installers.  SAC ¶¶ 90, 199.  And, even had Sunlight been aware of the allegations, they are just that: *allegations* that do not speak to any suggestion that Sunlight did not believe it would not be able to recoup advances made to Pink.  As discussed *infra*, there is no reason for anyone to give credit to or rely on allegations in an unresolved lawsuit.  Thus, despite Plaintiffs' dramatic assertions, Sunlight's September 2022 announcement regarding Pink's bankruptcy did not reveal that Sunlight's previous risk assessment of Pink was false, or that Sunlight did not in fact have robust assessment and monitoring procedures for its installers.

Accordingly, Plaintiffs' Section 10(b) claim should be dismissed as to the Sunlight Defendants for failure to allege more than fraud by hindsight.[12]

    **D.**      **The Court must disregard the Confidential Witnesses' allegations.**

        **i.**      **The Confidential Witness statements are not relevant to the theory underlying Plaintiffs' claims, nor do they support a strong inference of scienter.**

Plaintiffs attempt to rely almost entirely on confidential witnesses to support the falsity of the Statements and scienter. The Court may rely on information from confidential witnesses when resolving a motion to dismiss under the PSLRA "provided [the confidential witnesses] are described . . . with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged." *Novak v. Kasaks*, 216 F.3d 300, 314 (2d Cir. 2000). However, confidential witness allegations, as a general matter, "must be discounted" because "[i]t is hard to see how information from anonymous sources could be deemed 'compelling' or how [the Court] could take account of plausible opposing inferences. Perhaps these confidential sources have axes to grind. Perhaps they are lying. Perhaps they don't even exist." *In re MRU Holdings Sec. Litig*, 769 F. Supp. 2d 500, 516 (S.D.N.Y. 2011) (quoting *Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 756–57 (7th Cir. 2007)). Further, it is well-settled that confidential witness allegations "cannot be used to 'merely parrot [] . . . conclusory

---

[12] Plaintiffs' Second Amended Complaint also ignores the reality that between 2021 and 2022, United States monetary policy underwent a dramatic shift, with interest rates soaring from near zero to the highest levels seen in decades. *See* Ex. C, also available at https://fred.stlouisfed.org/series/DFEDTARU (reflecting significant increases in Federal Funds Rate from March 2022 to the present). On a motion to dismiss, the Court may take judicial notice of certain matters of public record, such as Federal Reserve records, without converting the motion into one for summary judgment. *Holland v. JPMorgan Chase Bank, N.A.*, No. 19 CIV. 00233 (PAE), 2019 WL 4054834, at *3, 5 (S.D.N.Y. Aug. 28, 2019). This rapid increase in the cost of borrowing brought about liquidity issues that would have been unforeseeable just a year earlier. Plaintiffs' attempt to brush over what should be obvious from its allegations—that the events at issue was a function of the changing interest rate environment, not a failure of Sunlight's internal controls or, even more unlikely, the alleged disclosures about those controls.

31

allegations contained in the complaint.'" *Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 590 (S.D.N.Y. 2011) (citation omitted).

Instead, confidential witness allegations must "show that [the] individual defendants actually possessed the knowledge highlighting the falsity of public statements," *id.* at 591, and, thus, "allegations based on confidential sources [are] insufficient to establish scienter where there [are] no facts to establish that the confidential sources would have known what information was communicated to senior executives," *In re Am. Express Co. Sec. Litig.*, No. 02 Civ. 5533(WHP), 2008 WL 4501928, at *8 (S.D.N.Y. Sept. 26, 2008), *aff'd sub nom. Slayton v. Am. Exp. Co.*, 604 F.3d 758 (2d Cir. 2010) (citing *In re Elan Corp. Secs. Litig.*, 543 F.Supp.2d 187, 219 (S.D.N.Y. 2008)).

Whether considered separately or together, Plaintiffs' confidential witness allegations fail to meet this high bar for reliance on confidential witnesses, lack the requisite particularity to support an inference of scienter, and generally overstate or outright falsely assert certain levels of responsibility that each CW would have had at Sunlight. Indeed, the SAC only generally alleges that CW1 "managed all aspects of Sunlight's relationships with solar systems contractors" (SAC ¶ 54), that CW2 "was responsible for finding contractors to work with Sunlight and growing the accounts" (SAC ¶ 144)[13], that CW3 "managed the relationship with a number of different solar partners/contractors" and then later "led the team which performed such functions" (SAC ¶ 149)[14],

---

[13] CW2 was a mid-level manager who worked exclusively in Sunlight's sales department, which had no involvement in risk assessment. She was eventually terminated for performance reasons and would have had no insight into Sunlight's underwriting practices.

[14] CW3 was an associate who helped resolve customer complaints but was not involved in strategic conversations about contractor management or underwriting due to his junior position at the company. He was also terminated by Sunlight for cause.

and that CW4 "managed relationships with solar installers" (SAC ¶ 153)[15]. These generalized job descriptions do little more than describe the basic features of Sunlight's business, shedding little light, if any, as to what level of authority the CWs had in their positions and what specific knowledge, if any, of Sunlight's finances—or those of Sunlight's contractors—they were actually privy too. The job descriptions thus fall far short of the particularity needed to substantiate these witnesses' knowledge of any alleged fraud. *See Novak*, 216 F.3d at 314. Moreover, based on the allegations of the SAC, none of the CWs had senior positions or were even part of the team responsible for the underwriting of contractors such as Pink. And Plaintiffs acknowledge that underwriting risks were escalated to Sunlight's "Commercial Risk team." SAC ¶ 152. Thus, to the extent that Plaintiffs attempt to use the CWs to support their allegation that "Sunlight did not even conduct any reputation checks," (SAC ¶ 31) it must be discarded entirely because these CWs were not in a position to know whether or not such checks were performed based on their job descriptions alone. And Plaintiffs have not alleged that any of the CWs ever communicated with Potere, Edinburg, or Yoder, undercutting any suggestion that the CWs could speak to the purported falsity of the Sunlight Individual Defendants' statements or their state of mind when making any alleged statement. *See Malin v. XL Capital Ltd.*, 499 F. Supp. 2d 117, 141 (D. Conn. 2007) ("[N]one of the CWs present any evidence that they communicated any of the alleged problems . . . to any of the Individual Defendants . . . ."). Ultimately, whatever actual knowledge the CWs

---

[15] CW4 was an associate in the home improvement department at Sunlight and would have had no insight into Pink or Vision Solar.

33

might have possessed is far removed from the core allegations underlying the SAC, and they would have no basis to comment on the issues in this case.[16]

Plaintiffs allege that "CW1 described Sunlight's . . . due diligence on contractors as 'lackadaisical,'" and merely restate Plaintiffs' earlier conclusory allegation that Sunlight failed to continuously monitor the contractors within its network. SAC ¶ 58.[17]  Plaintiffs allege that CW2 stated that "rather than being judicious about which contractors to work with, Sunlight was practically begging and 'buy[ing]' contractors." *Id.* ¶ 145.  Plaintiffs allege that CW3 was ignored by Sunlight's Commercial Risk team despite expressing his concerns that Vision Solar was "a terrible installer and that they were going to put [Sunlight] in a bad position." *Id.* ¶ 152.  And Plaintiffs allege that CW4 stated that Sunlight would provide advance payments to contractors before they were approved for loans, that Pink was one of these contractors, and that "[s]ome [contractors] didn't pay [Sunlight] back. Some would disappear because they have already gotten their money." *Id.* ¶ 155.[18]  These statements bear little, if any, relevance to Plaintiffs' allegations that Sunlight was misleading as to its due diligence *regarding Pink's liquidity*—the crux of Plaintiffs' claims.  Further, these CW allegations are "either undated or pegged to an indefinite

---

[16] Even if the CWs' allegations could pass these threshold deficiencies and were accepted as true, whatever the CWs might have known generally about Sunlight's contractors is ultimately irrelevant to the alleged loss-causing event: *Pink's bankruptcy*.

