**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| MATTHEW MILLUNCHICK and MIKE MARGENT, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>SUNLIGHT FINANCIAL HOLDINGS INC. f/k/a SPARTAN ACQUISITION CORP. II, MATTHEW POTERE, BARRY EDINBURG, RODNEY YODER, GEOFFREY STRONG, JAMES CROSSEN, OLIVIA WASSENAAR, WILSON HANDLER, CHRISTINE HOMMES, JOSEPH ROMEO, and SPARTAN ACQUISITION SPONSOR II, LLC,<br><br>Defendants. | Case No.: 1:22-cv-10658-AKH |

**REPLY IN FURTHER SUPPORT**
**OF THE SUNLIGHT DEFENDANTS' MOTION TO**
**DISMISS THE SECOND AMENDED COMPLAINT**

**MCGUIREWOODS LLP**

1251 Avenue of the Americas
20th Floor
New York, NY 10020
Telephone: (212) 548-2100
Facsimile: (212) 548-2150

*Attorneys for Defendants Sunlight Financial*
*Holdings Inc. F/K/A Spartan Acquisition*
*Corp. II, Matthew Potere, Barry Edinburg,*
*and Rodney Yoder*

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ...................................................................................... 1

ARGUMENT...................................................................................................................... 1

I.     All of Plaintiffs' claims present simply an impermissible case of "fraud-by-hindsight." ........................................................................................................1

II.    Plaintiffs' Opposition Brief concedes that they have not stated any claims against Edinburg. ........................................................................................................3

III.   Plaintiffs' Opposition Brief does not save their Section 10(b) claim against the Sunlight Defendants. ........................................................................................4

       A.    Plaintiffs fail to allege that the Statements are actionable. ........................ 4

             i.    Plaintiffs' Opposition Brief offers no basis for the Court to draw an inference that the S-4 Statement, Potere's January 25, 2021 Statement, or the May 16, 2022 Statements are false or misleading. ......................................................................... 4

             ii.   Plaintiffs fail to offer any legal or factual basis for their assertion that Potere's January 25, 2021 Statement is otherwise actionable. ................................................................... 7

             iii.  Plaintiffs fail to offer any legal or factual basis for their assertion that the S-4 Statement is otherwise actionable. ............ 10

             iv.   Plaintiffs do not refute that the August 15, 2022 Statement that Sunlight did "not expect to take any further one-time charges" is a forward-looking statement...................................... 11

       B.    Plaintiffs' allegations as to the S-4 Statement constitute impermissible "puzzle pleading." ............................................................ 13

       C.    Plaintiffs' Opposition Brief does not rehabilitate the Confidential Witnesses. ................................................................................................ 14

       D.    Plaintiffs have not shown why the Court should credit the allegations regarding Pink Energy in the *Generac* lawsuit........................ 18

       E.    Plaintiffs' new facts, inferences, and conclusory allegations of scienter still do not meet the demanding Rule 9(b) and PSLRA standards. ................................................................................................ 19

       F.    Plaintiffs' Opposition Brief does not save their failure to plead loss causation. ................................................................................................ 26

IV.    Plaintiffs must plead "culpable participation" in their Section 20(a) claim against the Sunlight Individual Defendants. ........................................................28

V.   Plaintiffs' Opposition Brief does not save their deficient Section 14(a) claim................................................................................................................31

    A.   Plaintiffs must satisfy Rule 9(b) and the PSLRA's heightened pleading requirements. ............................................................................ 31

    B.   Plaintiffs fail to allege an Item 303 omission. ........................................ 33

    C.   Plaintiffs fail to meet the pleading standards for both loss causation and transaction causation. ........................................................ 35

    D.   The Court should reject Plaintiffs' shifting theories in their efforts to allege that their derivative claim satisfies Rule 23.1. ........................... 37

CONCLUSION.................................................................................................................... 39

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acito v. IMCERA Grp., Inc.*,
    47 F.3d 47 (2d Cir. 1995)......................................................................................28

*In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*,
    529 F. Supp. 3d 111 (S.D.N.Y. 2021)...................................................................29

*In re Am. Realty Cap. Properties, Inc. Litig.*,
    No. 15 MC 40 (AKH), 2016 WL 11110435 (S.D.N.Y. Aug. 5, 2016) ............................18, 29

*In re Bank of Am. Corp. Sec., Derivative, & Employee Ret. Income Sec. Act*
    *(ERISA) Litig.*,
    757 F. Supp. 2d 260 (S.D.N.Y. 2010)...................................................................35

*In re Barclays PLC Sec. Litig.*,
    No. 22 CIV. 8172 (KPF), 2024 WL 757385 (S.D.N.Y. Feb. 23, 2024) ....................................1

*Barilli v. Sky Solar Holdings, Ltd.*,
    389 F. Supp. 3d 232 (S.D.N.Y. 2019)...................................................................5

*Beck v. Dobrowski*,
    559 F.3d 680 (7th Cir. 2009) ..............................................................................32

*Behrendsen v. Yangtze River Port & Logistics Ltd.*,
    No. 19CV00024DLILB, 2021 WL 2646353 (E.D.N.Y. June 28, 2021) ...............................21

*Blackmoss Investments Inc. v. ACA Capital Holdings, Inc.*,
    No. 07 CIV. 10528, 2010 WL 148617 (S.D.N.Y. Jan. 14, 2010)............................................34

*Boca Raton Firefighters & Police Pension Fund v. Bahash*,
    506 F. App'x 32 (2d Cir. 2012) ...........................................................................14

*In re Boeing Co. Aircraft Sec. Litig.*,
    No. 19-cv-02394, 2022 WL 3595058 (N.D. Ill. Aug. 23, 2022) ............................................23

*Bozsi Ltd. P'ship v. Lynott*,
    676 F. Supp. 505 (S.D.N.Y. 1987) ....................................................................3, 21

*C.D.T.S. v. UBS AG*,
    No. 12 CIV. 4924 KBF, 2013 WL 6576031 (S.D.N.Y. Dec. 13, 2013), *aff'd*
    *sub nom. Westchester Teamsters Pension Fund v. UBS AG*, 604 F. App'x 5
    (2d Cir. 2015)....................................................................................................5

*Canez v. Intelligent Sys. Corp.*,
  No. 19CV3949RPKCLP, 2021 WL 3667012 (E.D.N.Y. Aug. 18, 2021) ...............................9

*In re Citigroup Inc. Sec. Litig.*,
  753 F. Supp. 2d 206 (S.D.N.Y. 2010)......................................................................................30

*In re Citigroup Sec. Litig.*,
  No. 20 CIV. 9132 (LAP), 2023 WL 2632258 (S.D.N.Y. Mar. 24, 2023) ...............................8

*City of Brockton Ret. Sys. v. Avon Prod., Inc.*,
  No. 11 Civ. 4665 (PGG), 2014 WL 4832321 (S.D.N.Y. Sept. 29, 2014) ..............................20

*City of Monroe Employees' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*,
  No. 10-CV-2835, 2011 WL 4357368 (S.D.N.Y. Sept. 19, 2011)..............................................5

*City of Sterling Heights Police & Fire Ret. Sys. v. Reckitt Benckiser Grp. PLC*,
  587 F. Supp. 3d 56 (S.D.N.Y. 2022)........................................................................................11

*City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent. Inc.*,
  477 F. Supp. 3d 123 (S.D.N.Y. 2020)...............................................................................15, 16

*Constr. Workers Pension Fund-Lake Cnty. & Vicinity v. Navistar Int'l Corp.*,
  No. 13 C 2111, 2014 WL 3610877 (N.D. Ill. July 22, 2014) ..................................................13

*Dekalb Cnty. Pension Fund v. Transocean Ltd.*,
  817 F.3d 393 (2d Cir. 2016).....................................................................................................32

*In re DraftKings Inc. Sec. Litig.*,
  650 F. Supp. 3d 120 (S.D.N.Y. 2023).....................................................................................34

*Edison Fund v. Cogent Inv. Strategies Fund, Ltd.*,
  551 F. Supp. 2d 210 (S.D.N.Y. 2008).....................................................................................30

*El Paso Firemen & Policemen's Pension Fund v. InnovAge Holding Corp.*,
  No. 21-CV-2770-WJM-SKC, --- F.Supp.3d ---, 2023 WL 8831337 (D. Colo.
  Dec. 21, 2023).........................................................................................................................11

*Employees' Retirement System of Government of Virgin Islands v. Blanford*,
  794 F.3d 297 (2d Cir. 2015)...............................................................................................16, 17

*Enzo Biochem, Inc. v. Harbert Discovery Fund, LP*,
  2021 WL 5854075 (S.D.N.Y. Dec. 9, 2021) ...........................................................................38

*Fila v. Pingtan Marine Enter. Ltd.*,
  195 F. Supp. 3d 489 (S.D.N.Y. 2016)......................................................................................28

*In re ForceField Energy Inc. Sec. Litig.*,
  No. 15 CIV. 3020 (NRB), 2017 WL 1319802 (S.D.N.Y. Mar. 29, 2017) ..............................29

*Fort Worth Emps.' Ret. Fund v. Biovail Corp.*,
   615 F. Supp. 2d 218 (S.D.N.Y. 2009)......................................................................................1

*In re Francesca's Holdings Corp. Sec. Litig.*,
   No. 13-cv-6882 (RJS), 2015 WL 1600464 (S.D.N.Y. Mar. 31, 2015)....................................33

*Furlong Fund LLC v. VBI Vaccines, Inc.*,
   No. 14-CV-9435 (SHS), 2016 WL 1181710 (S.D.N.Y. Mar. 25, 2016)..................................32

*Gagnon v. Alkermes PLC*,
   368 F. Supp. 3d 750 (S.D.N.Y. 2019)......................................................................................5

*Glaser v. The9, Ltd.*,
   772 F. Supp. 2d 573 (S.D.N.Y. 2011).....................................................................................15

*Greco v. Qudian Inc.*,
   No. 1:20-CV-577-GHW, 2022 WL 4226022 (S.D.N.Y. Sept. 13, 2022) ...............................17

*Heller v. Goldin Restructuring Fund, L.P.*,
   590 F. Supp. 2d 603 (S.D.N.Y. 2008).....................................................................................27

*Hutchinson v. Perez*,
   No. 12 CIV. 1073 HB, 2013 WL 1775374 (S.D.N.Y. Apr. 25, 2013), *aff'd sub
   nom. Jones v. Perez*, 550 F. App'x 24 (2d Cir. 2013) .............................................................2

*Jacobowitz v. Range Res. Corp.*,
   596 F. Supp. 3d 659 (N.D. Tex. 2022) ....................................................................................16

*In re JP Morgan Chase Sec. Litig.*,
   363 F. Supp. 2d 595 (S.D.N.Y. 2005).....................................................................................31

*Karimi v. Deutsche Bank Aktiengesellschaft*,
   607 F. Supp. 3d 381 (S.D.N.Y. 2022)................................................................................10, 11

*Lanigan Grp., Inc. v. Li-Cycle Holdings Corp.*,
   No. 22CV02222HGRML, 2023 WL 6541884 (E.D.N.Y. Oct. 6, 2023)................................13

*Lattanzio v. Deloitte & Touche LLP*,
   476 F.3d 147 (2d Cir. 2007).....................................................................................................26

*Long Miao v. Fanhua, Inc.*,
   442 F. Supp. 3d 774 (S.D.N.Y. 2020).....................................................................................17

*In re Longtop Fin. Techs. Ltd. Sec. Litig.*,
   939 F. Supp. 2d 360 (S.D.N.Y. 2013).....................................................................................23

*Lopez v. Ctpartners Exec. Search Inc.*,
   173 F. Supp. 3d 12 (S.D.N.Y. 2016)..........................................................................................7

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
   797 F.3d 160 (2d Cir. 2015)..................................................................................27

*In re Lululemon Sec. Litig.*,
   14 F. Supp. 3d 553 (S.D.N.Y. 2014), *aff'd*, 604 F. App'x 62 (2d Cir. 2015)...........................17

*Maguire Fin., LP v. PowerSecure Int'l, Inc.*,
   876 F.3d 541 (4th Cir. 2017) ...............................................................................20, 22, 25

*Malin v. XL Capital Ltd.*,
   499 F. Supp. 2d 117 (D. Conn. 2007), *aff'd*, 312 F. App'x 400 (2d Cir. 2009) ......................17

