**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MATTHEW MILLUNCHICK and MIKE MARGENT, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> -against- <br><br> SUNLIGHT FINANCIAL HOLDINGS, INC. f/k/a/ SPARTAN ACQUISITION CORP. II, MATTHEW POTERE, BARRY EDINBURG, RODNEY YODER, GEOFFREY STRONG, JAMES CROSSEN, OLIVIA WASSENAAR, WILSON HANDLER, CHRISTINE HOMMES, JOSEPH ROMEO, and SPARTAN ACQUISITION SPONSOR II LLC, <br><br> Defendants. | Case No.: 1:22-cv-10658-AKH <br><br> **CLASS ACTION** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

## **TABLE OF CONTENTS**

I.   INTRODUCTION ............................................................................................................... 1

II.  STANDARDS GOVERNING APPROVAL OF CLASS ACTION SETTLEMENTS ............ 3

III. ARGUMENT...................................................................................................................... 4

   A.   Applying the Considerations Set Forth in Rule 23(e)(2) and *Grinnell*, the Settlement Is
      Fair, Reasonable, and Adequate ..................................................................................... 4

      1.   The Procedural Factors Support Approval.............................................................. 5

         a.   Plaintiffs and Counsel Adequately Represented the Settlement Class .................. 5

         b.   The Settlement Was Negotiated at Arm's Length ..................................................... 6

      2.   Analysis of Rule 23(e)(2)(C)(i) Supports Substantive Approval of the Settlement .......
         ...................................................................................................................... 6

         a.   Complexity, Expense and Duration of Litigation ..................................................... 7

         b.   Risk of Establishing Liability and Damages............................................................ 8

         c.   Establishing and Maintaining Certification Through Trial..................................... 9

         d.   Range of Reasonableness in Light of the Best Possible Recovery and Attendant
            Risks of Litigation.................................................................................................. 10

      3.   The Proposed Method of Distribution to the Class is Effective (Rule 23(e)(2)(C)(ii))
         10

      4.   The Requested Attorneys' Fees are Fair and Reasonable (Rule 23(e)(2)(C)(iii))........11

      5.   Related Agreements (Rule 23(e)(2)(C)(iv) and Rule 23(e)(3)) ...................................11

      6.   The Plan of Allocation Treats Class Members Equitably (Rule 23(e)(2)(D)) ............ 12

      7.   The Class's Reaction to the Settlement Supports Approval (*Grinnell*  Factor 2) ....... 12

      8.   The Stage of the Litigation and Discovery Completed Support Approval (*Grinnell*
         Factor 3).................................................................................................................. 13

      9.   Defendants' Ability to Withstand a Greater Judgment (*Grinnell* Factor 7)................ 14

   B.   The Plan of Allocation Fairly and Reasonably Distributes the Recovery ........................ 15

C.    The Court Should Finally Approve the Settlement Class ................................................... 15

D.    Notice to the Settlement Class Satisfied Due Process ....................................................... 16

IV. CONCLUSION ................................................................................................................................... 18

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ......................................................................................................... 5

*Christine Asia Co., Ltd. v. Yun Ma*,
No. 1:15-md-02631, 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ...........................................11

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) ..................................................................................... 3, 6

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*,
502 F.3d 91 (2d Cir. 2007) .......................................................................................... 5

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001) .......................................................................................... 6

*Fleming v. Impax Labs. Inc.*,
No. 16-cv-06557, 2022 WL 2789496 (N.D. Cal. July 15, 2022).............................................. 16

*In re Am. Bank Note Holographics, Inc.*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001)................................................................................ 8, 12

*In re AOL Time Warner, Inc. Secs. & ERISA Litig.*,
No. MDL 1500, 02 Civ. 5575, 2006 WL 903236, (S.D.N.Y. Apr. 6, 2006)................................ 8

*In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*,
909 F. Supp. 2d 259 (S.D.N.Y. 2012)................................................................................ 13

*In re Blue Apron Holdings, Inc. Secs. Litig.*,
No. 17-cv-04846, 2021 WL 1902475 (E.D.N.Y. May 10, 2021)........................................ 4, 15

*In re Facebook, Inc., IPO Secs. & Deriv. Litig.*,
343 F. Supp. 3d 394 (S.D.N.Y. 2018)................................................................................ 7

*In re IMAX Sec. Litig.*,
283 F.R.D. 178 (S.D.N.Y. 2012) ..................................................................................... 13

*In re Interpublic Sec. Litig.*,
2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004) .......................................................................... 14

*In re Luxottica Grp. S.p.A. Sec. Litig.*,
233 F.R.D. 306 (E.D.N.Y. 2006) ...................................................................................... 12

*In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*,
     246 F.R.D. 156 (S.D.N.Y. 2007) ...................................................................................... 16

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
     330 F.R.D. 11 (E.D.N.Y. 2019) ................................................................................. passim

