**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MATTHEW MILLUNCHICK and MIKE MARGENT, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>-against-<br><br>SUNLIGHT FINANCIAL HOLDINGS, INC. f/k/a/ SPARTAN ACQUISITION CORP. II, MATTHEW POTERE, BARRY EDINBURG, RODNEY YODER, GEOFFREY STRONG, JAMES CROSSEN, OLIVIA WASSENAAR, WILSON HANDLER, CHRISTINE HOMMES, JOSEPH ROMEO, and SPARTAN ACQUISITION SPONSOR II LLC,<br><br>Defendants. | Case No.: 1:22-cv-10658-AKH<br><br>CLASS ACTION |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO PLAINTIFFS**

## TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ................................................................................. 1

II.   FACTUAL AND PROCEDURAL HISTORY ............................................................. 2

III.  ARGUMENT ............................................................................................................... 2

    A.    The Common Fund Doctrine Applies to the Settlement ...................................... 2

    B.    The Court Should Award a Reasonable Percentage of the Common Fund ............ 3

    C.    The Requested Attorneys' Fees Are Reasonable .................................................. 4

        1.    The Requested Attorneys' Fees Are Reasonable under the Percentage-of-the-Fund Method ......................................................................................... 4

        2.    The Lodestar "Cross-Check" Strongly Supports the Reasonableness of the Requested Fee ........................................................................................ 5

    D.    Factors Considered by Courts in the Second Circuit to Confirm the Fairness and Reasonableness of the Requested Fee ..................................................................... 7

        1.    Time and Labor Expended Support the Requested Fee ............................. 7

        2.    The Risks of Litigation Support the Requested Fee .................................. 8

        3.    The Magnitude and Complexity of the Actions Support the Requested Fee ................................................................................................................. 12

        4.    The Quality of Lead Counsel's Representation Supports the Requested Fee ................................................................................................................. 13

        5.    The Requested Fee in Relation to the Settlement .................................... 14

        6.    Public Policy Considerations Support the Requested Fee ........................ 14

    E.    Plaintiffs' Counsel's Expenses Are Reasonable and Were Necessarily Incurred to Achieve the Benefit Obtained ............................................................................... 15

    F.    The Proposed Award to Plaintiffs is Reasonable ............................................... 16

IV.   CONCLUSION ........................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Bensley v. FalconStor Software, Inc.*,
    277 F.R.D. 231 (E.D.N.Y. 2011) ............................................................................................. 13

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) ................................................................................................................... 2

*Burns v. FalconStor Software, Inc.*,
    No. 10 CV 4572, 2014 WL 12917621 (E.D.N.Y. Apr. 11, 2014) ............................................... 3

*Christine Asia Co. v. Yun Ma*,
    2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) .......................................................................... 13

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ...................................................................................................... 9

*City of Providence v. Aeropostale, Inc.*,
    No. 11 CIV. 7132 CM GWG, 2014 WL 1883494 (S.D.N.Y. May 9, 2014) ...................... 13, 15

*Eltman v. Grandma Lee's, Inc.*,
    No. 82 CIV. 1912, 1986 WL 53400 (E.D.N.Y. May 28, 1986) ................................................. 2

*Goldberger v. Integrated Res., Inc.*,
    209 F.3d 43 (2d Cir. 2000) ................................................................................................ passim

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*,
    No. 03 CIV.5755, 2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006) ........................................... 14

*In re Akazoo S.A. Sec. Litig.*,
    2021 WL 4316717 (E.D.N.Y. Sept. 10, 2021) .................................................................... 4, 17

*In Re AKAZOO S.A. SECURITIES LITIGATION*,
    2021 WL 4523811 ...................................................................................................................... 4

*In re AOL Time Warner, Inc.*,
    No. 02 CIV. 5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) .................................. 12

*In re AT & T Corp.*,
    455 F.3d 160 (3d Cir. 2006) ...................................................................................................... 6

*In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*,
    772 F.3d 125 (2d Cir. 2014) ............................................................................................... 16, 17

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001).......................................................................................... 11

*In re Colgate-Palmolive Co. ERISA Litig.*,
36 F. Supp. 3d 344 (S.D.N.Y. 2014)........................................................................... 7

*In re Comverse Tech., Inc. Sec. Litig.*,
No. 06-CV-1825 (NGG), 2010 WL 2653354 (E.D.N.Y. June 24, 2010).......................... passim

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
No. 05 CIV 10240 CM, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ...................................... 6

*In re Facebook, Inc. IPO Sec. & Deriv. Litig.*,
2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015)........................................................................ 8

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
No. 02-CV-3400 CM PED, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ............... 9, 10, 15, 16

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
279 F.R.D. 151 (S.D.N.Y. 2011) ...................................................................................... 10

*In re Gilat Satellite Networks, Ltd.*,
No. CV-02-1510 CPS SMG, 2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007)..................... 15, 16

*In re Glob. Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ............................................................................. 6, 9, 11, 16

*In re Hi-Crush Partners L.P. Sec. Litig.*,
No. 12-CIV-8557 CM, 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014)...................................... 6

