**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MATTHEW MILLUNCHICK and MIKE MARGENT, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiffs,<br><br>   -against-<br><br>SUNLIGHT FINANCIAL HOLDINGS, INC. f/k/a/ SPARTAN ACQUISITION CORP. II, MATTHEW POTERE, BARRY EDINBURG, RODNEY YODER, GEOFFREY STRONG, JAMES CROSSEN, OLIVIA WASSENAAR, WILSON HANDLER, CHRISTINE HOMMES, JOSEPH ROMEO, and SPARTAN ACQUISITION SPONSOR II LLC,<br><br>        Defendants. | Case No.: 1:22-cv-10658-AKH<br><br>CLASS ACTION |

**DECLARATION OF YU SHI IN SUPPORT OF PLAINTIFFS' MOTIONS FOR: (1) FINAL APPROVAL OF CLASS ACTION SETTLEMENT, AND (2) AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO PLAINTIFFS**

I, Yu Shi, declare under penalty of perjury that the following is true and correct to the best of my knowledge.[1]

1.    I am an attorney duly licensed to practice law in New York and before this Court. I am a Partner at The Rosen Law Firm, P.A. ("Rosen" or "RLF"), Lead Counsel for Lead Matthew Millunchick and named plaintiff Mike Margent ("Plaintiffs") and the Settlement Class in this litigation ("Action"). I have personal knowledge of the matters set forth herein and, if called upon, I could and would completely testify thereto.

---

[1] Unless otherwise defined, all capitalized terms used herein have the meanings ascribed to them in the Stipulation of Settlement dated August 8, 2024 (ECF No. 113-4).

2.      I submit this Declaration in support of Plaintiffs' Motions, filed concurrently herewith, for: (1) Final Approval of Proposed Class Action Settlement; and (2) An Award of Attorneys' Fees, Reimbursement of Expenses, and Award to Plaintiffs. The purpose of this Declaration is to set forth the nature of the investigation, litigation and negotiations that led to the Settlement. This Declaration attempts to demonstrate that: (1) the Settlement is fair, reasonable, and adequate and should be approved by the Court, and (2) Lead Counsel's requests for attorneys' fees and expenses and award to Plaintiffs are reasonable and should be approved by the Court.

3.      The Settlement provides for a cash payment by or on behalf of Defendants in the amount of $3,500,000 in exchange for full releases of Plaintiffs' claims, and completely resolves the Action.

4.      On August 15, 2024, the Court entered an order preliminarily approving the Settlement, preliminarily certifying the Settlement Class for settlement purposes, and approving the form and manner of providing notice to potential Settlement Class Members. (ECF No. 114).

5.      Plaintiffs now seek final approval of the Settlement, as well as an award of attorneys' fees to Lead Counsel of 27.5% of the Settlement Fund (*i.e.,* $962,500) and reimbursement of counsel's out-of-pocket litigation expenses incurred in prosecuting this Action in the amount of $48,450.98, and a service award to Plaintiffs of $3,000 each (*i.e.,* $6,000 total for the two Plaintiffs).

6.      Attached hereto as Exhibit 1 is a true and correct copy of the Declaration of Josephine Bravata Concerning: (A) Mailing/Emailing of Notices; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusions and Objections ("Bravata Declaration" or "Bravata Decl.")

7.      Attached hereto as Exhibit 2 is a true and correct copy of the Declaration of Yu Shi on behalf of The Rosen Law Firm, P.A. Concerning Attorneys' Fees and Expenses ("RLF Fee Decl.").

8.      Attached hereto as Exhibit 3 is a true and correct copy of the Declaration of Charles H. Linehan on behalf of Glancy Prongay & Murray LLP Concerning Attorneys' Fees and Expenses ("GPM Fee Decl.").

9.      Attached hereto as Exhibit 4 is a true and correct copy of excerpts from: Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation, 2023 Full-Year Review* (NERA Economic Consulting, Jan. 23, 2024)

**Procedural History**

10.     This Action was initiated on December 16, 2022, when Kathie Fung filed a putative securities fraud class action complaint in this Court against the Sunlight Defendants and James Crossen alleging claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") (ECF No. 1).

11.     On February 14, 2023, pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Millunchick and three other movants filed competing motions for appointment as lead plaintiff. (ECF Nos. 8-20).

