**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| MATTHEW MILLUNCHICK and MIKE MARGENT, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> SUNLIGHT FINANCIAL HOLDINGS INC. f/k/a SPARTAN ACQUISITION CORP. II, MATTHEW POTERE, BARRY EDINBURG, RODNEY YODER, GEOFFREY STRONG, JAMES CROSSEN, OLIVIA WASSENAAR, WILSON HANDLER, CHRISTINE HOMMES, JOSEPH ROMEO, and SPARTAN ACQUISITION SPONSOR II, LLC, <br><br> Defendants. | Case No.: 1:22-cv-10658-AKH |

**SUNLIGHT DEFENDANTS' RESPONSE TO MITCHELL WAX'S OBJECTION TO PROPOSED SETTLEMENT**

**McGuireWoods LLP**

1251 Avenue of the Americas
20th Floor
New York, NY 10020
Telephone: (212) 548-2100
Facsimile: (212) 548-2150

*Attorneys for Defendants Sunlight*
*Financial Holdings, Inc., f/k/a*
*Spartan Acquisition Corp. II,*
*Matthew Potere, Barry Edinburg,*
*and Rodney Yoder*

Defendants Sunlight Financial Holdings, Inc. f/k/a Spartan Acquisition Corp. II ("Sunlight"), Matthew Potere, Barry Edinburg, and Rodney Yoder (together, the "Sunlight Defendants"), by undersigned counsel, respectfully submit the following in response to the Objection to Proposed Settlement (ECF No. 121, the "Objection") filed by Mitchell Wax ("Objector") and in further support of the Motion for Final Approval of the Class Action Settlement (ECF No. 116, the "Settlement").

## PRELIMINARY STATEMENT

Six weeks after this Court preliminarily approved the settlement of this action, Objector filed in the District of New Jersey a putative securities class action on behalf of Sunlight shareholders against Cross River Bank ("CRB"), a shareholder and banking partner of Sunlight who is not a party in this action. Objector alleges that CRB participated in a scheme with Sunlight to conceal from Sunlight investors the risks posed by Sunlight's credit advances to contractors— the same risks that Plaintiffs in this action allege Sunlight and the other Defendants did not adequately disclose to those same investors. For two reasons, the Court should deny the Objection's request to carve out the claims against CRB from the Settlement's release of claims against Sunlight shareholders (such as CRB), and it should enter without modification the Settlement and Proposed Order and Final Judgment (ECF No. 107-6). First, modifying the release to exclude the subsequently filed claims against CRB—which encompass the allegations, class period, and proposed class raised in this suit—would deprive Sunlight (which owes indemnification obligations to CRB) of the benefit of the resolution that it negotiated with Plaintiffs. Second, to the extent the Objection seeks a ruling that the Settlement's general release language does not apply to CRB in a subsequently filed lawsuit in another District, the Objection should be denied because it seeks an advisory opinion.

1

**FACTUAL AND PROCEDURAL BACKGROUND**

As the Court is aware, the instant class action was filed on December 16, 2022.  *See* ECF No. 1.  After public notice of the lawsuit, multiple firms moved to be appointed as lead counsel.  Matthew Millunchick was appointed lead plaintiff, and the Court approved his selection of The Rosen Law Firm as lead counsel.  *See* ECF Nos. 8-28.  There were then multiple amendments to the complaint, with the current Operative Second Amended Complaint filed on October 24, 2023.  *See* ECF No. 73.  Neither the Objector nor his counsel participated in any of these proceedings, and the Court-appointed lead Plaintiffs did not pursue claims against CRB.

The Second Amended Complaint asserted claims under Sections 10(b), 14(a), and 20(a) of the Securities Exchange Act of 1934, centered on allegations that Defendants misrepresented Sunlight's risk controls relating to its cash advance program to contractors.  *Id*., at ¶ 2.  Specifically, the Second Amended Complaint alleges that Sunlight advanced money that it received from its "network of capital providers," including "banks, credit unions, insurance companies, and pension funds," to uncreditworthy solar contractors Pink Energy ("Pink") and Vision Solar.  *Id*., at ¶¶ 23, 32, 43.  The Second Amended Complaint alleges that these misrepresentations were revealed when Pink went insolvent and defaulted on its advances in September 2022.  *Id*., at ¶ 2.

