O7P5milC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

MATTHEW MILLUNCHICK, *et al.*,

                 Plaintiffs,              New York, N.Y.

          v.                              22 Civ. 10658 (AKH)

SUNLIGHT FINANCIAL HOLDINGS,
INC., *et al.*,

                 Defendants.

------------------------------x

                                          July 25, 2024
                                          10:20 a.m.

Before:

                    HON. ALVIN K. HELLERSTEIN,

                                          U.S. District Judge

                            APPEARANCES

THE ROSEN LAW FIRM
     Attorneys for Plaintiffs
BY:  YU SHI


McGUIRE WOODS, LLP
     Attorneys for Defendants Sunlight Financial, Potere,
Yoder, Edinburg
BY:  JEFFREY J. CHAPMAN


VINSON & ELKINS, LLP
     Attorneys for Spartan Defendants
BY:  JEFFREY T. CROUGH

O7P5milC

(Case called)

THE DEPUTY CLERK:  Counsel, please state your appearances for the record.

MR. SHI:  Good morning, your Honor.  Yu Shi from The Rosen Law Firm for the plaintiffs.

THE COURT:  Good morning.

MR. CHAPMAN:  Good morning, your Honor.  Jeff Chapman from McGuire Woods for Sunlight Financial, Matthew Potere, Rodney Yoder and Barry Edinburg.

THE COURT:  And Jeffrey Crough.

MR. CROUGH:  Yes, Jeff Crough from Vinson & Elkins on behalf of the Spartan defendants.

THE COURT:  Good morning, all.

So this is a motion for preliminary approval of a class settlement.  Why don't you take the podium, Mr. Shi, and tell me about it.

MR. SHI:  Yes, your Honor.  Would you like me to speak from here or --

THE COURT:  Take the podium, please.

MR. SHI:  So we have a proposed class action settlement.

THE COURT:  The mic will pick you up.

MR. SHI:  OK.  We have a -- so we are here because we have a proposed class action settlement that will fully resolve all claims in this action against all defendants.  The

O7P5milC

settlement is for $3.5 million in cash and we are here today seeking preliminary approval of this settlement so that we could issue notice to class members, who then will have the opportunity to submit claims, file objections, or request an exclusion from this class action settlement.

If there is any specific action or questions that your Honor has --

THE COURT:  Tell me why I should approve it.  Tell me about the case, tell me when you settled the case.  Make believe I know nothing.

MR. SHI:  Sure, your Honor.

So, this is a putative class action alleging claims under Sections 10(b) and 14(a) of the Exchange Act.  The settlement amount, $3.5 million, represents slightly over 10 percent of the maximum damages that plaintiffs have calculated that's potentially proveable in this action, and the 10.4 -- so it is exactly 10.4 percent of the maximum damages which compared to the average settlement amount.

THE COURT:  I have no interest in what the average or median is.  Every case has its own merits.

MR. SHI:  Yes.  So, this is a -- we believe this settlement is in the best interest of the class because we, at the time that the settlement was reached, we had filed two amended complaints and the motion to dismiss on the second amended complaint was pending at the time that the settlement

O7P5milC

was reached so we were fully aware of what defendant's arguments were.

THE COURT: So let me get this straight.

MR. SHI: Yes.

THE COURT: You issued a complaint, defendants moved to dismiss it.

MR. SHI: Yes.

THE COURT: Settlement.

MR. SHI: Yes, your Honor. Defendants moved to dismiss and the motion was fully briefed at the time that the parties went to a mediation and the settlement was reached about a week after the mediation.

THE COURT: All right. How do you know it was a good claim?

MR. SHI: So, from the defendant's motion to dismiss, they were very detailed and extremely lengthy and having the opportunity to see their arguments and to put forth our argument --

THE COURT: Did you anticipate those arguments when you drafted the complaint?

MR. SHI: Yes, your Honor.

THE COURT: It is not the first stockholders complaint you drafted.

MR. SHI: Yes, your Honor.

Why do we think that this action potentially has

merit?  Because we think that based on the investigation we did that we had a colorable claim and that we, at the time that we, and we felt that this was a case that we had a good chance of surviving the motion to dismiss but obviously we could never predict what is going to happen on a motion.

THE COURT:  The settlement of $3.5 million on the part of the defendant is an indication that plaintiff calculated -- defendant's estimated the cost of defense probably exceeding $3.5 million and decided to pay you to settle it.  It has no indication what the merits would have been.  You took no discovery to find out how there was a failure of due diligence, you learned nothing about the amounts of advances, the timing of advances.  You learned nothing about the inflation of sales that occurred because of that and you come up to settle a case.

MR. SHI:  Yes, your Honor.

THE COURT:  Having never worked the case.

MR. SHI:  Yes, your Honor, that is true, discovery has not begun in this action, but because there is a PSLRA action we could not get discovery until we survived the motion to dismiss.