[17] CW1 also falsely asserts that Sunlight's large contractors would receive cash advances "amounting to almost all, if not all, of the expected price before even beginning the installation," (SAC ¶ 60), but Sunlight's cash advance program permitted contractors to receive payments only when they achieved certain project milestones.  CW1 also omits entirely that Sunlight monitored complaints made of its contractors and suspended them for excessive complaints.

[18] CW4's allegations are also plainly false.  Sunlight's cash advance program permitted contractors to receive advancements only after achieving each of two different milestones, both of which came *after* a loan had been approved.  *See also supra* n.17.

34

time period[,]" thus "render[ing] the task of matching CW allegations to contrary public statements all but impossible, since allegations about an unspecified time period cannot supply specific contradictory facts available to Defendants *at the time* of an alleged misstatement." *In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 352 (S.D.N.Y. 2011) (emphasis in original). The CWs' generic observations—most of which appear to be equally applicable to all of Sunlight's contractors—do not provide facts, nor even a remote indication, that any Defendant operated with the requisite scienter. *See Local No. 38 IBEW v. Am. Exp. Co.*, 724 F. Supp. 2d 447, 461 (S.D.N.Y. 2010), *aff'd*, 430 F. App'x 63 (2d Cir. 2011) (holding that confidential witness allegations were deficient where they failed to establish "what specific contradictory information the [defendants] received or when they received it"); *see also In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 581–82 (S.D.N.Y. 2014).

Even if the general allegations by CWs 1, 2, and 3 could be read to be about Pink's liquidity (they cannot), they are simply expression of opinions, not fact. Courts "may disregard confidential witness statements that are speculative, lack specificity, or are not based on personal knowledge." *Gammel v. Hewlett-Packard Co.*, 905 F. Supp. 2d 1052, 1073 (C.D. Cal. 2012); *see also, e.g.*, *In re Career Educ. Corp. Secs. Litig.*, No. 03 C 8884, 2006 WL 999988, at *3 (N.D. Ill. Mar. 28, 2006) ("[S]tatements made by . . . confidential witnesses . . . suffer from [] fatal defects . . . : they do not allege with sufficient specificity when the allegedly improper activities occurred, how the witnesses learned of these activities or had access to this information, or, even ignoring these other deficiencies, how these activities affected [defendants' allegedly fraudulent] statements . . . ."); *In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262, 359–61 (D.N.J. 2007) (explaining that "personal opinions void of specific details regarding the basis for [the CW's] personal knowledge" do not reflect on the defendant's intent). And, as to CW4, her allegations regarding "some" contractors

35

is so vague and undefined that it, by definition, lacks the particularity needed to add any meaningful support to Plaintiffs' claims. *See, e.g.*, *Schiro v. Cemex, S.A.B. de C.V.*, 396 F. Supp. 3d 283, 305 (S.D.N.Y. 2019) (rejecting CW allegations that were "so vague as to be meaningless").

Plaintiffs appear to acknowledge the SAC's shortcomings in this regard, and attempt to cure them by mentioning that CWs 2-4 did have specific knowledge about Sunlight's relationship with Vision Solar. SAC ¶¶ 144–55. But whatever may have come of Sunlight's relationship with Vision Solar is not relevant to Sunlight's relationship *with Pink*, the contractor whose insolvency, in Plaintiffs' view, triggered the stock drop and damages at issue. SAC ¶¶ 213–15. Plaintiffs do not allege that Sunlight's stock dropped as a result of anything having to do with Vision Solar. Plaintiffs' claims all emanate from Sunlight's alleged failure to properly monitor Pink. *Id.* ¶¶ 157–80. That the CW allegations shed no light as to Pink's liquidity specifically demonstrates, at a minimum, that they fail to meet the particularity requirements necessary for them to be considered by the Court. *See, e.g.*, *In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262, 359–60 (D.N.J. 2007). But the Court need not even address that issue, because absent the CWs having anything to say about Pink's liquidity, their allegations are plainly irrelevant to Plaintiffs' claims.[19]

---

[19] Additionally, the CW allegations must be dismissed because they do not in any way reflect that any other individuals working at Sunlight or who made statements on behalf of Sunlight shared the CWs' opinions. *See Norfolk Cnty. Ret. Sys. v. Solazyme, Inc*., No. 15-CV-02938-HSG, 2018 WL 3126393, at *5 (N.D. Cal. June 26, 2018) ("These opinions, formed with the benefit of hindsight, do not establish that [defendant], or anyone making statements on behalf of Solazyme, shared the confidential witnesses' opinions on May 5, 2014."); *Firefighters Pension & Relief Fund of the City of New Orleans v. Bulmahn*, No. CIV.A. 13-3935, 2015 WL 4879217, at *10 (E.D. La. Aug. 14, 2015) (disregarding confidential witness statements, where the plaintiff did not "plead any facts supporting an inference that defendants shared in the confidential witness's view").

### ii. CW1's allegations must be discounted because he was not employed by Sunlight for all of the relevant time period.

Even assuming CW1's alleged assertion regarding Sunlight's "lackadaisical" due diligence in vetting contractors was pled in sufficient detail, it could at best apply to only his tenure at Sunlight, which, as Plaintiffs allege, ended in March 2022. SAC ¶ 54. Thus, CW1 could not have had any awareness of many of Pink's alleged "red flags" that Plaintiffs attempt to identify, which occurred almost entirely after CW1 ended his employment. *See id.* ¶¶ 161–67.

Moreover, whatever knowledge CW1 might have possessed predates the August 15, 2022 Statement that Sunlight "[did not] expect to take any further one-time charges." *Id.* ¶ 209. Courts routinely reject confidential witness testimony when it purports to speak to issues that did not occur during the class period nor during the witness's period of employment with the defendant. *See Long Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774, 799 (S.D.N.Y. 2020) ("[S]tatements of CWs that cannot situate in time relevant occurrences are sometimes disregarded because they cannot establish that the challenged statements were knowingly false when made."); *see also, e.g.*, *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 580–81 (S.D.N.Y. 2014), *aff'd*, 604 F. App'x 62 (2d Cir. 2015); *see also Malin v. XL Capital Ltd.*, 499 F. Supp. 2d 117, 141–42 (D. Conn. 2007), *aff'd*, 312 F. App'x 400 (2d Cir. 2009). This case is no different, and CW1's allegations should be disregarded and do not support Plaintiffs' claims.[20]

### E. The Court must disregard the allegations regarding Pink Energy from the *Generac* lawsuit.

Plaintiffs have also improperly relied on allegations in a complaint from an unrelated lawsuit, *Power Home Solar, LLC d/b/a Pink Energy v. Generac Power Systems, Inc.*, as "facts"

---

[20] As pointed out *supra* n.17, CW1's commentary is also factually incorrect, underscoring that CW1 was a junior-level employee who would not have been privy to certain information regarding the cash advance program.

supporting the alleged misrepresentations.  SAC ¶ 169.  The *Generac* lawsuit has been stayed since October 2022 without ultimate resolution.  *See Generac*, Case No. 6:22CV000043-NKM (W.D. Va.), Dkt. 39.  And "Second Circuit case law is clear that paragraphs in a complaint that are either based on, or rely on, complaints in other actions that have been dismissed, settled, or otherwise not resolved, are, as a matter of law, immaterial."  *RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 403 (S.D.N.Y. 2009), *aff'd*, 387 F. App'x 72 (2d Cir. 2010); *see also, e.g.*, *Zhou v. NextCure, Inc.*, No. 20-CV-07772-LTS-RWL, 2023 WL 4493541, at *11 (S.D.N.Y. July 12, 2023) ("[R]ecitations of unproven allegations made in other complaints do not, on their own, constitute factual allegations sufficient to survive a motion to dismiss.").