*Menora Mivtachim Ins. Ltd. v. Int'l Flavors & Fragrances Inc.*,
   No. 19 CIV. 7536 (NRB), 2021 WL 1199035 (S.D.N.Y. Mar. 30, 2021), *aff'd*,
   49 F.4th 790 (2d Cir. 2022) ................................................................................20

*In re Merrill Lynch Auction Rate Sec. Litig.*,
   886 F. Supp. 2d 340 (S.D.N.Y. 2012), *aff'd sub nom. Cellular S. Inc. v.
   Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 516 F. App'x 30 (2d Cir. 2013)..........20, 22, 25

*Mills v. Electric Auto-Lite Co.*,
   396 U.S. 375 (1970)................................................................................................36

*In re MINISO Grp. Holding Ltd. Sec. Litig.*,
   No. 22-CV-9864 (ER), 2024 WL 759246 (S.D.N.Y. Feb. 23, 2024)....................................19

*Minzer v. Keegan*,
   218 F.3d 144 (2d Cir. 2000).............................................................................36, 37

*In re Molycorp, Inc. Sec. Litig.*,
   No. 13–cv–5697 (PAC), 2015 WL 1097355 (S.D.N.Y. Mar. 12, 2015) ............................3, 21

*In re MultiPlan Corp. S'holders Litig.*,
   268 A.3d 784 (Del. Ch. 2022)...............................................................37, 38, 39

*Novak v. Kasaks*,
   216 F.3d 300 (2d Cir. 2000)....................................................................................2

*Ohr Somayach/Joseph Tanenbaum Educ. Ctr. v. Farleigh Int'l Ltd.*,
   483 F. Supp. 3d 195 (S.D.N.Y. 2020).....................................................2, 3, 17, 19

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
   575 U.S. 175 (2015)................................................................................................10

*In re PDI Sec. Litig.*,
   No. CIV.A.02-CV-0211 JLL, 2005 WL 2009892, at *16 (D.N.J. Aug. 17,
   2005) ....................................................................................................................5

*Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*,
    645 F. Supp. 2d 210 (S.D.N.Y. 2009)..................................................................................31

*Resnik v. Swartz*,
    303 F.3d 147 (2d Cir. 2002)...............................................................................................37

*Rio Tinto PLC v. Vale*,
    No. 14CIV3042RMBAJP, 2015 WL 7769534 (S.D.N.Y. Nov. 20, 2015).............................38

*In re Romeo Power Inc. Sec. Litig.*,
    No. 21 CIV. 3362 (LGS), 2022 WL 1806303 (S.D.N.Y. June 2, 2022) ...........................37, 39

*Rothman v. Gregor*,
    220 F.3d 81 (2d Cir. 2000)...................................................................................................28

*RSM Prod. Corp. v. Fridman*,
    643 F. Supp. 2d 382 (S.D.N.Y. 2009), *aff'd*, 387 F. App'x 72 (2d Cir. 2010).........................18

*In re ShengdaTech, Inc. Sec. Litig.*,
    No. 11 Civ.1918(LGS), 2014 WL 3928606 (S.D.N.Y. Aug. 12, 2014) ..................................29

*Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA Ltd.*,
    33 F. Supp. 3d 401 (S.D.N.Y. 2014).....................................................................................30

*In re Splash Tech. Holdings, Inc. Sec. Litig.*,
    160 F. Supp. 2d 1059 (N.D. Cal. 2001) ...........................................................................11, 14

*Stein v. Tangoe, Inc.*,
    No. 3:13-CV-00286 (VLB), 2014 WL 12767210 (D. Conn. Sept. 30, 2014) ........................22

*Suez Equity Invs., L.P. v. Toronto-Dominion Bank*,
    250 F.3d 87 (2d Cir. 2001)...................................................................................................27

*Tabletop Media, LLC v. Citizen Sys. of Am. Corp.*,
    No. CV 16-7140 PSG (ASX), 2017 WL 10591885 (C.D. Cal. Mar. 3, 2017) ........................10

*Tabor v. Bodisen Biotech, Inc.*,
    579 F. Supp. 2d 438 (S.D.N.Y. 2008)...................................................................................13

*Talarico v. Johnson*,
    No. 4:21-CV-3689, 2023 WL 2618255 (S.D. Tex. Feb. 7, 2023) ............................................8

*Teamsters Loc. 445 Freight Div. Pension Fund v. Dynex Cap. Inc.*,
    531 F.3d 190 (2d Cir. 2008)..................................................................................................26

*Tecku v. Yieldstreet, Inc.*,
    No. 20 CIV. 7327 (VM), 2022 WL 1322231 (S.D.N.Y. May 3, 2022)...................................29

*In re Textainer P'ship Sec. Litig.*,
    No. C-05-0969 MMC, 2005 WL 3801596 (N.D. Cal. Dec. 12, 2005) ....................................32

*Tyler v. Liz Claiborne, Inc.*,
    814 F. Supp. 2d 323 (S.D.N.Y. 2011)................................................................................20

*In re Vivendi, S.A. Sec. Litig.*,
    838 F.3d 223 (2d Cir. 2016)................................................................................................27

*W. Palm Beach Firefighters' Pension Fund v. Conagra Brands, Inc.*,
    495 F. Supp. 3d 622 (N.D. Ill. 2020), *aff'd sub nom. Nat'l Elevator Indus.*
    *Pension Fund v. Conagra Brands, Inc.*, No. 21-1155, 2022 WL 1449184 (7th
    Cir. May 9, 2022) ................................................................................................................11

*In re Weight Watchers Int'l Inc. Sec. Litig.*,
    504 F. Supp. 3d 224 (S.D.N.Y. 2020)................................................................................29

*Wilchfort v. Knight*,
    307 F. Supp. 3d 64 (E.D.N.Y. 2018) ..................................................................................27

**Statutes**

15 U.S.C. § 77z-2................................................................................................................12

**Other Authorities**

Fed. R. Civ. P. 9(b) ............................................................................................................31, 33

Fed. R. Civ. P. 23.1............................................................................................................37, 39

## PRELIMINARY STATEMENT

Plaintiffs' opposition brief (ECF No. 89, the "Opposition Brief") attempts to meet Plaintiffs' "high bar for bringing private actions under the securities laws" through four improper means this Court should reject. *In re Barclays PLC Sec. Litig.*, No. 22 CIV. 8172 (KPF), 2024 WL 757385, at *1 (S.D.N.Y. Feb. 23, 2024). The Opposition Brief (1) makes arguments based on facts that are not alleged and cannot reasonably be inferred from the Second Amended Complaint ("SAC"); (2) urges theories of falsity and scienter based on legally impermissible "fraud by hindsight;" (3) fails to identify with particularity a single confidential witness with the appropriate background to adequately allege that any Defendant made a false or misleading statement with scienter; and (4) ignores the SAC's allegations, Sunlight's publicly available SEC disclosures, the rapidly changing economic conditions in 2022, and a host of other developments outside of Sunlight's control that led to the financial troubles of Power Home Solar LLC d/b/a Pink Energy, Inc. ("Pink")—the contractor whose insolvency was the event that caused the September 28, 2022 stock drop at issue.

For these reasons, and those stated in the Sunlight Defendants'[1] Motion to Dismiss (ECF No. 79, the "Motion to Dismiss"), the Court should dismiss the SAC with prejudice.[2]

## ARGUMENT

### I. All of Plaintiffs' claims present simply an impermissible case of "fraud-by-hindsight."

As an initial matter, the entirety of Plaintiffs' claims and supporting allegations rest on an impermissible theory of fraud-by-hindsight, a practice that the Second Circuit has repeatedly

---

[1] Unless otherwise defined, capitalized terms used herein have the same meaning as ascribed in the Sunlight Defendants' Motion to Dismiss.

[2] Dismissal should be with prejudice as "the flaws in pleading are incurable on the facts of this case" and a third amended complaint would be futile. *Fort Worth Emps.' Ret. Fund v. Biovail Corp.*, 615 F. Supp. 2d 218, 233 (S.D.N.Y. 2009).

"refused to allow." *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000). In the Motion to Dismiss, the Sunlight Defendants addressed this global issue that dooms *all* of Plaintiffs' claims. *See* Mot. to Dismiss at 28–31. Nowhere in the Opposition Brief do Plaintiffs confront this fatal flaw in the SAC. The failure to respond to this argument amounts to a waiver of the issue. *See Ohr Somayach/Joseph Tanenbaum Educ. Ctr. v. Farleigh Int'l Ltd.*, 483 F. Supp. 3d 195, 206 n.6 (S.D.N.Y. 2020) ("Arguments not raised in a party's brief are deemed waived.").

The fact that a contractor—here, Pink—filed for bankruptcy *after* the Statements were made does not demonstrate that the Statements were false when made, and is ultimately irrelevant. *See Hutchinson v. Perez*, No. 12 CIV. 1073 HB, 2013 WL 1775374, at *3 (S.D.N.Y. Apr. 25, 2013), *aff'd sub nom. Jones v. Perez*, 550 F. App'x 24 (2d Cir. 2013). Plaintiffs make no allegations that Sunlight was actually aware of Pink's liquidity crisis—or that such information was even available in records that Sunlight explained it reviewed as part of its onboarding and annual diligence procedures—at the time the Statements were made. At best, Plaintiffs argue that Sunlight ***should*** have been tracking news articles and reviewing litigation pleadings for each of hundreds of contractors and ***would*** have known of Pink's financial troubles, had Sunlight fortuitously done so when Pink's lawsuit became public. But this argument is not grounded in any factual allegation: neither any CW nor any of Sunlight's public filings ever asserted that Sunlight monitored every piece of news about every contractor or was otherwise aware of Pink's pending insolvency. The entirety of Plaintiffs' case thus rests on an improper use of fraud-by-hindsight allegations and theories as a basis to avoid dismissal of the SAC. The Court must consider *all* of the Sunlight Defendants' arguments through that prism and dismiss the SAC in its entirety.

**II.     Plaintiffs' Opposition Brief concedes that they have not stated any claims against Edinburg.**

Nowhere does Plaintiffs' Opposition Brief address any of the arguments favoring dismissal of Barry Edinburg, or even attempt to identify any actionable statements that he made.  *See* Mot. to Dismiss at 42–49 (noting that Plaintiffs do not identify any statements made by Edinburg sufficient to state claim).  Instead, Plaintiffs point only to the fact that he signed the S-4 Statement. But, as explained in the Sunlight Defendants' Motion to Dismiss and below, this is not enough to maintain a securities fraud claim against him.  *See* Mot. to Dismiss at 44;  *see also, e.g.*, *In re Molycorp, Inc. Sec. Litig.*, No. 13–cv–5697 (PAC), 2015 WL 1097355, at *12 (S.D.N.Y. Mar. 12, 2015) (explaining that the mere fact that a defendant signed a securities filing, standing alone, is insufficient to state a securities fraud claim); *Bozsi Ltd. P'ship v. Lynott*, 676 F. Supp. 505, 510 (S.D.N.Y. 1987) (finding attendance at a meeting insufficient to establish scienter where "[n]owhere [in the complaint] is the date, time, place, *or nature of the partner's participation*, if any, described") (emphasis added).

Therefore, even if Plaintiffs could state a securities fraud claim against *Sunlight* (they cannot), the Court would still be required to dismiss all claims against Edinburg due to Plaintiffs' failure to identify any allegedly false statements at issue that he actually made.[3]

---

[3] Plaintiffs also do not address any of the Sunlight Defendants' arguments that the Sunlight Individual Defendants should be dismissed.  Mot. to Dismiss at 42–46.  Although Plaintiffs do refer to the Sunlight Individual Defendants, they do not—anywhere in the Opposition Brief— explain why their claims against them in their individual capacity should proceed.  *See generally* Opp. Br.  As such, they have waived that argument, and the Sunlight Individual Defendants should be dismissed as well.  *See Ohr Somayach/Joseph Tanenbaum Educ. Ctr.*, 483 F. Supp. 3d at 206 n.6.

3

**III.** **Plaintiffs' Opposition Brief does not save their Section 10(b) claim against the Sunlight Defendants.**

As explained more fully below, the Statements that were alleged as attributable to the Sunlight Defendants are insufficient to state a claim under Section 10(b). As Defendants have addressed extensively, the SAC comes woefully short as to all of these elements (*see* Mot. to Dismiss at 11–46), and, for the reasons addressed below, Plaintiffs' Opposition Brief does little to overcome any of those bases for dismissal.