*In re Romeo Power Inc. Sec. Litig.*,
     2022 WL 1806303 (S.D.N.Y. June 2, 2022) ........................................................................ 9

*In re WorldCom, Inc. Sec. Litig.*,
     388 F. Supp. 2d 319 (S.D.N.Y. 2005).............................................................................. 15

*Khoja v. Orexigen Therapeutics, Inc.*,
     No. 15-cv-00540, 2021 WL 5632673 (S.D. Cal. Nov. 30, 2021)........................................ 16

*Mikhlin v. Oasmia Pharm. AB*,
     2021 WL 1259559 (E.D.N.Y. Jan. 6, 2021) ..................................................................... passim

*Moses v. New York Times Co.*,
     79 F.4th 235 (2d Cir. 2023) .............................................................................................. 6

*Newkirk v. Pierre*,
     No. 19-cv-4283, 2022 WL 20358182 (E.D.N.Y. Oct. 25, 2022) ........................................ 4

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
     258 F. Supp. 2d 254 (S.D.N.Y. 2003)................................................................................ 8

*Thomas v. MagnaChip Semiconductor Corp.*,
     No. 14-cv-01160, 2017 WL 4750628 (N.D. Cal. Oct. 20, 2017)........................................11

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
     396 F.3d 96 (2d Cir. 2005) ........................................................................................ 13, 16

*West Palm Beach Police Pension Fund v. DFC Global Corp.*,
     No. 13-6731, 2017 WL 4167440 (E.D. Pa. Sept. 20, 2017).............................................. 10

**Statutes**

15 U.S.C. § 78u-4(a)(7) ................................................................................... 4, 17, 18

**Rules**

Fed. R. Civ. P. 23................................................................................................. passim

Pursuant to Fed. R. Civ. P. 23(e), Lead Plaintiff Matthew Millunchick and named plaintiff Mike Margent ("Plaintiffs") respectfully submit this memorandum of law in support of their motion for final approval of the proposed Settlement.[1]

## I.    INTRODUCTION

Plaintiffs seek final approval of a $3,500,000 mediated Settlement of the Action that will resolve all claims against Defendants. Plaintiffs believe that this is Settlement, which recovers 10.4% of the maximum damages potentially available to the Settlement Class, is a favorable resolution of an Action where: (a) the issuer defendant (Sunlight) filed for Chapter 11 bankruptcy while the Action was ongoing, (b) there was uncertainty as to what insurance coverage – if any – would be available to fund a settlement or judgment if litigation were to continue, and (c) there is real risk that Defendants' motions to dismiss – which were fully briefed at the time that the Settlement was reached – may be granted in full or in part.

Before entering into the Settlement, Plaintiffs were fully informed of the strengths and weaknesses of their claims. Through their counsel, Plaintiffs: (1) conducted a thorough investigation of Sunlight, which included: (a) reviewing Sunlight's SEC filings, press releases, earnings calls, numerous analyst reports about Sunlight, and a variety of industry publications, (b) hiring an investigator to locate and interview witnesses, (c) researching and reviewing publicly-available information concerning Sunlight's major contractor partners, including industry publications, online message boards, lawsuits, etc., and (d) reviewing Sunlight's bankruptcy

---

[1] All capitalized terms not otherwise defined herein have the meanings ascribed to them in the Stipulation of Settlement dated August 8, 2024 ("Stipulation") (ECF No. 113-4), the Declaration of Yu Shi in Support of Plaintiffs' Motions for: (I) Final Approval of Class Action Settlement; and (II) An Award of Attorneys' Fees, Reimbursement of Expenses, and Awards to Plaintiffs ("Shi Declaration" or "Shi Decl."), filed herewith, or the Second Amended Class Action Complaint for Violation of the Federal Securities Laws ("SAC" or "Complaint") (ECF No. 73). Unless otherwise noted, citations herein to "Ex.__" refer to exhibits to the Shi Declaration.

1

filings; (2) drafted two amended complaints; (3) analyzed and opposed Defendants' motions to dismiss; (4) retained an expert to assess damages, and (4) drafted a mediation statement and analyzed Defendants' mediation submissions, (5) participated in a full-day mediation, and (6) engaged in extensive negotiations regarding the terms of the proposed Settlement. Shi Decl. at ¶32. Based upon their thorough investigation of the facts and applicable law, Plaintiffs believe that the proposed Settlement meets all applicable standards for approval and is in the best interests of the Settlement Class. For these reasons, Plaintiffs respectfully move the Court for final approval of the Settlement.