*In re Jan. 2021 Short Squeeze Trading Litig.*,
No. 21-2989-MDL, 2021 WL 4840857 (S.D. Fla. Oct. 15, 2021) .......................................... 13

*In re KeySpan Corp. Sec. Litig.*,
No. 01 CV 5852(ARR), 2005 WL 3093399 (E.D.N.Y. Sept. 30, 2005) ................................. 15

*In re Marsh & McLennan Companies, Inc. Sec. Litig.*,
No. 04 CIV. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009).......................... 11, 17

*In re Marsh ERISA Litig.*,
265 F.R.D. 128 (S.D.N.Y. 2010) ...................................................................................... 12

*In re MetLife Demutualization Litig.*,
689 F. Supp. 2d 297 (E.D.N.Y. 2010) ...................................................................... 9, 16, 17

iii

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  991 F. Supp. 2d 437 (E.D.N.Y. 2014) ........................................................... 4

*In re Rite Aid Corp. Sec. Litig.*,
  396 F.3d 294 (3d Cir. 2005)........................................................................... 4

*In re Veeco Instruments Inc. Sec. Litig.*,
  No. 05 MDL 01695CM, 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007)............................... 14, 17

*Johnson v. Brennan*,
  No. 10 CIV. 4712 CM, 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011)..................................... 4

*Kristal v. Mesoblast Ltd.*,
  2022 WL 3442535 (S.D.N.Y. Aug. 15, 2022) ............................................................. 4

*Louisiana Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*,
  No. CIVA 03-CV-4372 DMC, 2009 WL 4730185 (D.N.J. Dec. 4, 2009) ............................... 12

*Maley v. Del Glob. Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002)..................................................................... 2, 6, 15

*Mikhlin v. Oasmia Pharm. AB*,
  No. 19CV4349NGGRER, 2021 WL 1259559 (E.D.N.Y. Jan. 6, 2021) ............................... 4, 13

*Mills v. Elec. Auto-Lite Co.*,
  396 U.S. 375 (1970)...................................................................................... 3

*Pace v. Quintanilla*,
  No. SACV 14-2067-DOC, 2014 WL 4180766 (C.D. Cal. Aug. 19, 2014) ............................. 13

*Roberts v. Texaco, Inc.*,
  979 F. Supp. 185 (S.D.N.Y. 1997) ...................................................................... 7

*Savoie v. Merchs. Banks*,
  166 F.3d 456 (2d Cir. 1999)............................................................................. 5

*Shapiro v. JPMorgan Chase & Co.*,
  2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ............................................................ 9

*State of W. Va. v. Chas. Pfizer & Co.*,
  314 F. Supp. 710 (S.D.N.Y. 1970) .................................................................. 9, 10

*Taft v. Ackermans*,
  No. 02 CIV. 7951 (PKL), 2007 WL 414493 (S.D.N.Y. Jan. 31, 2007) ................................. 12

*Teachers' Ret. Sys. of Louisiana v. A.C.L.N., Ltd.*,
    2004 WL 1087261 (S.D.N.Y. May 14, 2004) .......................................................................... 9

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007)................................................................................................................... 15

*Too v. Rockwell Med., Inc.*,
    No. 1:18-CV-04253, 2020 WL 1026410 (E.D.N.Y. Feb. 26, 2020) .......................................... 4

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ................................................................................................... 7

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)...................................................................................................... 3, 5

## Statutes

15 U.S.C. §77z-1(a)(4)........................................................................................................... 2, 16

15 U.S.C. § 78u-4(a)(4) ............................................................................................................. 16

15 U.S.C. § 78u-4(a)(6) ................................................................................................................ 3

## I.    PRELIMINARY STATEMENT

The proposed Settlement,[1] which provides for a cash payment of $3,500,000 in exchange for resolution of Plaintiffs' claims, represents a favorable outcome for the Settlement Class – recovering, as a percentage of maximum damages, substantially more than the typical securities class action of this size. Lead Counsel has risked considerable time, effort, and resources prosecuting this Action against highly-skilled defense counsel, and has not received any compensation. Lead Counsel now requests that the Court award attorneys' fees equal to 27.5% of the Settlement Amount (*i.e.* $962,500) for obtaining this favorable result for the Settlement Class.

Lead Counsel believe that an attorney fee award of 27.5% of the Settlement Amount properly reflects the significant risks taken by it, as well as the result achieved. As set forth below, the relevant factors articulated in the Second Circuit's *Goldberger* decision strongly support the requested awards. *See Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000). When examined under either the percentage of the fund or lodestar methods for calculating attorneys' fees, the requested fee is reasonable, and well within (indeed, falls below) the range of attorneys' fees awarded in similar complex, contingency cases.  To date, not a single Settlement Class Member has objected to the fee request.

Lead Counsel also seek reimbursement of out-of-pocket litigation expenses incurred in prosecuting this Action, in the amount of $48,459.98. With no guarantee of success, Lead Counsel only incurred reasonable expenses necessary for the prosecution of this Action.