12.     On March 8, 2023, the Court appointed Millunchick as Lead Plaintiff and RLF as Lead Counsel. (ECF No. 30).

13.     On May 22, 2023, Millunchick, joined by named plaintiff Margent, filed the Amended Class Action Complaint For Violations of the Federal Securities Laws ("First Amended Complaint") (ECF No. 34). In addition to bringing claims under Sections 10(b) and 20(a) against

the Sunlight Defendants, the First Amended Complaint added claims under Section 14(a) of the Exchange Act against the Spartan Defendants.

14.    On July 21, 2023, Defendants filed their motions to dismiss the First Amended Complaint. (ECF No. 57) (the Sunlight Defendants' motion to dismiss); (ECF No. 59) (the Spartan Defendants' motion to dismiss).

15.    On October 20, 2023, in lieu of opposing Defendants' motions to dismiss the First Amended Complaint, Plaintiffs filed the operative Second Amended Class Action Complaint For Violations of the Federal Securities Laws ("Complaint" or "SAC").

16.    On October 30, 2023, Sunlight filed for Chapter 11 bankruptcy. *See In re Sunlight Financial Holdings Inc., et al.,* Case No. 23-11794 (MFW) (Bankr. D. Del.). Subsequently, Sunlight filed a Notice of Suggestion of Pendency of Bankruptcy and Automatic Stay of Proceedings in this Action on November 2, 2023. (ECF No. 74).

17.    While this Action was stayed as to Sunlight, Plaintiffs appeared in Bankruptcy Court to object to Sunlight's plan of reorganization, which sought to discharge – and permanently enjoined Plaintiffs from pursuing – Plaintiffs' claims against Sunlight in this Action. *See In re Sunlight,* Case No. 23-11794 (MFW) (Bankr. D. Del.) (ECF No. 57).  Following oral argument at Sunlight's plan confirmation hearing, the Bankruptcy Court ordered Sunlight to remain a defendant in this Action so that Plaintiffs may attempt to establish its liability for the purposes of recovering any available insurance proceeds. (*Id.,* ECF No. 201 at ¶27.)

18.    On December 6, 2023, Sunlight emerged from bankruptcy, lifting the stay as to Sunlight.

19. On December 20, 2023, Defendants filed their motions to dismiss the Complaint. (ECF No. 78) (Sunlight Defendants' motion to dismiss); (ECF No. 82) (Spartan Defendants' motion to dismiss).

20. On March 5, 2024, Plaintiffs filed their oppositions to Defendants' motions to dismiss. (ECF Nos. 89 & 90).

21. On April 12, 2024, Defendants filed their replies in further support of their motions to dismiss. (ECF Nos. 91 & 92).

22. On April 25, 2024, after Defendants' motions to dismiss were fully briefed and pending, the Parties participated in a full-day, in-person mediation with Robert A. Meyer, Esq. of JAMS, a nationally-recognized mediator with substantial experience mediating securities fraud class actions. In advance of the mediation, the Parties separately provided Mr. Meyer with confidential mediation statements setting forth their positions and analyses.

23. Despite a mediation session that lasted more than 10 hours, no agreement was reached at the conclusion of the mediation day. However, the Parties continued their settlement discussions over the following days through Mr. Meyer, ultimately reaching an agreement in principle.

24. On May 21, 2024, the Parties executed a Memorandum of Understanding of certain basic terms of the Settlement.

25. On July 15, 2024, Plaintiffs filed a motion for preliminary approval of the Settlement. (ECF No. 108) ("Preliminary Approval Motion").

26. On July 25, 2024, the Court held a hearing on the Preliminary Approval Motion, and ordered certain revisions to the settlement documents.

27.     On August 8, 2024, the Parties filed the revised settlement documents.  (ECF No. 113).

28.     On August 15, 2024, the Court entered the Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement. (ECF No. 114) ("Preliminary Approval Order").

**The Nature of Plaintiffs' Claims, the Bases for the Settlement and the Plan of Allocation, and the Settlement Class's Reaction to the Settlement and Plan of Allocation**

29.     The crux of Plaintiffs' allegations is as follows: Sunlight operated a digital home solar panel financing platform that, among other things, offered cash advances to contractors. Sunlight told investors that it had rigorous processes in place to vet and monitor the contractors to whom it gave advances. In actuality, starting in 2019, Sunlight substantially loosened its credit standards and removed guardrails that had controlled risks and losses stemming from its cash advance program.  Nevertheless, Sunlight kept touting its supposedly rigorous due diligence and monitoring process and claiming that the cash advance program posed minimal risk for Sunlight, even as it was pumping more and more cash into two of the most troubled solar contractors in the industry - Pink Energy and Vision Solar – both of which were at high risk of going out of business. The risk materialized when Sunlight revealed in September 2022 that it would have to write off more than $30 million in cash advanced to Pink Energy because of the latter's impending bankruptcy.  Sunlight's stock price fell by 57% in the wake of this news, damaging investors.