On October 30, 2023, Sunlight and certain of its affiliates filed voluntary petitions for relief under Chapter 11 of the U.S. Bankruptcy Code in the U.S. Bankruptcy Court for the District of Delaware.  *See In re Sunlight Financial Holdings Inc., et al.*, Case No. 23-11794 (MFW) (Bankr. D. Del.).  On December 5, 2023, the Bankruptcy Court approved Sunlight's Chapter 11 plan of reorganization, which was effective as of December 6, 2023.  *See id.* at ECF Nos. 201, 203.  Relevant to the Objection, CRB, one of the banks utilizing Sunlight's lending platform, reduced the debt that Sunlight owed it and in return obtained partial ownership of Sunlight when it emerged

from bankruptcy.  CRB is currently—and was at the time of the mediation and settlement of this action—a minority shareholder in Sunlight and holds two of the five seats on Sunlight's Board of Directors.

After Sunlight emerged from bankruptcy (as a nominal defendant in this action), all defendants moved to dismiss the Second Amended Complaint.  *See* ECF Nos. 78-84.  While those motions to dismiss were pending, the parties to this action engaged in mediation with the aid of Robert A. Meyer, Esq., an experienced JAMS mediator.  The parties were able to reach an agreement to settle, and informed the Court of the settlement in principle on April 29, 2024.  *See* ECF No. 95.  On July 15, 2024, plaintiffs filed the Settlement Agreement, with exhibits, and the Motion for Preliminary Approval of the Settlements.  *See* ECF Nos. 107-108.  After obtaining further guidance from the Court during the Preliminary Settlement Approval Hearing on July 25, 2024, the parties resubmitted certain of the settlement documents on August 8, 2024, including a revised Proposed Preliminary Approval Order and revised Stipulation of Settlement (the "Settlement Stipulation").  *See* ECF No. 113.  On August 15, 2024, the Court entered the Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement.  *See* ECF No. 114 (the "Preliminary Approval Order").  The Preliminary Approval Order defined the class as "all persons and entities who: (a) purchased the publicly traded common stock of Sunlight between January 25, 2021 and September 28, 2022, both dates inclusive, and/or (b) beneficially owned and/or held the common stock of Spartan Acquisition Corp. II (Spartan) as of June 1, 2021 and were eligible to vote at Spartan's July 8, 2021 special meeting."  *See* ECF No. 114 at 2.

On September 27, 2024, nearly six weeks after the Preliminary Approval Order was entered, Objector filed the action styled as *Wax v. Cross River Bank*, No. 2:24-cv-09510 (D. N.J.) (the "*Wax* Action") in the District of New Jersey that is the subject of the Objection.  The *Wax*

Action brings claims strikingly similar to those at issue here against CRB as the sole defendant, but names Sunlight as a "relevant non-party." *See Wax* Action, ECF No. 1 ("*Wax* Complaint"), at 10, ¶ 29. Indeed, the gravamen of the *Wax* Complaint is that Sunlight and CRB "engaged in a plan or scheme that, to the extreme detriment of Sunlight investors, enabled Sunlight to originate and conceal from its investors a large pool of loans to unscrupulous solar panel installers of dubious credit quality . . . ." *Wax* Complaint at 1-2, ¶ 1. On November 19, 2024, Objector served the Objection, in accordance with the Preliminary Approval Order, and filed it on the docket on November 21, 2024. No other objections to the Settlement were received, and no class members, including Wax, elected to opt-out of the Settlement.