THE COURT:  Of course.

MR. SHI:  Right, and so --

THE COURT:  But you drafted the complaint.

MR. SHI:  We did.

THE COURT:  You had every confidence that you would

O7P5milC

survive.

MR. SHI:  Yes, we certainly had confidence that we would survive the motion.

THE COURT:  Otherwise you would not have filed it.

MR. SHI:  Yes.  Exactly.  But having done many of these cases, we know that even for cases where we feel extremely confident, sometimes we still lose motion to dismiss and we just can never predict how much of this case might get through the motion.

THE COURT:  Who were the plaintiffs in the 14(a) case?

MR. SHI:  It's everyone who held shares of the SPAC at that time and who were eligible to vote at the special meeting to approve the business combination.

THE COURT:  And what happened?  Why are they injured?

MR. SHI:  So we allege that had they known the truth, then they could have exercised their right to redeem their shares for $10 per share, rather than vote to approve the business combination.

THE COURT:  What happened?  They then merged into Sunlight Financial?

MR. SHI:  Yes.

THE COURT:  So they're similarly situated for the plaintiffs who bought on the market.

MR. SHI:  Yes, your Honor; because they lost the opportunity to redeem their shares.

O7P5milC

THE COURT:  Yes.  The point is they bought shares.

MR. SHI:  Yes, your Honor.

THE COURT:  At a certain price.

MR. SHI:  Yes.

THE COURT:  And that price, you say, was inflated.

MR. SHI:  Right.  At the time that they purchased the shares, certain alleged false statements were on the market and therefore the purchase price was unofficially inflated.

THE COURT:  You have a table showing the allocation. Explain to me first in paragraph 6(a), 6(b), and 6(c) how you do this calculation.

MR. SHI:  Yes, your Honor.

So for everyone who purchased during the class period and also sold their shares during the class period, these shareholders would not get any recovery and the reason is because they didn't hold their shares past the alleged corrective disclosure.

THE COURT:  They bought and they sold.

MR. SHI:  They bought and sold at the time that the inflation was still in the stock.

THE COURT:  Tell me about (b).

MR. SHI:  So, for (b) this is the class members who purchased during the class period and then sold during the 90 days after the class period, and for these shareholders they would get the lesser of $1.40 per share, so $1.40 is the amount

O7P5milC

that the stock dropped on the amount of the date of the corrective disclosure.

THE COURT:  What was it?  What was the price before the drop?

MR. SHI:  Your Honor, let me get that information for you.  I believe it was $2.48 per share and the stock dropped by $1.40 per share.

THE COURT:  57 percent, I understand.

MR. SHI:  Roughly.  And so they would either get that or the average closing price on the day they sold their stock, and this is based pursuant to the PSLRA's 90-day lookback provision.  And then for 6(c), for everyone who --

THE COURT:  Tell me the logic of the difference between (a) and (b).

MR. SHI:  The logic, so let's say if someone purchased their shares during the class period and then, for example, sold on October 10, then they would -- then their recognized loss would either be the difference between the purchase price and $1.40 per share, which is the date of the stock drop, the amount of the stock drop, or the purchase price minus the average closing price on October 10 which is $1.23 per share.

THE COURT:  Why doesn't that same standard apply to all?

MR. SHI:  Why to?

THE COURT:  What do you have two standards?  Why isn't

O7P5milC

subsection (b) sufficient?

MR. SHI:  Why is isn't (c) necessary?

THE COURT:  No.  Why is (a) necessary.

MR. SHI:  Why is subsection (a) necessary?

THE COURT:  That is the question.

MR. SHI:  Because people who sold during the class period would not be entitled to any losses.

THE COURT:  Why is there both the (a) and (b)?  I can't understand the difference between the two and why there should be a differential.

MR. SHI:  I think, your Honor, you are referring to why there is a difference between 6(b)(1) and 6(b)(2).

THE COURT:  Well, I don't have those numbers.  It is 6.

MR. SHI:  Why is there a difference between recovering --

THE COURT:  I am reading from a different source, that's right.  OK.  Why is the difference of $1.40 per share as the marker or the purchase price minus average closing price on date of sale?  Why shouldn't it be purchase price minus average closing price for everybody?

MR. SHI:  Or purchase price --

THE COURT:  -- less actual sale price?

MR. SHI:  Because the PSLRA has a provision that says the recovery cannot exceed the purchase price, the difference

O7P5milC

between the purchase price and the price drop or the mean trading price of that day on the day that it was sold.

THE COURT:  Yes, so it is a choice because of the PSLRA.  OK.

MR. SHI:  Because of the statute; that's right.

THE COURT:  The next is the shares of stock that were held continued to be held after December 27, 2022.  You have the lesser of $1.40 per share on the purchase price when it is $1.38.  Why those two?