Courts that have considered this issue have held uniformly that "references to preliminary steps in litigations and administrative proceedings that did not result in an adjudication on the merits or legal or permissible findings of fact are, as a matter of law, immaterial."  *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 218 F.R.D. 76, 78 (S.D.N.Y. 2003); *see also, e.g.*, *Francois v. Victory Auto Grp. LLC*, No. 22-CV-4447 (JSR), 2023 WL 373250, at *5 (S.D.N.Y. Jan. 24, 2023) (striking allegations referring to another lawsuit); *Li v. China Merchants Bank Co.*, No. 22 CIV. 9309 (KPF), 2023 WL 146853, at *2 (S.D.N.Y. Jan. 6, 2023) (same), *opinion vacated in part on other grounds*, No. 22 CIV. 9309 (KPF), 2023 WL 2955293 (S.D.N.Y. Apr. 14, 2023); *Low v. Robb*, No. 11-CV-2321 JPO, 2012 WL 173472, at *9 (S.D.N.Y. Jan. 20, 2012) (holding that "references to unrelated disputes and lawsuits . . . must be stricken from the Complaint").  Consistent with this uncontroversial standard, Plaintiffs even refer to the allegations in the *Generac* lawsuit as "developments" rather than facts.  SAC ¶ 181.  Because the *Generac* lawsuit is unresolved, this Court must disregard any allegations concerning the lawsuit that Plaintiffs seek to use in support of their claims.

38

**F.    Plaintiffs' conclusory allegations of scienter do not meet the demanding Rule 9(b) and PSLRA standards.**

None of Plaintiffs' allegations are sufficient to support a strong inference of scienter as to any Defendant.  The scienter requirement demands that, with respect to each Statement, Plaintiffs "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind," which, here, means that the Defendants intended "to deceive, manipulate, or defraud."  *See* 15 U.S.C. § 78u-4(b)(2)(A); *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007).  "To qualify as 'strong' within the intendment of [the PSLRA] . . . an inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent."  *Tellabs*, 551 U.S. at 314.  "A complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged."  *Id.* at 324.

Plaintiffs attempt to prove scienter as to the January 25, 2021 Statement and the S-4 Statement—which were made primarily in 2021, with the exception of a single SEC Prospectus filed in April 2022—with allegations that "[b]y spring 2022, there were widespread media reports of Pink['s] . . . deceptive marketing practices and . . . shoddy workmanship."  SAC ¶ 157. However, these media reports occurred well after both of these Statements were first made, and, thus, do nothing to show the Sunlight Defendants' alleged fraudulent intent in making them.  The same is true as to Sunlight's September 28, 2022 announcement of Pink's impending bankruptcy and corresponding disclosure that it would be re-underwriting contract advances going forward, which Plaintiffs characterize as evidence of the Sunlight Defendants' belief that "there was a systemic problem with how Sunlight was performing due diligence and risk evaluation on contractors."  *Id.* ¶ 219.  However, these allegations do not support an inference of scienter because

39

a plaintiff may not simply rely on fraud-by-hindsight allegations of scienter. *See, e.g.*, *In re Plug Power, Inc. Sec. Litig.*, No. 21 CIV. 2004 (ER), 2022 WL 4631892, at \*17 (S.D.N.Y. Sept. 29, 2022).[21]

### G. Plaintiffs have failed to plead loss causation.

In order to demonstrate loss causation, Plaintiffs must allege that the purported fraudulent statement or omission was the cause of their claimed loss. *See Lentell v. Merrill Lynch*, 396 F.3d 161, 173 (2d Cir. 2005); *see also Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 95 (2d Cir. 2001). Although at the motion to dismiss stage, Plaintiffs need not "rule out other contributing factors or alternative causal explanations," they still must "allege enough facts regarding their loss to support the inference that they would have been spared all or an ascertainable portion of that loss absent the fraud." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 189 (2d Cir. 2015) (internal quotation marks omitted).

The Statements at issue here concern Sunlight's internal controls—*i.e.*, its risk assessment, diligence, and monitoring procedures. SAC ¶ 90–94. Conversely, Plaintiffs' alleged losses were caused by the decline in Sunlight's stock price that followed the September 28, 2022 announcement that Sunlight was taking an impairment charge due to Pink's liquidity issues and that it was re-underwriting all of its contractor partners' advances. *Id.* ¶¶ 213–16. The statements that Plaintiffs allege were false and misleading have nothing to do with, and certainly no causal

---

[21] Moreover, "drawing an inference [of scienter] from [Sunlight's decision to re-underwrite contracts going forward] would run afoul Federal Rule of Evidence 407, which provides that evidence of subsequent remedial measures is not admissible to show a defendant's liability." *In re Boeing Co. Aircraft Sec. Litig.*, No. 19-cv-02394, 2022 WL 3595058, at \*11 (N.D. Ill. Aug. 23, 2022) (granting in part motion to dismiss securities fraud claims); *see also In re Longtop Fin. Techs. Ltd. Sec. Litig.*, 939 F. Supp. 2d 360, 388 n.213 (S.D.N.Y. 2013) ("I further note [in granting motion to dismiss] that drawing an adverse inference [of scienter] from DTTC's attempts to strengthen Longtop's financial controls would be inconsistent with the policy animating Federal Rule of Evidence 407, which prohibits using subsequent remedial measures as evidence of liability.").

connection to, the actual cause of their damages—the disclosure concerning the impairment charge stemming from the Pink liquidity concerns.

Plaintiffs seemingly attempt to allege that Sunlight's internal controls failed to see Pink's bankruptcy coming, a claim that escapes all logic and would subsume the element of loss causation into the element of misstatement. Sunlight's announcement of *Pink*'s impending bankruptcy was not within the "zone of risk" of statements regarding *Sunlight*'s internal controls, as required to prove loss causation. *See Lattanzio v. Deloitte & Touche LLP*, 476 F.3d 147, 157 (2d Cir. 2007). In other words, the Sunlight stock drop was not caused by any corrective statement regarding the alleged misrepresentations—it was caused by another entity's liquidity issues. Accordingly, the Section 10(b) claim should be dismissed for failure to allege loss causation. *See id.* (rejecting argument that Warnaco Group's bankruptcy was proximately caused by Deloitte's misstatements in financial filings, explaining that the plaintiffs "failed to allege a sufficient connection between Deloitte's misstatements and the losses suffered as a result of Warnaco's bankruptcy," and that to hold otherwise would be to "completely subsume[]" loss causation into the element of misstatement); *see also In re Cyberonics Inc. Sec. Litig.*, No. CIV.A. H-05-2121, 2006 WL 2050696, at *11 (S.D. Tex. July 20, 2006) (declining to find loss causation where the alleged losses "followed events and statements *by entities other than Defendants*," thus rejecting the plaintiffs' argument that the events and statement of other entities "exposed Defendants' fraudulent conduct and pattern of misrepresentation" (emphasis added)).