**A.** **Plaintiffs fail to allege that the Statements are actionable.**

Plaintiffs ask the Court to assume that the Statements were either false or misleading when made based on nothing more than Plaintiffs' preferred narrative—one in which they seek to have the Court impose civil liability on the Sunlight Defendants for what (through the prism of hindsight only) amounted to, at most, a business relationship with one of its contractors that ended with the contractor going bankrupt for a host of reasons. But that is not a basis for a securities fraud claim. For more fundamental reasons, the SAC fails because Plaintiffs have failed to allege (or argue sufficiently in their Opposition) that any of the Statements are actionable.

**i.** **Plaintiffs' Opposition Brief offers no basis for the Court to draw an inference that the S-4 Statement, Potere's January 25, 2021 Statement, or the May 16, 2022 Statements are false or misleading.**

As the Sunlight Defendants explained in their Motion to Dismiss, none of the S-4 Statement, Potere's January 25, 2021 Statement, or the May 16, 2022 Statements are false or misleading, and none of Plaintiffs' allegations permit the Court to infer otherwise. *See* Mot. to Dismiss at 12–20. In response, Plaintiffs argue only that these statements were false because, at some point in 2019, Sunlight had "loosened credit standards." Opp. Br. at 16. Plaintiffs are wrong. Plaintiffs rely entirely on CW1's allegations (SAC ¶ 57) to make this point, and for the reasons stated below, CW1's allegations must be discounted. *See* Part III.C, *infra*. But even accepting

4

CW1's allegations, Plaintiffs ask the Court to make the unreasonable and unwarranted inference that the alleged "loosen[ing] [of Sunlight's] credit standards" somehow indicates that Sunlight made false statements about its due diligence and monitoring of its contractors. Opp. Br. at 16. But credit issuance and contractor monitoring are two different aspects of Sunlight's business, even if one might inform the other. Plaintiffs offer no allegations that permit the Court to draw any inference to the contrary.[4] Even if Sunlight "loosen[ed]" its credit standards, the SAC and the Opposition Brief provide no particularized allegations as to what that even means. And most importantly, whatever "loosening" does mean, it does not necessarily *also mean* that Sunlight was not still conducting sufficient diligence and monitoring of its contractors or that Sunlight would have the omniscience to predict that one of its vendors would go into bankruptcy and, in turn, harm Sunlight. And without tying Sunlight's credit issuance and contractor monitoring together through *factual allegations*, Plaintiffs have no basis to proceed on their theory that Sunlight "lacked adequate internal controls" and made misrepresentations to the contrary. *See City of Monroe Employees' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*, No. 10-CV-2835, 2011 WL 4357368, at *22 (S.D.N.Y. Sept. 19, 2011).

Second, Plaintiffs do not argue that Potere conveyed anything *factually* false on May 16, 2022, when he stated that the cash advance program "support[ed] [Sunlight's] contractor partners in . . . secur[ing] sufficient inventory to meet demand." Rather, Plaintiffs argue that these statements were misleading because they somehow concealed that "Sunlight had boxed itself into

---

[4] Courts routinely decline to make inferences concerning the actionability or falsity of an alleged misrepresentation absent predicate facts allowing the court to make those inferences. *Barilli v. Sky Solar Holdings, Ltd.*, 389 F. Supp. 3d 232, 253 (S.D.N.Y. 2019); *Gagnon v. Alkermes PLC*, 368 F. Supp. 3d 750, 770 (S.D.N.Y. 2019); *C.D.T.S. v. UBS AG*, No. 12 CIV. 4924 KBF, 2013 WL 6576031, at *4 (S.D.N.Y. Dec. 13, 2013), *aff'd sub nom. Westchester Teamsters Pension Fund v. UBS AG*, 604 F. App'x 5 (2d Cir. 2015); *In re PDI Sec. Litig.*, No. CIV.A.02-CV-0211 JLL, 2005 WL 2009892, at *16 (D.N.J. Aug. 17, 2005).

5

a corner" with Pink and Vision Solar. Opp. Br. at 14–15. Plaintiffs again conclude without citing to any well-pled facts that "Vision Solar and Pink Energy would go out of business and Sunlight would lose all of their money owed by these two contractors" if they did not receive "continuous injections of cash." *Id.* Although Plaintiffs rely heavily on the allegations of CW2, they do not establish anywhere in the SAC how or what CW2—or anyone else affiliated with Sunlight—actually saw or knew about the financial conditions of Pink or Vision Solar.[5] And there is certainly no allegation anywhere in the SAC that Sunlight advanced cash to these two contractors for the *express purpose* of keeping them in business. Indeed, Plaintiffs never allege that Vision Solar went out of business because Sunlight terminated its cash advance program, or otherwise caused Sunlight any losses.

Sunlight's descriptive disclosures also provided thorough cautionary language that specifically contemplated the precise risk that materialized regarding Pink's bankruptcy, undercutting Plaintiffs' arguments concerning falsity. As the Sunlight Defendants stated in their Motion to Dismiss, Sunlight's risk disclosures in SEC filings disclosed the very real possibility that one of its contractors could eventually become insolvent and adversely impact Sunlight. *See* Mot. to Dismiss at 18–20. Plaintiffs characterize these warnings as "generic." Opp. Br. at 28. Not so. The risk factor disclosures at issue were sufficient because they provided detailed and specific scenarios that actually materialized. *See* March 22, 2021 S-4, (ECF No. 80-1), Ex. A to Mot. to Dismiss at 47. Not only did Sunlight outline in very clear terms the actual risk that eventually materialized with one of its contractors, but it identified a host of *specific* reasons *unique to the solar industry* and outside of Sunlight's control as to why a contractor might become insolvent.

---

[5] Moreover, CW2's allegations must be discounted entirely for the reasons stated below. *See* Part III.C, *infra*.

*See id.* (identifying particularized headwinds such as "changes in economic conditions, adverse trends or events affecting the solar system and home improvement industries, lack of availability of, and/or access to, materials or labor for the installation or construction of solar systems or home improvements, natural disasters and management and cash flow levels"). Plaintiffs also suggest that Sunlight's disclosure that it could suffer losses if it "does not effectively identify and control its risks" was misleading because Sunlight had loosened credit standards. Opp. Br. at 28. But, as stated above, Sunlight's internal decisions regarding credit standards and contractor onboarding and its subsequent monitoring of contractors are two different things. *See* Part III.A.i, *supra*. Thus, this risk disclosure was not the kind of forward-looking statement that "misstated historical facts, or warned (or failed to warn) of a risk that had already materialized." *Lopez v. Ctpartners Exec. Search Inc.*, 173 F. Supp. 3d 12, 40 (S.D.N.Y. 2016). And the Court should reject Plaintiffs' attempt to characterize it as such.

### ii. Plaintiffs fail to offer any legal or factual basis for their assertion that Potere's January 25, 2021 Statement is otherwise actionable.

As the Sunlight Defendants stated in the Motion to Dismiss, Potere's January 25, 2021 Statement touting Sunlight's "low risk" cash advance program is inactionable because it is unverifiable puffery and a statement of opinion, beyond the reach of the securities fraud laws. *See* Mot. to Dismiss at 20–21. Plaintiffs claim in their Opposition Brief that the statement was false because "by 2021 Sunlight had abandoned nearly all credit standards for contractor advances, making the cash advance program highly risky." Opp. Br. at 18. Plaintiffs go on to argue, without citation to any well-pled factual allegations, that "[e]ssentially, Sunlight had become a bank that financed its contractors, relying on nothing more than the contractor's self-supplied financial statements for risk evaluation." *Id.* However, this is a gross distortion of what Plaintiffs *actually* alleged. At most, Plaintiffs make these conclusions based on the allegations of CW1 (*see* SAC

¶¶ 54–60), but as explained more fully below, CW1's allegations must be discounted entirely. And without CW1's allegations, Plaintiffs cannot point to a single fact that would cast any doubt on Potere's "low risk" statement.

Plaintiffs do not dispute that "low risk" (a statement clearly disclosed to investors) is not the same as "no risk" or that Potere's characterization of the contractor program as "low risk" is incapable of being proven. Yet, grasping at straws, Plaintiffs try to pluck certain data points from 2020—a year with unprecedented fiscal stimulus and historically low interest rates brought about by the COVID-19 pandemic—in an attempt to give off the impression that Sunlight was engaging in "risky" behavior. Opp. Br. at 18–19. More than four years removed from the start of the pandemic, it might now be tempting to buy into Plaintiffs' suggestion that Sunlight *could have* been more cautious *then* in how it distributed cash advances, but that is nothing more than a blatant attempt to make a claim of "fraud by hindsight," which as noted above, Plaintiffs cannot do.

In any event, there is no way Plaintiffs can demonstrate through *their own allegations*—as they must—that Potere's "low risk" statement reflected anything other than the company's optimistic outlook or subjective opinion. Indeed, as one court recently explained, a statement that a company's business practices are "low risk" represents nothing more than a "generalized, positive statement[] about the company's competitive strengths" and is "not concrete enough to be a material misrepresentation." *Talarico v. Johnson*, No. 4:21-CV-3689, 2023 WL 2618255, at *12 (S.D. Tex. Feb. 7, 2023), *report and recommendation adopted*, No. CV H: 21-3689, 2023 WL 2616104, at *1 (S.D. Tex. Mar. 21, 2023), *aff'd*, No. 23-20176, 2024 WL 939738 (5th Cir. Mar. 5, 2024); *see also, e.g.*, *In re Citigroup Sec. Litig.*, No. 20 CIV. 9132 (LAP), 2023 WL 2632258, at *14 (S.D.N.Y. Mar. 24, 2023) (similar).

8

Potere's "low risk" statement is also a statement of opinion. *See* Mot. to Dismiss at 21–22. Plaintiffs have not alleged, nor do they argue in the Opposition Brief, that Potere did not believe that the cash advance program was "low risk" when he made the statement. And other than an unparticularized set of general statements from CW1, they have not alleged any facts that would suggest the most minimal of inferences that the cash advance program was not "low risk."

Plaintiffs appear to argue that despite otherwise being inactionable, Potere's "low risk" statement comes within the purview of the securities fraud laws because it was material. But they cite no law for that proposition nor any for the proposition that a statement is actionable simply because it is material. And even if they could, they do not cite to any actual allegations in the SAC in support of their naked assertion, claiming only in their Opposition Brief that "[w]hether this program was risky or not was certainly important to investors evaluating Sunlight." Opp. Br. at 19. But "[a] plaintiff must allege with particularity *facts* to support an inference that the transaction was material." *Canez v. Intelligent Sys. Corp.*, No. 19CV3949RPKCLP, 2021 WL 3667012, at *9 (E.D.N.Y. Aug. 18, 2021) (emphasis added). And "[d]ismissal is appropriate where a plaintiff 'fail[s] to plead materiality adequately.'" *Id.* (quoting *ECA, Loc. 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 202 (2d Cir. 2009)). Here, Plaintiffs point to no facts in the SAC supporting their suggestion that Potere's "low risk" statement was material. And any arguments to the contrary in their "*opposition brief* are inadequate to avoid dismissal." *Id.* (emphasis added).

Simply put, Potere's January 25, 2021 Statement is beyond the reach of the securities fraud laws, and Plaintiffs offer no factual or legal argument to suggest otherwise. Plaintiffs' Section 10(b) claim thus should be dismissed as to the January 25, 2021 Statement.

9

### iii. Plaintiffs fail to offer any legal or factual basis for their assertion that the S-4 Statement is otherwise actionable.

Plaintiffs also sidestep the Sunlight Defendants' argument that the S-4 Statement regarding Sunlight's "robust" underwriting and monitoring procedures is inactionable puffery (Mot. to Dismiss at 22–23) by claiming that "*statements* are puffery, not individual words, and a single word does not render an entire statement puffery."  Opp. Br. at 17 (emphasis in original).  But Plaintiffs cite no authority to suggest that a word that in isolation is devoid of verifiable meaning can become actionable simply because it is part of a broader statement that does not contain embedded facts.  *Cf. Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 189 (2015).