Plaintiffs also respectfully submit that the Court should approve the Plan of Allocation and the Notice provided to potential Settlement Class Members. Regarding the former, Plaintiffs developed the Plan of Allocation with their damages expert to ensure that the proceeds of the Net Settlement Fund would be distributed equitably and fairly among Settlement Class Members based upon the relative damages each suffered, in line with Plaintiffs' theory of the case. Shi Decl. at ¶15. With respect to the latter, the notice program satisfies Rule 23 and due process by providing the "best notice … practicable under the circumstances" of this case. After the Court approved the contents of the Long Notice, Postcard Notice and Summary Notice (ECF No. 114), the Claims Administrator, Strategic Claims Services ("SCS"), provided notice to potential Settlement Class Members in accordance with the program set forth in the Preliminary Approval Order. As explained in the Declaration of Josephine Bravata Concerning: (A) Mailing/Emailing of Notices; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusions and Objections ("Bravata Declaration" or "Bravata Decl.") (Ex. 1), in total 45,901 notices of the Settlement – either in the form of a mailed Postcard Notice or an emailed link to the Long Notice – were sent to potential Settlement Class Members.  Bravata Decl. at ¶¶9.  The Claims Administrator published

2

the Summary Notice electronically over *GlobeNewswire* on September 16, 2024. *Id*. at ¶11.  On

August 23, 2024, prior to the mailing, emailing and publication of notice, the Claims Administrator

added the Long Notice, Proof of Claim and Release Form, and other case documents to a dedicated

webpage on the Claims Administrator's website. *Id*. at ¶13. SCS also established a toll-free

telephone number to assist potential claimants. *Id*. at ¶12. While the November 19, 2024 deadline

has not passed, no objections to the Settlement or requests for exclusions have been received. *Id.*

at ¶¶14-15.

Finally, the Settlement Class meets the requirements of Rule 23(a) and (b)(3) and merits

certification. Plaintiffs respectfully request that the Court grant final approval of the Settlement,

approve the Plan of Allocation, and certify the Settlement Class for settlement purposes.

## II.    STANDARDS GOVERNING APPROVAL OF CLASS ACTION SETTLEMENTS

In this Circuit, the Court's decision to approve a class action settlement as "fair, reasonable,

and adequate" as required by Fed. R. Civ. P. 23(e)(2), is informed by two sets of considerations.

First, since 2018, Rule 23(e)(2)(A)-(D) requires the Court to consider four core questions:

(A) have the class representatives and class counsel adequately represented the class;
(B) was the proposed settlement negotiated at arm's length;
(C) is the relief provided for the class adequate, taking into account:
   (i) the costs, risks, and delay of trial and appeal;
   (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
   (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and
   (iv) any agreement required to be identified under Rule 23(e)(3); and
(D) does the proposal treats class members equitably relative to each other.

Second, because these considerations were not intended to displace other factors courts

deem relevant to settlement approval, the following factors set forth in *City of Detroit v. Grinnell*

*Corp.*, 495 F.2d 448, 463 (2d Cir. 1974),[2] some of which overlap with the inquiry to be undertaken pursuant to Rule 23(e)(2)(A)-(D), are still relevant to the Court's determination:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

Recently, in *Newkirk v. Pierre*, No. 19-cv-4283, 2022 WL 20358182, at *5-7 (E.D.N.Y. Oct. 25, 2022), this Court applied both sets of factors. As set forth below, the Settlement satisfies both Rule 23(e)(2)(A)-(D) and the applicable, non-duplicative *Grinnell* factors.

Akin to the Settlement itself, a Plan of Allocation must provide for a "fair and reasonable" allocation of the recovery to Settlement Class members. *In re Blue Apron Holdings, Inc. Secs. Litig.*, No. 17-cv-04846, 2021 WL 1902475, at *1 (E.D.N.Y. May 10, 2021). The Court must also determine whether the Settlement Class comports with each of the prerequisites for certification, to wit "numerosity," "commonality," "typicality," and "adequacy" (Rule 23(a)(1)-(4)), as well as "predominance" and "superiority" (Rule 23(b)(3)), and whether the notice given to Settlement Class Members satisfies due process by complying with the requirements of Rule 23(c)(2)(B) and 15 U.S.C. § 78u-4(a)(7).

## III.    ARGUMENT

### A.    Applying the Considerations Set Forth in Rule 23(e)(2) and *Grinnell*, the Settlement Is Fair, Reasonable, and Adequate

Rule 23(e)(2) requires a Court to review both the procedural and substantive fairness of the any class action settlement it is asked to approve: "[P]aragraphs (A) and (B) are 'procedural'

---

[2] For clarity, unless noted, internal citations and quotation marks are omitted from case citations.

factors that address the 'conduct of the litigation and of the negotiations leading up to the proposed settlement,' whereas the factors listed in paragraphs (C) and (D) are 'substantive' factors that address the 'relief that the settlement is expected to provide to class members.'" *Mikhlin v. Oasmia Pharm. AB*, 2021 WL 1259559, at *3 (E.D.N.Y. Jan. 6, 2021). The *Grinnell* factors, applied by courts in the Second Circuit for decades before the 2018 amendment to Rule 23(e)(2), are "clarif[ied] and supplement[ed]" by Rule 23(e)(2). 2021 WL 1259559 at *3. As set forth below, the Settlement satisfies both sets of Rule 23(e)(2) factors and the remaining *Grinnell* factors.