---

[1] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Stipulation of Settlement dated August 8, 2024 ("Stipulation") (ECF No. 113-4), the Declaration of Yu Shi in Support of Plaintiffs' Motions for: (I) Final Approval of Class Action Settlement; and (II) An Award of Attorneys' Fees, Reimbursement of Expenses, and Awards to Plaintiffs ("Shi Declaration" or "Shi Decl."), filed herewith, or the Second Amended Class Action Complaint for Violation of the Federal Securities Laws ("SAC" or "Complaint") (ECF No. 73). Unless otherwise noted, citations herein to "Ex.__" refer to exhibits to the Shi Declaration.

Finally, for nearly three years Plaintiffs have spent their time leading the Action on behalf of the Settlement Class. Plaintiffs request a modest reimbursement in the amount of $3,000 each (for a total award of $6,000 to the two Plaintiffs) pursuant to 15 U.S.C. §77z-1(a)(4) to compensate them for their time. This request is reasonable and in line with awards granted in similar matters.

## II.    FACTUAL AND PROCEDURAL HISTORY

The concurrently filed Shi Declaration is an integral part of this submission. For the sake of brevity, the Court is respectfully referred to it for a detailed description of, *inter alia*: the history of the Action; the nature of the claims asserted; the litigation and negotiations leading to Settlement; the bases for the Settlement; and a description of the services Plaintiffs' Counsel provided for the benefit of the Settlement Class.

## III.    ARGUMENT

### A.    The Common Fund Doctrine Applies to the Settlement

The Supreme Court and the Second Circuit have long recognized that attorneys whose efforts create a "common fund" are entitled to a reasonable attorneys' fee from that fund. See *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). "The rationale for the doctrine is an equitable one: it prevents unjust enrichment of those benefitting from a lawsuit without contributing to its cost." *Id.*, 209 F.3d at 47. Awarding attorneys' fees from the common fund serves "the dual purposes of encouraging representatives to seek redress for injuries caused to public investors and discouraging future misconduct of a similar nature." *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002); *Eltman v. Grandma Lee's, Inc.*, No. 82 CIV. 1912, 1986 WL 53400, at *9 (E.D.N.Y. May 28, 1986) ("To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding. The concept of a private attorney acting as a 'private attorney general' is vital to the continued enforcement and

2

effectiveness of the Securities Acts.").

An award from the common fund is proper if the litigation "confer[s] a substantial benefit on the members of an ascertainable class, and … the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them." *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 393-94 (1970). Here, Lead Counsel's efforts conferred a substantial benefit—$3,500,000 in cash—on an ascertainable class, the Settlement Class. A fee award from the Settlement Fund will equitably shift the costs of litigation to the Settlement Class.

**B.    The Court Should Award a Reasonable Percentage of the Common Fund**

"Although the Second Circuit has left it to the discretion of the district courts to decide the method to use for setting fees in common fund cases, recent cases have indicated that the trend for courts in this circuit is to use the percentage of the fund method." *Burns v. FalconStor Software, Inc.*, No. 10 CV 4572, 2014 WL 12917621, at *8 (E.D.N.Y. Apr. 11, 2014). This is because the percentage method "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG), 2010 WL 2653354, at *2 (E.D.N.Y. June 24, 2010) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005)). This method is also supported by the Private Securities Litigation Reform Act of 1995 (PSLRA): "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. § 78u-4(a)(6).

When the percentage method is used, a comparison to the lodestar amount serves to "cross-check" the reasonableness of the requested percentage. *Goldberger*, 209 F.3d at 50. When used "as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." *Id.* Being able to rely on "summaries submitted by the attorneys [rather than]

3

actual billing records," *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306–07 (3d Cir. 2005), *as amended* (Feb. 25, 2005) (so holding), "relieves the court of the cumbersome, enervating, and often surrealistic process of evaluating fee petitions." *Johnson v. Brennan*, No. 10 CIV. 4712 CM, 2011 WL 4357376, at *14–15 (S.D.N.Y. Sept. 16, 2011).