30.     Plaintiffs' expert estimated maximum classwide damages to be $33.6 million.  To achieve this best-case scenario verdict, however, requires Plaintiffs to: defeat motions to dismiss that attacked every alleged misstatement on one or more grounds; certify a class, which would require establishing market efficiency and overcoming Defendants' inevitable price impact arguments; defeat motions for summary judgment; and succeed at trial proving to a jury that 100% of Sunlight's stock price decline on September 28, 2022 was related to the alleged fraud.  Each of

the pre-trial steps posed significant risk that Plaintiffs' claims could be dismissed or substantially reduced in size and scope. If the case survives all the way to trial, it is axiomatic that jury trials pose significant uncertainty as to which side's proof and expert testimony will be credited.

31.     The $3.5 million Settlement represents a recovery of 10.4% of the maximum damages potentially available to Plaintiffs.  This is substantially higher – indeed doubling – the median recovery historically achieved in securities class actions alleging similar magnitude of damages. *See* Exhibit 4 (NERA Economic Consulting finding that between 2014 and 2023, settled securities class actions with damages between $20 and $49 million settled for a median of 5.1% of damages).

32.     Prior to entering into the Settlement, Plaintiffs were very aware of the strengths and weaknesses of their claims, as well as the real risk that continued litigation could potentially result in no recovery at all for Sunlight investors.  In particular, Plaintiffs: (1) conducted a thorough investigation of Sunlight, which included: (a) reviewing Sunlight's SEC filings, press releases, earnings calls, numerous analyst reports about Sunlight, and a variety of industry publications, (b) hiring an investigator to locate and interview witnesses, (c) researching and reviewing publicly-available information concerning Sunlight's major contractor partners, including industry publications, online message boards, lawsuits, etc., and (d) reviewing Sunlight's bankruptcy filings; (2) drafted two amended complaints; (3) analyzed and opposed Defendants' motions to dismiss; (4)  retained an expert to assess damages, and (4) drafted a mediation statement and analyzed Defendants' mediation submissions.  Negotiating with Defendants during a full-day JAMS mediation before reaching an agreement, as well as engaging in extensive negotiations regarding the terms of the proposed Settlement, confirmed that had the Parties not reached the Settlement, the litigation would be hotly contested.

33.     Additionally, there was substantial risk that without a Settlement, Plaintiffs might expend large amounts of time and resources litigating only to discover that there are no funds left to pay a settlement. Sunlight filed for bankruptcy shortly after Plaintiffs filed their second amended complaint. During the bankruptcy proceedings, Plaintiffs learned that Sunlight's insurance policies were of such a nature that it was uncertain whether any of it would be available to fund a settlement in this Action. Indeed, counsel for Sunlight confirmed at the preliminary approval hearing that Sunlight was self-funding a large portion of the Settlement, and given Sunlight's recent bankruptcy, required additional time to raise the necessary funds to pay the Settlement. Accordingly, it was in the Settlement Class's best interest to secure the Settlement now.

34.     Once the Settlement was reached, Lead Counsel formulated the Plan of Allocation with the assistance of a damages expert. The Plan of Allocation tracks Plaintiffs' theory of the case and comports with loss causation principles, allocating funds on a *pro rata* basis to claimants based upon the timing and price of their purchases and sales.

35.     In my view, based upon my experience prosecuting securities class actions, the Plan of Allocation provides a fair, reasonable, and rational method of allocating the Settlement funds to Authorized Claimants.

36.     As set forth in the Declaration of Josephine Bravata (Exhibit 1 hereto), in addition to the electronic publication of the Summary Notice, 45,901 individual notices of the Settlement – either in the form of a mailed Postcard Notice or an emailed link to the Long Notice – were sent to potential Settlement Class Members. Bravata Decl. at ¶¶9, 11. The deadline for Settlement Class Members to object to or request exclusion from the Settlement is November 19, 2024; to date the Claims Administrator has not received any objections to any aspect of the Settlement or

any requests for exclusion.  *Id.* at ¶¶14-15.  Neither has Lead Counsel.  In the event that any objections or requests or exclusions are received after this submission, Plaintiffs will address them in Plaintiffs' reply papers, to be filed on December 3, 2024.