The Objection asks the Court to (improperly) determine that the release provisions of the Settlement should not apply to the *Wax* Action or to CRB for two reasons. First, Objector argues that the definition of "Settlement Class Claims" included in the Settlement "may be read to include [the claims that he has asserted against] CRB" and should not because the claims do not arise out of an "identical factual predicate." *See* Objection at 5, ¶ 12. And second, Objector claims that the Settlement's definition of "Released Defendant Parties" is "overbroad in that it encompasses all shareholders of Sunlight including CRB." *See* Objection at 7, ¶ 17. Neither basis for the Objection has any merit, and the Court should deny the Objection in its entirety and enter the Proposed Order and Final Judgment as drafted and without modification at the upcoming December 10, 2024 Settlement Fairness Hearing.[1]

## **ARGUMENT**

### I.    **The *Wax* Action is Properly Included in the Definition of Settlement Class Claims.**

The Objection's argument that the Settlement's definition of Settlement Class Claims does

---

[1] As defined in the Preliminary Approval Order.

not encompass the claims against CRB because they do not arise from an "identical factual predicate" fails both legally and factually. *See* Objection at 5, ¶ 12. Legally, while the Objection correctly recognizes that "[a] class action release may release claims not presented or claims that could not have been prevented only when 'the released conduct arises out of the identical factual predicate as the settled conduct,'" it reads this standard as far more restrictive than how it is routinely applied. *See* Objection at 5-6, ¶ 13 (citing *Melito v. Experian Mktg. Sols.*, 923 F.3d 85, 95 (2d Cir. 2019)).

For example, the Second Circuit has explained that the identical factual predicate rule is rather broad, noting that a settlement can release claims that may be founded on a different legal theory that arose from the same set of facts. *See TBK Partners, Ltd. v. W. Union Corp.*, 675 F.2d 456, 460 (2d Cir. 1982), *citing National Super Spuds, Inc. v. New York Mercantile Exchange*, 660 F.2d 9, 18 n.7 (2d Cir. 1981). And contrary to the narrow interpretation espoused by the Objection, the identical factual predicate test simply requires a common nucleus of operative fact—which clearly exists here between the allegations in this action and in the *Wax* Complaint. *See* 6 *Newberg and Rubenstein on Class Actions* § 18.19 (noting that "courts have generally" interpreted the "identical factual predicate" test as "requir[ing] only 'a common nucleus of operative fact'"); *see also In re Blue Cross Blue Shield Antitrust Litig. MDL*, 85 F.4th 1070, 1090 (11th Cir. 2023) (holding that "[u]nder the identical-factual-predicate doctrine, a settlement agreement may release claims that share a common nucleus of operative fact with the claims in the underlying litigation" and observing that approved class action settlements "releasing claims in any way related to the factual predicate of the underlying litigation") (quotation omitted). Thus, "in order to achieve a comprehensive settlement that would prevent relitigation of settled questions at the core of a class action, a court may permit the release of a claim based on the identical factual predicate as that

5

underlying the claims in the settled class action even though the claim was not presented and might

not have been presentable in the class action." *TBK Partners,* 675 F.2d at 460. [2]

Factually, the Objection's assertion that "[t]he claims alleged in the Wax Action do not

share an 'identical factual predicate' with the claims alleged in the instant action" is belied by the

face of the pleadings themselves.  For instance, paragraph 45 of the *Wax* Complaint alleges:

> Between January 25, 2021 and October 31, 2023, CRB knowingly (at a minimum, extremely recklessly) engaged in a scheme to deceive Sunlight investors which artificially inflated the price of Sunlight stock and operated as a fraud or deceit on purchasers of Sunlight stock.  Specifically, **CRB knowingly facilitated loans to disreputable solar contractors of dubious credit quality**, as well as the build-up of an enormous Backbook of high-risk Indirect Channel Loans Defendant warehoused for Sunlight on CRB's balance sheet but for which Sunlight retained the risk of loss.