MR. SHI:  Again, the $1.40 per share is the amount of the stock drop.

THE COURT:  Right.

MR. SHI:  And the $1.38 per share was average closing price of the 90-days following the stock drop following the corrective disclosure.

THE COURT:  I understand.

MR. SHI:  So, again, pursuant to the --

THE COURT:  I understand.  You asked me to preliminarily approve a payment to the individual plaintiffs. How many were there?

MR. SHI:  There were two.

THE COURT:  Matthew Millunchick and Mike Margent.

MR. SHI:  Yes.  That's right, your Honor.

THE COURT:  $5,000 each?  What did they do?  What did they do to deserve anything.

O7P5milC

MR. SHI:  Your, I don't believe it is $5,000 each.

THE COURT:  I misread.  What was it?

MR. SHI:  So the total were not to exceed around $6,000 which would be $3,000 to each with a total of $6,000 for the two of them.

THE COURT:  Yes.  What did they do?

MR. SHI:  So they represented the class, they chose to select their counsel.  Mr. Millunchick moved to be the lead plaintiff.  He communicated with counsel to make sure that we were doing our job prosecuting the case.  He evaluated the settlement, they discussed the merits of the case, what the proper value of the settlement should be, provided documents to us.  And, I mean, without these plaintiffs, there would not have been this class action.

THE COURT:  I doubt that I'm going to give the award you ask.  That will come up at the final approval.

As to the proposed notice and stipulation agreement you have a provision that the attorneys fees had allowances, will be paid first before the first distribution takes place. I don't allow that.  You get paid when your clients get paid. Please, change it.

MR. SHI:  Yes, your Honor.  So, do you want us to change that to we will get paid after the entire fund has been distributed?

THE COURT:  No, on first distribution.

O7P5milC

MR. SHI:  On the first distribution.  OK.  We will do that.

THE COURT:  As to the charity at the end of the case, you will have to make a motion to me for disposition of funds.

MR. SHI:  Yes, your Honor.

THE COURT:  I understand that if checks are not cashed there is a fund left over because of uncashed checks or people didn't show or whatever else.  The reason is will there be a second distribution.

MR. SHI:  Yes, your Honor.

THE COURT:  There will.

MR. SHI:  Yes.  Right.  If it's -- if there are funds left and it is economically feasible to do a second distribution there is going to be a second distribution.

THE COURT:  All right.  What I want to do is I want to appoint the settlement administrator by separate order.

MR. SHI:  Yes, your Honor.

THE COURT:  That settlement administrator will report to me after his first distribution on the disposition of funds, and then again 60 days later if any checks have been returned on not cashed, what about the reason whether there should or should not be a second distribution, and if there is a cy-près motion, make it known.

MR. SHI:  60 days after the first distribution.

THE COURT:  Right.  Build that into the notice and the

O7P5milC

agreement.

Last, in your notice of pendency of proposed settlement of class action, on page 2 at the end of the first bullet paragraph I would like you to add the following sentence:  The Court will review the claims for fees and expenses at the fairness hearing and decide the amounts that are reasonable and appropriate.

Are there any objections from the defendants?

MR. CHAPMAN:  No, your Honor.

MR. CROUGH:  No, your Honor.

THE COURT:  I approve, preliminarily, the settlement.

The class is sufficiently numerous to justify a class action.  There are common issues of law and fact.  The claims of the plaintiffs are typical of the claims of the class and the representation is adequate, both as to class representatives and as to the class counsel and the common questions that predominate in a class action is superior to other methods of adjudication.

The settlement is procedurally appropriate, was arm's-length, with the help of a mediator.  It is substantively fair.  I suppose that it is but it is hard to tell because the case was not pursued into a discovery process.  Who is going to pay the settlement?  The company or the individual defendant?

MR. SHI:  I will let defense counsel answer this question.

O7P5milC

MR. CHAPMAN: The funding will be from the company and then I believe some insurance companies are also involved in funding. The individual defendants are not, to my knowledge, contributing.

THE COURT: You have just come out of bankruptcy, haven't you?

MR. CHAPMAN: Yes, your Honor.

THE COURT: So there is a limited pot to recover from.

MR. CHAPMAN: That's correct.

THE COURT: In that context the settlement is substantively fair so I find that plaintiff and counsel have adequately represented the class, the proposed settlement is result of good faith arm's-length negotiations by informed, experienced counsel. The proposed settlement is favorable for the class in light of the benefits, the risks of continued litigation, and the absence of confidence that the defendant company will be able to sustain a larger judgment.

As to the risk of establishing class-wide liability and damages, cases have their risks. The manner and extent of due diligence is subject to many points of view and there will be risks establishing that there was an absence of due diligence. The proposed method to distributing relief is appropriate as to attorneys fees and reimbursement of expenses. I will decide those on an application made for the final approval showing the lodestar of the attorneys that were

O7P5milC

involved and showing also the absence of duplication between the second law firm and your law firm.