Throughout the SAC Plaintiffs emphasize the alleged negative business reputations and poor customer reviews of Pink and Vision Solar. But those allegations—even if true—have no relevance to a causation analysis, and Plaintiffs attempt to downplay what it is obvious from their own allegations—that Sunlight was an emerging growth company that sought to execute on an

41

ambitious expansion plan but struggled in the wake of an unprecedented rise in interest rates that nobody could have foreseen in 2021 or even early 2022. In retrospect, some of Sunlight's business decisions might not have been ideal—but that does not mean that they *caused* the drop in Sunlight's stock price on September 28, 2022. Plaintiffs' theory appears to suggest that Sunlight should be punished under the securities fraud statutes because it did business with unpopular companies and did not anticipate the recent interest rate environment. But the securities fraud laws simply do not reach that kind of conduct, and even if it were true here (and Sunlight does not concede that point), it is ultimately irrelevant to the causation issue. *See Rothman v. Gregor*, 220 F.3d 81, 90 (2d Cir. 2000) ("Generally, poor business judgment is not actionable under section 10(b) and Rule 10b–5."); *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 53 (2d Cir. 1995) ("[D]efendants' lack of clairvoyance simply does not constitute securities fraud."); *In re EDAP TMS S.A. Sec. Litig.*, No. 14 CIV. 6069 LGS, 2015 WL 5326166, at *8 (S.D.N.Y. Sept. 14, 2015) ("Corporate officials need not be clairvoyant; they are only responsible for revealing those material facts reasonably available to them."); *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 562 (S.D.N.Y. 2014), *aff'd*, 604 F. App'x 62 (2d Cir. 2015) ("This narrative requires the Court to stretch allegations of, at most, corporate mismanagement into actionable federal securities fraud. This is not the law."); *In re Sierra Wireless, Inc. Sec. Litig.*, 482 F. Supp. 2d 365, 379 (S.D.N.Y. 2007) ("Accepting all of this as true, it is possible that Sierra's decision to develop the Voq was ill-advised, but bad business decisions are not actionable under the securities laws.").

## II.    Plaintiffs fail to state a Section 10(b) claim against the Sunlight Individual Defendants.

Even if Plaintiffs could state a Section 10(b) claim against Sunlight, the Court would still be required to dismiss the Sunlight Individual Defendants. For the reasons stated above, Plaintiffs fail to allege an actionable statement against any Defendant, much less any of the Sunlight

42

Individual Defendants, and do not even attempt to allege any false statements made by Edinburg. The same analysis regarding the deficient loss causation allegations also applies to the Sunlight Individual Defendants. But two additional reasons necessitate dismissal of the Sunlight Individual Defendants. First, Plaintiffs cannot utilize the Sunlight Individual Defendants' corporate positions as a basis for alleging they each possessed scienter. Second, Plaintiffs improperly use "group pleading" in an attempt to establish collective scienter for the Sunlight Individual Defendants.

### A.    The Sunlight Individual Defendants' corporate positions do not establish scienter nor do they impose a duty to investigate.

"[T]o establish an inference of scienter, Plaintiff[s] must do more than allege that the Individual Defendants had or should have had knowledge of certain facts contrary to their public statements simply by virtue of their high-level positions." *See Lipow v. Net1 UEPS Techs., Inc.*, 131 F. Supp. 3d 144, 163 (S.D.N.Y. 2015); *see also In re Nokia Oyj (Nokia Corp.) Sec. Litig.*, 423 F. Supp. 2d 364, 406 (S.D.N.Y. 2006). Indeed, "[c]ourts in this Circuit have long held that accusations founded on nothing more than a defendant's corporate position are entitled to no weight." *City of Brockton Ret. Sys. v. Avon Prod., Inc.*, No. 11 Civ. 4665 (PGG), 2014 WL 4832321, at *19 (S.D.N.Y. Sept. 29, 2014).

Plaintiffs attempt to assign the requisite scienter to Potere by alleging that, "[a]ccording to CW2, all cash advances to contractors had to go through Defendant Potere for final approval," and that "Potere was aware of what kind of diligence was done on each contractor as well as the justification for each contractor's assigned risk tier." SAC ¶ 217. However, as discussed *supra*, the CWs' allegations hold no weight, including as to establishing scienter. Even so, this allegation is still insufficient to prove Potere held the requisite scienter. *See In re Anadarko Petroleum Corp. Class Action Litig.*, 957 F. Supp. 2d 806, 825 (S.D. Tex. 2013) (noting that information on the level to which certain diligence or risk assessment was performed "is unlikely to have reached the

43

top ranks of the organization prior to any event which proved the lack of [diligence] foolhardy" and that "it cannot be presumed that . . . top executives knew the most granular details regarding operations within those business segments"). Plaintiffs further allege that Potere "believed there was a systematic problem with how Sunlight was performing due diligence and risk evaluation on contractors" because, following Pink's default, "Potere said Sunlight would 're-underwrite' all cash advances to *all* contractors." SAC ¶ 219. But as discussed *supra*, this allegation is impermissible fraud by hindsight, and insufficient to establish scienter.

As to Edinburg, Plaintiffs do not include *any* allegations in the SAC that he made any statements at all, let alone any misstatements made with scienter. Plaintiffs' allegations that he signed an SEC disclosure and attended a conference call (SAC ¶¶ 197, 202(d), 202(e)) are plainly insufficient to support scienter. *See In re Molycorp, Inc. Sec. Litig.*, No. 13–cv–5697 (PAC), 2015 WL 1097355, at *12 (S.D.N.Y. Mar. 12, 2015) ("[I]n the absence of more particularized allegations of scienter, that certain Defendants signed or certified SEC disclosures is insufficient to support a finding of scienter."); *Bozsi Ltd. P'ship v. Lynott*, 676 F. Supp. 505, 510 (S.D.N.Y. 1987) (finding attendance at a meeting insufficient to establish scienter where "[n]owhere [in the complaint] is the date, time, place, *or nature of the partner's participation*, if any, described" (emphasis added)). Nothing more is needed to dismiss Edinburg from this action.

With respect to Yoder, Plaintiffs allege that his comments that the company did not expect to take further one-time charges with respect to Pink were made with scienter because he *should have* known of Pink's impending bankruptcy. SAC ¶ 210. But Plaintiffs cannot satisfy the scienter requirement by alleging that Yoder was, at most, negligent. *See New England Carpenters Guaranteed Annuity & Pension Funds v. DeCarlo*, 80 F.4th 158, 178 (2d Cir. 2023) ("Negligence, even in a 'heightened form,' is not sufficient to allege scienter."); *S.E.C. v. Obus*, 693 F.3d 276,

44

286 (2d Cir. 2012) (same). Plaintiffs allege nothing to suggest that Yoder actually knew that further one-time charges would be incurred, pointing instead just to the same repeated allegations that Pink had a bad reputation, which bears no relevance to what Plaintiffs must prove—that Yoder in fact *knew* that Pink's bankruptcy was imminent and turned a blind eye to it. Additionally, in Paragraph 220 of the SAC, Plaintiffs allege that Sunlight amended its financing agreement with Pink on August 18, 2022, "suggesting [an] increase[] to the maximum credit that could be extended to Pink Energy." This allegation would tend to cut against an inference of scienter with regard to Yoder's statements on the conference call, because if Sunlight was working on extending more credit to Pink, it would seem to imply that Sunlight expected Pink to weather the storm, thus avoiding the need for another charge.

As a last gasp, Plaintiffs further allege that the Sunlight Individual Defendants had a general duty to disseminate accurate information regarding Sunlight and correct any misleading statements. *Id.* ¶ 247. But this does not meet the high bar imposed by the PSLRA to find a duty to investigate. An alleged "refusal to see the obvious, or to investigate the doubtful," must be "egregious" to be actionable. *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 269 (2d Cir. 1996). Merely stating that the Sunlight Individual Defendants should have been on "heightened alert" as a result of Pink's failings (SAC ¶ 181) plainly does not meet this standard.

Plaintiffs have therefore failed to adequately plead that Potere, Edinburg, or Yoder acted with scienter when making the allegedly false statements identified in the SAC, requiring that they be dismissed.

### B. Plaintiffs improperly lump the Sunlight Individual Defendants together in an attempt to plead scienter.

The Court must also reject Plaintiffs' attempt to allege scienter through group pleading as to the Sunlight Individual Defendants. Under Rule 9(b), "plaintiffs must plead circumstances

45

providing a factual basis for scienter for each defendant; guilt by association is impermissible." *In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 695 (2d Cir. 2009).