And that is precisely the point that courts have relied on when deeming the word "robust" to be beyond the reach of a fraud claim.  Indeed, one court has even found that "it is impossible for the fact finder to verify" what robust even means absent "some objective measure by which to assess the" service being described.  *Tabletop Media, LLC v. Citizen Sys. of Am. Corp.*, No. CV 16-7140 PSG (ASX), 2017 WL 10591885, at *7 (C.D. Cal. Mar. 3, 2017)  ("[T]he statement that the printer is 'robust' is of a different kind than the statement that a product would be 'defect free.' . . . Although a fact finder might verify whether the product is resistant to 'cupping, twisting, and warping,' it is impossible for the fact finder to verify if the printer is 'robust' without additionally identifying some objective measure by which to assess the printer's robustness.")

Plaintiffs point to *Karimi v. Deutsche Bank Aktiengesellschaft*, 607 F. Supp. 3d 381, 392 (S.D.N.Y. 2022) to demonstrate how *statements* of puffery can be actionable if "they are 'at odds' with 'what was actually going on' at the company."  Opp. Br. at 17 (quoting *Karimi*, 607 F. Supp. 3d at 392).  But in that case, the court concluded that the statements at issue were actionable "because they *provide[d] descriptions of the processes* by which [the defendant] claim[ed] to vet

10

its client" and were thus verifiable statements. *Karimi*, 607 F. Supp. 3d at 393 (emphasis added). Here, in contrast, there is nothing in the S-4 Statement itself that provides any color or detail as to Sunlight's "*robust commercial underwriting and ongoing monitoring process.*"    SAC ¶ 199 (emphasis applied in SAC).   Plaintiffs argue that the S-4 Statement contains sufficient detail to be actionable because it says that Sunlight "reviewed the 'contractor's financial and liquidity position,' 'reputation,' and 'legal compliance practices.'"   Opp. Br. at 17 (quoting SAC ¶ 199). But Plaintiffs do not point to processes that rise to the level of those identified in *Karimi*.   Nor are there any allegations that Sunlight did not in fact take those steps, though perhaps not with the subjective rigor that Plaintiffs now wish it had.

Plaintiffs cite no cases where a court has concluded that the term "robust" can be actionable.   And the weight of authority says it cannot. *See, e.g.*, *City of Sterling Heights Police & Fire Ret. Sys. v. Reckitt Benckiser Grp. PLC*, 587 F. Supp. 3d 56, 93 (S.D.N.Y. 2022); *El Paso Firemen & Policemen's Pension Fund v. InnovAge Holding Corp.*, No. 21-CV-2770-WJM-SKC, --- F.Supp.3d ---, 2023 WL 8831337, at *7, *23 (D. Colo. Dec. 21, 2023); *W. Palm Beach Firefighters' Pension Fund v. Conagra Brands, Inc*., 495 F. Supp. 3d 622, 653 (N.D. Ill. 2020), *aff'd sub nom. Nat'l Elevator Indus. Pension Fund v. Conagra Brands, Inc.*, No. 21-1155, 2022 WL 1449184 (7th Cir. May 9, 2022); *In re Splash Tech. Holdings, Inc. Sec. Litig*., 160 F. Supp. 2d 1059, 1077 (N.D. Cal. 2001).

Accordingly, the Section 10(b) claim should be dismissed as to the S-4 Statement.

          **iv.**       **Plaintiffs do not refute that the August 15, 2022 Statement that Sunlight did "not expect to take any further one-time charges" is a forward-looking statement.**

As the Sunlight Defendants explained in the Motion to Dismiss, Plaintiffs fail to offer sufficient support for why the August 15, 2022 Statement made by Yoder that Sunlight "[did not] expect to take any further one-time charges" (SAC ¶ 209) was false at the time it was made and,

11

by definition, they cannot do so, because the statement comes squarely within the PSLRA's "safe harbor." *See* Mot. to Dismiss at 23–24; 15 U.S.C. § 77z-2. Yoder's statement was not worded as a guarantee, there are no allegations to suggest that he did not believe what he said, and Plaintiffs do not identify any records that Yoder actually reviewed that would suggest he knew he was making a false statement. The statement is not actionable. *See* Mot. to Dismiss at 23–24.

Plaintiffs do not dispute the forward-looking nature of Yoder's statement. Instead, Plaintiffs claim that they alleged facts showing that Yoder acted with actual knowledge of its falsity, but the SAC does no such thing. Opp. Br. at 20. So, to demonstrate falsity, Plaintiffs overstate certain data points regarding Sunlight's cash advances to Pink to give off the impression that Sunlight "had much riding on Pink Energy's success." *Id.* at 13. Presumably, because of that alleged reliance on Pink, they suggest Yoder's statement was false. To that end, they state that at the time of Pink's insolvency, "Pink Energy accounted for *nearly one-third* of Sunlight's total cash advances outstanding." *Id.* (emphasis in original). But they allege no facts to suggest that the size of the cash advance to Pink indicates that Yoder knew that Sunlight made the cash advance to keep Pink out of financial turmoil. And without that predicate factual allegation, Plaintiffs cannot then ask the Court to further assume that the size of the advance to Pink indicates that Yoder *knew* Pink's collapse was imminent because that exercise would require the Court to make several layers of inferences, which it cannot do. *See* Part III.E, *infra*.

Plaintiffs' focus on the size of the cash advance to Pink also misrepresents the total picture. As reflected in the SAC, Sunlight's cash advances rapidly grew for *all* contractors during the time period in question: from $32.6 million in Q1 2021 to $96.7 million in Q3 2022. SAC ¶ 156. That Pink might have received more advances than other contractors ignores the fact that Sunlight gave cash advances of more than $64 million to contractors *other than Pink* in Q3 2022, while in Q1

12

2021, Sunlight gave less than $32 million to contractors other than Pink. *See id.* So any suggestion that Sunlight was diverting funds away from other contractors is belied by the data. When viewed through that lens rather than the one presented by Plaintiffs, it is clear that Sunlight's cash advances to Pink—although alleged by Plaintiffs (SAC ¶ 156) to have represented an increasing percentage of Sunlight's outstanding loans—were simply a product of Sunlight's rapidly growing business and increase in cash advances *to all contractors*.

Plaintiffs' Opposition Brief provides no support to overcome the fact that Yoder's August 15, 2022 Statement falls within the PSLRA safe harbor and is inactionable as a matter of law.

**B.      Plaintiffs' allegations as to the S-4 Statement constitute impermissible "puzzle pleading."**

The Sunlight Defendants set forth in clear terms why the allegations as to the S-4 Statement constitute impermissible puzzle pleading. *See* Mot. to Dismiss at 25–27. In response, Plaintiffs state only that the S-4 Statement does not constitute puzzle pleading because "the Complaint 'identifies statements and omissions, describes relevant predicate events, and alleges how those events make the statements and omissions false or misleading.'" Opp. Br. at 30 (quoting *Constr. Laborers Pension Tr. for S. California v. CBS Corp.*, 433 F. Supp. 3d 515, 530 (S.D.N.Y. 2020)). That argument states no more than what the standard is. Plaintiffs still fail to provide any explanation as to how their excessive use of block quoting and random italicization in Paragraphs 92 and 199 of the SAC make for a cohesive theory of liability that the Sunlight Defendants can understand. Courts have consistently rejected this exact type of puzzle pleading in securities fraud cases. *See, e.g.*, *Lanigan Grp., Inc. v. Li-Cycle Holdings Corp.*, No. 22CV02222HGRML, 2023 WL 6541884, at *4 (E.D.N.Y. Oct. 6, 2023); *Tabor v. Bodisen Biotech, Inc.*, 579 F. Supp. 2d 438, 452–53 (S.D.N.Y. 2008); *Constr. Workers Pension Fund-Lake Cnty. & Vicinity v. Navistar Int'l*

13

*Corp.*, No. 13 C 2111, 2014 WL 3610877, at *5 (N.D. Ill. July 22, 2014); *In re Splash Tech. Holdings, Inc. Sec. Litig.*, 160 F. Supp. 2d 1059, 1074–75 (N.D. Cal. 2001).

In an attempt to excuse their puzzle pleading, Plaintiffs make reference to *Boca Raton Firefighters & Police Pension Fund v. Bahash*, 506 F. App'x 32 (2d Cir. 2012) and the 280-page complaint that was dismissed in that case—seemingly in an attempt to demonstrate that *Plaintiffs'* allegations in *this case* are not puzzle pleading. *See* Opp. Br. at 30. But *Boca Raton* does not even address puzzle pleading. Rather, the court affirmed dismissal of the complaint in that case, in part because the lengthy allegations were not pled with particularity (*id.* at 37–38)—which is a different concept than puzzle pleading (although as addressed below, the SAC does also suffer from a number of infirmities concerning a lack of particularized allegations). To that end, the fact that Plaintiffs' allegations are not as extensive as those in *Boca Raton* is irrelevant because that case did not establish the lowest standard by which a plaintiff can avoid improper puzzle pleading, and it does not carry any precedential or persuasive value on that point of law.

C.      **Plaintiffs' Opposition Brief does not rehabilitate the Confidential Witnesses.**

Plaintiffs cannot, and indeed barely even attempt to, support the sufficiency of their deficient CW allegations. *See* Opp. Br. at 26–27. Plaintiffs urge the Court to credit their CW statements simply because they claim that the CWs are "described in the complaint with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged." Opp. Br. at 26 (quoting *In re Avon Sec. Litig.*, 2019 WL 6115349, at *21 (S.D.N.Y. Nov. 18, 2019)) (other internal quotation and citation omitted). But that *ipse dixit* conclusion is not enough.

First, Plaintiffs barely even mention CWs 2, 3, and 4 in the Opposition Brief, stating only that they have provided adequate job descriptions for each of them (Opp. Br. at 27 & n.14), that CW2, as a recruiter, would have known about the cash advance program, and that CW3 attended

weekly meetings. Opp. Br. at 27. But merely providing job descriptions of the CWs is apropos of nothing. Plaintiffs still must identify how the CW allegations "show that [the] individual defendants actually possessed the knowledge *highlighting the falsity of public statements*." *Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 591 (S.D.N.Y. 2011) (emphasis added). This Plaintiffs cannot do for any of the CWs, and they do not even set forth an argument in the Opposition Brief attempting to do so as to CWs 2–4.

Second, Plaintiffs offer CW1 for his allegation "describ[ing] Sunlight's . . . due diligence on contractors as 'lackadaisical'" and his allegations that "Sunlight's initial vetting of contractors consisted of looking at the contractor's self-supplied financial statements." SAC ¶ 58. They offer CW2 to suggest that "rather than being judicious about which contractors to work with, Sunlight was practically begging and 'buy[ing]' contractors." *Id.* ¶ 145. They offer CW3's allegations because apparently he was ignored by Sunlight despite claiming that Vision Solar was "a terrible installer and that they were going to put [Sunlight] in a bad position." *Id.* ¶ 152. And they offer CW4 for his allegations that "[s]ome [contractors] didn't pay [Sunlight] back. Some would disappear because they have already gotten their money." *Id.* ¶ 155.

But, as outlined in the Motion to Dismiss, even if these allegations are true, they do not suggest that Sunlight was aware of *Pink's liquidity issues*, much less that Sunlight knowingly disregarded those issues. *See* Mot. to Dismiss at 31–37. Nor do Plaintiffs provide any sort of relevant predicate factual allegations that would allow the court to make that inference. Instead, Plaintiffs contend that under *City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent. Inc.*, 477 F. Supp. 3d 123, 132 (S.D.N.Y. 2020), they can rely on CW allegations "even where those sources offer indirect knowledge." Opp. Br. at 26. But a CW's indirect knowledge must still *bear on the statements at issue* in order to be credited at the motion-to-dismiss stage. *See Glaser*, 772

15

F. Supp. 2d at 591; *see also, e.g.*, *Jacobowitz v. Range Res. Corp.*, 596 F. Supp. 3d 659, 686 (N.D. Tex. 2022) (discounting CW allegations where the "CW allegations d[id] not address the specific statements at issue"). In *City of Warren Police*, the court specifically credited a CW allegation because his allegations directly called into question whether the defendant's statement that it had an "agreement in principle" for a media rights deal was actually true. 477 F. Supp. 3d at 132. Specifically, the CW provided *factual information* that the defendant and another contracting party were far apart in the contract negotiation process at the time the statement was made; allegations that, if true, would clearly demonstrate that the defendant's statement was false and that defendant knew it to be false. *Id.* But in the SAC, Plaintiffs' CW allegations do not in any way provide verifiable information that would tend to show that any part of the Statements was false, much less that the speaker knowingly made a false statement.