### 1.    The Procedural Factors Support Approval

#### a.    Plaintiffs and Counsel Adequately Represented the Settlement Class

A Rule 23(e)(2)(A) assessment "looks to" Rule 23(a)(4) case law pertaining to adequacy of the class plaintiffs and their counsel. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 30 n.25 (E.D.N.Y. 2019). Thus, to "uncover conflicts of interest between the named parties and the class they seek to represent," *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997), under Rule 23(a)(4), a "[d]etermination of adequacy typically 'entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007).

Here, Plaintiffs' claims are coextensive with – not antagonistic to – those of the Settlement Class: because each purchased Sunlight stock during the Class Period and suffered losses as a result of Defendants' alleged misconduct, "all shared the common goal of maximizing recovery." *See In re Payment Card*, 330 F.R.D. at 32.

Lead Counsel has a successful history of prosecuting securities claims on behalf of injured investors. *See* ECF No. 13-4 (firm resume). Counsel vigorously prosecuted this case, conducting

a thorough investigation of Sunlight's business operations, filing two amended complaints, protecting the putative class's claims in bankruptcy court following Sunlight's Chapter 11 filing, opposing Defendants' motions to dismiss, attending a mediation and negotiating the Settlement with the assistance of a mediator. Shi Decl. at ¶¶11, 32.

### b.    The Settlement Was Negotiated at Arm's Length

With the outcome of Defendants' motion to dismiss uncertain, the Parties decided to explore the possibility of settlement and retained the services of Robert A. Meyer of JAMS for this purpose. After a frank exchange of positions – in mediation statements, during the course of a day-long session, and in additional negotiations in the days after the mediation – with Mr. Meyer's assistance, the parties arrived at the Settlement. Shi Decl. at ¶¶22-23.  That the Settlement was reached through a mediation process overseen by a neutral weighs in favor of fairness. *Moses v. New York Times Co.*, 79 F.4th 235, 243 (2d Cir. 2023) (arm's-length negotiations support approval, though they do not give rise to a presumption of fairness); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("[M]ediator's involvement in ... settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure.").

### 2.    Analysis of Rule 23(e)(2)(C)(i) Supports Substantive Approval of the Settlement

Under Rule 23(e)(2)(C), the Court must also consider whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal…"[3] (Fed.

---

[3] Rule 23(e)(2)(C)(i) essentially incorporates six of the traditional *Grinnell* factors: the complexity, expense, and likely duration of the litigation (first factor); the risks of establishing liability and damages (fourth and fifth factors); the risks of maintaining class action status through the trial (sixth factor); and the range of reasonableness of the settlement fund in light of the best possible recovery and the attendant risks of litigation (eighth and ninth factors). *See Grinnell*, 495 F.2d at 463; *see also In re Payment Card*, 330 F.R.D. at 36 ("The first factor – costs, risks, and delay of trial and appeal – subsumes several *Grinnell* factors …").

R. Civ. P. 23(e)(2)(C)(ii)-(iv) are discussed below). In balancing the various factors, "[s]ettlement is favored if settlement results in 'substantial and tangible present recovery, without the attendant risk and delay of trial.'" *In re Payment Card*, 330 F.R.D. at 36 (citations omitted).

### a.     Complexity, Expense and Duration of Litigation

"In general, securities class actions are recognized by courts as 'notably difficult and notoriously uncertain to litigate.'" *In re Facebook, Inc., IPO Secs. & Deriv. Litig.*, 343 F. Supp. 3d 394, 409 (S.D.N.Y. 2018) (citing cases). For this reason, the Court "need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *Mikhlin*, 2021 WL 1259559 at *5. In a securities fraud case, there are "significant legal and factual obstacles" to prevailing at every stage of the litigation. *Id.*  This is especially true here for a number of reasons.

*First*, the pending motions to dismiss argued that every alleged misstatement was defective on one or more grounds, *e.g.,* standing, falsity, scienter, and loss causation. ECF Nos. 78 & 82. *Second*, had the case survived past Defendants' motions to dismiss, the next hurdle would have been class certification – where Defendants would have challenged market efficiency, a requisite for proof of class-wide reliance, and price impact. *Third*, due to Sunlight's bankruptcy and high employee turnover, finding employees to provide relevant testimony concerning events that occurred in 2019-2022 would be difficult. *Fourth*, proving the amount of price decline due solely to the alleged fraud would be complicated and require Plaintiffs to prevail in a battle of experts on the issue of damages.  For example, Defendants have argued that the "corrective disclosure" merely concerns the liquidity problems of a single contractor partner, and says nothing about Sunlight's due diligence processes.