### C.  The Requested Attorneys' Fees Are Reasonable

#### 1.  The Requested Attorneys' Fees Are Reasonable under the Percentage-of-the-Fund Method

The requested fee of 27.5% of the Settlement Amount is fair, reasonable, and wholly consistent with the range of percentages courts in the Second Circuit have awarded in similar common fund cases.  The 27.5% fee request is less than the 29% disclosed in the Long Notice[2] and also *below* the one-third (33 1/3%) fee that is commonly awarded in this Circuit. "Courts in this Circuit routinely find that requests for attorney's fees totaling one-third of the settlement fund are 'well within the range of reasonableness.'" *Mikhlin v. Oasmia Pharm. AB*, No. 19CV4349NGGRER, 2021 WL 1259559, at *7 (E.D.N.Y. Jan. 6, 2021) (citing cases).  Where the fund is less than $10 million, 33% contingency fees are "very common." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 445 (E.D.N.Y. 2014); *See also, Kristal v. Mesoblast Ltd.*, 2022 WL 3442535, at *1 (S.D.N.Y. Aug. 15, 2022) ($2 million settlement prior to discovery, see *Irene KRISTAL, Individually and on behalf of all others similarly situated, Plaintiff, v. MESOBLAST LIMITED, Silviu Itescu, Josh Muntner, and Fred Grossman, Defendants*, 2022 WL 4371039); *In re Akazoo S.A. Sec. Litig.*, 2021 WL 4316717, at *1 (E.D.N.Y. Sept. 10, 2021) ($4.9 million partial settlement prior to formal discovery, *see In Re AKAZOO S.A. SECURITIES LITIGATION*, 2021 WL 4523811); *Too v. Rockwell Med., Inc.*, No. 1:18-CV-04253, 2020 WL 1026410, at *3 (E.D.N.Y. Feb. 26, 2020) ($3.7 million settlement prior to formal

---

[2] Ex. 1 (Bravata Decl. at Ex. A (Long Notice), pgs. 1-2).

discovery, *see Ah Kit TOO, Individually and on behalf of all Others Similarly Situated, Plaintiff, v. ROCKWELL MEDICAL, INC., Robert L. Chioini, and Thomas E. Klema, Defendants. Robert SPOCK, Individually and on behalf of all Others Similarly Situated, Plaintiff*, 2020 WL 1125633).

The major benefit of awarding fees on a percentage basis is that it does not penalize attorneys for achieving a prompt resolution of a case, and does not provide a perverse incentive for attorneys to prolong a litigation (and incur additional expenses) in order to increase their lodestar. Awarding attorneys' fees based solely upon the lodestar method "creates an incentive for attorneys to bill as many hours as possible, to do unnecessary work, and for these reasons also can create a disincentive to early settlement." *Comverse*, 2010 WL 2653354, at *2. Here, Lead Counsel gained sufficient information concerning the strengths and weaknesses of the case necessary to make an informed decision not to continue costly litigation that may have yielded no recovery after a substantial expenditure of the Parties' and judicial resources. *See Wal-Mart,* 396 F.3d at 121 (one of the merits of the percentage method is that it "'provides a powerful incentive for the efficient prosecution and early resolution of litigation'"); *Savoie v. Merchs. Banks*, 166 F.3d 456, 460-61 (2d Cir. 1999) (the percentage method "removes disincentives to prompt settlement").

> ### 2.   The Lodestar "Cross-Check" Strongly Supports the Reasonableness of the Requested Fee

Courts awarding fees based upon a percentage of the common fund use a lodestar "cross-check" to confirm the reasonableness of the requested fee award. *See Goldberger*, 209 F.3d at 50. The "lodestar" is calculated by multiplying the number of hours expended on the litigation by each attorney and paralegal by their current reasonable and customary hourly rate and totaling the amounts for all timekeepers.[3] Additionally, "[u]nder the lodestar method of fee computation, a

---

[3] "[T]he use of current rates to calculate the lodestar figure has been endorsed repeatedly by the Supreme Court, the Second Circuit and district courts within the Second Circuit as a means of

5

multiplier is typically applied to the lodestar. The multiplier represents the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004); *Comverse*, 2010 WL 2653354, at *5 ("Where … counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar.").

Here, Plaintiffs' Counsel devoted a total of 861.5 hours to the prosecution of the Action,[4] resulting in a lodestar of $787,597.00. Shi Decl. at ¶38.  Based on a 27.5% fee (equal to $962,500), Plaintiffs' Counsel's lodestar yields a multiplier of 1.22. This multiplier is well within the range of multipliers commonly awarded in securities class actions and other complex litigation. *See e.g., In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05 CIV 10240 CM, 2007 WL 2230177, at *17 (S.D.N.Y. July 27, 2007) ("[l]odestar multipliers of nearly 5 have been deemed 'common' by courts in this District."); *In re AT & T Corp.*, 455 F.3d 160, 173 (3d Cir. 2006) (multiplier of 2.99 was reasonable in a case that lasted four months even when "discovery was virtually nonexistent"); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 363–64, 373 (S.D.N.Y. 2002) (awarding 4.65 multiplier in a case that settled after one year, noting that "in the context of a complex class action, early settlement has far reaching benefits in the judicial system"); *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 353 (S.D.N.Y. 2014) (awarding

---

accounting for the delay in payment inherent in class actions and for inflation." *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-CIV-8557 CM, 2014 WL 7323417, at *15 (S.D.N.Y. Dec. 19, 2014) (citing cases).