**Lead Counsel's Request for Attorneys' Fees and Expenses**

37.    Lead Counsel is applying to the Court for an award of attorneys' fees equal to 27.5% of the Settlement Fund, or $962,500, plus reimbursement of expenses incurred in connection with the prosecution of this Action in the amount of $48,459.98.  As disclosed in the Long Notice, Lead Counsel will share a portion of the fees awarded with the law firm of Glancy Prongay & Murray LLP ("GPM").

38.    Plaintiffs' Counsel have worked diligently for nearly three years to achieve the Settlement, expending 861.5 hours for an aggregate lodestar of $787,597.00 (comprised of 788.6 hours expended by Lead Counsel RLF, and 72.9 hours by additional counsel GPM).  *See* Ex. 2 (RLF Fee Decl.) and Ex. 3 (GPM Fee Decl.).  The lodestar multiplier for the requested fee is 1.22.

39.    There is no duplication of work between RLF and GPM.  GPM initiated this Action by filing the initial complaint (ECF No. 1), and then filed a motion for appointment of lead plaintiff on behalf of Mr. Margent (ECF No. 9).  Following the appointment of Millunchick as lead plaintiff and RLF as Lead Counsel, GPM's role was limited to communicating with Mr. Margent – including advising Mr. Margent on the decision to continue participating in this Action as a named plaintiff to provide standing for the Section 14(a) claims, and discussing case developments and strategies with Mr. Margent. GPM Fee Decl. at ¶2.

40.    Plaintiffs' Counsel spent a total of $48,459.98 in charges and expenses in connection with the prosecution of this Action (comprised of $47,634.21 incurred by RLF and $825.77 incurred by GPM).  *Id.* The vast majority of the expenses were for investigators, experts

and consultants (including consulting with a bankruptcy attorney concerning the implications of Sunlight's chapter 11 action and objecting to Sunlight's chapter 11 plan), and the mediator – all of which were essential to the successful resolution of this Action. Plaintiffs' Counsel have received no compensation whatsoever during the nearly three years that this Action has been pending.

41.     From the outset, Lead Counsel understood they were embarking on a complex, expensive, and likely lengthy litigation with no guarantee of ever being compensated for the substantial investment of time and money the case would require. In undertaking that responsibility, Lead Counsel ensured that sufficient resources were dedicated to the Action and that funds were available to compensate staff and to cover the expenses the case would require. With an average lag time of several years for a case like this to conclude, the financial burden on Lead Counsel was greater than those for a firm paid on an ongoing basis.

42.     Lead Counsel's work will not end with the filing of the instant Motions or the Court's approval of the Settlement. Lead Counsel will spend more time and resources drafting and filing the replies in support of its Motions, preparing for and appearing at the Settlement Fairness Hearing scheduled for December 10, 2024, assisting Settlement Class Members with their claims, overseeing the claims administration process and distribution of the Settlement Fund to Settlement Class Members, and responding to Settlement Class Members' inquiries.

**The Requested Award to Plaintiffs is Justified**

43.     For nearly three years, Plaintiffs have spent time leading this Action on behalf of the Settlement Class. Plaintiffs request an amount of $3,000 each ($6,000 total for the two Plaintiffs) to compensate them for this time and as an incentive for representative plaintiffs to come forward in cases in the future.

44.    Plaintiffs were two of only four Sunlight investors who moved the Court for appointment as lead plaintiff.  While Millunchick was appointed Lead Plaintiff, Margent joined as named plaintiff because he had standing to pursue the Section 14(a) claims.  Since becoming involved in this Action, Plaintiffs have spent time and effort representing the Settlement Class and advocating for its interests, including, among other things: communicating with Plaintiffs' Counsel regarding case developments, reviewing major filings, searching for and providing documents to Plaintiffs' Counsel, discussing case strategies, assessing settlement scenarios, and evaluating the Settlement.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 12th day of November, in New York, NY.

*/s/  Yu Shi*
Yu Shi

11

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 12, 2024, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system

<u>*/s/ Yu Shi*</u>
Yu Shi