*Wax* Complaint at 15, ¶ 45 (emphasis added).  The *Wax* Complaint further alleges:

> Pursuant to the scheme described herein, **CRB, as Sunlight's Bank Partner, knowingly granted ever-increasing amounts of credit to** Sunlight and **its contractors (including Vision Solar and Pink)**, repeatedly lifted its loan caps, and waived defaults under its agreements with Sunlight, all with knowledge that such defaults and Sunlight's unsustainable debt load were being concealed from Sunlight's investors. CRB engaged in these inherently fraudulent transactions for no legitimate purpose other than to enrich itself with substantial fees as a lender, as well as the fee Sunlight was obligated to pay to CRB based on loan volume.

*Wax* Complaint at 16, ¶ 48 (emphasis added).

However, these factual allegations were already asserted in the Second Amended

Complaint here.  Specifically, the "Nature of the Action," identified a common factual premise:

> Sunlight operated a digital home solar panel financing platform that, among other things, offered cash advances to contractors. Sunlight told investors that it had stringent processes in place to vet and monitor the contractors to whom it gave advances. In actuality, starting in 2019, Sunlight substantially loosened its credit

---

[2]  That the *Wax* Complaint purports to bring claims beyond the class period here and allegedly broader in scope does not mean that it does not arise from the same factual predicate. *See Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 349 (6th Cir. 2009) ("The question is not whether the definition of the claim in the complaint and the definition of the claim in the release overlap perfectly; it is whether the released claims share a 'factual predicate' with 'the claims pled in the complaint.'").

6

standards and removed guardrails that had controlled risks and losses stemming from its cash advance program. Nevertheless, Sunlight kept touting its supposedly rigorous due diligence and monitoring process and claiming that the cash advance program posed minimal risk for Sunlight, **even as it was pumping more and more cash into two of the worst solar contractors in the industry – Pink Energy and Vision Solar**.

ECF No. 73 at 2, ¶ 2 (emphasis added).

Because the *Wax* Action alleges conduct arising out of the same factual predicate as this action—namely, that Sunlight investors were deceived beginning in 2021 by a fraudulent scheme of concealment of a large pool of loans to unscrupulous solar panel installers—it could have (and should have) been consolidated with this action had it been timely filed.  Indeed, considering that the proposed class period in the *Wax* Action ended in October 2023 (*see* Objection at 3, ¶ 3), at the same time the Second Amended Complaint was filed in this action, it does not appear that there was any legitimate reason for Objector to wait to file the *Wax* Complaint until over one month after the Preliminary Approval Order and five months after the parties notified the Court of their settlement in principle.  Certainly, the Objection offers none, and given the overlapping factual allegations—and the fact that Objector did not name any of the Sunlight Defendants in his suit against CRB, despite claiming that Sunlight was part of the "scheme" to deceive Sunlight stockholders—it seems highly improbable that Objector and his counsel were unaware of this action when they filed the *Wax* Complaint.

"Rule 42(a) of the Federal Rules of Civil Procedure empowers a trial judge to consolidate actions . . . when there are common questions of law or fact to avoid unnecessary costs or delay." *See Pinkowitz v. Elan Corp., PLC*, No. 02-cv-4948 (WK), 2002 WL 1822118, at *2 (S.D.N.Y. July 29, 2002).  However, "Rule 42 [does not] demand[] that actions be identical before they may be consolidated."  *Id*., at *3.  This is particularly true in fraud securities class actions, where "consolidation is common."  *See id*. (explaining that consolidation of various class action

7

litigations was proper because "[e]ach of the class actions here is predicated on the defendants' purported misstatements and omissions (which allegedly resulted in inflated earnings and revenue) and the effect of such conduct on the price of Elan's stock when the conduct came to light" and that of the "similar allegations in each of the complaints" and "common questions of fact").

Under this standard, the *Wax* Complaint clearly would have lent itself to consolidation here, as it relies on the same set of underlying facts and asserts a class period that entirely encompasses the class period in this action. *See Wax* Complaint at 1, ¶ 1 (defining class period as between January 25, 2021 and October 31, 2023, inclusive; Second Amended Complaint at 2, ¶ 1 (defining class period as between January 25, 2021 and September 28, 2022, both dates inclusive).