There is equality of distribution among eligible class members and on all counts the requirements of Rule 23 are satisfied for a preliminary approval and I grant it.

Do I have an order?  I think I do.  Why is only one half of the settlement amount of $3,500,000 being funded?  I address this to Mr. Chapman.

MR. CHAPMAN:  I'm sorry.  I'm not entirely -- what provision are you referring to?

THE COURT:  Looking at the proposed order, which is paragraph 11.

MR. CROUGH:  Your Honor, if I may, I might be able to take that one.

So that is not actually one half of the settlement because we need one more zero for that to happen, that is $175,000, and the intention there is to provide funds to the claims administrator to the able to begin the notice process so that is why it has a sooner deadline.

THE COURT:  So it is less than half, it is $175,000. I misread it.

MR. CROUGH:  Yes.

THE COURT:  Customarily, the defendants put up the whole amount in escrow.

MR. CHAPMAN:  And as your Honor indicated, we are

O7P5milC

emerging from bankruptcy and we need time to sell loans in the marketplace and basically recover that money.

THE COURT:  Well, there is serious risk, then, that the money won't be in their hands.

MR. CHAPMAN:  I don't believe so, your Honor.

THE COURT:  There has to be.  If it weren't at risk, it would be paid.  It should be paid.  It should be paid.

MR. CHAPMAN:  My clients, we carefully evaluated it with our chief financial officer.

THE COURT:  I have to evaluate it for the purpose of settlement.

MR. CHAPMAN:  I understand.  We determined that we could meet the schedule that was let out there which is $175,000 to get the claims process started and then the rest later, which comes from a combination of --

THE COURT:  There is too much uncertainty to approve a class settlement on that basis.  You are settling at a cheap price, which you are.  You should fund it.

MR. CHAPMAN:  I don't -- we believe we can meet the schedule, your Honor, and that's why we signed the agreement.

THE COURT:  I know that, but I have to approve the agreement and I am not likely to approve it unless it is approvable.  I would go for half and the balance 30 days later and to reflect it in notes.

MR. CHAPMAN:  Obviously I have to talk to my client

O7P5milC

about that, but we understand, your Honor.

THE COURT:  All right.  Then I will not sign the order until I get satisfaction on that one.  Why don't you fill in the dates that you think are appropriate in paragraph 20, Mr. Shi.

MR. SHI:  Paragraph 20.  Your Honor, that is because we don't know when the settlement hearing date is so we are not able --

THE COURT:  We will affix it.  How many days away should it be?

MR. SHI:  We are asking for roughly 135 days from the date that your Honor issues preliminary approval.

THE COURT:  Get me a date, 135 days.

MR. SHI:  135 days from today, assuming.

THE COURT:  Let's put it four months off.

MR. SHI:  Four months off.

THE COURT:  135 days.  Four months is 120 days.  You need five months off.  Why do you need all of that time?

MR. SHI:  The reason is that customarily we would probably ask for the settlement and fairness hearing to take place about 100, 120 days to let the notice process play out so that class members have sufficient time to have filed claims and objections.  Here, why we ask for slightly longer time is because of the reason that we just discussed right now, which is because defendants needed 120 days to fully fund the

O7P5milC

settlement, we did not want the settlement fairness hearing to occur before the settlement is fully funded.

THE COURT:  Yes.  I don't think there should be that length of time and I think there ought to be a faster funding of the settlement.  I can be flexible about amounts and times, but I think putting this off for the normal period is what is indicated and the settlement should be funded before then.

OK.  You work this out, Mr. Shi and Mr. Chapman and Mr. Crough, and you will submit a revised version and we will give you a date now in early December.

THE DEPUTY CLERK:  The 10th at 10:00 a.m.

THE COURT:  December 10 at 10:00 a.m.  So I want a revised copy of the preliminary approval and order appointing the settlement administrator.

MR. SHI:  Yes, your Honor.

THE COURT:  OK.  Thank you, folks.

MR. SHI:  Sorry, your Honor.  If I may just clarify? So do you want us to submit a proposed revised proposed order with the items that we spoke about today with the December hearing date filled in and all the other dates filled in based on that date?

THE COURT:  Yes.

MR. SHI:  OK.  And you would like us to also file a revised settlement agreement with the --

THE COURT:  Yes.

O7P5milC

MR. SHI:  OK.

THE COURT:  I don't think I need to see that again. You can make the changes you want.  I am interested in the notice.  You will make those changes and I trust you to make the change, I just need the two orders.

MR. SHI:  OK.  So we just need to file the two orders but not the revised settlement agreement.

THE COURT:  Let me reconsider.  File it all.

MR. SHI:  OK.

THE COURT:  File it all.  OK.  Thank you.  Bye.

o0o