Instead of trying to meet this exacting standard, Plaintiffs allege that two of the three Sunlight Individual Defendants—Potere and Edinburg—and Spartan Individual Defendant Geoffrey Strong were on a January 25, 2021 conference call during which Potere stated, "[w]e structure these advances such that they're low risk to Sunlight, but provide significant benefit to our contractors. This is another example of how at Sunlight we use credit experience and access to capital to differentiate our value proposition." SAC ¶ 197. Plaintiffs claim this is false because they allege that the cash advances created "high risk" for Sunlight. *Id.* ¶ 191. But in addition to failing to demonstrate why this is false, Plaintiffs simply fail to allege why this statement should be attributed to the Sunlight Individual Defendants collectively, especially when Yoder did not even work for Sunlight in January 2021. *See* SAC ¶ 12 (acknowledging that Yoder "was the CFO of Sunlight from April 1, 2022 through the end of the Class Period."). Plaintiffs further attribute the July 30, 2021 and September 2, 2021 SEC Registration Statements and corresponding prospectuses, which contain the language regarding "a robust commercial underwriting and ongoing monitoring process," to Potere and Edinburg as signatories. *Id.* ¶ 202.

These scattershot allegations do not allege any specific facts bearing on the knowledge of any Sunlight Individual Defendant. As a result, they are insufficient to plead with particularity a strong inference of scienter as to any of the Sunlight Individual Defendants. *See Kinra v. Chi. Bridge & Iron Co.*, No. 17 Civ. 4251, 2018 WL 2371030, at *6 (S.D.N.Y. May 24, 2018) ("Scienter must be separately pled and individually supportable as to each defendant; scienter is not amenable to group pleading." (citation omitted)); *see also In re CRM Holdings, Ltd. Sec. Litig.*, No. 10 Civ. 975, 2012 WL 1646888, at *30 (S.D.N.Y. May 10, 2012).

### III. Plaintiffs fail to state a Section 20(a) claim against the Sunlight Individual Defendants.

Plaintiffs bring a claim under Section 20(a) of the '34 Act, alleging control person liability against the Sunlight Individual Defendants. *See* 15 U.S.C. § 78t(a); SAC ¶¶ 245–50. To state a Section 20(a) claim, a plaintiff must plead "(1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." *Enzo Biochem, Inc. v. Harbert Discovery Fund, LP*, No. 20-cv-9992 (PAC), 2021 WL 5854075, at *8 (S.D.N.Y. Dec. 9, 2021) (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007)).

"Liability for § 20(a) violations is derivative of liability for § 10(b) violations." *McIntire v. China MediaExpress Holdings, Inc.*, 927 F. Supp. 2d 105, 121 (S.D.N.Y. 2013). And the heightened pleading standards of the PSLRA apply with respect to the third prong of a § 20(a) claim. *Id.* at 122. Here, Plaintiffs' Section 20(a) claim fails for two reasons. First, Plaintiffs have not stated a Section 10(b) claim; accordingly, the Sunlight Individual Defendants are not liable under Section 20(a). *See supra* Sections I–II; *see also Asay v. Pinduoduo Inc.*, No. 20-1423, 2021 WL 3871269, at *5 (2d Cir. Aug. 31, 2021) (upholding dismissal of Section 20(a) claim where complaint failed to allege Section 10(b) violation).

Second, even if they could plead a primary violation of Section 10(b), Plaintiffs have failed to plead any facts to support an allegation that the Sunlight Individual Defendants "controlled" a primary violator. To avoid dismissal of their Section 20(a) claim, Plaintiffs "must allege facts from which it can be inferred that the defendant had actual power or influence over the controlled person." *Cohen v. Stevanovich*, 722 F. Supp. 2d 416, 435 (S.D.N.Y. 2010) (citation omitted). "[T]he Section 20(a) defendant must not only have actual control over the primary violator, but

47

have actual control over the *transaction* in question." *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433, 487 (S.D.N.Y. 2005) (emphasis in original) (internal quotation marks omitted).

The SAC fails to plead such facts. Instead, Plaintiffs make the bald assertion that "[t]he Sunlight Individual Defendants exercised control over the general operations of Sunlight and possessed the power to control the specific activities which comprise the primary violations about which Plaintiffs and the other members of the Class complain." SAC ¶ 249. But Plaintiffs never allege the person or persons whom the Sunlight Individual Defendants supposedly controlled, nor can it even be inferred from a generous reading of the SAC.

As to Edinburg, Plaintiffs allege no more than that he participated in a single conference call and signed two SEC filings. *Id.* ¶¶ 197, 202(d), 202(e). As to Potere, Plaintiffs merely cite his statements regarding the cash advance program during the Q1 2022 earnings call, and his statement that following Pink's default, "Sunlight would 're-underwrite' all cash advances to *all* contractors." *Id.* ¶¶ 204–06, 219. (emphasis in original). And, as to Yoder, Plaintiffs simply identify the statements he made on an earnings call concerning Sunlight's losses on the cash advance program. *Id.* ¶ 209. None of these allegations indicate anything other than that these three individuals were carrying out their job functions; they come nowhere close to supporting an inference that the Sunlight Individual Defendants had actual power or influence over a primary violator. Nor do they indicate that any of the Sunlight Individual Defendants were culpable participants in any alleged fraud, much less the required "particularized facts of the controlling person's conscious misbehavior or recklessness." *In re Satyam Computer Servs. Ltd. Sec. Litig.*, 915 F. Supp. 2d 450, 482 (S.D.N.Y. 2013) (citation omitted); *see also Edison Fund v. Cogent Inv. Strategies Fund, Ltd.*, 551 F. Supp. 2d 210, 231 (S.D.N.Y. 2008) (dismissing Section 20(a) claim

where the plaintiffs failed to "allege particularized facts as to [the defendant's] participation in the fraud"). Accordingly, Plaintiffs' Section 20(a) claim is insufficient as a matter of law.

**IV.   Plaintiffs fail to state a Section 14(a) claim.[22]**

Section 14(a) of the '34 Act makes it unlawful to solicit proxies "in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78n(a). Pursuant to this section, Rule 14a-9 provides that proxy communications may not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading[.]" 17 C.F.R. § 240.14a-9(a).

A claim under Section 14(a) and Rule 14a-9(a) must allege that: "(1) a proxy statement contained a material misrepresentation or omission, which (2) caused plaintiffs' injury, and (3) the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction." *Bond Opportunity Fund v. Unilab Corp.*, 87 F. App'x 772, 773 (2d Cir. 2004). For the second and third elements, "a plaintiff must show, *inter alia*, both '*loss causation*—that the misrepresentations or omissions caused the economic harm,' and '*transaction causation*—that the violations in question caused the [plaintiff] to engage in the transaction in question.'" *Grace v. Rosenstock*, 228 F.3d 40, 46-47 (2d Cir. 2000) (citation omitted) (describing loss causation and transaction causation in context of Rule 10b-5 claim, noting that they must also be proven for Rule 14a-9 claims as well).

---

[22] In addition to the arguments made in this section, the Sunlight Defendants also join in the Spartan Defendants' argument that Lead Plaintiff Millunchick lacks standing to bring a Section 14(a) claim.

For Section 14(a) claims alleging that a defendant made an untrue statement or omission of material fact, the complaint must "state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). In any case where the plaintiffs may recover damages only on proof that a defendant acted with a particular state of mind, the complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* § 78u-4(b)(2)(A).