And Plaintiffs miss the point as to why CW1's allegations must be discarded. As stated in the Motion to Dismiss, CW1's assertion concerning Sunlight's alleged "lackadaisical" due diligence is not applicable to anything that occurred after March 2022, when CW1's employment (as a relationship manager, not a member of Sunlight's credit risk management team) with Sunlight ended. *See* Mot. to Dismiss at 37; SAC ¶ 54. CW1 could not have had any awareness of many of the alleged "red flags" Plaintiffs identify, which occurred almost entirely *after* CW1 ended his employment. *See* SAC ¶¶ 161–67. And whatever relevant knowledge CW1 might have possessed, that knowledge predates Yoder's August 15, 2022 Statement.

Plaintiffs contend that, under *Employees' Retirement System of Government of Virgin Islands v. Blanford*, 794 F.3d 297, 307 (2d Cir. 2015), "allegations concerning activity in one period can support an inference of similar circumstances in a subsequent period." Opp. Br. at 27. But in *Blanford*, the court assessed confidential witness allegations about the defendant's conduct

16

*during* the class period; it did not use pre-class period allegations to infer later class-period conduct. 794 F.3d at 307. Here, in contrast, almost all of Plaintiffs' allegations relying on CW1's allegations address events occurring in 2020 or before, or at some undefined time. SAC ¶¶ 55–60, 68–69. Plaintiffs do not identify with particularity any statement or observation from CW1 that occurred during the Class Period.

Nor does *Greco v. Qudian Inc.*, No. 1:20-CV-577-GHW, 2022 WL 4226022, at *12–13 (S.D.N.Y. Sept. 13, 2022) support Plaintiffs' argument. In that case, the court concluded that a former employee who served as a confidential witness described *with particularity* an actual banking practice that the court could infer continued after his employment. *Id.* at *12–13. Here, in contrast, CW1's allegations only generally and vaguely refer to changes in Sunlight's monitoring of contractors, a far cry from the concrete allegation provided by the confidential witness in *Greco*.

Simply put, CW1's allegations must be entirely discounted for lack of any relevance in establishing that the Statements were false or misleading when made. *See Long Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774, 799 (S.D.N.Y. 2020) ("[S]tatements of CWs that cannot situate in time relevant occurrences are . . . disregarded because they cannot establish that the challenged statements were knowingly false when made."); *see also, e.g.*, *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 580–81 (S.D.N.Y. 2014), *aff'd*, 604 F. App'x 62 (2d Cir. 2015); *Malin v. XL Capital Ltd.*, 499 F. Supp. 2d 117, 141–42 (D. Conn. 2007), *aff'd*, 312 F. App'x 400 (2d Cir. 2009).[6]

---

[6] Plaintiffs also do not confront Sunlight's argument that the allegations of CWs 1, 2, and 3 are expressions of opinion, not fact, and thus carry no weight here. *See* Mot. to Dismiss at 35–36. By not addressing this issue, Plaintiffs concede that argument. *Ohr Somayach/Joseph Tanenbaum Educ. Ctr.*, 483 F. Supp. 3d at 206 n.6.

17

The Opposition Brief does little to overcome—and, indeed, barely even attempts to explain—how any of the CW allegations are related to Sunlight's knowledge about Pink's insolvency, the *only* event that caused the losses claimed by Plaintiffs. The CW allegations must be entirely discarded.

**D.    Plaintiffs have not shown why the Court should credit the allegations regarding Pink Energy in the *Generac* lawsuit.**

As the Sunlight Defendants have already addressed, the *Generac* lawsuit has been stayed since October 2022 without ultimate resolution, and the allegations from that case have no import here. Mot. to Dismiss at 37–38. In response, Plaintiffs only cursorily argue that they are permitted to rely on allegations from that lawsuit as "facts" supporting the alleged misrepresentations in the Statements. *See* Opp. Br. at 29–30; SAC ¶ 169. But "Second Circuit case law is clear that paragraphs in a complaint that are either based on, or rely on, complaints in other actions that have been dismissed, settled, or otherwise not resolved, are, as a matter of law, immaterial." *RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 403 (S.D.N.Y. 2009), *aff'd*, 387 F. App'x 72 (2d Cir. 2010); *see also* Mot. to Dismiss at 38 (collecting cases).

Plaintiffs do not address the overwhelming authority that prohibits them from relying on the *Generac* lawsuit, stating only that "final merits adjudication is irrelevant because what matters is Pink Energy's ***admissions*** in the lawsuit ***concerning its own*** financial condition." Opp. Br. at 29 (emphasis in original). But Plaintiffs offer no authority to suggest that another plaintiff's allegations in a separate lawsuit are tantamount to "admissions" that can be used to support Plaintiffs' claims. Indeed, Plaintiffs only cite one inapposite case in support of their argument, *In re Am. Realty Cap. Properties, Inc. Litig. See* Opp. Br. at 29–30. There, the court denied motions to dismiss on the basis that the plaintiffs relied on allegations from a state court complaint. No. 15 MC 40 AKH, 2015 WL 6869337, at *4 (S.D.N.Y. Nov. 6, 2015). But there, unlike here, the

18

state court complaint that the plaintiffs relied on was against the very defendant named in their lawsuit. Presumably, the defendant would have had the opportunity to defend itself against those allegations, whereas here the Sunlight Defendants have no ability to contest anything that was alleged in the *Generac* lawsuit because they are not parties to it.

Because the *Generac* lawsuit is unresolved, this Court must disregard any allegations concerning the lawsuit that Plaintiffs seek to use in support of their claims.

### E.    Plaintiffs' new facts, inferences, and conclusory allegations of scienter still do not meet the demanding Rule 9(b) and PSLRA standards.

As the Sunlight Defendants stated in their Motion to Dismiss, none of Plaintiffs' allegations in the SAC permit the Court to infer that any of the Sunlight Defendants acted with scienter with respect to any of the Statements. *See* Mot. to Dismiss at 39–46. In the Opposition Brief, Plaintiffs make cursory suggestions that because the Sunlight Individual Defendants held corporate positions they must have known that the Statements were misleading. *See* Opp. Br. at 21. But these suggestions are just that—suggestions. They do not meet the PSLRA's requirement that plaintiffs plead facts to support a "strong inference that the defendant acted with the required state of mind." *In re MINISO Grp. Holding Ltd. Sec. Litig.*, No. 22-CV-9864 (ER), 2024 WL 759246, at *17 (S.D.N.Y. Feb. 23, 2024) (quotation and citation omitted).

Plaintiffs' suggestions and arguments that their allegations support a strong inference of scienter are not based on any actual allegations of scienter in the SAC; they rely mostly on group pleading,[7] and they rely heavily on a faulty, un-pleaded (and untrue) premise that Sunlight was effectively running a shadow business designed to keep two contractors financially stable. The

---

[7] Plaintiffs do not address the Sunlight Defendants' argument that the SAC relies on impermissible group pleading in an effort to demonstrate scienter. Mot. to Dismiss at 45–46. Their failure to respond to this argument deems that issue conceded. *See Ohr Somayach/Joseph Tanenbaum Educ. Ctr.*, 483 F. Supp. 3d at 206 n.6.

only "fact" that Plaintiffs identify in support of scienter is that the Sunlight Individual Defendants held corporate positions during the Class Period. Opp. Br. at 21. But "[c]ourts in this Circuit have long held that accusations founded on nothing more than a defendant's corporate position are entitled to no weight." *City of Brockton Ret. Sys. v. Avon Prod., Inc.*, No. 11 Civ. 4665 (PGG), 2014 WL 4832321, at *19 (S.D.N.Y. Sept. 29, 2014). And even if they were, Plaintiffs cannot rely on "pil[ing] inference upon inference" to meet the pleading standard for federal securities lawsuits. *In re Merrill Lynch Auction Rate Sec. Litig.*, 886 F. Supp. 2d 340, 344 (S.D.N.Y. 2012), *aff'd sub nom. Cellular S. Inc. v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 516 F. App'x 30 (2d Cir. 2013); *see also Maguire Fin., LP v. PowerSecure Int'l, Inc.*, 876 F.3d 541, 548 (4th Cir. 2017) ("A plaintiff may not stack inference upon inference to satisfy the PSLRA's pleading standard.")

**First**, Plaintiffs rely on the core operations doctrine to suggest that "[i]t is not plausible" that Potere and Edinburg did not know of Sunlight's purported change to a loosening of credit standards in 2019. Opp. Br. at 21. As discussed above, credit issuance and contractor monitoring are two separate things, and a change in one does not necessarily render statements made about the other false. But even setting that aside, Plaintiffs cannot rely solely on the core operations doctrine *alone* to impute scienter to Potere and Edinburg. "The majority of courts in this Circuit have found that the core operations doctrine is a supplementary, but not an independent, means to plead scienter." *Menora Mivtachim Ins. Ltd. v. Int'l Flavors & Fragrances Inc.*, No. 19 CIV. 7536 (NRB), 2021 WL 1199035, at *26 n.28 (S.D.N.Y. Mar. 30, 2021), *aff'd*, 49 F.4th 790 (2d Cir. 2022), and *aff'd*, F.4th 82 (2d Cir. 2022). "[T]he 'core operations doctrine' bolsters the strength of the inference of scienter when plaintiff *has already adequately alleged facts* indicating that defendants might have known their statements were false." *Tyler v. Liz Claiborne, Inc.*, 814 F.

20

Supp. 2d 323, 343 (S.D.N.Y. 2011) (emphasis added).  Plaintiffs have alleged no such facts, and their suggestions in their brief that scienter is otherwise met under the core operations doctrine are wholly unsupported.  *See, e.g.*, *Behrendsen v. Yangtze River Port & Logistics Ltd.*, No. 19CV00024DLILB, 2021 WL 2646353, at \*12 (E.D.N.Y. June 28, 2021) ("Absent allegations that independently give rise to a strong inference of scienter, such as allegations that Defendants Zheng, Chan, Coleman, and Leibowitz knew or should have known that the SEC filings contained false statements, Plaintiffs cannot rely on the core operations doctrine to establish scienter.").

**Second**, Plaintiffs argue that "it is implausible" that Potere and Edinburg did not know of Sunlight's purported misrepresentations regarding its contractor monitoring when they signed the S-4.  Opp. Br. at 21.  For one, this argument merely repeats Plaintiffs' "core operation" argument. Regardless, as the Sunlight Defendants already argued in their Motion to Dismiss, Potere and Edinburg's ministerial act of signing an SEC disclosure is insufficient to show scienter.  Mot. to Dismiss at 44; *see also, e.g.*, *In re Molycorp, Inc. Sec. Litig.*, No. 13–cv–5697 (PAC), 2015 WL 1097355, at \*12 (S.D.N.Y. Mar. 12, 2015); *Bozsi Ltd. P'ship v. Lynott*, 676 F. Supp. 505, 510 (S.D.N.Y. 1987).

**Third**, Plaintiffs argue (without citation to the SAC) that "[i]t is unlikely that [Potere] [approved cash advances] without looking at the diligence file for each contractor receiving advances (and therefore knew what was and wasn't done as part of Sunlight's due diligence and ongoing monitoring of contractors)."  Opp. Br. at 22.  But Plaintiffs ask the Court to make multiple inferential leaps to impute scienter to Potere, relying on nothing more than his corporate position and a contrived narrative (unpleaded in the SAC) that Sunlight's real intentions were to drive growth by funneling cash to two of its contractors to keep them afloat.