Adding these unique challenges to the expense, effort, and time occasioned by discovery, trial, and appeals in all litigation, and it becomes clear why "securities class action litigation is often resolved by settlement, which circumvents the difficulty and uncertainty inherent in long,

costly trials." *In re AOL Time Warner, Inc. Secs. & ERISA Litig.*, No. MDL 1500, 02 Civ. 5575, 2006 WL 903236, at *8, (S.D.N.Y. Apr. 6, 2006); *see also Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("[E]ven if a shareholder or class member was willing to assume all the risks … through further litigation and trial, the passage of time would introduce yet more risks in terms of appeals and possible changes in the law and would, in light of the time value of money, make future recoveries less valuable than this current recovery.")

### b.    Risk of Establishing Liability and Damages

**Establishing Liability:** The gravamen of Plaintiffs' allegations is that Defendants misrepresented: (a) the scope and nature of Sunlight's due diligence into its contractor partners to whom Sunlight gave cash advances, and (b) the risk that the cash advance program posed for Sunlight.  Defendants' motions to dismiss – nearly 100 pages long – challenge every aspect of Plaintiffs' claims. *See* ECF Nos. 78, 82.  For example, Defendants have argued that the description of Sunlight's due diligence processes (*e.g.,* that it was "robust") is inactionable puffery. Defendants have also argued that Plaintiffs' allegations as to Sunlight's due diligence processes relies heavily on confidential witnesses, whose testimonies cannot be credited because their positions at Sunlight do not support the reliability of their allegations.  While Plaintiffs believe they have meritorious responses to Defendants' arguments, there is substantial risk that the Court might find Defendants' arguments more persuasive.

Even were Plaintiffs to survive the motions, there is a "substantial risk involved in proving *scienter*, because it goes directly to a defendant's state of mind, and proof of state of mind is inherently difficult." *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 426 (S.D.N.Y. 2001) (italics in original); *Mikhlin*, 2021 WL 1259559 at *5 (scienter is "notably difficult to establish").

As to Plaintiffs' Section 14(a) claim, Defendants assert that it may not be brought at all

because it is derivative in nature, citing to *In re Romeo Power Inc. Sec. Litig.,* 2022 WL 1806303 (S.D.N.Y. June 2, 2022) where the court dismissed the Section 14(a) claims based on those grounds. While Plaintiffs believe that this case is distinguishable from *Romeo*, there is no guarantee that the Court will agree.

**Establishing Damages:** Because "proof of damages in a securities fraud case is always difficult and invariably requires expert testimony …. [, it is] 'virtually impossible to predict' which side's testimony would be found more credible, as well as 'which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions.'" *Mikhlin*, 2021 WL 1259559 at *6. Although Plaintiffs believe that they have cogently pled loss causation under a "materialization of the risk" theory, Defendants have challenged loss causation by arguing, among other things, that the announcement that Sunlight was taking an impairment charge due to *Pink Energy's* liquidity issues – which caused the stock drop at issue - has nothing to do Plaintiffs' allegation about *Sunlight's* due diligence process, and that there was a mismatch between the generic nature of Defendants' statements about Sunlight's due diligence process and the specific nature of the announcement about Pink Energy's liquidity problems. This would likely turn into a "battle of experts" with no guarantee which testimony will be credited.

c.      **Establishing and Maintaining Certification Through Trial**

Because "[c]ourts generally acknowledge that a contested motion to certify a class would pose at least some increased risk that class certification might be denied … this factor ... weighs in favor of settlement" where "it is likely that defendants would oppose class certification if the case were to be litigated." *Mikhlin*, 2021 WL 1259559 at *6. Assuming Plaintiffs defeat Defendants' motions to dismiss and file a motion for class certification, Defendants would surely contest it vigorously. Finally, even if Plaintiffs were able to successfully demonstrate that Sunlight's stock traded in an efficient market and overcome Defendants' inevitable price impact

arguments to prevail on a class certification motion, Rule 23(c)(1)(C) provides that a class certification order could be "altered or amended before final judgment."

### d. Range of Reasonableness in Light of the Best Possible Recovery and Attendant Risks of Litigation

Here, the $3,500,000 cash settlement represents 10.4% of maximum recoverable damages estimated by Plaintiffs' expert, $33.6 million. Shi Decl. at ¶30. For this figure to be realized, Plaintiffs would have to prevail on the motions to dismiss, achieve class certification in the face of a market efficiency and price impact challenge, survive summary judgment, and prove to a jury that 100% of Sunlight's stock price decline on September 28, 2022 was due to the alleged fraud. However, "a misstep at any point in the litigation could have greatly reduced the damages," a "complete and total victory" on liability and loss causation for all of the alleged false statements "occurs with the regularity of unicorn sightings." *West Palm Beach Police Pension Fund v. DFC Global Corp.*, No. 13-6731, 2017 WL 4167440 at *6 (E.D. Pa. Sept. 20, 2017).