[4] This is comprised of 788.6 hours expended by Lead Counsel RLF, and 72.9 hours by additional counsel GPM. Shi Decl. at ¶38. As explained in the Shi Decl., there is no duplication of work between RLF and GPM. GPM initiated this Action by filing the initial complaint, and it then filed a motion for appointment of lead plaintiff on behalf of Mr. Margent. Following the appointment of Millunchick as lead plaintiff and RLF as Lead Counsel, GPM's role was limited to communicating with Mr. Margent – including advising Mr. Margent on the decision to continue participating in this Action as a named plaintiff to provide standing for the Section 14(a) claims, and discussing case developments and strategies with Mr. Margent. Shi Decl. at ¶39.

attorney's fees representing a multiplier of 5.2); *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 197 (S.D.N.Y. 1997) (awarding a multiplier of 5.5); s*ee also, Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002) (affirming 3.65 multiplier and explaining that in contingency fee cases, courts "routinely enhance the lodestar to reflect the risk of non-payment" and that this "mirrors the established practice in the private legal market of rewarding attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases.").

In sum, the requested 27.5% fee award is below the range of what courts in this Circuit (and indeed, throughout the country) regularly award in class actions such as this one, whether calculated as a percentage of the fund or in relation to counsel's lodestar. Moreover, as discussed below, each of the factors established by the Second Circuit in *Goldberger* supports a finding that the requested fee is reasonable.

**D.      Factors Considered by Courts in the Second Circuit to Confirm the Fairness and Reasonableness of the Requested Fee**

Regardless of which calculation method is used, the Second Circuit has set forth the following criteria that courts should consider when reviewing a request for attorneys' fees in a common fund case:

> (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation…; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

*Goldberger*, 209 F.3d at 50. Consideration of these factors, together with the analyses above, demonstrate that the requested fee is reasonable.

**1.      Time and Labor Expended Support the Requested Fee**

The time and effort expended by Lead Counsel in prosecuting this Action and achieving the Settlement supports the requested fee. As set forth in greater detail in the RLF Fee Declaration

7

(Exhibit 2 to the Shi Decl.), Lead Counsel work on this matter included, among other things: briefing the motion for appointment of Lead Plaintiff and Lead Counsel; researching and preparing two amended complaint; retaining and supervising a private investigator; retaining and consulting with a damages expert; retaining and consulting with a bankruptcy attorney; negotiating with Sunlight's bankruptcy counsel concerning scope of Sunlight's bankruptcy discharge; researching and preparing an objection to Sunlight's Chapter 11 plan of reorganization in bankruptcy court; presenting oral argument in bankruptcy court objecting to Sunlight's Chapter 11 plan; researching and drafting oppositions to Defendants' (99 page) motions to dismiss; drafting mediation briefs and analyzing Defendants' mediation submissions; participating in settlement negotiations including an all-day mediation; negotiating and preparing settlement documents; preparing motions and briefs in support of approval of the Settlement, attending hearing on the motion for preliminary approval of the settlement, and overseeing the provision of notice to the Settlement Class and monitoring the work of the Claims Administrator.  RLF Fee Decl. at ¶2.

Should the Settlement be approved, additional hours and resources will be expended shepherding the claims process to conclusion and filing a distribution motion. No additional compensation will be sought for this work. *See In re Facebook, Inc. IPO Sec. & Deriv. Litig.*, 2015 WL 6971424, at *10 (S.D.N.Y. Nov. 9, 2015) ("Considering that the work in this matter is not yet concluded for Plaintiffs' counsel who will necessarily need to oversee the claims process [and] respond to inquiries, … the time and labor expended by counsel in this matter support a conclusion that a 33% fee award in this matter is reasonable.").

Accordingly, this factor supports the requested fee.

### 2.     The Risks of Litigation Support the Requested Fee

"[T]he risk of success [is] perhaps the foremost factor to be considered" in determining a reasonable fee. *Goldberger*, 209 F.3d at 54; *see also Shapiro v. JPMorgan Chase & Co.*, 2014 WL

1224666, at *21 (S.D.N.Y. Mar. 24, 2014) ("The Second Circuit long ago recognized that courts should consider the risks associated with lawyers undertaking a case on a contingent fee basis."). This is because "[n]o one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974). In applying this factor, "'litigation risk must be measured as of when the case is filed,' rather than with the hindsight benefit of subsequent events." *In re Global Crossing Secs. & ERISA Litig.*, 225 F.R.D. at 436, 467 (S.D.N.Y. 2004) (quoting *Goldberger*, 209 F.3d at 55). As explained below and in Plaintiffs' Memorandum of Law In Support of Final Approval of Class Action Settlement, filed herewith, the many risks that Lead Counsel faced in prosecuting the case justify the requested 27.5% fee.

Numerous courts have recognized that "class actions confront even more substantial risks than other forms of litigation[,]" *Comverse*, 2010 WL 2653354, at *5, and "securities actions have become more difficult from a plaintiff's perspective in the wake of the [Private Securities Litigation Reform Act]." *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 361 (E.D.N.Y. 2010).[5]

Further, courts have described as "misplaced" attorneys' confidence that they can predict with any degree of certainty the outcome of litigation. *State of W. Va. v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743–44 (S.D.N.Y. 1970), *aff'd,* 440 F.2d 1079 (2d Cir. 1971). That court pointed to two instances in which it had disapproved of proposed settlements only for the plaintiffs to recover nothing or less than the settlement the defendants had offered. *Id.*

---

[5] *See also Teachers' Ret. Sys. of Louisiana v. A.C.L.N., Ltd.*, 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004) ("Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation."); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 CM PED, 2010 WL 4537550, at *15 (S.D.N.Y. Nov. 8, 2010) (securities class action litigation is "notably difficult and notoriously uncertain.")