The Objection is also self-defeating in pointing to *McCants, et al. v. Strong, et al.*, C.A. No. 2023-0694-PAF (Del. Ch.), a class action pending in the Delaware Court of Chancery that was excluded from the Settlement. *See* Objection at 16, ¶ 16. The Objection argues that because *McCants* was specifically carved-out from the scope of released claims in the Settlement, the later filed *Wax* Action should be as well. Not so. First, as noted above, had the *Wax* Complaint been filed at the same time as the *McCants* action—prior to mediation, settlement negotiations, and the Preliminary Approval Order—it would have been subject to consolidation with this action. Second, *McCants* was filed well before the mediation here, and the parties to this Settlement agreed to payment terms that reflected the fact the *McCants* suit would remain outstanding. Objector, by contrast, filed a suit after Defendants agreed to pay the settlement amount, and he now seeks to deprive Defendants of the benefit of that bargain by carving out these new claims from the scope of the release they negotiated.

It is therefore quite presumptuous, and incorrect, for Objector to assume that the *Wax* Complaint would have been excluded from the Settlement had that complaint been timely filed.

8

But regardless, because it was not, and because it arises from the same set of facts as those subject to the Settlement, the claims at issue in the *Wax* Action are properly included in the definition of Settlement Class Claims. Indeed, Objector is attempting the exact end-run around the Settlement that Defendants negotiated to avoid: recovery by the same plaintiffs, on the same facts, and in a way that may result in more liability to Sunlight.

## II.    CRB is Properly Included in the Definition of Released Defendant Parties.

The Objection's assertion that the Settlement's definition of Released Defendant Parties is overbroad insofar as it may include CRB as a "shareholder," Objection at 7, ¶ 17, similarly fails. The Settlement Stipulation defines Released Defendant Parties in relevant part as:

> Defendants, Defendants' Counsel, and each of their respective past, present, or future direct or indirect subsidiaries, parents, affiliates, principals, joint ventures, joint ventures [sic], any other corporate entities, successors and predecessors, assigns, officers, directors, shareholders, controlling shareholders, members, trustees, partners, agents, fiduciaries, contractors, employees, attorneys, insurers and reinsurers, auditors, financial advisors, investment banks, underwritings, investors, accountants, . . . .

ECF No. 113-4 at 9-10. The Objection cites no legal authority to support its claim that the definition is "overboard." This definition, and that of the Settlement Class Claims, and the scope of the Settlement's releases, are standard in the class action settlement context, including in settlements approved by this Court. *See, e.g.*, Amended Stipulation of Settlement, ECF No. 274 at 5-6, *In re Pareteum Secs. Litig.*, No. 19-cv-9796 (AKH) (S.D.N.Y. Dec. 16, 2022) (including "shareholders" and "investors (however denominated)" in the definition of "Released Defendant's Parties" of an approved class action settlement); Stipulation and Agreement and Settlement, ECF No. 180 at 9, *In re Greensky Secs. Litig.*, No. 18-cv-11071 (AKH) (May 24, 2021) (including "stockholders" in the definition of "Released Defendants" of an approved class action settlement).

9

Moreover, as is standard, the Settlement Amount (as defined in the Settlement Stipulation) and the terms of the Settlement, were bargained for by all parties in order to achieve global peace regarding the claims at issue, including both known and unknown claims and claims that could have been, but were not, asserted in this action. *See* ECF No. 113-4 at 12-13 (definition of Settlement Class Claims in the Settlement Stipulation). In agreeing to fund the Settlement, Sunlight sought complete peace for itself and its shareholders, including CRB, regarding the underlying allegations. *See* ECF No. 113-4 at 9-10 (definition of Released Defendant Parties in the Settlement Stipulation). This protection is standard in the class action settlement context and was bargained for during the negotiation of the Settlement Stipulation, when undersigned counsel specifically negotiated for the definition of Released Defendant Parties to include entities such as shareholders.[3] Indeed, as a shareholder of and a lender to Sunlight, CRB is owed indemnification obligations by Sunlight which would render this Settlement ineffective if CRB (and other post-bankruptcy shareholders) were not included as a Released Defendant Party. And as a shareholder with representatives on Sunlight's Board of Directors, CRB not only played a role in negotiating the Settlement, but in *approving* it as well.