### A.     Plaintiffs fail to allege their derivative claim satisfies Rule 23.1.

The Court need not even reach the merits of Plaintiffs' Section 14(a) claim because the claim is a derivative claim belonging to Sunlight as a matter of law. Plaintiffs have failed to meet the basic procedural requirements for a derivative claim under Rule 23.1 of the Federal Rules of Civil Procedure. Rule 23.1 requires a complaint in a derivative action to "state with particularity . . . any effort by the plaintiff to obtain the desired action from the directors [*i.e.*, a pre-suit demand upon the corporation] . . . and . . . the reasons for not obtaining the action or making the effort." Fed. R. Civ. P. 23.1(b)(3). "Although Rule 23.1 sets forth the pleading standard for federal court, the substance of the demand requirement is a function of state law." *Espinoza ex rel. JPMorgan Chase & Co. v. Dimon*, 797 F.3d 229, 234 (2d Cir. 2015). Sunlight is incorporated in Delaware, and therefore Delaware law applies. Under Delaware law, "the determination of whether a stockholder's claim is direct or derivative must turn solely on the following questions: (1) who suffered the alleged harm (the corporation or the stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?" *Brookfield Asset Mgmt., Inc. v. Rosson*, 261 A.3d 1251, 1263 (Del. 2021) (internal quotation marks omitted).

Here, Plaintiffs' Section 14(a) claim is derivative. Plaintiffs argue that the allegedly misleading statements in the proxy statements prevented eligible Class members from having the

"opportunity to make a fully informed decision in voting on the Business Combination" and that they were harmed by the eventual decline in Sunlight's stock. SAC ¶¶ 114, 124. This claim is inherently derivative in nature, because, as explained by the Supreme Court, "[t]he injury which a stockholder suffers from corporate action pursuant to a deceptive proxy solicitation ordinarily flows from the damage done the corporation, rather than from the damage inflicted directly upon the stockholder. The damage suffered results not from the deceit practiced on him alone but rather from the deceit practiced on the stockholders as a group." *J. I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964), *abrogated on other grounds by Ziglar v. Abbasi*, 582 U.S. 120 (2017). Plaintiffs' Section 14(a) claim is premised on their allegation that the S-4 Statement overstated the value of the Business Combination and resulting company, and as a result, Sunlight shareholders received less in value from the Business Combination than they thought they would have when they voted for—or at least could have voted for—the Business Combination. *See, e.g.*, *In re Romeo Power Sec. Litig.*, 21 Civ. 3362 (LGS), 2022 WL 1806303, at *5 (S.D.N.Y. June 2, 2022) (concluding Section 14(a) claim was derivative in nature, because "the essence of [the] claim is that the proxy statements overstated the value of [the target] and as a result, [the] shareholders received less in value from the merger than they expected when they approved it").

Plaintiffs' failure to remedy—or even attempt to address this deficiency—is particularly glaring given that the Sunlight and Spartan Defendants raised this issue in their motions to dismiss the Amended Complaint. *See* ECF No. 58 at 35–36, ECF No. 60 at 13–15. Despite this, Plaintiffs made no demand or allegations of futility such that Rule 23.1 would be satisfied, demanding dismissal of their derivative Section 14(a) claim.

**B.** **Plaintiffs fail to allege that the S-4 Statement contained a material misrepresentation or omission.**

Plaintiffs' Section 14(a) claim against each of the Sunlight Proxy Claim Defendants is based primarily on the S-4 Statement—Spartan's preliminary proxy statement filed on Form S-4 on March 22, 2021 and its amendments, which stated that "Sunlight has adopted vigorous contractor diligence and monitoring procedures," that "[o]nce onboarded, Sunlight continues to monitor the contractors in its network against these same standards at least annually and, if advisable, more frequently[,]" and that "Sunlight has established a robust commercial underwriting and ongoing monitoring process to assure that the quality of the work product, solar system construction, financial condition . . . and legal compliance practices of the contractors in Sunlight's network." *See* SAC ¶¶ 90, 114.[23]

First, this statement—as set forth above—is not actionable. *See supra* Section I.A. Aside from the fact that Plaintiffs do not explain why this statement was misleading, Plaintiffs do not allege facts indicating that such monitoring did *not* exist. The phrases that Sunlight "continues to monitor the contractors in its network" and that it has "established . . . [an] ongoing monitoring process" are the exact kinds of statements that courts deem to be not objectively verifiable, and therefore incapable of forming the basis for a securities fraud claim. *See, e.g.*, *XYZ Two Way Radio Serv., Inc. v. Uber Techs., Inc.*, 214 F. Supp. 3d 179, 184 (E.D.N.Y. 2016) (concluding that statement that "Uber regularly reviews that feedback" falls "within one or more of the accepted definitions of puffery"). A contrary interpretation—that such statements could be measured for compliance—would be simply untenable. Additionally, Plaintiffs have not alleged what would have made this statement false *at the time it was made*. *See supra* Section I.C.

---

[23] Though they include a Proxy Statement Form 424(b)(3) filed on June 21, 2021 in their list of allegedly false and misleading statements, *see* SAC ¶ 114(d), Plaintiffs do not appear to note any specific alleged misstatements or omissions from that Form in their Second Amended Complaint.

Second, Plaintiffs fail to plead any actionable omissions. Omissions can violate Section 14(a) and Rule 14a-9 "if either the SEC regulations specifically require disclosure of the omitted information in a proxy statement, or the omission makes other statements in the proxy statement materially false or misleading." *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 536 F. Supp. 2d 313, 321 (S.D.N.Y. 2007). "[I]n order to sufficiently allege the elements of an omission claim under § 14(a) . . . the plaintiff must identify a precise 'statement' in a proxy that is either affirmatively misleading or that is rendered misleading by the operation of a materially omitted fact." *La. Mun. Police Emps. Ret. Sys. v. Cooper Indus.*, No. 12CV1750, 2012 WL 4958561, at *8 (N.D. Ohio Oct. 16, 2012); *see also In re Bemis Co. Sec. Litig.*, 512 F. Supp. 3d 518, 539 (S.D.N.Y. 2021). Here, Plaintiffs simply list the statements mentioned in Paragraph 90 of the SAC and associated proxy filing materials (SAC ¶ 114), stating in a conclusory manner that there were "false and misleading statements and/or omissions in the Proxy Solicitations and other proxy solicitation materials," (SAC ¶ 125). Plaintiffs do not point to anything that would require disclosure of additional information. The need to specify a false statement or an omission rather than just generally allege that one was made stems from the recognition that "[p]roxy statements need not be, and indeed, should not be, an exhaustive catalog of all information that might conceivably be helpful to a shareholder." *Montanio v. Keurig Green Mtn., Inc.*, 237 F. Supp. 3d 163, 175 (D. Vt. 2017); *see also Lane v. Page*, 581 F. Supp. 2d 1094, 1121 (D.N.M. 2008) ("A proxy statement need not reveal every detail involved in a transaction; it only needs to paint a 'sufficiently accurate picture so as not to mislead.'" (quoting *Kennecott Copper Corp. v. Curtiss-Wright Corp.*, 584 F.2d 1195, 1200 (2d Cir. 1978)).

53

     **C.**    **Even if the S-4 Statement did contain a material misrepresentation or omission, Plaintiffs fail to state with particularity facts giving rise to a strong inference that the Sunlight Proxy Claim Defendants acted with the required state of mind.**

Plaintiffs fail to plead a strong inference of culpable conduct against any of the Sunlight Proxy Claim Defendants. Plaintiffs' Section 14(a) claim sounds in fraud because, even though it relies on statements made in the S-4 Statement alone, it is largely premised on the *same* alleged fraud and misrepresentations for Plaintiffs' Section 10(b) claim. Plaintiffs take pains to avoid the heightened pleading requirements of Section 78u-4(b)(2) and Rule 9(b), stating that their Section 14(a) claim is "not based on any knowing or reckless conduct" and therefore they "specifically disclaim any allegations of fraud, scienter, or recklessness in these non-fraud claims." SAC ¶ 112. However, while "liability under Section 14(a) can be premised on mere negligence as opposed to fraud . . . whether Rule 9(b)'s heightened pleading standard applies to a particular case turns on the nature of the plaintiff's allegations, not the elements of the legal cause of action, for which the lawsuit is brought." *Enzo Biochem, Inc. v. Harbert Discovery Fund, LP*, No. 20-CV-9992 (PAC), 2021 WL 4443258, at *8 (S.D.N.Y. Sept. 27, 2021) (internal citation omitted).