Plaintiffs ask the Court to draw inference upon inference in finding scienter as to Potere. And while certain *facts* can give rise to inferences, the inferences themselves cannot give rise to further inferences. *See In re Merrill Lynch Auction Rate Sec. Litig.*, 886 F. Supp. 2d at 344; *Maguire Fin., LP*, 876 F.3d at 548; *see also Stein v. Tangoe, Inc.*, No. 3:13-CV-00286 (VLB), 2014 WL 12767210, at *13 (D. Conn. Sept. 30, 2014) ("Even though this Court is required to draw all permissible inferences in favor of the plaintiff at the motion to dismiss stage, it is only required to draw those inferences from facts that are sufficiently pled."). While it is certainly not implausible that Potere *might* have looked at the diligence files (although, again, Plaintiffs point to no facts suggesting as much), to then ask the Court to assume that Potere *read* each and every line of the files and *knew* where every dollar went *and why* are inferences to which Plaintiffs are not entitled. Nor are Plaintiffs entitled to the subsequent inference they wish the Court to draw— that Potere sat on this purported knowledge he accrued from the diligence files and failed to correct his earlier "low risk" statement and May 16, 2022 Statements based on what he *might* have read in the diligence files (if he read them at all). That inference would require the Court to make three assumptions (not based on any allegations) in Plaintiffs' favor. That amounts to textbook inference "stacking." *Maguire Fin., LP*, 876 F.3d at 548. And the Court must reject it.

**Fourth**, Plaintiffs carry on with their theme of fraud-by-hindsight to suggest that Sunlight's announcement that it would re-underwrite cash advances to "all" of its contractors—rather than only Pink—somehow reflects a concession on Sunlight's part that it knew its representations regarding its monitoring program were false. Opp. Br. at 23. Unable to establish scienter through the case they have pleaded, Plaintiffs instead seek to punish Sunlight for doing exactly what it should have done following an unexpected adverse event. But "drawing an inference [of scienter] from [Sunlight's decision to re-underwrite contracts going forward] would run afoul Federal Rule

22

of Evidence 407, which provides that evidence of subsequent remedial measures is not admissible to show a defendant's liability." *In re Boeing Co. Aircraft Sec. Litig.*, No. 19-cv-02394, 2022 WL 3595058, at *11 (N.D. Ill. Aug. 23, 2022); *see also In re Longtop Fin. Techs. Ltd. Sec. Litig.*, 939 F. Supp. 2d 360, 388 n.213 (S.D.N.Y. 2013) (refusing to draw adverse inference of scienter based on defendant-auditor's "attempts to strengthen [co-defendant's] financial controls").

**Fifth**, Plaintiffs rely on several arguments, without citation to the SAC, in an attempt to show actual knowledge on the part of Yoder with respect to the August 15, 2022 Statement. Each of these arguments is improper. *See* Mot. to Dismiss at 42–49. As an initial matter, Plaintiffs point to the allegations from the *Generac* lawsuit to show that Yoder *should have* known of Pink's "dire financial condition." Opp. Br. at 13. However, Plaintiffs cannot rely on unproven and unlitigated allegations from *that lawsuit* in support of their claims in *this* lawsuit. *See* Part III.D, *supra*. And even if they could do so, they do not allege in the SAC—or even state in their brief—that Yoder *actually knew* of the *Generac* lawsuit. Plaintiffs also state that Pink Energy and Vision Solar "were two of the most reviled solar contractors in the industry[,]" seemingly to suggest that Yoder knew that dealing with Pink would result in future losses that he did not disclose on August 15, 2022. Opp. Br. at 14. But even if true, that would—at most—only show that Sunlight was dealing with contractors who had poor reputations, not that one of those contractors would become insolvent and, in turn, negatively impact Sunlight's finances. Plaintiffs then suggest that Yoder knew his statement was false "because Sunlight would take additional losses a month later." Opp. Br. at 14. But this is nothing more than another attempt to allege fraud by hindsight, and Plaintiffs cannot show in the SAC how any of what would happen in the future suggested that Yoder was untruthful at the time he made his statement. Lastly, Plaintiffs suggest that Yoder knew his statement was false "because he knew that more losses were likely given Sunlight's deep

23

entanglement with Pink Energy and Vision Solar." Opp. Br. at 14. Of course this statement, like many of the other assertions in the Opposition Brief, is nowhere to be found in the SAC, nor are there even general allegations that Yoder was aware of Pink's financial condition.[8]

**Sixth,** Plaintiffs argue that they have sufficiently alleged scienter because Sunlight assigned Pink a risk rating of "3," which Plaintiffs do not dispute is a middle-tier rating which reflects that, at the time of the risk assessment, Sunlight thought that there was a not-insignificant amount of risk attributable to Pink. *See* Mot. to Dismiss at 14. Plaintiffs suggest, without pointing to any allegations, that the "3" rating was improper because of Pink's poor reviews that began in 2020 and its "fraudulent practices becoming regular fare on national and local news media." Opp. Br. at 23. Of course, Plaintiffs never suggest that the Sunlight Defendants *knowingly* assigned Pink a purportedly improper rating. And, as is thematic throughout Plaintiffs' brief and the SAC, Plaintiffs never connect what, in their opinion, was Pink's less-than-savory business practices (viewed through the benefit of hindsight) to any public knowledge about Pink's financial affairs, much less the Sunlight Defendants' knowledge regarding the same. Nowhere do Plaintiffs allege that Sunlight received information that Pink and Vision Solar were likely to become insolvent, and the mere fact that Pink subsequently became insolvent is not indicative that Sunlight misrepresented its controls. And without that essential link, none of what the Sunlight Defendants did or did not do or knew or did not know about Pink is relevant.

---

[8]Additionally, nowhere do Plaintiffs explain how media reports about Pink, customer reviews about Pink, or unsubstantiated allegations from the *Generac* lawsuit (SAC ¶¶ 157–80) demonstrate that Yoder's statement about Sunlight's expectations of future losses was false. Nor could they. The news articles and *Generac* complaint did not emerge until the spring and summer of 2022, and Sunlight represented only that it reviews its contractors on at least an *annual* basis (*Id.* ¶¶ 90, 199), meaning that even if the allegations in *Generac* were true and could be considered by the Court (which, as discussed above, they cannot be), the Court would ***not*** be able to make the inference that Yoder actually knew about those allegations.

24

**Finally,** Plaintiffs make a final argument to say they are entitled to a "compelling inference" that because Sunlight endeavored to become a publicly traded company it needed to emphasize growth and that "[t]o drive growth, it needed to get as many contractors as it could to partner with Sunlight." Opp. Br. at 23–24. Plaintiffs state that Sunlight "then deliberately loosened credit standards and gave out increasingly generous cash advances to attract and retain contractors." *Id.* at 24. Seizing on buzzwords but light on substance, Plaintiffs make these arguments *in their brief alone*, essentially asking the Court to assume a set of allegations Plaintiffs never made. And while it is true that Plaintiffs are entitled to some inferences, they are only entitled to those that are reasonable. That does not mean they can simply ask the Court to read into the SAC *facts* that Plaintiffs never alleged. *See In re Merrill Lynch Auction Rate Sec. Litig.*, 886 F. Supp. 2d at 344; *Maguire Fin., LP*, 876 F.3d at 548.[9]

Plaintiffs have failed to adequately plead that any of the Sunlight Defendants, including the Sunlight Individual Defendants, acted with scienter when making the allegedly false statements identified in the SAC. The Court must reject Plaintiffs' efforts to overcome this deficiency with layers of requested "inference-stacking" in the Opposition Brief.[10]

---

[9] Plaintiffs also do not provide an adequate explanation as to why they omitted the reference to the 1-5 rating scale in the SAC despite having done so in the Amended Complaint, or *when* Sunlight assigned the "3" rating to Pink, both of which are critical details to understand Plaintiffs' focus on that data point, albeit unhelpful to Plaintiffs' arguments. *See* Mot. to Dismiss at 13–16.

[10] Even though Plaintiffs fail to plead scienter as to any of the Sunlight Individual Defendants, they maintain in a cursory argument in a footnote that they can still plead *corporate* scienter. Opp. Br at 24 n.13. And the one case they do cite describes the high bar for this theory:

> Suppose General Motors announced that it had sold one million SUVs in 2006, and the actual number was zero. There would be a strong inference of corporate scienter, since so dramatic an announcement would have been approved by corporate officials sufficiently knowledgeable about the company to know that the announcement was false.

25

**F.      Plaintiffs' Opposition Brief does not save their failure to plead loss causation.**

Plaintiffs' Opposition Brief also confirms that the SAC fails to plead loss causation. In short, and as Sunlight stated in the Motion to Dismiss, Plaintiffs are unable to identify any allegation suggesting that the Statements, which concern Sunlight's *internal* controls (SAC ¶¶ 90–94), had anything to do with the actual cause of their damages—the disclosure concerning the impairment charge stemming from the Pink liquidity concerns (*Id.* ¶¶ 213–16). Mot. to Dismiss at 40–42. Apparently conceding that Sunlight did not have control over Pink's financial condition, Plaintiffs instead now base their theory of loss causation on the materialization of what they claim was "the very real risk that Sunlight was going to incur substantial losses because of a contractor defaulting on its cash advances." Opp. Br. at 25. But Sunlight's announcement of *Pink*'s impending bankruptcy was not within the "zone of risk" of statements regarding *Sunlight*'s internal controls, as required to prove loss causation. *See Lattanzio v. Deloitte & Touche LLP*, 476 F.3d 147, 157 (2d Cir. 2007). In other words, the Sunlight stock drop was not caused by any corrective statement regarding the alleged misrepresentations—it was caused by another entity's liquidity issues.

Plaintiffs also try to change the "risk" they allege was concealed by asking the Court to read in an un-pled allegation that Sunlight was specifically aware of *Pink*'s financial condition and concealed *that risk* from the market. *See* Opp. Br. at 24–26. But that is not the "risk" Plaintiffs have *alleged* that Sunlight concealed; rather, the SAC vaguely alleges that Sunlight concealed that

---

*Teamsters Loc. 445 Freight Div. Pension Fund v. Dynex Cap. Inc.*, 531 F.3d 190, 195–96 (2d Cir. 2008). Plaintiffs' allegations fall well short of this standard. As explained *supra* at Part III.E, Plaintiffs do not establish a strong inference of scienter as to any of the Sunlight Individual Defendants. And while the September 28, 2022 announcement certainly had an impact on Sunlight's stock, it is not the kind of "dramatic" announcement necessary to meet the high bar of corporate scienter.

it "had embarked on a risky strategy." SAC ¶ 129. But that allegation speaks only to Sunlight's business model, not its awareness of Pink's liquidity issues. And, of course, Plaintiffs cannot use their Opposition Brief to rewrite the SAC. *See, e.g.*, *Wilchfort v. Knight*, 307 F. Supp. 3d 64, 72 n.13 (E.D.N.Y. 2018).

To support their loss causation argument, Plaintiffs rely on cases that are irrelevant because they do not address the SAC's fatal defect—the absence of alleged facts showing that the September 28, 2022 drop in Sunlight's stock price had anything to do with the Statements. In *Suez Equity* and in *Heller* (Opp. Br. at 25–26), there was a clearly pled nexus between the alleged misrepresentations and the alleged losses. *See Suez Equity Invs., L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 98 (2d Cir. 2001) (concluding plaintiff had sufficiently alleged loss causation because, among other things, it alleged that defendant concealed that its principal was underskilled in managing debt loads, which was directly tied to the company's liquidity problems); *Heller v. Goldin Restructuring Fund, L.P.*, 590 F. Supp. 2d 603, 624 (S.D.N.Y. 2008) (finding that plaintiff pled loss causation where it alleged that defendants represented that their investment fund sought to have a "diverse portfolio" but failed to disclose that the fund actually had "a high-risk investment strategy in only one company, which resulted in Plaintiff's monetary losses.").

Plaintiffs' reliance on *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223 (2d Cir. 2016) is also misplaced. Opp. Br. at 24–25. In that case, the Second Circuit, after a jury finding of liability, concluded that there was "ample *evidence* to support the *jury's finding*" of loss causation. 838 F.3d at 263 (emphases added). The case did not address at all what is required of a plaintiff to *plead* loss causation, which is the only relevant issue before the court at the motion-to-dismiss stage of the proceedings. And *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 188–89 (2d Cir. 2015) was not decided under the PSLRA, and thus has no application here.