This 10.4% recovery is substantially higher than the median recovery historically achieved in securities class actions alleging similar magnitudes of damages. *See* Exhibit 4 (NERA Economic Consulting finding that between 2014 and 2023, settled securities class actions with damages between $20 and $49 million settled for a median of 5.1% of damages). This is a favorable outcome because it guarantees the Settlement Class a certain and immediate recovery in a case with both litigation and liquidity risks.

### 3. The Proposed Method of Distribution to the Class is Effective (Rule 23(e)(2)(C)(ii))

The Settlement proceeds will be allocated to Settlement Class Members who timely submit valid Proof of Claim and Release Forms in accordance with the Plan of Allocation. In accordance with the Preliminary Approval Order, the Claims Administrator has processed and will continue to process claims under Lead Counsel's guidance. After the Court enters a distribution order, the

Claims Administrator will mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation), with a second *pro rata* distribution, if warranted. Stipulation (ECF No. 113-4) at ¶6.6. No funds will be returned to Defendants. *Id.* at ¶6.7.

This method for claims processing and distributing settlement proceeds is standard in securities and other class actions and has proved to be effective. *Christine Asia Co., Ltd. v. Yun Ma*, No. 1:15-md-02631, 2019 WL 5257534, at *14 (S.D.N.Y. Oct. 16, 2019); *In re Payment Card*, 330 F.R.D. at 40-41.

### 4. The Requested Attorneys' Fees are Fair and Reasonable (Rule 23(e)(2)(C)(iii))

The Settlement is fair and reasonable taking into account the requested attorneys' fees of 27.5% of the Settlement Fund. As discussed in detail in the Fee Memorandum filed herewith, the fee request the Court is being asked to approve is reasonable in light of counsel's skill, efforts, and time investment, the risks counsel faced, and the overall benefit to the Settlement Class. The 27.5% fee request is less than what Courts in this Circuit routinely find to be "well within the range of reasonableness," *Mikhlin*, 2021 WL 1259559 at *7 (citing cases), particularly where the recovery is less than $10 million. *Id.* In any event, approval of the Settlement is determined separate and apart from the Court's decision on the fee award. *See* Stipulation (ECF No. 113-4) at ¶7.3.

### 5. Related Agreements (Rule 23(e)(2)(C)(iv) and Rule 23(e)(3))

As previously disclosed, the Parties entered into a Supplemental Agreement giving Defendants the right to terminate the Settlement if Settlement Class Members holding more than a certain number of shares opt out. Stipulation at ¶2.12. "[T]o prevent third parties from utilizing it for the improper purpose of obstructing the settlement and obtaining higher payouts," *Thomas v. MagnaChip Semiconductor Corp.*, No. 14-cv-01160, 2017 WL 4750628, at *5 (N.D. Cal. Oct. 20, 2017), the number of shares that trigger the right to terminate has not been disclosed. Such

11

agreements are common in securities class action settlements and pose no obstacle to final approval of the Settlement. *Christine Asia,* 2019 WL 5257534, at *15 (confidential opt-out agreements are "standard in securities class action settlements and ha[ve] no negative impact on the fairness of the Settlement").

### 6. The Plan of Allocation Treats Class Members Equitably (Rule 23(e)(2)(D))

Rule 23(e)(2)(D) requires courts to evaluate whether the Settlement treats class members equitably relative to one another. The Plan of Allocation provides no preferential treatment to Plaintiffs and distributes funds on a *pro rata* basis to each Settlement Class member who timely submits a valid claim based on recognized losses resulting from the stock price declines during the Class Period.  Lead Counsel developed the Plan of Allocation in consultation with Plaintiffs' damages expert, and the Plan tracks the theory of the case and comports with loss causation principles. Shi Decl. at ¶34. A plan that allocates funds on a *pro rata* basis to claimants based upon the timing of their purchases and sales, and corresponding share prices, "appropriately and fairly accounts for material differences among class members' claims." *Mikhlin*, 2021 WL 1259559 at *8; *In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. 306, 317 (E.D.N.Y. 2006) (plan that "tracks the theory of damages asserted by plaintiffs …. is reasonable and fair to the class").

### 7. The Class's Reaction to the Settlement Supports Approval (*Grinnell* Factor 2)

The second *Grinnell* factor, the Settlement Class's reaction to the proposed Settlement, overlaps with Rules 23(e)(4) and 23(e)(5), which provide Settlement Class Members the right to either object to the Settlement or to request exclusion therefrom. This factor is "perhaps the most significant factor to be weighed in considering its adequacy." *Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d at 425. Here, the reaction of the class has been overwhelmingly positive.