This case is no exception, posing significant obstacles to success at each stage of the litigation, with a vigorous defense promised from highly-skilled defense counsel. Nonetheless, in seeking appointment by the Court, "plaintiffs' counsel were obligated to assure that sufficient attorney and para-professional resources were dedicated to the prosecution of the action; counsel also faced the responsibility of advancing litigation and overhead expenses on this case …" *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 164 (S.D.N.Y. 2011). Indeed, "[u]nlike counsel for Defendants, who are paid substantial hourly rates and reimbursed for their expenses on a regular basis, [Lead Counsel] have not been compensated for any time or expenses since this case began …" *Flag Telecom*, 2010 WL 4537550, at *27. Lead Counsel's commitment was significant, expending hundreds of thousands of dollars in attorney time and advancing tens of thousand of dollars in litigation costs and expenses, including the engagement of an investigator and experts. Although Lead Counsel believes Plaintiffs' claims are meritorious, a loss at any stage of the litigation could deny the class any recovery and counsel any compensation.

In fact, when the Parties agreed to settle the Action, two motions to dismiss were pending that attacked every alleged misstatement on one or more grounds, and advanced other technical arguments as to why this Action must be dismissed. *See* ECF Nos. 78 & 82. For example, Defendants argued that the description of Sunlight's due diligence processes (*e.g.,* that it was "robust") is inactionable puffery. Defendants have also argued that Plaintiffs' allegations as to Sunlight's due diligence processes relies heavily on confidential witnesses, whose testimonies cannot be credited because their positions at Sunlight do not support the reliability of their allegations. While Plaintiffs believe they have meritorious responses to Defendants' arguments, there is substantial risk that the Court might find Defendants' arguments more persuasive.

Even were the case to survive the motion to dismiss and the Court were to certify a class

10

(and Defendants would surely contest class certification vigorously), on summary judgment and again at trial, Plaintiffs "still would face the task of establishing that each class member's damages (if any) resulted from defendants' alleged misconduct, and the amount of any such damages." *Global Crossing*, 225 F.R.D. at 459. The "[c]alculation of damages is a 'complicated and uncertain process, typically involving conflicting expert opinion …'" *Id.* Even if loss causation is established, Plaintiffs must still disentangle from the overall loss figure, to the jury's satisfaction, the amount caused by non-fraud-related company-specific, industry-wide, and/or other macroeconomic factors. *Id.*; *see also In re Marsh & McLennan Companies, Inc. Sec. Litig.*, No. 04 CIV. 8144 (CM), 2009 WL 5178546, at \*6 (S.D.N.Y. Dec. 23, 2009) ("If there is anything in the world that is uncertain … it is what the jury will come up with as a number for damages."); *In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001) ("[E]stablishing damages at trial would lead to a 'battle of experts' with each side presenting its figures to the jury and with no guarantee whom the jury would believe.")

Although Plaintiffs believe that they have cogently pled loss causation under a "materialization of the risk" theory, Defendants have challenge loss causation by arguing, among other things, that the announcement that Sunlight was taking an impairment charge due to *Pink Energy's* liquidity issues – which caused the stock drop at issue - has nothing to do Plaintiffs' allegation about *Sunlight's* due diligence process, and that there was a mismatch between the generic nature of Defendants' statements about Sunlight's due diligence process and the cash advance program, and the specific announcement about Pink Energy's default.  This would likely turn into a "battle of experts" with no guarantee which testimony will be credited.

While Plaintiffs and their counsel believe this case has merit and that they could have successfully navigated the risks posed at each stage of the litigation, if any of them materialized,

11

the Settlement Class might have recovered far less than the proposed Settlement or nothing at all. The very real risk of no recovery supports the reasonableness of the fee request. Although "some securities fraud class actions are, in truth, really not that risky, […*e.g.*,] when there has been a large accounting restatement, government enforcement action or criminal prosecution," *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 147 (S.D.N.Y. 2010), in this case, in contrast, "[t]here was significant risk of non-payment …, and Plaintiffs' Counsel should be rewarded for having borne and successfully overcome that risk." *Id.*

### 3. The Magnitude and Complexity of the Actions Support the Requested Fee

Courts have repeatedly recognized the "notorious complexity" of securities class action litigation.  *In re AOL Time Warner, Inc.*, No. 02 CIV. 5575 (SWK), 2006 WL 903236, at \*8 (S.D.N.Y. Apr. 6, 2006); *Taft v. Ackermans*, No. 02 CIV. 7951 (PKL), 2007 WL 414493, at \*10 (S.D.N.Y. Jan. 31, 2007); *Louisiana Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, No. CIVA 03-CV-4372 DMC, 2009 WL 4730185, at \*8 (D.N.J. Dec. 4, 2009) ("securities class actions are inherently complex").