Further, this lawsuit and the *Wax* Action share the same theory of damages such that, in conjunction with Sunlight's indemnification obligations to CRB, Objector and the class he purports to represent are seeking a double-recovery for the same loss from Sunlight. Specifically,

---

[3] The Objection also fails when it argues that the claims against CRB should not be released because CRB "did not . . . contribute monies to the Settlement." Objection at 8, ¶ 20; *see, e.g.*, *Pantelyat v. Bank of Am., N.A.*, No. 16-cv-8964 (AJN); 2019 WL 402854, at *5 (S.D.N.Y. Jan. 31, 2019) (explaining that "there is nothing unusual about releasing a third party in a class action settlement" even where such party did not provide consideration); *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d. 632, 666-67 (N.D. Tex. 2010) ("That [third parties] have not contributed to the proposed settlement does not preclude the court from approving an agreement that releases them, provided the settlement is fair, reasonable, and adequate to the class as a whole.").

the Second Amended Complaint alleges that Sunlight stockholders were damaged when Sunlight's stock price fell by $1.44 per share on September 29, 2022, ECF No. 73 at ¶¶ 103, 214, and the *Wax* Action similarly claims a "corrective" disclosure on September 28, 2022 causing the exact same $1.44 stock price drop on September 29, 2022. *See Wax* Complaint at 16, ¶ 49.[4]

The Settlement Stipulation's (standard) definition of Released Defendant Parties therefore not only specifically contemplated the inclusion of shareholders and investors such as CRB, but also is an integral term of the Settlement, and a key reason why the parties to this action were able to reach an agreement to resolve the claims at issue and in which all class members (including Objector by choosing not to opt out) elected to participate. This requirement of global peace is exactly why class action settlements, and settlements generally, release parties beyond the named defendants to a litigation. The Objection's impermissibly narrow interpretation of the parties who should be released in such settlement would greatly restrict the ability for class claims to be resolved by mutual agreement. Simply put, the Settlement that was bargained for and purchased by the Sunlight Defendants (including its shareholders) properly includes the protection of a release for its shareholders such as CRB, and without this release and the definition of Released Defendant Parties that is currently included in the Settlement Stipulation, a settlement would not have been reached on these terms.[5]

---

[4] The *Wax* Action does allege additional "corrective" disclosures and related stock price drops, but the total size of these stock drops ($0.60) is much smaller than the stock price drop on September 29, 2022 ($1.44) for which Objector and his counsel are attempting to obtain a double-recovery. *Compare Wax* Complaint ¶ 11 *with id.* ¶¶ 12, 13, 17, 18, 22.

[5] As explained more fully below, should the Court be inclined to alter the terms of the Settlement and its releases, the Sunlight Defendants would likely exercise its right to terminate the Settlement, as it would no longer include all of the material terms that were bargained for and purchased.

**III.    The Objection Seeks an Improper Advisory Opinion from this Court.**

Finally, if the Court declines to rule that Objector's claims against CRB are released in the Settlement, then the Court should approve the Settlement and Proposed Order and Final Judgment as drafted.  The Objection essentially asks the Court to determine that claims not before the Court against an entity not a party to this action (or before this Court, unlike Objector) and involved in a case in a different court are not included in the scope of releases included in the Settlement.  This is nothing more than a request that the Court enter an improper advisory opinion that is not ripe for review.  *See U.S. v. Leon*, 203 F.3d 162, 164 (2d Cir. 2000) ("[T]he exercise of federal jurisdiction under the Constitution 'depends on the existence of a case or controversy, and a federal court lacks the power to render advisory opinions.'") (quoting *U.S. Nat'l Bank v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 446 (1993)).  The Objection does not meet the standard for a ripe case or controversy for this Court to review.  Indeed, the Objection does not concede that the Objector's claims against CRB fall within the scope of the release as drafted.  Instead, Objector hedges, and states only that the definition of Settlement Class Claims "*may* be read to include CRB" and the *Wax* Action; Objector proceeds to argue that such claims are *not* within the release, including on the ground that they do not arise from the same factual predicate as this case.  *See* Objection at 5, ¶ 12.