As applicable here, "[w]hen plaintiffs assert Section 14(a) claims grounded in alleged fraudulent conduct, they are subject to heightened pleading requirements, . . . even if they disclaim reliance on a fraud theory." *In re Columbia Pipeline, Inc.*, 405 F. Supp. 3d 494, 506 (S.D.N.Y. 2019) (internal quotation marks omitted); *see also Ocegueda v. Zuckerberg*, 526 F. Supp. 3d 637, 650–51 (N.D. Cal. 2021) (Section 14(a) claims "sound in fraud," despite "plaintiff limit[ing] her claim to negligence," when based on allegations that "the defendants knowingly failed to disclose fraudulent practices" and "knew the statements were false and misleading"). Thus, a plaintiff "will not be allowed to reclassify [its] [Section 14(a)] claims to avoid the pleading standards of Rule

54

9(b)[,]" when those claims are "essentially a fraud claim." *Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*, 645 F. Supp. 2d 210, 238 (S.D.N.Y. 2009).

Although Plaintiffs carefully word their allegations regarding the S-4 Statement in an attempt to "disclaim" any fraud, it is clear that the alleged misstatements in the S-4 Statement focus on the same core conduct underlying the Section 10(b) claim—the alleged deception regarding their monitoring of Sunlight's contractors. Thus, Plaintiffs must plead "specific facts demonstrating that the [Sunlight Proxy Claim Defendants] acted knowingly and deliberately," which, as discussed, Plaintiffs have not done. *See supra* Sections I–II; *see also Karp v. SI Fin. Grp., Inc.*, No. 3:19-CV-00199 (MPS), 2020 WL 1891629, at *12 (D. Conn. Apr. 16, 2020) (applying heightened pleading standard to Section 14(a) claim); *IBEW Loc. 98 Pension Fund v. Cent. Vt. Pub. Serv. Corp.*, No. 11-CV-222, 2012 WL 12985689, at *8 (D. Vt. Aug. 23, 2012). The Court must therefore reject Plaintiffs' nominal attempt to disclaim allegations of fraud because the "factual assertions in [their] Section 14(a) claim are premised on fraudulent conduct." *Bricklayers & Masons Loc. Union No. 5 Ohio Pension Fund v. Transocean Ltd.*, 866 F. Supp. 2d 223, 239 (S.D.N.Y. 2012). For the reasons explained herein, there are no allegations that adequately plead knowing and deliberate misconduct.

Even if—as Plaintiffs suggest—they need only plead negligence, they still "must plead with particularity facts that give rise to a strong inference of negligence on the part of all Defendants." *Bond Opportunity Fund v. Unilab Corp.*, No. 99 Civ. 11074 (JSM), 2003 WL 21058251, at *4 (S.D.N.Y. May 9, 2003), *aff'd*, 87 F. App'x 772 (2d Cir. 2004); *see also Furlong Fund LLC v. VBI Vaccines, Inc.*, No. 14 Civ. 9435 (SHS), 2016 WL 1181710, at *3 (S.D.N.Y. Mar. 25, 2016) ("The PSLRA's pleading requirements as to misleading statements and omissions apply to Section 14(a) claims sounding in negligence, such as those here."). To that end, Plaintiffs

55

must "plead particular facts as to each defendant[']s[] negligence." *In re Zoran Corp. Deriv. Litig.*, 511 F. Supp. 2d 986, 1015 (N.D. Cal. 2007).

Yet here, other than the lone conclusory allegation that each Defendant (aside from Yoder) "acted negligently in making inaccurate statements of material facts, and/or omitting material facts[,]" Plaintiffs make no allegations explaining how any Sunlight Proxy Claim Defendant was negligent or failed to exercise reasonable care as to the S-4 Statement. *See* SAC ¶ 122. Plaintiffs do not say what any of the Sunlight Proxy Claim Defendants did or did not do to ensure the accuracy of the S-4 Statement, do not explain how or why Sunlight Proxy Claim Defendants knew or should have known that the statements in the S-4 Statement allegedly were false or misleading, and do not provide any detail at all concerning the process by which the Sunlight Proxy Claim Defendants decided to include (or omit) certain information from the S-4 Statement. *See Bond Opportunity Fund*, 2003 WL 21058251, at \*4 (explaining that "where plaintiffs contend that the defendants had access to facts contrary to those stated in the proxy materials, they must specifically identify the reports or statements containing this information").

Nor do Plaintiffs plead any facts to show that the individual Sunlight Proxy Claim Defendants participated in drafting or revising the S-4 Statement or how their participation—apart from that of the companies for whom they worked—was negligent. *See Mendoza v. HF Foods Grp.*, No. 2:20-CV-02929-ODW, 2021 WL 3772850, at \*11 (C.D. Cal. Aug. 25, 2021) (dismissing Section 14(a) claim against individual defendants, where the plaintiffs alleged that the individual defendants were negligent only "[b]y virtue of their positions within the Company and/or roles in the process and in the preparation of the above-referenced proxies"). This total lack of alleged facts requires dismissal, as Plaintiffs have failed to demonstrate that the Sunlight Proxy Claim Defendants knew or should have known of the alleged misstatements in the S-4 Statement. *See*

*Salit v. Stanley Works*, 802 F. Supp. 728, 733 (D. Conn. 1992) ("Where [a] plaintiff[] ha[s] not pled that the individual defendants knew of the facts allegedly omitted from the proxy statement (and, not being alleged to have been personally involved in its issuance, therefore, had no duty to see that they were included in the statement), plaintiffs have insufficiently pled a negligence claim [under Section 14(a)].").

### D.    Plaintiffs fail to allege that the S-4 Statement caused the approval of the Business Combination or that it caused Plaintiffs to suffer economic loss.

To show causation under Section 14(a), a plaintiff must adequately allege that the purported misrepresentations and omission caused: (a) the approval of the transaction in question ("transaction causation"); and (b) it to suffer economic harm ("loss causation"). *Grace v. Rosenstock*, 228 F.3d 40, 46–47 (2d Cir. 2000). "Transaction causation means that the violations in question caused the [plaintiff] to engage in the transaction in question." *AUSA Life Ins. Co. v. Ernst & Young*, 206 F.3d 202, 209 (2d Cir. 2000) (internal quotation marks and citation omitted). This is effectively a "but-for" causation test. *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 172 (2d Cir. 1999) ("To show transaction causation, the plaintiffs must demonstrate that *but for* the defendant's wrongful acts, the plaintiffs would not have entered into the transactions that resulted in their losses."). Loss causation, on the other hand, is "the causal link between the alleged misconduct and the economic harm ultimately suffered by the plaintiff." *Fin. Guar. Ins. Co. v. Putnam Advisory Co.*, 783 F.3d 395, 402 (2d Cir. 2015) (citation omitted). Plaintiffs fail to sufficiently allege either form of causation, and, as a result, their Section 14(a) claims must fail.

### i.    Plaintiffs fail to allege transaction causation.

Plaintiffs make no allegation that the S-4 Statement was the "but for" cause of any injury, or that they even personally relied upon the S-4 Statement. Transaction causation "has been analogized to reliance" and "means that the violations in question caused the [plaintiff] to engage

in the transaction in question." *AUSA Life Ins. Co.*, 206 F.3d at 209 (internal quotation marks and citation omitted); *see also Wilson v. Great Am. Indus., Inc.*, 979 F.2d 924, 931 (2d Cir. 1992) (plaintiff must show the "misrepresentations induced plaintiff[] to engage in the subject transaction"). Here, Plaintiffs provide no plausible explanation for how the S-4 Statement could realistically have changed their vote on the Business Combination—if they even voted at all. The best Plaintiffs can do is to allege in conclusory fashion that "[t]he Proxy Solicitations were essential links in the accomplishment of the Business Combination." SAC ¶ 123. But conclusory recitals of the elements of a claim couched as factual allegations are insufficient, and what is more, Plaintiffs cannot make any plausible allegation that the alleged misrepresentations and omissions in the S-4 Statement caused a different result than would have otherwise occurred.