Finally, Plaintiffs suggest that loss causation need not be pleaded with particularity. *See* Opp. Br. at 24. But even assuming that is correct, it does not relieve Plaintiffs of their obligation to plead actual "*facts* to support an inference that Defendants' alleged fraud caused the drop in stock prices." *Fila v. Pingtan Marine Enter. Ltd.*, 195 F. Supp. 3d 489, 499 (S.D.N.Y. 2016) (emphasis added). As outlined above and in Sunlight's Motion to Dismiss, Plaintiffs have failed to meet that standard. *See* Mot. to Dismiss at 40–42. The bulk of Plaintiffs' actual allegations in the SAC concern the negative business reputations and poor customer reviews of Pink and Vision Solar. Those allegations, at most, suggest only that Sunlight might have made some questionable business decisions in engaging with those contractors. But a company's questionable practices have no relevance to a causation analysis, absent some allegation connecting those practices to an actual misrepresentation. *See Rothman v. Gregor*, 220 F.3d 81, 90 (2d Cir. 2000); *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 53 (2d Cir. 1995); *see also* Mot. to Dismiss at 42 (collecting cases). Plaintiffs are not entitled to an inference of causation absent actual allegations supporting a causal connection between Plaintiffs' losses and the purported misrepresentations in the Statements. Because the SAC fails to make that connection, Plaintiffs have failed to plead loss causation and the SAC should be dismissed.

## IV.    Plaintiffs must plead "culpable participation" in their Section 20(a) claim against the Sunlight Individual Defendants.

As stated in the Motion to Dismiss, Plaintiffs cannot maintain a Section 20(a) claim against the Sunlight Individual Defendants because Plaintiffs have failed to plead a primary violation (because their Section 10(b) claim fails) and have failed to plead that any of the Sunlight Individual Defendants "controlled" a primary violator. *See* Mot. to Dismiss at 47–49.

Plaintiffs concede that whether they have stated a primary violation rests on whether they can go forward with their Section 10(b) claim, which, as the Sunlight Defendants state above, they

28

cannot. Plaintiffs then focus their response by identifying a circuit split regarding the "control" person inquiry, stating that this Court should side with the Fifth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits, which have concluded that Section 20(a) claimants need not plead "culpable participation" to survive a motion to dismiss. Opp. Br. at 31.

The Sunlight Individual Defendants acknowledge that the Second Circuit has not ruled definitively on the issue, but this Court, and indeed "most courts in this district," have already held that culpable participation is a required element subject to the PSLRA's heightened pleading standard. *See In re ShengdaTech, Inc. Sec. Litig.*, No. 11 Civ.1918(LGS), 2014 WL 3928606, at *10 (S.D.N.Y. Aug. 12, 2014); *see also In re Am. Realty Cap. Properties, Inc. Litig.*, No. 15 MC 40 (AKH), 2016 WL 11110435, at *3–4 (S.D.N.Y. Aug. 5, 2016) (Hellerstein, J.) (dismissing, in part, Section 20(a) claims that failed to plead culpable participation, noting that "[a]lthough the Second Circuit has not addressed the issue, the district court decisions [in this Circuit] require, where fraud is alleged, specific acts of culpable participation.") (citing cases); *Tecku v. Yieldstreet, Inc.*, No. 20 CIV. 7327 (VM), 2022 WL 1322231, at *16 (S.D.N.Y. May 3, 2022) ("[T]he heightened pleading standards of the PSLRA apply with respect to the third prong of a Section 20(a) claim, which requires plaintiffs to allege facts demonstrating that the defendant was a culpable participant."); *In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F. Supp. 3d 111, 150 (S.D.N.Y. 2021) (requiring culpable participation to be pleaded at the motion to dismiss stage); *In re ForceField Energy Inc. Sec. Litig.*, No. 15 CIV. 3020 (NRB), 2017 WL 1319802, at *16 (S.D.N.Y. Mar. 29, 2017) ("[T]his Court has consistently sided with most judges in the District and found that a plaintiff *must plead* culpable participation with scienter.") (emphasis added); *In re Weight Watchers Int'l Inc. Sec. Litig.*, 504 F. Supp. 3d 224, 264 (S.D.N.Y. 2020) (recognizing that requiring culpable participation as an element of Section 20(a) claims is the majority view in

29

the district).  Plaintiffs offer no reason for why this Court should go against this weight of authority, and the Court should reject Plaintiffs' argument to adopt this minority view.

Plaintiffs do at least acknowledge the possibility that they might indeed need to plead culpable participation, but argue that they need only meet the less stringent Rule 8 pleading standard to do so.  Opp. Br. at 32–33.  Again, the weight of authority in this District says otherwise, with most courts concluding that a plaintiff must "plead *particularized facts* that give rise to a strong inference of [the alleged control person's] culpable participation in the alleged fraud."  *In re Citigroup Inc. Sec. Litig.*, 753 F. Supp. 2d 206, 249 (S.D.N.Y. 2010) (emphasis added); *see also, e.g.*, *Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA Ltd.*, 33 F. Supp. 3d 401, 438 (S.D.N.Y. 2014) (Culpable participation "must be pleaded with the same particularity as scienter."); *Edison Fund v. Cogent Inv. Strategies Fund, Ltd.*, 551 F. Supp. 2d 210, 231 (S.D.N.Y. 2008) ("[T]o withstand a motion to dismiss a section 20(a) controlling person liability claim, a plaintiff must allege 'some level of culpable participation at least approximating recklessness in the section 10(b) context'") (quoting *Lapin v. Goldman Sachs Group, Inc.*, 506 F. Supp. 2d 221, 248 (S.D.N.Y. 2006)).

Plaintiffs fail to meet that heightened standard, only stating that they have sufficiently alleged culpable participation because they allege that "Potere and Edinburg signed SEC filings containing the false S-4 Statements" and that "Potere and Yoder spoke on behalf of Sunlight on earnings and investor conference calls where false statements were made."  Opp. Br. at 33.  But none of those allegations rise to the level of culpable participation, regardless of whether they are particularized.  *See* Mot. to Dismiss at 47–49.

Because culpable participation is a required element of a Section 20(a) claim that must be pleaded with particularity, and Plaintiffs have conceded that they have not attempted to meet the

heightened pleading standard (Opp. Br. at 32–33), the Court should dismiss the Section 20(a) claim against the Sunlight Individual Defendants.

## V.    Plaintiffs' Opposition Brief does not save their deficient Section 14(a) claim.

### A.    Plaintiffs must satisfy Rule 9(b) and the PSLRA's heightened pleading requirements.

The Sunlight Proxy Claim Defendants do not dispute Plaintiffs' position that fraud and negligence claims may be segregated in a complaint and that each would be subject to different pleading standards.  However, Plaintiffs' Opposition Brief ignores the Sunlight Proxy Claim Defendants' more substantive argument that such segregation avoids the application of Rule 9(b) only when the Section 14(a) allegations *do not sound in fraud*.  *See* Mot. to Dismiss at 54–57. And in *Fresno Cnty. Employees' Ret. Ass'n v. comScore, Inc.*, the very case Plaintiffs rely upon for their argument (Opp. Br at 33, 36, 38), the court specifically stated that "when claims under Sections 11 and 14(a) 'are premised on allegations of fraud,' they must also satisfy Rule 9(b)." 268 F. Supp. 3d 526, 558 (S.D.N.Y. 2017) (internal citation omitted); *see also id.* ("[P]laintiffs cannot evade the Rule 9(b) strictures by summarily disclaiming any reliance on a theory of fraud or recklessness." (internal citation omitted)); *Police & Fire Ret. Sys. of City of Detroit v. SafeNet, Inc.*, 645 F. Supp. 2d 210, 226 (S.D.N.Y. 2009) (Rule 9(b) applies "even if [the plaintiff] disclaim[s] reliance on a fraud theory"); *In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 635 (S.D.N.Y. 2005) ("Plaintiffs cannot evade the Rule 9(b) strictures by summarily disclaiming any reliance on a theory of fraud or recklessness.").

For the reasons stated herein and in the Motion to Dismiss, the factual assertions in Plaintiffs' Section 14(a) claim are premised on the same alleged fraud and misrepresentations as their Section 10(b) claim.  *See* Mot. to Dismiss at 54–57.  Plaintiffs do not argue otherwise and, indeed, concede that they did not even attempt to satisfy Rule 9(b) or plead the Sunlight Proxy

Claim Defendants' state of mind with respect to their Section 14(a) claim. Opp. Br. at 36, 38–39. Even assuming Plaintiffs' Section 14(a) claim did sound in negligence, they still fail to plead negligence under the elevated pleading standard recognized by several courts, including at least one in this District. *See Furlong Fund LLC v. VBI Vaccines, Inc.*, No. 14-CV-9435 (SHS), 2016 WL 1181710, at *3 (S.D.N.Y. Mar. 25, 2016)

Plaintiffs concede that there is a circuit split as to whether the PSLRA's elevated pleading standard applies to Section 14(a) claims sounding in negligence. *See* Opp. Br. at 38–39. While the Second Circuit has not ruled on the issue, the better-reasoned approach (indeed, the approach adopted by several courts within this District) is that the PSLRA's elevated pleading standard applies to *all* Section 14(a) claims, including those sounding in negligence. *See, e.g.*, *Furlong*, 2016 WL 1181710, at *3 ("The PSLRA's pleading requirements as to misleading statements and omissions apply to Section 14(a) claims sounding in negligence, such as those here."); *see also, e.g.*, *In re Textainer P'ship Sec. Litig.*, No. C-05-0969 MMC, 2005 WL 3801596, at *5 (N.D. Cal. Dec. 12, 2005) ("The PSLRA expressly states that its heightened pleading standard for misleading statements and omissions applies to '*any* private action arising under [the Exchange Act].'") (emphasis in original).

Plaintiffs try to suggest that in *Dekalb Cnty. Pension Fund v. Transocean Ltd.*, 817 F.3d 393 (2d Cir. 2016), the Second Circuit endorsed the Seventh Circuit's approach in *Beck v. Dobrowski*, 559 F.3d 680 (7th Cir. 2009), which, Plaintiffs claim "held that the elevated pleading standard does not apply to Section 14(a) claims that sound in negligence." Opp. Br. at 38. But *DeKalb* spoke nothing of pleading requirements, and merely cited *Beck* in a string cite in a footnote to address whether the three-year statue of response in the Sarbanes-Oxley Act, 28 U.S.C. § 1658, applied to Section 14(a) claims. *See* 817 F.3d at 408 n.90. The Court cannot take Plaintiffs'

32

suggestion that *DeKalb* is in any way indicative of what the Second Circuit might eventually say is the appropriate pleading standard for a Section 14(a) claim when *DeKalb* itself says nothing about the issue.

Plaintiffs' Section 14(a) claim should therefore be dismissed because it sounds in fraud, and Plaintiffs have admittedly failed to satisfy the corresponding heightened pleading standards under Rule 9(b) and the PSLRA. And, even if the Court were to find that Plaintiffs' claims sound in negligence, the PSLRA's heightened pleading standard should still apply, and Plaintiffs' Section 14(a) claim should still be dismissed.

### B. Plaintiffs fail to allege an Item 303 omission.

As the Sunlight Proxy Claim Defendants stated in the Motion to Dismiss, the S-4 Statement does not contain a material misrepresentation or omission. *See* Mot. to Dismiss at 52–53. Plaintiffs focus their response only on the allegation that Sunlight omitted certain information from the Form S-4 that is required by Item 303 of SEC Regulation S-K ("Item 303"). But, contrary to Plaintiffs' assertions (Opp Br. at 37–38), the Sunlight Proxy Claim Defendants did not violate Item 303 because they did not fail to disclose "any '***known*** trends or uncertainties that have had or that the registrant reasonably expects will have a material favorable or unfavorable impact' on financial results." *In re Francesca's Holdings Corp. Sec. Litig.*, No. 13-cv-6882 (RJS), 2015 WL 1600464, at *17 (S.D.N.Y. Mar. 31, 2015) (emphasis in original). Plaintiffs argue that Sunlight failed to disclose that it "was likely to incur losses and/or have to spend more and more cash to ensure that its contractors stayed in business." Opp Br. at 37–38. Plaintiffs base this "likelihood" only on Sunlight's alleged expansion of its contractor advance program, loosening of credit standards, and cash advances to Pink and Vision Solar. *Id.* But Plaintiffs offer no logical argument—nor can the Court make any inference—that any of those facts would establish that the Sunlight Proxy Claim

33

Defendants knew that Sunlight was omitting any material information, let alone that it would soon experience a trend of incurring losses and/or additional spending.  *Id.*; *see also* Part III, *supra.*

Absent their own conjecture, Plaintiffs cannot identify facts supporting that Sunlight's expansion of the contractor advance program was not done with the goal of maximizing profits, nor can Plaintiffs identify facts supporting the allegation that changes to Sunlight's credit criteria meant that Sunlight stopped engaging in substantial diligence with respect to its contractors. Plaintiffs also do not identify any facts supporting that Pink and Vision Solar would go out of business without Sunlight's financing, much less that Sunlight was aware of this when it provided them with cash advances as part of what it believed to be a profitable business model.  Likewise, Plaintiffs offer no allegations to support their conclusory suggestion that "[t]hese developments also caused the historical default and loss rates under Sunlight's cash advance program [] to be not representative of future performance."  Opp. Br. at 38.