To date, 45,901 notices of the Settlement – either in the form of a mailed Postcard Notice

or an emailed link to the Long Notice – have been sent to potential Settlement Class Members. Bravata Decl. at ¶¶9. The Claims Administrator also published the Summary Notice electronically over *GlobeNewswire* and established a dedicated webpage for potential Settlement Class Members to view the settlement notices and other case documents, and to file claims electronically. *Id*. at ¶¶11, 13.

The deadline for objections and exclusion requests is November 19, 2024. To date, no Settlement Class Members have objected to or requested exclusions from the Settlement. *Id*. at ¶¶14-15; Shi Decl., at ¶36. Plaintiffs will respond to any subsequent duly lodged objections, if any, in their reply.

### 8.   The Stage of the Litigation and Discovery Completed Support Approval (*Grinnell* Factor 3)

The third *Grinnell* factor, which looks to the "stage of the proceedings and the amount of discovery completed," *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 117 (2d Cir. 2005), examines "whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' [sic] causes of action for purposes of settlement." *In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012). *See also, In re IMAX Sec. Litig.*, 283 F.R.D. 178, 190 (S.D.N.Y. 2012) ("The threshold necessary to render the decisions of counsel sufficiently well informed…however, is not an overly burdensome one to achieve—indeed, formal discovery need not have necessarily been undertaken yet by the parties.").

Here, the PSLRA stayed discovery during the pendency of Defendants' motions to dismiss. However, at the time of settlement, Plaintiffs, through Lead Counsel, possessed a thorough understanding of the strengths and weaknesses of the claims and defenses asserted, and could make

13

informed appraisals regarding the chances of success. Lead Counsel had conducted an extensive investigation of the claims asserted in the Action, including analyzing public filings, news articles analyst reports, online forums, and other publicly available information relevant to the claims at issue, as well as hiring a private investigator to locate and interview witnesses. Lead Counsel also researched extensively the applicable law with respect to Plaintiffs' claims and potential defenses thereto in filing the SAC, as well as responding to Defendants' motions to dismiss and preparing for the mediation. Additionally, Lead Counsel engaged a damages expert to assess the range of provable damages. The full-day mediation also permitted the parties to exchange frank views concerning their positions. Shi Decl., at ¶32.

Indeed, courts encourage early settlements of class actions when warranted, because early settlement allows class members to recover without unnecessary delay and allows the parties and the court to focuses resources elsewhere. *In re Interpublic Sec. Litig.,* 2004 WL 2397190, at \*12 (S.D.N.Y. Oct. 26, 2004) (early settlements should be encouraged when warranted by the circumstances of the case).  Here, in light of Sunlight's financial condition as well as the risk that Defendants may prevail in part or in whole on their motions to dismiss, Plaintiffs and Lead Counsel believed that it was in the Settlement Class's best interest to secure this Settlement now.

### 9. Defendants' Ability to Withstand a Greater Judgment (*Grinnell* Factor 7)

A week after Plaintiffs filed their Second Amended Complaint, Sunlight filed for Chapter 11 bankruptcy.  Shi Decl. at ¶¶15-16.  Moreover, during the bankruptcy proceedings, Plaintiffs learned that Sunlight's D&O insurance policies were of such a nature that it was uncertain whether any of it would be available to fund a settlement or judgment in this Action. *Id.* at ¶33.  At the preliminary approval hearing, counsel for Sunlight confirmed that Sunlight was indeed self-funding a large portion of the Settlement (and in light of its recent bankruptcy, needed time to raise

14

the necessary funds to fully pay the Settlement).  Sunlight's precarious financial situation, and the lack of readily available insurance, supports approving this Settlement.

**B.      The Plan of Allocation Fairly and Reasonably Distributes the Recovery**

A Plan of Allocation must provide for a "fair and reasonable" allocation of the recovery to Settlement Class members. *Blue Apron*, 2021 WL 1902475, at *1. "An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *In re Payment Card*, 330 F.R.D. at 40 (citing *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005)).

The calculation of each Settlement Class Member's Recognized Loss under the Plan of Allocation, which was prepared with the assistance of Plaintiffs' expert in accordance with Plaintiffs' theory of the case (Shi Decl. at ¶34), is explained in detail in the Long Notice. The formula is based on several factors, including the number of Sunlight shares the Settlement Class Member purchased and sold, and when those shares were purchased and sold if at all (including how the PSLRA's lookback provision applies to sales in the 90 days following the end of the class period). Bravata Decl., Ex. A at 6-8 ("The Basis for Calculating Your Recognized Loss").

Lead Counsel believes that the proposed Plan provides a fair, reasonable and rational method to allocate the Net Settlement Fund among Settlement Class Members who suffered losses as a result of the alleged wrongful conduct. Shi Decl. at ¶35. To date, no objections to the Plan have been received, suggesting that Settlement Class Members find the Plan to be fair and reasonable. *Id*. at ¶36. Accordingly, the proposed Plan of Allocation merits final approval.