At many junctures, securities class action plaintiffs must prove complex concepts to recover on their claims. For example, to establish loss causation and damages here, Plaintiffs must hire an expert to disaggregate damages from non-fraud related factors. Moreover, to certify a class, Plaintiffs would have to establish that Sunlight common stock traded in an efficient market.  These are highly technical and complicated tasks.

In addition to the complexities of proving loss causation and damages, inherent in all securities litigation, this case presented another unique issue: contesting Sunlight's chapter 11 plan in bankruptcy court that would have discharged and released Plaintiffs' claims against Sunlight.

Accordingly, the magnitude and complexity of the Action supports the requested fee. *See*

12

*City of Providence v. Aeropostale, Inc.*, No. 11 CIV. 7132 CM GWG, 2014 WL 1883494, at *16 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015) ("[T]he complex and multifaceted subject matter involved in a securities class action such as this supports the fee request.").

### 4.    The Quality of Lead Counsel's Representation Supports the Requested Fee

The quality of Lead Counsel's efforts and its commitment to providing the Settlement Class with the best possible representation, together with Lead Counsel's substantial experience in securities class actions, were integral to obtaining the Settlement in a case where there was a serious possibility of no recovery. Courts in this District, this Circuit, and around the country have recognized the quality of Lead Counsel's work. *See Mikhlin*, 2021 WL 1259559, at *4 ("The Rosen Law Firm, P.A . . . [is] capable and experienced in class litigation."); *Bensley v. FalconStor Software, Inc.*, 277 F.R.D. 231, 242 (E.D.N.Y. 2011) ("The Rosen Law Firm is well-qualified to serve as lead counsel"); *Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *19 (S.D.N.Y. Oct. 16, 2019) (approving 25% fee in $250 million settlement, the Court stated that "[t]he quality of representation by [The Rosen Law Firm] and Defendants' counsel was high in this case . . ."); *In re Jan. 2021 Short Squeeze Trading Litig.*, No. 21-2989-MDL, 2021 WL 4840857, at *6 (S.D. Fla. Oct. 15, 2021) ("[The Rosen Law Firm] has developed a reputation for zealous advocacy in securities class actions"); *Pace v. Quintanilla*, No. SACV 14-2067-DOC, 2014 WL 4180766, at *3 (C.D. Cal. Aug. 19, 2014) ("[The Rosen Law Firm] has appeared before this Court several times before, and the Court is confident that it has the necessary skill and knowledge to effectively prosecute this action.").

Courts have also recognized that the quality of the opposition faced by plaintiffs' counsel should be taken into consideration in assessing the quality of the counsel's performance. *See*, *e.g.*,

13

*In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695CM, 2007 WL 4115808, at *7 (S.D.N.Y. Nov. 7, 2007) (among factors supporting award of requested attorneys' fees was that defendants were represented by "one of the country's largest law firms"); *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, No. 03 CIV.5755, 2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006), *aff'd,* 272 F. App'x 9 (2d Cir. 2008) ("The fact that the settlements were obtained from defendants represented by 'formidable opposing counsel from some of the best defense firms in the country' also evidences the high quality of lead counsels' work"), *aff'd*, 272 F. App'x 9 (2d Cir. 2008). Here, Defendants were represented by highly-skilled securities practitioners from McGuireWoods LLP and Vinson & Elkins LLP.  Notwithstanding this capable opposition that would zealously defend the Action at every stage, Lead Counsel obtained a favorable settlement. Consequently, this factor further supports the requested fee.

### 5.      The Requested Fee in Relation to the Settlement

Courts have interpreted this factor as requiring the review of the fee requested in terms of the percentage it represents of the total recovery. "When determining whether a fee request is reasonable in relation to a settlement amount, 'the court compares the fee application to fees awarded in similar securities class-action settlements of comparable value.'" *Comverse*, 2010 WL 2653354, at *3. As discussed in detail in Section III(C) above, the requested 27.5%  fee is well within the range of percentage fees that courts in the Second Circuit have awarded in comparable cases – particularly in cases that settled for less than $10 million. Accordingly, the fee requested is reasonable in relation to the Settlement.

### 6.      Public Policy Considerations Support the Requested Fee

"In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered." *Maley*, 186 F. Supp. 2d at 373. The Supreme Court "has long recognized that meritorious private actions to enforce federal antifraud securities laws

14

are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the Securities and Exchange Commission." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007); *see Comverse*, 2010 WL 2653354 at *6 ("Private securities class actions are 'a most effective weapon in the enforcement of the securities laws and are a necessary supplement to [SEC] action.'")

If the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts ...." *Flag Telecom*, 2010 WL 4537550, at *29; *City of Providence*, 2014 WL 1883494, at *18 (private enforcement actions "can only be maintained if competent counsel can be retained to prosecute them. This will occur if courts award reasonable and adequate compensation for such services where successful results are achieved.").