That is not a proper basis for objecting to this or any other settlement.  Objector has not objected to the fairness of the Settlement nor provided any other reason why the Court should not approve the Settlement as drafted.  Nor does Objector contend that it is facially overbroad to include "shareholders" within the scope of a release.  The time for Objector to opt out and ask to be excluded from the Settlement has come and gone.  Although Objector *could* have opted out of the proposed settlement in this action, he did not do so.  It is not proper for him to now *object* to

the proposed settlement simply because his counsel filed a separate action against a different party well after the proposed settlement in *this action* was filed and the Preliminary Approval Order was entered.

More to the point, given that CRB is not a party to this action, it would be appropriate for this Court to conclude that the question of whether CRB and the *Wax* Complaint are included within the definitions of Released Defendant Parties and Settlement Class Claims is not ripe. While Objector has sought a ruling from the Court about whether his claims against CRB fall within the release—and Objector therefore could not be heard to complain if the Court decides the issue against him—the same cannot be said for CRB, who is not before this Court. Such claims are also not before this Court and given that the motions for appointment of lead plaintiff in the *Wax* Action are not due until the day before this response is due, it is unclear what claims, if any, will even be included in the *Wax* Action or whether counsel that submitted the Objection will be authorized to speak for any proposed class. Rather than opine about the application of claims pending in another District, a more appropriate course of action is to let the parties to the *Wax* Action and the court in the District of New Jersey determine whether the claims included in the *Wax* Complaint are subject to the releases included in the Settlement, after CRB and Objector have the opportunity to fully brief and argue those points (if that argument is even made as the *Wax* Action continues).

As set forth above, the Court can: (1) state that CRB and the *Wax* Action are included in the definitions of Released Defendant Parties and Settlement Class Claims, or (2) simply approve the Settlement and enter the Proposed Order and Final Judgment as drafted. The Sunlight Defendants respectfully submit that if the Court is not inclined to do the former, it should simply

13

do the latter, as any argument about the scope of the (commonplace) releases included in the Settlement is more appropriately made in the court where the *Wax* Action is pending.

If the Court gives weight to the Objection and declines to approve the Settlement unless the claims against CRB are carved out, the Sunlight Defendants would no longer be receiving the benefits of the Settlement that they bargained for and funded, and they would likely seek to terminate the Settlement. This would not only force the parties here to litigate against their will, but also deprive the absent class members of the benefit of the Settlement, all because of a belatedly filed litigation by an Objector who, had he wished to preserve his claims, could have and should have sought to be excluded from the Settlement.

## CONCLUSION

For the foregoing reasons, the Court should deny the Objection and enter the Proposed Order and Final Judgment.

Dated: New York, New York
December 3, 2024

McGuireWoods LLP

*/s/ Jeffrey J. Chapman* _____
Jeffrey J. Chapman
Aaron F. Jaroff
1251 Avenue of the Americas, 20th Floor
New York, NY 10020
Tel: (212) 548-7060
Fax: (212) 715-6277
jchapman@mcguirewoods.com
ajaroff@mcguirewoods.com

*Attorneys for Defendants Sunlight*
*Financial Holdings Inc. F/K/A Spartan*
*Acquisition Corp. II, Matthew Potere,*
*Barry Edinburg, and Rodney Yoder*

To:    All counsel of record (Via ECF)
         Objector's counsel (Via email)

14