### ii.     Plaintiffs fail to allege loss causation.

Even if Plaintiffs had sufficiently alleged transaction causation, their Section 14(a) claim must still be dismissed because of their failure to allege that any alleged misstatement or omission in the S-4 Statement "caused the loss for which [they] seek to recover damages." *In re GTx Shareholders Litig.*, No. 19 Civ. 3239 (AT), 2020 WL 3439356, at *4 (S.D.N.Y. June 23, 2020). "In well-pleaded § 14(a) claims, loss causation connects the proxy misstatements with an actual economic harm." *New York City Emps. Ret. Sys. v. Jobs*, 593 F.3d 1018, 1023 (9th Cir. 2010)*, overruled on other grounds by Lacey v. Maricopa Cnty.*, 693 F.3d 896 (9th Cir. 2012). "[E]conomic loss" under Section 14(a) is equivalent to "pecuniary injury" in private Section 10(b) claims. *See Tiberius Capital, LLC*, 2011 WL 1334839, at *7.

Plaintiffs make conclusory allegations that "[t]he Proxy Solicitations were essential links in the accomplishment of the Business Combination" (SAC ¶ 123) and that "Plaintiff Margent and other members of the Class eligible to vote on the Business Combination . . . were denied the opportunity to make a fully informed decision in voting on the Business Combination, and were

58

damaged as a direct and proximate result of the untrue statements" in the proxy solicitation (SAC ¶ 124). But Plaintiffs never allege what those "damages" were or how they relate to any challenged statement, and "conclusory assertions of loss are insufficient." *N.Y. City Employees' Ret. Sys.*, 593 F.3d at 1024; *see also Little Gem Life Sciences LLC v. Orphan Med., Inc.*, Civ. No. 06-1377 ADM/AJB, 2007 WL 541677, at *13 (D. Minn. Feb. 16, 2007) (dismissing Section 14(a) claim that did not specify "what the relevant economic loss might be or . . . what the causal connection might be between the loss and the omission" (internal quotations and citation omitted)).

Plaintiffs suggest that, but for the allegedly misleading statements in the S-4 Statement, they might have voted differently as to the Business Combination, that "a reasonable investor would view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Solicitations" and that they might have chosen to exercise their conversion rights on their Spartan common stock. SAC ¶¶ 124–26. But these are merely conclusory allegations that would have been necessary only in an attempt to show transaction causation, and courts have squarely rejected Section 14(a) loss causation allegations premised on the failure to make a fully informed vote. *See Fisher v. Kanas*, 467 F. Supp. 2d 275, 284 (E.D.N.Y. 2006) ("Although the Plaintiff further claims that shareholders could not make an informed decision regarding the election as a result of the alleged misrepresentations as to compensation, as previously discussed, this claim is speculative[.]"); *Hoch v. Alexander*, No. CIV.A. 11-217, 2011 WL 2633722, at *5 (D. Del. July 1, 2011) (an allegation of "a deprivation of the right to a fully informed vote . . . fails to meet the loss causation requirement"); *Resnik v. Woertz*, 774 F. Supp. 2d 614, 632 (D. Del. 2011) (same). And, although Plaintiffs maintain that they were unaware that Sunlight partnered with Pink and Vision Solar, their own allegations confirm that the struggles of those two companies were widely known well before the Business Combination, undercutting any

59

suggestion that Plaintiffs were *completely* unaware of the general risks associated with investing in the solar industry and related companies.  SAC ¶¶ 62–88.

The SAC also charges that "Spartan shareholders who were solicited to vote on the Business Combination" were misled "because Sunlight did not disclose the identities of the contractors in its network or the contractors to whom it gave cash advances."  SAC ¶ 89.  But, "[d]isclosure of an item of information is not required . . . simply because it may be relevant or of interest to a reasonable investor."  *Resnik v. Swartz*, 303 F.3d 147, 154 (2d Cir. 2002).  Rather, "[f]or an omission to be actionable, the securities laws must impose a duty to disclose the omitted information."  *Id.*  Here, as with their Section 10(b) claim, Plaintiffs attempt to suggest that they would have voted differently, or perhaps, exercised redemptions had they known that Pink and Vision Solar were contractors of Sunlight.  This is nothing more than an attempt to argue, through the benefit of hindsight, that they might have voted against the Business Combination. But Plaintiffs never actually plead that the Sunlight Proxy Claim Defendants were required to disclose any details concerning its contractors (because they were not).  And, even if they had done so, courts within this Circuit have dismissed securities fraud claims based on a defendant's alleged non-disclosure of a business partner.  *See, e.g.*, *In re Bemis Co. Sec. Litig.*, 512 F. Supp. 3d 518, 539 (S.D.N.Y. 2021) (dismissing Section 14(a) claim that was premised, in part, on allegations that the "name of [a] consultant was not identified in the Proxy."), *judgment entered*, No. 19 CIVIL 3356 (JPC), 2021 WL 5140777 (S.D.N.Y. Nov. 4, 2021); *Lewis v. Oppenheimer & Co.*, 481 F. Supp. 1199, 1207 (S.D.N.Y. 1979) (rejecting plaintiffs' argument that a proxy statement was defective for not including identities of minority indirect interests in purchasing corporation). Plaintiffs also fail to allege how this supposedly omitted information made anything stated in the Proxy false (because it did not), and they fail to offer any plausible allegation (much less a

60

particularized one) how, given the extensive disclosures in the Proxy, there was a substantial likelihood that reasonable shareholders could have viewed their lack of knowledge as to the names of the contractors as important.

Plaintiffs do not even speculate as to what their harm might be apart from their alleged inability to have a fully informed vote and the speculative notion that they might have exercised their redemptions.  Thus, "[t]o permit Plaintiff[s] to recover damages on the assumption that" their decisions regarding the Business Combination vote and the exercise of their stock options would have been different if there had been different disclosures in the S-4 Statement "would give [Plaintiffs] a 'windfall' wholly unrelated" to any alleged violation of Section 14(a). *Gray v. Wesco Aircraft Holdings, Inc.*, 454 F. Supp. 3d 366, 404 (S.D.N.Y. 2020), *aff'd*, 847 F. App'x 35 (2d Cir. 2021).

## CONCLUSION

For the reasons set forth above, the Court should grant the Sunlight Defendants' motion to dismiss the Second Amended Complaint with prejudice.

Dated: New York, New York
      December 20, 2023

**MCGUIREWOODS LLP**

*/s/ Jeffrey J. Chapman*
Jeffrey J. Chapman
Aaron F. Jaroff
1251 Avenue of the Americas, 20th Floor
New York, NY 10020
Tel: (212) 548-7060
Fax: (212) 715-6277
jchapman@mcguirewoods.com
ajaroff@mcguirewoods.com

Michael A. Brody (*admitted pro hac vice*)
888 16th Street N.W., Ste. 500
Washington, DC 20006
Tel: (202) 857-1754
Fax: (202) 828-3334
mbrody@mcguirewoods.com

Brooke A. Weedon (*admitted pro hac vice*)
800 E Canal Street
Richmond, VA 23219
Tel: (804) 337-4439
Fax: (804) 698-2114
bweedon@mcguirewoods.com

*Attorneys for Defendants Sunlight
Financial Holdings Inc. F/K/A Spartan
Acquisition Corp. II, Matthew Potere,
Barry Edinburg, and Rodney Yoder*

To:    All counsel of record (Via ECF)

62