Accordingly, the Court should dismiss Plaintiffs' Item 303 omission claims for failure to adequately allege that any trend of incurring losses and/or extending financing to keep its contractors in business was presently known to the Sunlight Proxy Claim Defendants at the time of the S-4 Statement.  *See, e.g.*, *Blackmoss Investments Inc. v. ACA Capital Holdings, Inc.*, No. 07 CIV. 10528, 2010 WL 148617, at \*10 (S.D.N.Y. Jan. 14, 2010) (dismissing claims based on violation of Item 303 because "Plaintiff has failed to allege sufficient facts to establish Defendants' knowledge of a trend of rising foreclosure rates at the time the Registration Statement was filed."); *In re DraftKings Inc. Sec. Litig.*, 650 F. Supp. 3d 120, 181 (S.D.N.Y. 2023) (granting motion to dismiss Item 303 claim because the plaintiffs pled only that the defendant could be "presumed to have known" the risk) (internal citation omitted).

**C.      Plaintiffs fail to meet the pleading standards for both loss causation and transaction causation.**

As the Sunlight Proxy Claim Defendants stated in the Motion to Dismiss, Plaintiffs fail to sufficiently plead that any purported misrepresentations or omissions in the S-4 Statement either caused the approval of the Business Combination (transaction causation) or were the cause of Plaintiffs' alleged losses (loss causation).  *See* Mot. to Dismiss at 57–60.  Plaintiffs argue first that they have adequately alleged loss causation because, they contend, "[a]n allegation that the company's stock price fell after a corrective disclosure or materialization of the risk suffices to allege loss causation under Section 14(a)."  Opp. Br. at 39.  But the portion of the single case that Plaintiffs rely on for that proposition—*In re Bank of America Corp. Securities, Derivative, and Employee Retirement Income Security Act (ERISA) Litigation*—speaks nothing of the sort.  757 F. Supp. 2d 260, 291 (S.D.N.Y. 2010).  Plaintiffs argue that the case held that "loss causation [was] adequately alleged because [the] proxy statements concealed risks that caused [the] company's stock price to decline when the risk materialized or they were revealed to be false."  Opp. Br. at 39.  But the court never addressed this proposition.  Although it is true that the court acknowledged that some of the plaintiffs' loss-causation allegations were sufficient, it did so only in the context of determining whether the loss-causation allegations against individual directors of a company could be attributed to the company itself.  *See In re Bank of Am. Corp.*, 757 F. Supp. 2d at 328–29.  The case does not address what makes for a sufficient pleading of loss causation under Section 14(a)—which is the only issue this Court must address—nor does it even mention the materialization-of-the-risk theory of causation, as Plaintiffs imply.

Aside from the lack of law supporting Plaintiffs' argument, Plaintiffs cannot establish loss causation for the simple reason that the S-4 Statement did not cause the September 29, 2022 stock drop.  As addressed, the S-4 Statement concerned *Sunlight's* internal controls, while Sunlight's

stock drop followed an announcement that Sunlight was taking an impairment charge due to *Pink's* liquidity issues. *See* Mot. to Dismiss at 40–42, 58–61. Plaintiffs have therefore failed to plead loss causation.

Next, in arguing that they have sufficiently pled transaction causation, Plaintiffs ignore the key weakness in their transaction causation allegations—that they have impermissibly alleged in conclusory fashion that the alleged misrepresentation and omissions in the S-4 Statement caused the Business Combination. Mot. to Dismiss at 58–59. Plaintiffs argue that they have sufficiently alleged transaction causation because "[t]he proxy was the means via which shareholder votes were solicited for the Business Combination" and that "[t]he Business Combination could not have happened without those votes." Opp. Br. at 39–40 (citing SAC ¶¶ 121, 123). Plaintiffs rely heavily on *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970) to support their argument that these allegations are enough to show transaction causation. That reliance is misplaced. In *Mills*, the Supreme Court held that a Section 14(a) plaintiff demonstrates transaction causation in a complaint where "the defect [in the proxy] ha[d] a significant propensity to affect the voting process" and the proxy "was an essential link in the accomplishment of the transaction." *Id*. at 384–85. Under those circumstances, the Supreme Court explained, the claimant does not need to prove that the misstatement "actually had a decisive effect on the voting." *Id*. at 385. Plaintiffs suggest that *Mills* provides for a relaxed standard where they are not required to plead (and, according to Plaintiffs, not even required to prove), that the class members' votes would have changed absent the alleged omissions in the S-4. Opp. Br. at 40. But Plaintiffs' argument for such a relaxed approach was squarely rejected in *Minzer v. Keegan*, 218 F.3d 144 (2d Cir. 2000), where the court held that the Section 14(a) pleading requirements "*did not intend to provide a windfall* to plaintiffs suing over an omission that, if rectified, would not cause shareholders to be any less likely to

36

approve the transaction." *Id*. at 149 n.2 (emphasis added).  And, as much as Plaintiffs try to argue that they need not plead any specifics of what shareholders might have done had they received all of the (purportedly omitted) information, they do try to make those allegations in the SAC, alleging, for example, that "Spartan shareholders who were solicited to vote on the Business Combination" were misled "because Sunlight did not disclose the identities of the contractors in its network or the contractors to whom it gave cash advances." SAC ¶ 89.  The problem with this deficient attempt to allege that the Business Combination might not have occurred absent this information is that "[d]isclosure of an item of information is not required . . . simply because it may be relevant or of interest to a reasonable investor." *Resnik v. Swartz*, 303 F.3d 147, 154 (2d Cir. 2002).

Thus, as with their Section 10(b) claim, Plaintiffs' attempt to suggest that they would have voted differently, or perhaps exercised redemptions had they known that Pink and Vision Solar were contractors of Sunlight is nothing more than an attempt to argue, through the benefit of hindsight, that they might have voted against the Business Combination.  The Court cannot simply take Plaintiffs' word that they would have voted differently without risking permitting them to the very "windfall" that *Minzer* cautions against.  *See Minzer*, 218 F.3d at 149 n.2.

> **D.    The Court should reject Plaintiffs' shifting theories in their efforts to allege that their derivative claim satisfies Rule 23.1.**

Plaintiffs attempt to avoid dismissal under this Court's recent-*Romeo Power* decision by arguing that it is somehow superseded by *MultiPlan*.  This argument fails at the outset because *Romeo Power* post-dates *MultiPlan* and Plaintiffs offered no reason to depart from this District's recent decision on point.

Regardless, Plaintiffs attempt to make an *ad hoc* amendment to the SAC to avoid the fatal effects of their failure to plead compliance with Rule 23.1, as described in the Motion to Dismiss.

*See* Mot. to Dismiss at 50–51.  Despite initially alleging that "the Proxy Claim Defendants sought to secure Plaintiff Margent and other Class members' approval of the Business Combination," SAC ¶ 121, Plaintiffs now focus their Section 14(a) claims on an argument that the defective proxy impaired their rights to redeem the Special Purposes Acquisition Company ("SPAC") shares, as opposed to what they pleaded in the SAC—that it impaired their right to an informed vote on the Business Combination.  But redemption rights and voting rights represent two different choices for shareholders, and in *Multiplan*—the case Plaintiffs rely on—the Delaware Chancery Court has ruled that plaintiffs can proceed on a direct claim only when they allege that they "could not exercise their *redemption rights* on an informed basis."  *In re MultiPlan Corp. S'holders Litig.*, 268 A.3d 784, 800 (Del. Ch. 2022) (emphasis added).

Cognizant of the fatal procedural defect in the Section 14(a) claim that they pleaded, Plaintiffs attempt to reframe it to fit within the reasoning of *MultiPlan*.[11]  Plaintiffs, of course, cannot amend the SAC through their brief.  *See Rio Tinto PLC v. Vale*, No. 14CIV3042RMBAJP, 2015 WL 7769534, at \*4 (S.D.N.Y. Nov. 20, 2015).  Plaintiffs overlook that the SAC makes essentially no allegations regarding Plaintiffs' alleged redemption right. Paragraphs 124 and 125, upon which Plaintiffs' entire Opposition relies, makes only a passing mention of a "conversion right to receive $10.00 in cash per share of Spartan common stock" in alleging that the purportedly false and misleading statements and omissions in the Proxy Solicitations were material.  Plaintiffs do not allege what the redemption right entails, nor why the statements in the Proxy Solicitations impaired such a right.  The allegations that *are* present in the SAC merely allege that "[t]he Proxy

---

[11] Plaintiffs also cite *Enzo Biochem, Inc. v. Harbert Discovery Fund, LP*, 2021 WL 5854075, at \*11 (S.D.N.Y. Dec. 9, 2021) for a similar proposition.  Opp. Br. at 34.  However, *Enzo Biochem* is simply inapplicable, as the analysis cited therein involved a question of standing to pursue a breach of fiduciary duty claim under New York law.  2021 WL 5854075, at \*11.

Claim Defendants' proxy solicitations included all statements which served to color the market's view of the Business Combination and encourage Spartan common stockholders to vote in favor of the Business Combination." SAC ¶ 114.

However, even disregarding that procedural defect, Plaintiffs cannot avoid that the Complaint's theory of harm is that the Proxy allegedly misrepresented the value of Sunlight, and that the price of their stock declined when the market learned that Sunlight was not as represented—a quintessential derivative "overpayment" claim. Indeed, the *MultiPlan* court noted the general rule that claims similar to Plaintiffs' claims here are derivative: "[i]n an overpayment case, the direct harm of dilution is merely the unavoidable result of the central derivative harm: the reduction in value of the entire corporate entity . . . . The recovery—restoration of the improperly reduced value—flows to the corporation." 268 A.3d at 803–04.

Plaintiffs' Section 14(a) claim focuses on Plaintiffs' theory that the proxy overstated Sunlight's value, and as a result, shareholders received less in value through the Business Combination (a SPAC merger) than expected. *See* Mot. to Dismiss at 51 (citing *In re Romeo Power Inc. Sec. Litig.*, No. 21 CIV. 3362 (LGS), 2022 WL 1806303, at *5 (S.D.N.Y. June 2, 2022)). Therefore, under Delaware law, the Plaintiffs' Section 14(a) claim is derivative in nature, and because Plaintiffs have failed to plead compliance with Rule 23.1, their Section 14(a) claim should be dismissed. *See Romeo Power*, 2022 WL 1806303, at *5 (citing *Feldman v. Cutaia*, 951 A.2d 727, 733 (Del. 2008); *Brookfield Asset Mgmt., Inc. v. Rosson*, 261 A.3d 1251, 1267–68 & n.67 (Del. 2021)).

## CONCLUSION

For the reasons set forth above, the Court should grant the Sunlight Defendants' Motion to Dismiss the Second Amended Complaint with prejudice.

Dated: New York, New York
April 12, 2024

**MCGUIREWOODS LLP**

*/s/ Jeffrey J. Chapman*
Jeffrey J. Chapman
Aaron F. Jaroff
1251 Avenue of the Americas, 20th Floor
New York, NY 10020
Tel: (212) 548-7060
Fax: (212) 715-6277
jchapman@mcguirewoods.com
ajaroff@mcguirewoods.com

Michael A. Brody (*admitted pro hac vice*)
888 16th Street N.W., Ste. 500
Washington, DC 20006
Tel: (202) 857-1754
Fax: (202) 828-3334
mbrody@mcguirewoods.com

Brooke A. Weedon (*admitted pro hac vice*)
800 E Canal Street
Richmond, VA 23219
Tel: (804) 337-4439
Fax: (804) 698-2114
bweedon@mcguirewoods.com

*Attorneys for Defendants Sunlight*
*Financial Holdings Inc. F/K/A Spartan*
*Acquisition Corp. II, Matthew Potere,*
*Barry Edinburg, and Rodney Yoder*

To:    All counsel of record (Via ECF)

40