**C.      The Court Should Finally Approve the Settlement Class**

Plaintiffs' memorandum of law in support of their motion for preliminary approval of the Settlement set forth the bases for the certification of a Settlement Class. ECF No. 109 at ECF Pages

10-15.  In its Preliminary Approval Order, the Court found that the Settlement Class satisfied the requirements of Rule 23(a) and (b)(3) (*see* ECF No. 114 at ¶3), and preliminarily certified the Settlement Class. *Id.* at ¶2. Nothing has transpired since preliminary approval that would alter the Court's findings. Accordingly, for the reasons set forth in both Plaintiffs' preliminary approval papers and the Court's Preliminary Approval Order, the Court should grant final certification of the Settlement Class. *See Fleming v. Impax Labs. Inc.*, No. 16-cv-06557, 2022 WL 2789496, at *4 (N.D. Cal. July 15, 2022) (incorporating by reference class certification analysis from preliminary approval order as no facts had changed); *Khoja v. Orexigen Therapeutics, Inc.*, No. 15-cv-00540, 2021 WL 5632673 at *3 (S.D. Cal. Nov. 30, 2021) (same).

## D.    Notice to the Settlement Class Satisfied Due Process

Rule 23(e) and due process require that notice of a class-wide settlement be "reasonable" *i.e.*, it must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005) (noting "[t]here are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements"); *see also In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*, 246 F.R.D. 156, 166 (S.D.N.Y. 2007) ("Notice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members."). Here, the notice program satisfied due process with respect to both the manner of distribution and the substance of the Notice provided to Settlement Class Members.

The protocol followed by the Claims Administrator was earlier approved in the Preliminary Approval Order. Since that time, and in accordance with the deadlines set forth therein, as detailed

16

above: (a) 45,901 individual notices of the Settlement – either in the form of a mailed Postcard Notice or an emailed link to the Long Notice – were sent to potential Settlement Class Members; (b) the Summary Notice was published on *GlobeNewswire* on September 16, 2024; and (c) potential Settlement Class Members had access to both a 24/7 dedicated webpage containing the relevant documents pertaining to the Settlement and a toll-free telephone number to seek further information about the Settlement and/or assistance from the Claims Administrator. Bravata Decl., at ¶¶3-13. The Notice Plan executed by the Claims Administrator provided notice in a "reasonable manner to all class members who would be bound by the propos[ed judgment]."  Fed. R. Civ. P. 23(e)(1)(B).

The Long Notice informs Settlement Class Members of, among other things: (1) the nature of the Action; (2) the Settlement Class definition; (3) the claims and defenses asserted; (4) a description of the terms of the Settlement; (5) the right of Settlement Class Members to enter an appearance through counsel of their own choosing; (6) the right of Settlement Class Members to request exclusion from the Settlement Class, and instructions on how and when to do so; (7) the right of Settlement Class Members to object to any aspect of the Settlement, including the Plan of Allocation and the request for attorneys' fees and litigation expenses, along with instructions on how and when to do so; (8) the binding effect of the Settlement on Settlement Class Members that do not elect to be excluded; and (9) the date and time of the final Settlement Hearing. *See* Fed. R. Civ. P. 23(c)(2)(B)(i)-(vii); Bravata Decl., Ex. A (Long Notice).

In addition to this detailed information, the PSLRA requires the notice to include the amount of attorneys' fees and expenses sought, an estimate of per share damages recovered, as well as the per share cost of attorneys' fees and expenses. 15 U.S.C. §78u-4(a)(7). The Long Notice includes this required information, advising that Lead Counsel will apply to the Court for an award

of attorneys' fees in an amount not to exceed 29% of the Settlement Fund plus interest, as well as reimbursement of litigation expenses up to $58,000, and awards to Plaintiffs of $6,000 (in total) related to their representation of the Settlement Class. Bravata Decl., Ex. A at 1-2.

The notice program: (1) provided the information necessary for Settlement Class Members to evaluate the Settlement and fee request so that they could decide (a) whether and how to timely file a claim to share in the recovery or seek exclusion from the Settlement or (b) whether and how to object to the terms of the Settlement or the fees requested; and (2) followed the dissemination of Notice protocol set forth in the preliminary approval Order. Therefore, the notice provided to Settlement Class Members satisfied Rule 23(e), 15 U.S.C. §78u-4(a)(7) and due process.

## IV.    CONCLUSION

Plaintiffs respectfully request that this Court grant final approval of the Settlement, approve the Plan of Allocation, and certify the Settlement Class.

Dated:  November 12, 2024

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: */s/ Yu Shi*
Laurence Rosen
Yu Shi
275 Madison Ave, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on November 12, 2024, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system

*/s/ Yu Shi*
Yu Shi

19