### E. Plaintiffs' Counsel's Expenses Are Reasonable and Were Necessarily Incurred to Achieve the Benefit Obtained

Lead Counsel also requests reimbursement of $48,459.98 in expenses incurred while prosecuting the Action. "Courts routinely grant the expense requests of class counsel." *In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510 CPS SMG, 2007 WL 2743675, at *18 (E.D.N.Y. Sept. 18, 2007) (quoting *In re KeySpan Corp. Sec. Litig.*, No. 01 CV 5852(ARR), 2005 WL 3093399, at *18 (E.D.N.Y. Sept. 30, 2005)); *Flag Telecom*, 2010 WL 4537550, at *30 ("It is well accepted that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class").

The amount requested is considerably less than the $58,000 limit described in the Long Notice.[6] The vast majority of the expenses were incurred for professional services rendered by Plaintiffs' investigators, experts, consultants, and Mr. Meyer's mediation services. *See* Shi Decl.

---

[6] Ex. 1 (Bravata Decl. at Ex. A (Long Notice), pgs. 1-2).

at ¶40; Ex. 2 (RLF Fee Decl.) and Ex. 3 (GPM Fee Decl.). Other expenses include online legal research and document retrieval fees, filing fees, notice to investor fees, process server fees, courier fees, etc. *Id.* These expenses were both reasonable and critical to Plaintiffs' success in achieving the proposed Settlement, and are customary and necessary expenses in complex securities class actions. *See Flag Telecom*, 2010 WL 4537550, at *30; *Global Crossing*, 225 F.R.D. at 468 ("The expenses incurred—which include investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review—are the type for which 'the paying, arms' length market' reimburses attorneys. For this reason, they are properly chargeable to the Settlement fund."). *see In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 364 (E.D.N.Y. 2010) (awarding "expert fees, electronic research charges, long distance telephone and facsimile charges, postage and delivery expenses, discovery costs, filing fees, photocopying, expenses associated with locating and interviewing dozens of witnesses, and out-of-town travel expenses").

### F. The Proposed Award to Plaintiffs is Reasonable

The PSLRA permits "the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of the class." 15 U.S.C. §77z-1(a)(4);15 U.S.C. § 78u-4(a)(4). Courts in the Second Circuit "routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place." *Gilat*, 2007 WL 2743675, at *19; *In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 772 F.3d 125, 132–33 (2d Cir. 2014) (affirming the award of PSLRA expense and costs to lead plaintiffs totaling $453,000). "PSLRA awards are not limited to lost wages or other documented expenses … [and] may be awarded in recognition of, for example, the

16

time and effort expended by that plaintiff in assisting in the prosecution of the litigation." *MetLife*, 689 F. Supp. 2d at 370.

Plaintiffs were two of only four Sunlight investors who moved the Court for appointment as lead plaintiff. Shi Decl. at ¶44. After Millunchick was appointed Lead Plaintiff, Margent joined the Action as named plaintiff because he had standing to pursue the Section 14(a) claims. *Id.* Since becoming involved in this Action, Plaintiffs have spent time and effort representing the Settlement Class and advocating for its interests, including: communicating with Plaintiffs' Counsel regarding case developments, reviewing major filings, searching for and providing documents to Plaintiffs' Counsel, discussing case strategies, assessing settlement scenarios, and evaluating the Settlement, etc. *Id.*

These are "precisely the types of activities that support awarding reimbursement of expenses to class representatives." *In re Marsh & McLennan Companies, Inc. Sec. Litig.*, No. 04 CIV. 8144 (CM), 2009 WL 5178546, at *21 (S.D.N.Y. Dec. 23, 2009). Accordingly, Plaintiffs respectfully request that the Court grant their modest requests, in the amount of $3,000 each (or $6,000 total for the two Plaintiffs), as reimbursement for their "reasonable costs and expenses incurred in managing this litigation and representing the Class." *Id.*; *see also In re Bank of Am. Corp.* 772 F.3d at 132 (affirming award of approximately $453,000 to representative plaintiffs); *Veeco*, 2007 WL 4115808, at *12 (awarding lead plaintiff approximately $15,900 for time spent supervising litigation, and characterizing such awards as "routine" in this Circuit); *Akazoo*, 2021 WL 4316717 at *2 (awarding six plaintiffs $3,500 in connection with $4.9 million partial settlement prior to motion to dismiss).

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Lead Counsel's request for an award of attorneys' fees in the amount of 27.5% of the Settlement Fund

and reimbursement of $48,459.98 in litigation expenses, and award Plaintiffs Millunchick and

Margent $3,000 each for their time and effort spent on behalf of the Settlement Class.


Dated:  November 12, 2024                                  Respectfully submitted,

                                                          **THE ROSEN LAW FIRM, P.A.**

                                                          By: */s/ Yu Shi*
                                                          Laurence Rosen
                                                          Yu Shi
                                                          275 Madison Avenue, 40th Floor
                                                          New York, New York 10016
                                                          Telephone: (212) 686-1060
                                                          Fax: (212) 202-3827

                                                          *Counsel for Plaintiffs*


18

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 12, 2024, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.


       */s/ Yu Shi*
       Yu Shi

19